1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 26, 2016

SEAN F. McAVOY, CLERK

3    UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

5    CITY OF SPOKANE, a municipal
corporation, located in the County of
Spokane, State of Washington, ,

6                              Plaintiff,

7         v.

8    MONSANTO COMPANY, SOLUTIA
INC., and PHARMACIA
9    CORPORATION, and DOES 1 through
100,
10

11                              Defendants.

No.    2:15-CV-00201-SMJ


**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO
STATE A CLAIM**

12

13                    **I.    Introduction**

14         Polychlorinated biphenyls (PCBs) are synthetic chemical compounds that

15    were widely produced and used during much of the twentieth century for various

16    industrial and commercial applications before they were mostly banned in 1979.

17    The production, use, and disposal of PCBs has resulted in widespread

18    environmental contamination, including contamination of the Spokane River. The

19    potential adverse environmental and human health effects of PCB contamination

20    and exposure are well known. The Spokane River contains elevated levels of PCBs

     in surface water, sediments, and fish tissues and the City of Spokane's (Spokane)

ORDER - 1

wastewater and stormwater discharges are a significant source of that contamination. Spokane faces significant costs to sufficiently reduce the level of PCBs it discharges into the River. Spokane alleges that PCBs have leached or migrated from their original places of use and intended application into the environment in and around Spokane and that Spokane's wastewater and stormwater systems consequently collect and transport PCBs to the River.

Spokane filed this action against the defendants (collectively Monsanto), who Spokane alleges produced, marketed, and distributed most of the PCBs in the United States, alleging that Monsanto is liable for the costs of cleaning up PCB contamination and reducing PCB discharge from Spokane's wastewater and stormwater systems under public nuisance, products liability, negligence, and equitable indemnity theories.  Before the Court is Monsanto's motion to dismiss each of these claims on the basis that (1) all of Spokane's claims are time barred; (2) Spokane lacks standing to bring a products liability action; (3) Spokane's common-law claims are preempted by the Washington Products Liability Act; (4) Spokane lacks standing to bring a public nuisance claim; (5) Spokane has failed to allege proximate causation; (6) Spokane fails to state a claim for negligence; (7) the common law equitable indemnity cause of action has been abolished in Washington; and (8) Spokane's damages are too speculative. ECF No. 29. As discussed below, Monsanto has not demonstrated that any of Spokane's claims are

time barred because the continuing tort doctrine may apply to some or all claims; Spokane has standing to assert each of its claims, except for its common-law products liability claims, for which it lacks standing because it is not a user or consumer under Washington law; and Spokane has stated claims for public nuisance, products liability under the Washington Products Liability Act, negligence, and equitable indemnity sufficient to survive a Rule 12(b)(6) motion to dismiss. Additionally, the damages issues raised by Monsanto cannot be determined as a matter of law at this stage. Accordingly, Monsanto's motion to dismiss is granted with respect to Spokane's common-law products liability claims and denied with respect to all other claims.[1]

## II.    Background

PCBs are synthetic chemical compounds used in many industrial and commercial applications. ECF No. 1 at 2–3. PCBs easily migrate out of their original source material and contaminate nearby surfaces, air, water, soil or other materials. ECF No. 1 at 12. PCBs migrate into natural water bodies through runoff during storm and rain events. ECF No. 1 at 2–3. PCB exposure is associated with cancer and a number of other serious health conditions in humans. ECF No. 1 at 2,

---

[1] Spokane also moved to strike a Monsanto's notice of supplemental authority, ECF No. 62. The Court denied this motion in an oral ruling on the record on Tuesday, September 13, 2016. ECF No. 72 at 4.

ORDER - 3

4, 13–15. PCBs are also harmful to fish, birds, and other animals. ECF No. 1 at 2, 14–15.

The most common trade name for PCBs in the United States was Monsanto's "Aroclor." ECF No. 1 at 11. Monsanto produced PCBs in the United States from 1935 until 1979, when the manufacture and most uses of PCBs was banned by the Toxic Substances Control Act. ECF No. 1 at 2. Spokane alleges that Monsanto was aware for decades that PCBs were toxic and that they were contaminating natural resources and living organisms. ECF No. 1 at 2, 16–25. Alarmingly, Monsanto was already aware in 1937 that "prolonged exposure to Aroclor vapors evolved at high temperatures or by repeated oral ingestion will lead to systemic toxic effects." ECF No. 1 at 16. Numerous internal communications and reports in the 1950s and 60s similarly document Monsanto's awareness of the toxic effects of PCBs. ECF No. 1 at 16–17. Additionally, publications and internal communications in the 1960s and 1970s demonstrate Monsanto's awareness that PCBs were widely contaminating the environment around the world. ECF No. 1 at 18–22. Spokane further alleges that Monsanto actively concealed the toxic nature of PCBs from the government and the public. ECF No. 1 at 25–27.

The Spokane River is contaminated with PCBs and listed on the Washington State Water Quality Assessment list of impaired water bodies under section 303(d) of the Clean Water Act (CWA). ECF No. 1 at 4. The Spokane River contains

elevated levels of PCBs in surface water, sediments, and fish tissues, and the Washington Department of Ecology has issued a Health Advisory for Spokane River Fish Consumption, including designating some sections of the river as "catch and release only." ECF No. 1 at 4.

The City of Spokane lawfully discharges waste and stormwater into the Spokane River pursuant to two National Pollutant Discharge Elimination System (NPDES) permits. ECF No. 1 at 3. These permits require the City to establish performance-based PCB limits and to participate in the Spokane River Regional Toxics Task Force (the Task Force), which was established in 2011 to characterize the sources of toxic chemicals in the Spokane River and identify and implement appropriate actions needed to make progress towards meeting applicable water quality standards. ECF No. 1 at 5.

Spokane filed this action in July 2015, alleging (1) that Monsanto's conduct constituted a public nuisance that is harmful to health and obstructs the free use of the Spokane River causing harm to the City; (2) two products liability causes of action, (a) design defect—that Monsanto's PCBs were not reasonably safe at the time they left Monsanto's control, and (b) failure to warn; (3) negligence; and (4) equitable indemnity for Spokane's costs to remove PCBs from wastewater and stormwater. ECF No. 1 at 27–34. Monsanto moves to dismiss all of Spokane's claims. ECF No. 29.

### III.    MOTION TO DISMISS STANDARD

A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### IV.    DISCUSSION

**A.    Spokane's Claims are not time barred.**

Monsanto argues that each of Spokane's claims is time barred: Spokane's nuisance claim is barred under the two-year "catch all" statute, RCW § 4.16.130; Spokane's product liability and negligence claims are barred by the three-year statute of limitations, RCW § 4.16.080(2); and Spokane's contribution claim is barred by the applicable one-year statute of limitations, RCW 4.22.050(3). ECF No. 29 at 16–18. Monsanto argues that these claims began to accrue once Spokane suffered injury, which, at the latest occurred when the City's permit for its

ORDER - 6

wastewater plant and combined sewer overflows were issued in June 2011. ECF No. 29 at 17–18.

A claim may be dismissed as barred by the applicable statute of limitations only when it is apparent on the face of the complaint that the statute of limitations has run. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (2009). In other words, "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc., v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Generally, the statute of limitations in a tort action begins to run at the time the injury-producing act or omission occurs. *See Matter of Estates of Hibbard*, 826 P.2d 690, 694 (Wash. 1992). However, there are number of exceptions to this rule, including the doctrine of continuing tort. *Pac. Sound Res. v. Burlington N. Santa Fe Ry. Corp.*, 125 P.3d 981, 989 (Wash. 2005). "When a tort is continuing, the 'statute of limitations runs from the date each successive *cause of action accrues as manifested by actual and substantial damages*.' A tort is continuing if the intrusive condition is reasonably abatable and not permanent. The tort continues until the intrusive substance is removed." *Id.*; *see also Fradkin v. Northshore Util. Dist.*, 977 P.2d 1265, 1267 (Wash. App. 1999) ("If a condition causing damage to land is

ORDER - 7

1  reasonably abatable, the statute of limitations does not bar an action for continuing

2  trespass.").

3       Monsanto argues that the continuing-tort doctrine does not permit this action

4  because Spokane was aware of its damages since at least 2011, at which point the

5  claims began to accrue. ECF No. 38 at 4. But knowledge of an intrusive condition

6  does not automatically begin the running of the statute of limitations. *Fradkin*, 977

7  P.2d at 1269. As Washington courts have explained, "it would be inequitable . . . to

8  estop a person from obtaining damages 'for injuries which might eventually become

9  burdensome, because he was not litigious enough to plunge into a lawsuit over a

10  trifling matter." *Id.* (quoting *Doran v. City of Seattle*, 64 P. 230, 223 (1901)). It may

11  be that Spokane's knowledge of the extent of its damages and of causation were

12  such that its claims accrued and the statute of limitations began to run at some time

13  before it filed the complaint in this case, but if that is the case, it is not clear on the

14  face of the complaint, and the Court certainly cannot say that it appears beyond

15  doubt that the statute of limitations has run.

16       Defendants also suggested at oral argument that the continuing-tort doctrine

17  is inapplicable because the PCB contamination at issue is not reasonably abatable,

18  focusing on the very high costs of such abatement. ECF No. 72 at 15–17.

19  Defendants are correct that "reasonably abatable" means that "the condition can be

20  removed without unreasonable hardship and expense." *Skokomish Indian Tribe v.*

*United States*, 410 F.3d 506, 518 (9th Cir. 2005) (en banc) (quoting *Fradkin*, 977 P.2d at 1270 n. 25). But the Ninth Circuit's decision in *Skokomish Indian Tribe* does not, as Defendants suggest, stand for the proposition that a condition is not reasonably abatable simply because abatement will be very expensive. The court in that case held that river-bed aggradation resulting from diversions to a hydroelectric project causing periodic flooding and other damages to Skokomish property was not "reasonably abatable" because the total remediation costs of $3,770,500 far exceeded the $2,170,040 value of the damaged property. *Id.* Accordingly, it is clear from *Skokomish* that whether abatement is reasonable requires consideration of the extent of the injury resulting from the condition and, if applicable, the value of the damaged property. It is not the case that a defendant may avoid liability simply because abatement would be very expensive or impose a financial hardship on the defendant. Further, as the dissent in *Skokomish* points out, "abatability is not necessarily a return to the status quo ante or a complete elimination of the problem." *Id.* at 521 (Graber, J., concurring in part and dissenting in part). Accordingly, even if *complete* elimination of PCB discharge into the Spokane River may not be possible or reasonable, Monsanto may still be liable under a continuing tort theory if an adequate level of abatement is reasonable. Whether PCB contamination in the Spokane River is reasonably abatable presents a factual question that cannot be resolved at this stage of the litigation.

ORDER - 9

1

**B.  Spokane's common-law claims are not preempted by the Washington Products Liability Act.**

2

Monsanto argues that all of Spokane's common-law causes of action are

3

preempted by the Washington Product Liability Act (WPLA). ECF No. 29 at 7.

4

The WPLA defines a product liability claim as follows:

5

6
7
8
9
10
11

"Product liability claim" includes any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any claim or action previously based on: Strict liability in tort; negligence; breach of express or implied warranty; breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act, chapter 19.86 RCW.

12

Wash. Rev. Code § 7.72.010 (4).

13

The Act creates a "single cause of action for product-related harms that

14

supplants previously existing common law remedies." *Wash. Water Power Co. v.*

15

*Graybar Elec. Co.*, 774 P.2d 1199, 1207 (Wash. 1989). However, the act does not

16

preempt common-law claims where substantially all of the injury-producing events

17

occurred prior to the WLPA's effective date, June 26, 1981, even if the injury occurs

18

later. *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012).

19

Spokane argues that the WLPA does not preempt its common-law claims

20

because it has alleged that injury-producing events occurred before the WPLA's

effective date. ECF No. 37 at 5. *Krivanek v. Fibreboard Corp.*, 865 P.2d 527, 530 (Wash. Ct. App. 1993). This is correct. The injury-producing events here were the manufacture and distribution of products containing PCBs. Most, if not all of those events occurred before the WLPA's effective date. Accordingly, Spokane's common-law claims are not preempted by the WLPA.

**C.    Spokane has standing to bring a products liability claim under the Washington Products Liability Act, but lacks standing to bring a common-law strict-liability claim.**

Monsanto argues that Spokane lacks standing to bring a products liability claim because it is not a consumer or user of the products at issue. ECF No. 29 at 12–13. Spokane argues that strict products liability extends to anyone whose exposure to the product is reasonably foreseeable. ECF No. 37 at 9.

"Where . . . jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005); *see, e.g., Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (dismissing state-law claims for lack of standing under California law). The parties do not appear to dispute that Spokane has standing to bring its claims under Article III of the Constitution, and clearly Article III standing is present: Spokane has suffered an injury in fact that is fairly traceable to Monsanto's conduct and that would likely be

redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Rather, it appears that Monsanto is arguing that Spokane lacks standing to bring a products liability claim under Washington products liability law.

The Washington Supreme court has established a two-part test for standing, under which a court must consider: (1) "whether the interest asserted is arguably within the zone of interests to be protected by the statute or constitutional guaranty in question" and (2) "whether the party seeking standing has suffered from an injury in fact, economic or otherwise." *Branson v. Port of Seattle*, 101 P.3d 67, 74 (Wash. 2004) (citations omitted). "When evaluating whether a party's interests are within the zone of interests a statute protects, [the court] look[s] to the statute's general purpose." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487, 491 (Wash. App. 2012) (citing *Branson v. Port of Seattle*, 101 P.3d at 74).

The complaint does not specify whether Spokane's product liability claims are common-law claims or claims brought under Washington's Product Liability Act (WPLA). In its response brief, Spokane asserts that the complaint states facts supporting either a WPLA or common-law claim and that the WPLA applies to claims where the injury producing event occurred after the Act's effective date, July 26, 1981. ECF No. 37 at 4–5.

Monsanto has not identified, and the Court has not found, any authority limiting WPLA claims to consumers or users of the products at issue. And, indeed

the statute expressly defines a "claimant" to include "any person or entity that suffers harm" and provides that "[a] claim may be asserted . . . even though the claimant did not buy the product from, or enter into any contractual relationship with, the product seller." Wash. Rev. Code § 7.72.010(5). To the extent Spokane's product liability claims arise from conduct occurring after July 26, 1981, Spokane has standing to assert those claims under the WPLA.

To the extent Spokane's products liability claims are common-law claims, the question of standing is more difficult. In early Washington products liability cases, Washington courts appeared to directly adopt the Restatement of Torts' position on liability for defective, unreasonably dangerous products, under which a seller is strictly liable for harm caused by the product "to the ultimate user or consumer, or his property." *Ulmer v. Ford Motor Co.*, 452 P.2d 729, 733–34 (Wash. 1969) (citing Restatement (Second) of Torts § 402A (Am. Law Inst. 1965)). This definition suggests that only a user or consumer (or someone with an interest in the damaged property of a user or consumer) has standing to bring a claim. That conclusion is bolstered by the comments to the Restatement, which note that courts generally have not allowed recovery to "[c]asual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile." Restatement (Second) of Torts, § 402A, Cmt. O. The comment explains:

There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers.

However, more recent Washington cases omit from the elements of a products liability claim any direct requirement that a plaintiff be a user or consumer of the product in question: "a plaintiff must show (1) there was a defect in the product which existed when the product left the hands of the manufacturer; (2) the defect was not known to the user; (3) the defect rendered the product unreasonably dangerous; and (4) the defect was the proximate cause of the injury." *Haugen v. Minn. Mining and Mfg. Co.*, 550 P.2d 71, 74 (1976)); *see also Novak v. Piggly Wiggly Puget Sound Co., Inc.*, 591 P.2d 791, 794 (Wash. Ct. App. 1979); *Bich v. Gen. Elec. Co.*, 614 P.2d 1323, 1326 (Wash. Ct. App. 1980).

In *Novak v. Piggly Wiggly*, the Washington Court of Appeals implicitly acknowledged that a plaintiff who was not a user or consumer could bring a products liability claim based on a defective product. *Novak*, 591 P.2d at 794. In that case, the court reviewed a summary judgment decision dismissing the claim of a nine-year-old boy who was struck and blinded by a ricocheting BB fired by another boy. *Id.* at 793. The court did not directly analyze whether the plaintiff had standing to bring a claim; instead the court affirmed the trial court's decisions that

the gun was not defective and that the manufacturer provided adequate warnings. *Id.* at 794–95. Importantly, however, in analyzing whether the gun was defective, the court noted that the manufacturer reasonably could have anticipated injury to a "bystander . . . by means of ricochet," thereby acknowledging that a bystander under those circumstances may bring a products liability claim. *Id.* at 794.

In *Bich v. General Electric*, the Washington Court of Appeals concluded that an electrician who was injured while replacing fuses in a transformer could bring a strict-liability claim against the manufacturer of the transformer. *Bich*, 614 P.2d at 1325–26. Like other contemporaneous cases, *Bich*'s statement of the elements of a strict-products liability action does not, on its face, exclude claims by a person other than a user or consumer of a product. *Id.* at 1326. However, unlike in *Novak*, the court considered an argument by the manufacturer that the plaintiff could not bring a strict-liability action because he was not a user or consumer. *Id.* The court found that the argument had no merit, not because liability could extend to injuries to non-users or consumers, but because the definition of "user" includes "all whom a manufacturer should reasonably expect to use its product, which includes employees and repairmen." *Id.*

In *Lunsford v. Saberhagen*, the court directly considered whether strict products liability was limited to claims by users or consumers. 106 P.3d 808 (2005). Specifically, the court considered whether the son of a man who worked with

asbestos insulation and who was exposed to asbestos dust on his father's clothing could sue the asbestos manufacturer under a strict products liability theory. *Lunsford*, 106 P.3d at 809–10. The court noted that the Washington Court of Appeals in *Novak* and the Washington Supreme Court in *Lockwood v. A C & S, Inc.*, 744 P.2d 605 (1987), assumed that certain bystanders may bring suit under a theory of strict liability. *Lunsford*, 106 P.3d at 811 n. 3. After further considering the comments to the Restatement and authority from other jurisdictions the court concluded that strict liability would apply to "a household family member of a user of an asbestos containing product, if it is reasonably foreseeable that household members would be exposed in this manner." *Id.* at 812.

*Bich* implies that, consistent with the Restatement, a person who is not a user or consumer lacks standing to bring a strict products liability action. *Bich*, 614 P.2d at 1326. But *Novak* and *Lunsford* are contrary to that implication, and establish that Washington's common-law strict products liability cause of action encompasses at least a slightly broader class of potential plaintiffs, including certain bystanders. *Lunsford*, 106 P.3d at 810–11; *Novak*, 591 P.2d at 794. This Court need not decide the precise contours of the line between a Plaintiff who may bring a products-liability claim as a non-user or consumer and one who may not because, wherever that line is located, Spokane is well beyond it. Spokane was not a bystander in close proximity to and directly injured by another's use of a defective product like the

plaintiffs in *Novak* or *Lunsford*. Spokane is alleging injury based on the accumulated contamination resulting from leaching or migration of PCBs into its wastewater systems as the result of the use and disposal of an allegedly defective product over many years by multitudes of consumers. Spokane is not the type of plaintiff the common-law product defect cause of action is intended to encompass, and it therefore lacks standing to bring a common-law strict-liability claim.

**D.     Spokane has standing to assert a public nuisance claim.**

As discussed in Section IV.C., a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action. *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 173. Standing to bring a claim under Washington law requires (1) that the plaintiff's asserted interests be within the zone of interest to be protected by the statute or constitutional guaranty in question and (2) that the plaintiff has suffered an injury in fact, *Branson*, 101 P.3d at 74. As with Spokane's product liability claims, there is no question that Spokane has Article III standing and that Spokane has suffered injury. Accordingly, the question is whether Spokane's claims fall within the zone of interests to be protected by Washington nuisance law.

Washington Revised Code Section 7.48.120 defines nuisance as follows:

Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render

dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

"A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." Wash. Rev. Code § 7.48.130. "The remedies against a public nuisance are: Indictment or information, a civil action, or abatement." *Id.* at § 7.48.200. A public nuisance may be abated by an authorized public body, *id.* at § 7.48.220, but Spokane is not proceeding in that capacity; instead, this suit is a private civil action for damages. Generally, a nuisance action "may be brought by any person whose property is, or whose patrons or employees are, injuriously affected or whose personal enjoyment is lessened by the nuisance." *Id.* at § 7.48.020. However, "[a] private person may maintain a civil action for a public nuisance, if it is specially injurious to himself or herself but not otherwise." *Id.* § 7.48.210.

Monsanto argues that Spokane lacks the necessary ownership or property interest in the Spokane River to assert a public nuisance claim, citing Section 7.48.020's requirement that a nuisance action may be brought only by a person whose *property* is injuriously affected. ECF No. 29 at 12. But Spokane's alleged special injury does not come from the ultimate contamination in the river, it arises from Spokane's position as the operator of municipal wastewater and stormwater systems that facilitates the migration of PCBs into the river. Spokane alleges that

1    PCBs have contaminated its wastewater and stormwater systems, which serve as a

2    conduit to discharge PCBs into the River, and that it will incur substantial costs to

3    reduce its discharge of PCBs into the River. ECF No. 1 at 28–29. Spokane

4    unquestionably has a sufficient property interests in its wastewater and stormwater

5    systems to bring a nuisance action based on injurious effects to those systems.[2]

6    At oral argument, Monsanto suggested that Spokane cannot maintain its

7    action based on injury to its stormwater and wastewater system because the

8    alleged nuisance is contamination in the Spokane River. ECF No. 72 at 21–24.

9    This argument misunderstands the nature of nuisance law and misrepresents

10   Spokane's allegations. A nuisance is an act or omission that causes a specific type

11   of injury, not the fact of the injury itself. *See* Wash. Rev. Code § 7.48.120

12   ("Nuisance consists in unlawfully doing an act, or omitting to perform a

13   duty . . . ."); *Miotke v. City of Spokane*, 678 P.2d 803, 817–18 (Wash. 1984)

14   (noting that nuisance must be a "wrongful act"), *overruled on other grounds by*

15   *Blue Sky Advocates v. State*, 727 P.2d 644, 648–49 (Wash. 1986). Here, Spokane

16   alleges that Monsanto's production, marketing, and distribution of PCBs resulted

17

18   [2] It is not clear whether Section 7.48.210's special injury requirement for a civil
     action based on public nuisance incorporates Section 7.48.020's requirement for
19   injury to property, patrons, or employees or whether Section 7.48.020 applies
     independently to require that a public-nuisance plaintiff allege injury to property,
20   patrons, or employees. There appear to be no cases on point. Because Spokane has
     alleged injury to its property, it is unnecessary to address these questions.

ORDER - 19

in environmental PCB contamination in and around the City of Spokane, ultimately leading to those PCBs migrating into the Spokane River and causing injury to health and safety and obstructing the use of the River. ECF No. 1 at 2–5, 27–29. The public harm at issue here comes from PCBs reaching the River, but the nuisance itself is Monsanto's production, marketing, and distribution of the PCBs. Spokane's alleged injury is the cost it will incur to reduce the PCBs discharged from its stormwater and wastewater systems into the River. The complaint adequately alleges a causal connection between the public nuisance and this injury.

Spokane has adequately alleged special injury and therefore has standing to bring a public nuisance claim.

**E.     Spokane has adequately pleaded a causal connection between Monsanto's actions and present PCB contamination.**

Proximate cause is a cause that "in a direct sequence unbroken by any new independent cause, produces the injury complained of, and without which such injury would not have happened." *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 706–07 (9th Cir. 2001) (citations omitted). Under Washington law, proximate cause requires both that the defendant's act not be "too remote and insubstantial to impose liability" and that there is no superseding cause sufficient to break the chain of causation. *Michaels v. CH2M Hill, Inc.*, 257 P.3d 532, 544–45 (Wash. 2011); *Smith v. Acme Paving Co.*, 558 P.2d 811, 816

(Wash. App. 1976). "Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant; only intervening acts which are not reasonably foreseeable are deemed superseding causes." *Micro Enhancement Intern., Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1216 (Wash. Ct. App. 2002) (quoting *Anderson v. Dreis & Krump Mfg. Corp.*, 739 P.2d 1177 (Wash. Ct. App. 1987)). "Whether an intervening act breaks the chain of causation is a question for the trier of fact." *Michaels v. CH2M Hill, Inc.*, 257 P.3d at 545.

Monsanto argues that Spokane's allegation that "Monsanto manufactured, distributed, marketed and promoted PCBs in a manner that created or participated in creating a public nuisance" is insufficient to allege proximate cause, noting that the complaint is silent concerning the "thousands of intervening actors (*i.e.*, the City's customers) who actually disposed of PCBs and PCB-containing materials in a manner to reach the River, and information concerning how such discharges occur. ECF No. 29 at 9. Monsanto argues that it has never been identified as a discharger of PCBs in or around the Spokane area. ECF No. 29 at 5.

Under the facts alleged in Spokane's complaint, the causal chain between Monsanto's production and distribution of PCBs and the injury at issue is not broken by the intervening action of Spokane or a third party. First, Spokane correctly points out that its water system "is a *passive* conduit for the

contamination—i.e., it merely directs water runoff into the stormwater system, which then discharges into the river." ECF No. 37 at 10. Second, PCB contamination of water bodies, including the Spokane River, was at least arguably foreseeable regardless of the intervening actions by consumers using PCB containing products. Spokane alleges that PCBs in the forms manufactured by Monsanto leach or move from their intended applications and migrate into waste streams. ECF No. 1–3, 12. In other words, Spokane does not allege that disposal or improper use of PCB-containing products resulted in contamination, it alleges that the chemical migrated into Spokane's wastewater system and ultimately the Spokane River even when, and regardless of whether, products containing PCBs were used or disposed of as intended. It is easily inferred from the complaint's allegations that PCBs would foreseeably contaminate waterbodies in which PCB containing products were widely used. Indeed, the complaint alleges that Monsanto knew for a fact that widespread use of the PCBs it manufactured was contaminating the environment.

This case is distinguishable from prior cases where courts have found proximate cause lacking in public nuisance claims against Monsanto for PCB contamination. In *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611 (7th Cir. 1989), Bloomington sued Monsanto under a number of theories, including nuisance, alleging that PCBs used by Westinghouse in the manufacture

of capacitors had contaminated that city's landfill and sewage treatment plant. *Id.*
at 613–14. The court held that Monsanto was not be liable because "Westinghouse
was in control of the product purchased and was solely responsible for the
nuisance it created by not safely disposing of the product." *Id.* at 614. In other
words, Westinghouse's failure to properly dispose of the materials was an
intervening cause. In *Town of Westport v. Monsanto*, 2015 WL 1321466, (D.
Mass., Mar. 24, 2015), Westport sued Monsanto under nuisance and product
liability theories for PCB contamination in city schools, among other claims. *Id.* at
*1–2. Citing *City of Bloomington*, the court held that "because [Monsanto] did not
have the power or authority to maintain or abate these PCB-containing building
materials, they cannot be liable for a public nuisance." *Id.* at * 4. *Westport* and
*City of Bloomington* involved contamination from specifically identified PCB-
containing materials. Here, by contrast the issue is widespread contamination from
the inevitable migration of PCBs into a waterbody.

Accepting the truth of the facts alleged in the complaint, Monsanto's
actions were not too remote or insubstantial to impose liability and no
unforeseeable intervening cause broke the chain of causation between Monsanto's
production, marketing, and distribution of PCBs and the existing and ongoing
contamination of the Spokane River.

**F.      Spokane has stated a claim for negligence.**

Monsanto argues that it is not apparent from the complaint what duty Monsanto owed to the City. ECF No. 29 at 14. Monsanto further argues that it did not owe any duty to Spokane because manufacturers have a duty only to the consumer for the foreseeable harm from the use of a product. ECF No. 29 at 14 (citing *Novak*, 591 P.2d  at 795–96).

There is no legitimate question of duty here. A manufacturer's duty of care extends to the foreseeable range of danger created by its product. *See Koker v. Armstrong Cork, Inc.*, 804 P.2d 659, 667–68 (Wash. Ct. App. 1991). The complaint here adequately alleges not only that PCB contamination and the damaging effects of that contamination was foreseeable, but that Monsanto in fact knew that PCBs were toxic and contaminating the environment. The real question here is proximate cause. As discussed above, Spokane has adequately pleaded proximate causation.

**G.      Equitable indemnity has not been abolished as a cause of action.**

Monsanto argues that Spokane's claim for equitable indemnity fails as a matter of law because the claim has been abolished. ECF No. 29 at 15–16. "The common law right of indemnity between active and passive tortfeasors is abolished." RCW § 4.22.040(3). However, the Washington Court of Appeals has expressly held that, following the Tort Reform Act, an indemnity right remains

ORDER - 24

"where a legal duty exists between non-joint tortfeasors." ECF No. 37 at 14 (citing *Sabey v. Howard Johnson & Co.*, 5 P.3d 730, 738–39 (2000)). Spokane alleges that it is legally obligated to remove PCBs from wastewater and stormwater before discharging into the Spokane River and that Monsanto is responsible for contaminating the wastewater and stormwater. ECF No. 1 at 34. Together with the detailed factual allegations of the complaint, Spokane has adequately stated a claim for equitable indemnity.

**H.   Damages**

Monsanto argues that Spokane's damages claim for clean-up costs associated with compliance with its Clean Water Act permit are too speculative because a Total Maximum Daily Load has not yet been set for PCB's in the Spokane River. ECF No. 29 at 18. Monsanto also argues that Spokane's request for attorney's fees should be denied under Washington's general rule against awarding attorney's fees in the absence of a contract, statute, or recognized ground of equity. ECF No. 29 at 20. The Court is not in a position at this stage of the litigation to determine the permissible extent of Spokane's possible damages or whether a basis to award attorney's fees may arise in this case.

## V.   CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

ORDER - 25

1.    Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, **ECF No. 29**, is **GRANTED IN PART** and **DENIED IN PART** as follows:

    *A.*    Defendants' motion to dismiss Plaintiff's common-law products-liability claims is **GRANTED**.

    *B.*    Defendants' motion to dismiss Plaintiff's public nuisance, Washington Product Liability Act, negligence, and equitable indemnity claims is **DENIED**.

2.    Plaintiff's Motion to Strike Notice of Supplemental Authority, **ECF No. 62**, is **DENIED**.

    **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

    **DATED** this 26th day of October 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 26