BRYCE J. WILCOX, WSBA #21728
GEANA M. VAN DESSEL, WSBA #35969
LEE & HAYES, PLLC
601 W. Riverside Avenue, Suite 1400
Spokane, WA  99201
Phone: (509) 324-9256
Emails:  bryce@leehayes.com
           geanav@leehayes.com

BRENT J. GILHOUSEN, WSBA #5153
P.O. Box 1345
Anacortes, WA  98221-6345
Phone: (314) 302-9300
Email:   brent.gilhousen@earthlink.net

ROBERT M. HOWARD, CSBA #145870
*(pending Pro Hac Vice)*
KELLY E. RICHARDSON, CSBA #210511
*(pending Pro Hac Vice)*
ANDREA M. HOGAN, CSBA #238209
*(pending Pro Hac Vice)*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, California  92130
Phone:  (858) 523-5400
Emails: robert.howard@lw.com
         kelly.richardson@lw.com
         andrea.hogan@lw.com

*Attorneys for Defendants Monsanto*
*Company, Solutia Inc., and Pharmacia LLC*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CITY OF SPOKANE, a municipal corporation, located in the County of Spokane, State of Washington, | CASE NO. 15-cv-00201-SMJ |
| Plaintiff, | **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS** |
| v. | |
| MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA CORPORATION, and DOES 1 through 100, | **JURY TRIAL DEMANDED** |
| Defendants. | |

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## **GENERAL DENIAL**

Defendants Monsanto Company, Solutia, Inc. and Pharmacia LLC ("Defendants"[1]), by and through their undersigned counsel, submit the following Answer to the City of Spokane's ("Plaintiff" or "City") Complaint. Except as expressly admitted herein, Defendants deny each and every allegation contained in Plaintiff's Complaint and deny that Plaintiff is entitled to any relief requested.

## I.    INTRODUCTION

1.    Defendants deny the allegations in paragraph 1.

2.    Defendants deny the allegations in paragraph 2.

3.    Defendants deny the inaccurate characterization by Plaintiff of the Toxic Substances Control Act ("TSCA"), the terms of which speak for themselves. Defendants deny the allegations regarding Old Monsanto inasmuch as Old Monsanto began a program of voluntarily terminating sales of PCBs for uses other than in electrical equipment in the early 1970s, approximately nine years before regulations promulgated pursuant to EPA's rulemaking authority under TSCA became effective in 1979. Defendants also deny the allegations regarding Old Monsanto inasmuch as Old Monsanto ceased all manufacturing of PCBs in 1977,

---

[1] Old Monsanto is the former Monsanto Company (also referred to as Pharmacia) that manufactured and sold PCBs from 1935 to 1977. The PCB business was "spun-off" to Solutia in 1997. The current Monsanto Company (sometimes referred to as "New Monsanto") first came into existence in 2000. Neither Solutia nor the current Monsanto Company ever manufactured or sold PCBs. See Defendants' answers to paragraphs 25 – 32 below concerning the corporate history of the three entities named as Defendants.

two years before such regulations became effective.  Defendants admit that "Aroclor" was a trademark for certain PCB and non-PCB compounds, but deny the remaining allegations in paragraph 3.

4.    Defendants lack sufficient knowledge to admit or deny the allegations in the first and fourth sentences of paragraph 4, and deny on that basis.  Defendants admit that PCBs were used by third-parties in certain industrial and commercial applications, but deny the remaining allegations of paragraph 4.

5.    The allegations in paragraph 5 are legal conclusions which do not require a response.  To the extent a response is required, Defendants deny the allegations in paragraph 5.

6.    Defendants admit the allegations in paragraph 6.

7.    Defendants admit that the Spokane River is currently listed on the Washington State Water Quality Assessment list of impaired water bodies due to the alleged presence of PCBs and other compounds of concern and further aver in their counterclaims below that Plaintiff's conduct is a direct cause of the presence of any PCBs and other compounds of concern.  The remaining allegations in paragraph 7 are legal conclusions which do not require a response.  To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the remainder of the allegations in paragraph 7, and deny on that basis.

8.    Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 8, and deny on that basis.

9.    Defendants admit that the Washington State Department of Health issued an updated "Spokane River Fish Advisory" in 2009.  The Washington State Department of Health's "Spokane River Fish Advisory," speaks for itself and is the

1   best evidence of its contents.  Defendants deny all remaining allegations in

2   paragraph 9.

3        10.    Defendants admit that the EPA has published reports and issued

4   statements regarding PCBs, including discussions about possible carcinogenicity in

5   humans; but Defendants deny that PCBs are carcinogenic or that EPA or any other

6   regulatory agency or entity or person has established with good and reliable

7   science that PCBs are carcinogenic.  Further, Defendants cannot admit or deny the

8   allegations based on reference to unspecified studies not attached to the Complaint,

9   and accordingly deny the same, other than to state that to the extent the documents

10  exist, the contents will speak for themselves.  Defendants deny all remaining

11  allegation in paragraph 10.

12       11.    The allegations in paragraph 11 are legal conclusions which do not

13  require a response.  To the extent a response is required, Defendants deny the

14  allegations in paragraph 11.

15       12.    Defendants admit the existence of the Spokane River Regional Toxics

16  Task Force ("Task Force") and that the Task Force consists of public and private

17  entities in Washington and Idaho.  Defendants deny that the "toxic" nature of a

18  chemical, including PCBs, has any meaning without context as to the nature and

19  extent of exposure and dose.  Defendants lack sufficient knowledge to admit or

20  deny the remaining allegations in paragraph 12, and deny on that basis.

21       13.    The allegations in paragraph 13 attempt to characterize the

22  requirements of the City of Spokane's NPDES Permit, which speaks for itself and

23  is the best evidence of its contents.  To the extent a response is required,

24  Defendants admit that the City of Spokane's NPDES Permit states that "[t]he

effluent monitoring results shall be compiled and analyzed by Ecology for the purpose of establishing a performance based PCB effluent limitation for the following permit cycle" and "[t]he permittee must participate in a cooperative effort to create a Regional Toxics Task Force and participate in the functions of the Task Force." Defendants deny all remaining allegations in paragraph 13.

14.    The allegations in paragraph 14 attempt to characterize subjectively and/or paraphrase the conclusions reached in a decision of a federal district court, which speaks for itself and is the best evidence of its contents. To the extent a response is required, Defendants deny the allegations in paragraph 14.

15.    The allegations in paragraph 15 attempt to characterize the purposes of a TMDL that does not yet even exist. Defendants lack sufficient information about such future, speculative action to admit or deny these allegations, and deny on this basis.

16.    The allegations in paragraph 16 are legal conclusions which do not require a response. To the extent a response is required, Defendants deny the allegations in paragraph 16.

17.    The allegations in paragraph 17 attempt to characterize a statement of the Washington State Legislature, which speaks for itself and is the best evidence of its contents. To the extent a response is required, Defendants admit that RCW 90.48.010 includes the language quoted in paragraph 17, and deny all remaining allegations in paragraph 17.

18.    The allegations in paragraph 18 attempt to characterize a statement of the Washington State Legislature, which speaks for itself and is the best evidence of its contents. To the extent a response is required, Defendants admit that RCW

90.48.010 includes the language quoted in paragraph 18, and deny all remaining allegations in paragraph 18.

**II.    PARTIES**

19.    Defendants admit the allegations in paragraph 19.

20.    Defendants admit that Plaintiff has filed a lawsuit seeking monetary damages and other forms of relief.  Plaintiff's Complaint speaks for itself, and no further response is required.  To the extent a response is required, Defendants deny all remaining allegations in paragraph 20.

21.    Defendants lack sufficient knowledge to admit or deny the allegations in the first sentence of paragraph 21, and deny on that basis.  Defendants admit the allegations in the second sentence of paragraph 21.

22.    The allegations in paragraph 22 attempt to characterize the requirements of the City of Spokane's NPDES Permit, which speaks for itself and is the best evidence of its contents.  To the extent a response is required, Defendants admit that the City of Spokane is a permittee under a NPDES permit for the City of Spokane Riverside Park Water Reclamation Facility and Combined Sewer Overflows.  Defendants deny all remaining allegations in paragraph 22.

23.    Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 23, and deny on that basis.

24.    Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 24, and deny on that basis.

25.    Defendants admit that the current Monsanto Company is a Delaware corporation with its principal place of business in St. Louis County, Missouri.

26.     Defendants admit that Solutia Inc. is a Delaware corporation with its principal place of business in St. Louis County, Missouri.

27.     Defendants admit that Pharmacia LLC is a citizen of the states of New York and Delaware.  Defendants admit that Pharmacia is an indirect, wholly owned subsidiary of Pfizer, but states that Pfizer and Pharmacia are and have remained separate and distinct entities.  Defendants deny all remaining allegations of paragraph 27.

28.     Defendants admit that the original Monsanto Company, "Old Monsanto," (n/k/a Pharmacia) once operated agricultural, chemical, and pharmaceutical businesses, that the chemicals business was spun-off to Solutia in 1997, that since 2000 the present/current Monsanto Company has operated the agricultural business and that Pharmacia retained the pharmaceutical business. Defendants admit that Old Monsanto commenced manufacturing PCBs in 1935; that in the early 1970s Old Monsanto began a program of voluntarily terminating sales of PCBs other than in electrical equipment applications; and that in 1977 Old Monsanto ceased all manufacturing of PCBs.  Defendants deny all remaining allegations of paragraph 28.

29.     Defendants incorporate their response to paragraph 28 above and deny all remaining allegations of paragraph 29.

30.     Defendants admit that certain assets and liabilities relating to Pharmacia's commercial chemical business were transferred to Solutia in 1997 and that the rights and responsibilities of the parties related to that transfer are detailed in various complex corporate transactional and legal documents publicly and otherwise available to Plaintiff, the terms of which speak for themselves; thus, no

1  further answer is required.  Defendants deny all remaining allegations of

2  paragraph 30.

3      31.    Defendants admit that they have entered into certain complex

4  corporate transactions and agreements, which determine their respective legal

5  and/or financial responsibilities, if any, for claims arising from Old Monsanto's

6  manufacture and sale of PCBs.  Defendants deny all remaining allegations of

7  paragraph 31.

8      32.    Defendants admit that Solutia filed a bankruptcy petition in 2003 and

9  ultimately emerged from bankruptcy in 2008.  The rights and responsibilities of the

10 parties to the transaction are detailed in various, complex corporate transactional

11 and legal documents publicly and otherwise available to Plaintiff, the terms of

12 which speak for themselves; thus no further answer is required.  Defendants deny

13 all remaining allegations of paragraph 32.

14     33.    The allegations of paragraph 33 constitute Plaintiff's characterization

15 of its own Complaint, to which no response is required.  To the extent a response is

16 deemed required, Defendants deny the allegations of paragraph 33 because

17 Plaintiff improperly conflates the three separate and distinct corporations that it

18 chose to sue and calls them the "Defendants."  Defendants deny any remaining

19 allegations of paragraph 33.

20 **III.    JURISDICTION AND VENUE**

21     34.    Defendants admit that the Court has diversity jurisdiction in this

22 matter and incorporates its responses to paragraphs 25, 26, and 27 above.

23 Defendants deny that Plaintiff's claims are justiciable to the extent that Plaintiff

24

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 8

lacks standing and/or the claims are not ripe for review.  Defendants deny all remaining allegations of paragraph 34.

35.    Defendants admit that venue is proper.  Defendants deny all remaining allegations of paragraph 35.

## IV.    FACTUAL ALLEGATIONS

### A.    PCBs are Toxic Chemicals that Cause Environmental Contamination[2] [Denied – *see*, *e.g.*, response to paragraph 12 above]

36.    Defendants admit that PCBs are a class of chlorinated organic chemical compounds, comprising the potential for 209 different chemical compounds, which are separately identified by number (*e.g.*, PCB 180, PCB 118, PCB 153, *etc.*).  Each individual PCB compound is known as a different "congener."  Defendants deny all remaining allegations of paragraph 36.

37.    Defendants admit that Old Monsanto commenced manufacturing PCBs in 1935 after acquisition of the Swann Chemical Company and that the trade name for PCBs and also for certain non-PCB products was "Aroclor."  In the early 1970s, Old Monsanto began a program of voluntarily terminating sales of PCBs for uses other than in electrical equipment applications.  Old Monsanto ceased all manufacturing of PCBs in 1977.  Defendants deny all remaining allegations of paragraph 37.

38.    Defendants admit that PCBs were sold in bulk to sophisticated entities, and that chemical companies, electrical equipment manufacturers, and

---

[2] Defendants have included Plaintiff's section headings solely for ease of reference.  Defendants do not admit the correctness of any of the headings.

other manufacturers, who were aware of the chemical and physical properties of PCBs, were among them.  Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 38, and deny on that basis.

39.    The allegations of paragraph 39 constitute Plaintiff's characterization of its own Complaint, to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations of paragraph 39.

40.    Defendants deny the allegations of paragraph 40.

41.    Defendants deny the allegations of paragraph 41.

42.    Defendants admit that, depending upon the nature of alleged exposure and dose, PCBs can, in theory, enter a human body.  Defendants deny all the remaining overbroad and vague allegations in paragraph 42.

43.    Defendants admit that EPA has published reports and/or promulgated regulations regarding PCBs, including discussions about possible carcinogenicity in humans; but deny that PCBs are carcinogenic or that EPA or any other regulatory agency or entity or person has established with good and reliable science that PCBs are carcinogenic.  Defendants deny all remaining allegations of paragraph 43.

44.    Defendants admit that EPA has promulgated regulations and/or published reports regarding PCBs, including toxicity.  Defendants deny all remaining allegations of paragraph 44.

45.    Defendants deny the allegations of paragraph 45.

46.    Defendants deny the allegations of paragraph 46.

47.    Defendants deny the allegations of paragraph 47.

48.    Defendants deny the allegations of paragraph 48.

49.     Defendants deny the allegations of paragraph 49.

50.     Defendants admit that ATSDR has published statements regarding PCBs and possible human health effects.  Defendants deny all remaining allegations of paragraph 50.

51.     Defendants deny the allegations of paragraph 51.

**B.      Monsanto Has Long Known of PCBs' Toxicity [Denied –** *see*, *e.g.* **response to paragraph 12 above and to paragraph 52 below]**

52.     Defendants deny the allegations of paragraph 52.  Defendants further deny that "toxicity" of a chemical, including PCBs, has any meaning without context as to the nature and extent of exposure and dose.

53.     The allegations in paragraph 53 purport to characterize a memorandum, which speaks for itself and is the best evidence of its contents. Defendants admit that the memorandum cited in paragraph 53 includes the language quoted in paragraph 53, but deny all remaining allegations in paragraph 53 and further state that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.  Defendants further incorporate their response to paragraph 52 above.

54.     The allegations in paragraph 54 purport to characterize a memorandum, which speaks for itself and is the best evidence of its contents. Defendants admit that the memorandum cited in paragraph 54 includes the language quoted in paragraph 54, but deny all remaining allegations in paragraph 54 and further state that Plaintiff's characterization of the document is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by

1    Plaintiff are incomplete and presented out-of-context.  Defendants further

2    incorporate their response to paragraph 52 above.

3          55.    The allegations in paragraph 55 purport to characterize a document,

4    which speaks for itself and is the best evidence of its contents.  Defendants admit

5    that the document cited in paragraph 55 includes the language quoted in paragraph

6    55, but deny all remaining allegations in paragraph 55 and further state that

7    Plaintiff's characterization of the document is inaccurate, subjective, and self-

8    serving and that the limited sentences cherry-picked by Plaintiff are incomplete

9    and presented out-of-context.  Defendants further incorporate their response to

10   paragraph 52 above.

11         56.    The allegations in paragraph 56 purport to characterize a

12   memorandum, which speaks for itself and is the best evidence of its contents.

13   Defendants admit that the memorandum cited in paragraph 56 includes the

14   language quoted in paragraph 56, but deny all remaining allegations in paragraph

15   56 and further state that Plaintiff's characterization of the document is inaccurate,

16   subjective, and self-serving and that the limited sentence cherry-picked by Plaintiff

17   is incomplete and presented out-of-context.

18         57.    The allegations in paragraph 57 purport to characterize a document,

19   which speaks for itself and is the best evidence of its contents.  Defendants admit

20   that the document cited in paragraph 57 includes the language quoted in paragraph

21   57, but deny all remaining allegations in paragraph 57 and further state that

22   Plaintiff's characterizations of the document are inaccurate, subjective, and self-

23   serving and that the limited sentences cherry-picked by Plaintiff are incomplete

24   and presented out-of-context.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 12

**C.      Monsanto Has Long Known that PCBs Were "Global Contaminants" Causing Harm to Animals and Fish [Denied]**

58.     The allegations in the first sentence of paragraph 58 are vague and too generally stated to be verified, and Defendants thus deny the same.  The remainder of the paragraph purports to characterize a document, which speaks for itself and is the best evidence of its contents.  Defendants admit that the article cited in paragraph 58 includes the language quoted in paragraph 58, but deny all remaining allegations in paragraph 58 and further state that Plaintiff's characterization of the article is inaccurate, subjective, and self-serving and that the limited sentence cherry-picked by Plaintiff is incomplete and presented out-of-context.

59.     The allegations in paragraph 59 purport to characterize an article, which speaks for itself and is the best evidence of its contents.  Defendants admit that the article cited in paragraph 59 includes the language quoted in paragraph 59, but deny all remaining allegations in paragraph 59 and further state that Plaintiff's characterization of the article is inaccurate, subjective, and self-serving and that the limited sentence cherry-picked by Plaintiff is incomplete and presented out-of-context.

60.     Defendants deny the allegations of paragraph 60.

61.     Defendants lack sufficient knowledge to admit or deny the allegations in the first sentence of paragraph 61, and deny on that basis.  The allegations in paragraph 61 purport to characterize a memorandum discussing an article, both of which speak for themselves and are and the best evidence of their contents.  Defendants admit that the memorandum cited in paragraph 61 includes the language quoted in paragraph 61, but deny all remaining allegations in paragraph

1  61 and further state that Plaintiff's characterization of the memorandum is

2  inaccurate, subjective, and self-serving and that the limited sentences cherry-

3  picked by Plaintiff are incomplete and presented out-of-context.

4      62.    Defendants lack sufficient knowledge to admit or deny the allegations

5  in the first sentence of paragraph 62, and deny on that basis.  The remainder of that

6  paragraph purports to characterize a memorandum, which speaks for itself and is

7  the best evidence of its contents.  Defendants admit that the memorandum cited in

8  paragraph 62 includes the language quoted in paragraph 62, but deny all remaining

9  allegations in paragraph 62 and further state that Plaintiff's characterization of the

10 memorandum is inaccurate, subjective, and self-serving and that the limited

11 sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

12      63.    Defendants lack sufficient knowledge to admit or deny the allegations

13 in the first sentence of paragraph 63, and deny on that basis.  The remainder of

14 paragraph 63 purports to characterize a memorandum, which speaks for itself and

15 is the best evidence of its contents.  Defendants admit that the memorandum cited

16 in paragraph 63 includes the language quoted in paragraph 63, but deny all

17 remaining allegations in paragraph 63 and further state that Plaintiff's

18 characterization of the memorandum is inaccurate, subjective, and self-serving and

19 that the limited sentences cherry-picked by Plaintiff are incomplete and presented

20 out-of-context.

21      64.    Defendants deny the allegations of the first sentence of paragraph 64.

22 The second sentence is too vague and ambiguous to be verified, and Defendants

23 thus deny the allegations of that sentence.  The remainder of paragraph 64 purports

24 to characterize an unspecified report, which speaks for itself and is the best

evidence of its contents.  Defendants admit that the document cited in paragraph 64 includes the language quoted in paragraph 64, but deny all remaining allegations in paragraph 64 and further state that Plaintiff's characterization of the document is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

65.     Defendants deny the allegations contained in the second sentence of paragraph 65.  The remainder of paragraph 65 purports to characterize a meeting minutes, which speaks for itself and is the best evidence of its contents. Defendants admit that the document cited in paragraph 65 includes the language quoted in paragraph 65 and that the document states "First Meeting" of the "Aroclor 'Ad Hoc' Committee," but deny all remaining allegations in paragraph 65 and further state that Plaintiff's characterization of the document is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

66.     Defendants deny the allegations of the first sentence of paragraph 66. The remainder of paragraph 66 purports to characterize a report, which speaks for itself and is the best evidence of its contents.  Defendants admit that the report cited in paragraph 66 includes the language quoted in paragraph 66, but deny all remaining allegations in paragraph 66 and further state that Plaintiff's characterization of the document is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

67.     Paragraph 67 purports to characterize a report, which speaks for itself and is the best evidence of its contents.  Defendants admit that the report cited in

1    paragraph 67 includes the three objectives listed in paragraph 67, but deny all

2    remaining allegations in paragraph 67 and further state that Plaintiff's

3    characterization of the report is inaccurate, subjective, and self-serving and that the

4    limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-

5    context.

6         68.    Paragraph 68 purports to characterize a memorandum, which speaks

7    for itself and is the best evidence of its contents.  Defendants admit that the

8    memorandum cited in paragraph 68 includes the language quoted in paragraph 68,

9    but deny all remaining allegations in paragraph 68 and further state that Plaintiff's

10   characterization of the memorandum is inaccurate, subjective, and self-serving and

11   that the limited sentences cherry-picked by Plaintiff are incomplete and presented

12   out-of-context.

13        69.    Defendants admit that Old Monsanto's PCB production peaked in

14   1970, that a substantial portion of such PCBs pounds were sold overseas, and that

15   the majority of the PCBs sold for domestic use were used in closed electrical

16   applications deemed necessary by the federal government to maintain the safety of

17   the nation's power grid.  Old Monsanto began a program of voluntarily terminating

18   sales of PCBs for uses other than in electrical equipment applications in the early

19   1970s.

20        70.    Defendants admit that in 1972, the Interdepartmental Task Force

21   issued a report concerning PCBs, which concluded that:  "The use of PCBs should

22   not be banned entirely.  Their continued use for transformers and capacitors in the

23   near future is considered necessary because of the significantly increased risk of

24   fire and explosion and the disruption of electrical service which would result from

1  a ban on PCB use.  Also, continued use of PCBs in transformers and capacitors

2  presents a minimal risk of environmental contamination."  Paragraph 70 purports

3  to characterize a report, which speaks for itself and is the best evidence of its

4  contents.  Defendants deny all remaining allegations in paragraph 70 and further

5  state that Plaintiff's characterization of the report is inaccurate, subjective, and

6  self-serving.

7      71.    The bulk of paragraph 71 purports to characterize a report of the U.S.

8  EPA, which speaks for itself and is the best evidence of its contents.  Defendants

9  admit that the report cited in paragraph 71 includes the language quoted in

10  paragraph 71, but deny all remaining allegations in paragraph 71 and further state

11  that Plaintiff's characterization of the document is inaccurate, subjective, and self-

12  serving and that the limited sentence cherry-picked by Plaintiff is incomplete and

13  presented out-of-context.

14      72.    Defendants deny that 1960 compared to 1976 is "at the same time."

15  Defendants admit that Old Monsanto manufactured PCBs in bulk and distributed

16  PCBs under its trademarked name "Aroclor," and further aver that Solutia and the

17  present Monsanto Company were never involved in the manufacture or sale of

18  PCBs.  Defendants admit that PCBs were sold in bulk to sophisticated entities,

19  which were aware of the chemical and physical properties of PCBs.  The

20  remainder of paragraph 72 purports to characterize a brochure, which speaks for

21  itself and is the best evidence of its contents.  Defendants admit that the brochure

22  cited in paragraph 72 includes uses of Aroclors included in paragraph 72, but deny

23  all remaining allegations in paragraph 72 and further state that Plaintiff's

24  characterization of the brochure is inaccurate, subjective, and self-serving and that

the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

73.    Paragraph 73 purports to characterize a brochure, which speaks for itself and is the best evidence of its contents.  Defendants admit that the brochure cited in paragraph 73 includes the language quoted in paragraph 73, but deny all remaining allegations in paragraph 73 and further state that Plaintiff's characterization of the brochure is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

74.    Defendants deny the allegations of paragraph 74.

75.    Defendants deny the allegations in the first sentence of paragraph 75. The remainder of paragraph 75 purports to characterize a press release, which speaks for itself and is the best evidence of its contents.  Defendants admit that the press release cited in paragraph 75 includes the language quoted in paragraph 75, but deny all remaining allegations in paragraph 75 and further state that Plaintiff's characterization of the press release is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

**D.    Monsanto Concealed the Nature of PCBs from Governmental Entities.  [Denied]**

76.    Defendants deny the allegations of paragraph 76 and of the subheading above.

77.    Paragraph 77 purports to characterize letters and reports, which speak for themselves and are the best evidence of their contents.  Defendants admit that

the letters and reports cited in paragraph 77 include the language quoted in paragraph 77, but deny all remaining allegations in paragraph 77 and further state that Plaintiff's characterizations of the documents are inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

78.    Paragraph 78 purports to characterize a memorandum, which speaks for itself and is the best evidence of its contents.  Defendants admit that the memorandum cited in paragraph 78 includes the language quoted in paragraph 78, but deny all remaining allegations in paragraph 78 and further state that Plaintiff's characterizations of the document is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

79.    Paragraph 79 purports to characterize a letter, which speaks for itself and is the best evidence of its contents.  Defendants admit that the letter cited in paragraph 79 includes the language quoted in paragraph 79, but deny all remaining allegations in paragraph 79 and further state that Plaintiff's characterizations of the document is inaccurate, subjective, and self-serving and that the limited sentences cherry-picked by Plaintiff are incomplete and presented out-of-context.

## **FIRST CAUSE OF ACTION**

### **PUBLIC NUISANCE**

80.    Defendants incorporate the answers to paragraphs 1 through 79 as though fully set forth herein.

81.    Defendants deny the allegations of paragraph 81.

82.    Defendants deny the allegations of paragraph 82.

1    83.    Defendants deny the allegations of paragraph 83.

2    84.    Defendants deny the allegations of paragraph 84.

3    85.    Defendants deny the allegations of paragraph 85.

4    86.    Defendants deny the allegations of paragraph 86.

5    87.    Defendants deny the allegations of paragraph 87.

6    88.    Defendants lack sufficient knowledge to admit or deny the allegations

7    in paragraph 88, and deny on that basis.

8    89.    The allegations in paragraph 89 attempt to characterize a statute

9    enacted by the Washington State Legislature, which speaks for itself and is the best

10   evidence of its contents.  Defendants admit that RCW 90.48.010 includes the

11   language quoted in paragraph 89 and deny all remaining allegations in

12   paragraph 89.

13   90.    Defendants deny the allegations of paragraph 90.

14   91.    Defendants deny the allegations of paragraph 91.

15   92.    Defendants deny the allegations of paragraph 92.

16   93.    Defendants deny the allegations of paragraph 93.

17   94.    Defendants lack sufficient knowledge to admit or deny the allegations

18   in paragraph 94, and deny on that basis.

19   95.    Defendants deny the allegations of paragraph 95.

20   96.    Defendants deny the allegations of paragraph 96.

21   97.    Defendants deny the allegations of paragraph 97.

22   98.    Defendants deny the allegations of paragraph 98.

23

24

1

## SECOND CAUSE OF ACTION

2

### PRODUCTS LIABILITY – DEFECTIVE DESIGN

3      99.    Defendants incorporate the answers to paragraphs 1 through 98 as

4  though fully set forth herein.

5      100.   Defendants deny the allegations of paragraph 100.

6      101.   Defendants deny the allegations of paragraph 101.

7      102.   Defendants deny the allegations of paragraph 102.  Defendants also

8  aver that Old Monsanto had ceased production of PCBs two years before

9  regulations promulgated pursuant to EPA's rulemaking authority under TSCA

10  became effective in 1979.

11      103.   Defendants deny the allegations of paragraph 103.

12      104.   Defendants deny the allegations of paragraph 104.

13      105.   Defendants deny the allegations of paragraph 105.

14      106.   Defendants deny the allegations of paragraph 106.

15      107.   Defendants deny the allegations of paragraph 107.

16

## THIRD CAUSE OF ACTION

17

### PRODUCTS LIABILITY – FAILURE TO WARN

18      108.   Defendants incorporate the answers to paragraphs 1 through 107 as

19  though fully set forth herein.

20      109.   Defendants deny the allegations of paragraph 109.

21      110.   Defendants deny the allegations of paragraph 110.

22      111.   Defendants deny the allegations of paragraph 111.

23      112.   Defendants deny the allegations of paragraph 112.

24      113.   Defendants deny the allegations of paragraph 113.

1    114.   Defendants deny the allegations of paragraph 114.

2    115.   Defendants deny the allegations of paragraph 115.

3    116.   Defendants deny the allegations of paragraph 116.

4    117.   Defendants deny the allegations of paragraph 117.

5    **FOURTH CAUSE OF ACTION**

6    **NEGLIGENCE**

7    118.   Defendants incorporate the answers to paragraphs 1 through 117 as

8    though fully set forth herein.

9    119.   Defendants deny the allegations of paragraph 119.

10    120.   Defendants deny the allegations of paragraph 120.

11    121.   Defendants deny the allegations of paragraph 121.

12    122.   Defendants deny the allegations of paragraph 122.

13    123.   Defendants deny the allegations of paragraph 123.

14    124.   Defendants deny the allegations of paragraph 124.

15    **FIFTH CAUSE OF ACTION**

16    **EQUITABLE INDEMNITY**

17    125.   Defendants incorporate the answers to paragraphs 1 through 124 as

18    though fully set forth herein.

19    126.   The allegations in paragraph 126 are legal conclusions which do not

20    require a response.  To the extent a response is required, Defendants deny the

21    allegations in paragraph 126.

22    127.   Defendants deny the allegations of paragraph 127.

23    / / /

24    / / /

1

## **RELIEF REQUESTED**

2    The remainder of the Complaint consists of Plaintiff's request for

3 relief, to which no response is required.  To the extent a response is required,

4 Defendants deny that Plaintiff is entitled to the relief sought in the Complaint or to

5 any relief whatsoever.

6

## **AFFIRMATIVE DEFENSES**

7    Defendants hereby assert the following affirmative defenses without

8 assuming the burden of proof for issues where the burden would not ordinarily be

9 upon the responding party.

10

## **FIRST AFFIRMATIVE DEFENSE**

11

### **(Failure to State a Claim)**

12   1.  Plaintiff's alleged claims, and each of them, fail to state a claim upon

13 which relief may be granted.

14

## **SECOND AFFIRMATIVE DEFENSE**

15

### **(Statute of Limitations)**

16   2.  Plaintiff's alleged claims are barred, in whole or in part, by the

17 applicable limitations periods, including, but not limited to, those set forth in the

18 Revised Code of Washington.

19

## **THIRD AFFIRMATIVE DEFENSE**

20

### **(Estoppel)**

21   3.  Plaintiff's alleged claims are barred, in whole or in part, by the

22 equitable doctrine of estoppel.

23 / / /

24 / / /

1        **FOURTH AFFIRMATIVE DEFENSE**

2                    **(Unclean Hands)**

3        4.      Plaintiff's alleged claims are barred, in whole or in part, by the

4   equitable doctrine of unclean hands.

5        **FIFTHAFFIRMATIVE DEFENSE**

6                      **(Waiver)**

7        5.      Plaintiff's alleged claims are barred, in whole or in part, because

8   Plaintiff, by its conduct and actions, has waived each of the alleged claims for

9   relief.

10       **SIXTH AFFIRMATIVE DEFENSE**

11                     **(Laches)**

12       6.      Plaintiff's alleged claims are barred, in whole or in part, by the

13  doctrine of laches.

14       **SEVENTH AFFIRMATIVE DEFENSE**

15                    **(Consent)**

16       7.      Plaintiff's alleged claims are barred, in whole or in part, because, on

17  information and belief, Plaintiff has consented to its alleged damages by its

18  conduct and actions.

19       **EIGHTH AFFIRMATIVE DEFENSE**

20       **(Alleged Damages, if Any, Caused by a Third Person)**

21       8.      The damages sought by Plaintiff are unavailable to the extent the

22  Plaintiff's alleged damages were caused by one or more acts or omissions of

23  parties other than Defendants.

24  / / /

1    ### NINTH AFFIRMATIVE DEFENSE

2    ### (Uncertainty)

3    9.    Defendants allege that the Complaint, and each claim for relief

4    asserted therein, is uncertain.

5    ### TENTH AFFIRMATIVE DEFENSE

6    ### (Proportionate Liability)

7    10.    Defendants are not liable to Plaintiff for the manufacturing activities

8    of other manufacturers and for any costs incurred by Plaintiff for products and

9    chemicals not produced by Defendants. *See, e.g.,* RCW 4.22.070.  Defendants are

10   also not liable to Plaintiff for the intervening actions of third-parties resulting in the

11   alleged contamination of the Spokane River, which Defendants had no knowledge

12   of and/or over which they had no control at the time. *Id.*  Plaintiff is not entitled to

13   recover any costs arising from products and chemicals manufactured by others, or

14   intervening actions of third-parties.

15   ### ELEVENTH AFFIRMATIVE DEFENSE

16   ### (Unnecessary Costs)

17   11.    Plaintiff's alleged claims are barred to the extent Plaintiff's response

18   actions are or have been excessive, unnecessary, unreasonable, and/or inconsistent

19   with statutory requirements.

20   ### TWELFTH AFFIRMATIVE DEFENSE

21   ### (Failure to Mitigate)

22   12.    Plaintiff's alleged claims are barred, or alternatively Plaintiff's

23   recovery should be limited, to the extent Plaintiff has made insufficient or delayed

24

efforts to address contamination or obtain the most reasonable costs, and to the extent Plaintiff could have mitigated its costs.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

13.    Plaintiff's claims are barred to the extent any recovery would result in unjust enrichment to Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Plaintiff Is a Responsible Party)

14.    Plaintiff is not entitled to the relief it seeks in the Complaint because it is responsible, and/or otherwise liable, for the acts and omissions alleged in the Complaint.

## FIFTEENTHAFFIRMATIVE DEFENSE

### (Passive Liability)

15.    In the event that Defendants are liable under any of the Plaintiff's claims, which Defendants deny, then the liability of Defendants would be passive, imputed, or secondary, while persons other than Defendants, whether individual, corporate, or otherwise, and whether named or unnamed in the Complaint, would be actively and primarily liable for the alleged damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Lack of Causation by Defendants)

16.    Plaintiff's claims fail because Plaintiff has failed to plead and cannot prove causation.

/ / /

1

## SEVENTEENTH AFFIRMATIVE DEFENSE

2

### (Intervening/Superseding Cause)

3      17.     Plaintiff's claims arising out of or relating to the presence of

4   contamination at the property at issue, if any, were proximately caused by an

5   independent intervening or superseding cause of which Defendants had no

6   knowledge or over which they had no control at the time.

7

## EIGHTEENTH AFFIRMATIVE DEFENSE

8

### (Damages Are Remote, Derivative and Unavailable)

9      18.     The damages sought in the Complaint are remote and/or derivative

10  and otherwise unavailable as a matter of law.

11

## NINETEENTH AFFIRMATIVE DEFENSE

12

### (Damages Are Nonrecoverable Regulatory Costs)

13     19.     The damages sought in the Complaint are regulatory compliance costs

14  that are not recoverable under any of the state law claims asserted by Plaintiff.

15

## TWENTIETH AFFIRMATIVE DEFENSE

16

### (Comparative Negligence)

17     20.     Plaintiff did not exercise ordinary care, and has acted in such a

18  manner so as to cause or contribute to its alleged damages.  Therefore, any

19  resulting injuries sustained by Plaintiff were caused, in whole or in part, by its own

20  negligence.  Should Plaintiff recover any amount from Defendants as a result of its

21  Complaint, Defendants are entitled to have such recovery reduced or eliminated to

22  the extent of the comparative negligence of Plaintiff.

23  / / /

24  / / /

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 27

1

2

### TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Comparative Fault of Plaintiff)

3      21.    Defendants allege that the injuries complained of and the damages

4  sought by Plaintiff were caused directly and proximately by Plaintiff's own fault,

5  acts, or omissions.  In the event that Plaintiff is found to have sustained and to be

6  entitled to recovery of any damages, Defendants are liable only for that portion of

7  any damages that corresponds to its degree of fault or responsibility, if any, and not

8  for the fault, acts, or omissions of Plaintiff.

9                 ### TWENTY-SECOND AFFIRMATIVE DEFENSE

10                        ### (Comparative Fault of Others)

11      22.    Defendants allege that the injuries complained of and the damages

12  sought by Plaintiff were caused directly and proximately by the fault, intervening

13  acts, or omissions of third persons.  In the event that Plaintiff is found to have

14  sustained and to be entitled to recovery of any damages, Defendants are liable only

15  for that portion of any damages that corresponds to its degree of fault or

16  responsibility, if any, and not for the fault, intervening acts, or omissions of third

17  persons, whether individual, corporate, or otherwise, and whether named or

18  unnamed in Plaintiff's Complaint.

19

20                   ### TWENTY-THIRD AFFIRMATIVE DEFENSE

21                              ### (Preemption)

22      23.    Plaintiff's claims are preempted by federal law, including, without

23  limitation, the Toxic Substances Control Act ("TSCA"), the Federal Food, Drug,

and Cosmetic Act ("FDCA"), the Comprehensive Environmental Response,

24  Compensation, and Liability Act of 1980 ("CERCLA"), the Occupational Safety

1   and Health Act ("OSHA"), and all their predecessors and amendments, and any

2   other applicable statutes and/or federal law.  Specifically, Plaintiff's claims are

3   preempted under *inter alia*:  Article VI of the United States Constitution; TSCA's

4   express preemption provision, 15 U.S.C. § 2617(a)(2)(B); FDCA's preemption

5   provision, 21 U.S.C. § 346; OSHA, 29 U.S.C. § 651, et seq.; related statutory

6   provisions; and federal regulations implementing those laws.

7                    **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

8                                  **(Apportionment)**

9        24.    The injuries complained of and the damages sought by Plaintiff were

10  caused directly and proximately by Plaintiff's own fault, acts, or omissions, or the

11  fault, acts, omissions, products, or chemicals of other persons, and/or by others at

12  the direction of Plaintiff and/or Plaintiff's elected officials, officers, employees,

13  agents, and affiliates (collectively, "Plaintiff and/or its Agents"), over whom

14  Defendants had no control.  Therefore, any recovery by Plaintiff on its claims

15  against Defendants must be reduced in an amount equivalent to the harm and

16  damages caused by Plaintiff and/or its Agents, or the products or chemicals of

17  others, based on principles of comparative negligence and apportionment, pursuant

18  to RCW 4.22.070, and any applicable equitable principles.

19                    **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

20                              **(Fair Share Limitation)**

21       25.    If Defendants are liable to Plaintiff under the allegations set forth in

22  the Complaint, which Defendants deny, then Defendants' liability is limited to

23  Defendants' fair, equitable, and proportionate share of the costs allegedly incurred

24  by Plaintiff.

1

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

2

### (Conformance with Governing Law and Industry Standards)

3        26.     Defendants allege that they have conformed to and performed any and

4   all obligations imposed by applicable statutes, regulations, permits, and industry

5   standards to the full extent of its responsibilities.  In addition, Defendants' conduct

6   conformed to the generally recognized state of scientific, medical, and technical

7   knowledge in existence at all relevant times.

8

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

9

### (Conformance with Authority)

10       27.     Defendants are not liable for any acts or omissions undertaken by or at

11   the direction of federal, state, or local authority, including without limitation, acts

12   or omissions made in accordance with applicable statutes, regulations, permits, and

13   industry standards to the full extent of its responsibilities.

14

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

15

### (Cause in Fact)

16       28.     Defendants allege that Plaintiff cannot prove any facts showing that

17   the conduct of Defendants was the cause in fact of any threatened or actual

18   damages or other harm to the Plaintiff as alleged in its Complaint.

19

## TWENTY-NINTH AFFIRMATIVE DEFENSE

20

### (Failure to State a Claim Against Monsanto Company and Solutia Inc.)

21       29.     Plaintiff's alleged claims, and each of them, fail to state a claim

22   against Monsanto Company and Solutia Inc., because neither entity is a current or

23   former manufacturer of PCBs.

24   / / /

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 30

1

**THIRTIETH AFFIRMATIVE DEFENSE**

2

**(Nonjoinder of PCB Manufacturers)**

3      30.    Plaintiff fails to identify the source of the PCBs at issue in this case.

4  Plaintiff has also failed to join other manufacturers of PCBs at all relevant times

5  through today.

6

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

7

**(Undue Delay)**

8      31.    Plaintiff has, contrary to its legal obligation under state and federal

9  law, failed to take timely, effective, and reasonable action to abate the alleged PCB

10  discharges and releases.

11

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

12

**(Statutory Compliance)**

13      32.    Defendants' conduct was lawful in all respects when taken under the

14  express federal and state laws then applicable.

15

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

16

**(Due Process Impaired)**

17      33.    To the extent that Plaintiff's claims are based on federal or state

18  statutes, Defendants' conduct was lawful in all respects when taken under the

19  federal and state laws then applicable, and it did not create or contribute to any

20  public nuisance under any applicable law.  Retroactive application of conduct

21  requirements adopted in subsequently enacted federal and state statutes to

22  Defendants' prior conduct violates the due process clauses of the Fifth and

23  Fourteenth Amendments of the United States Constitution and the due process

24  limitations of the Washington Constitution.  Additionally, Plaintiff seeks

1    application of those statutes at a time when relevant documents and persons

2    knowledgeable as to Defendants, and the defenses to which Defendants are or

3    would have been entitled, are not available as a consequence of loss or destruction

4    of documents by third-parties, relocation, termination of operations, employment

5    or retirement, death, memory loss, or otherwise.  Application of these statutes

6    therefore denies Defendants a fair opportunity to defend themselves and violates

7    the due process clauses of the Fifth and Fourteenth Amendments of the United

8    States Constitution and the due process limitations of the Washington Constitution

9    as applied.

10                **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

11                         **(No Duty to Warn)**

12       34.    Old Monsanto sold PCBs in bulk for use as a component by

13   formulators and other assemblers of products sold to end-users.  As a component

14   part maker, Old Monsanto did not owe any duty to warn end-users of the products

15   put into the stream of commerce by formulators and assemblers.

16                 **THIRTY-FIFTH AFFIRMATIVE DEFENSE**

17                        **(No Duty Owed to Warn)**

18       35.    Old Monsanto sold PCBs in bulk for use as a component by

19   sophisticated formulators and other assemblers of end products, many of whom

20   were chemical companies or employed chemists and chemical engineers.  Any

21   duty to warn end-users of formulated or fully assembled end products reposed in

22   the sophisticated formulator or assembler—not Defendants.  These sophisticated

23   users were at least as knowledgeable as Defendants regarding the risks and

24   hazards, if any, associated with the use and disposal of the product and were in the

best position to convey appropriate use, handling, and precautionary information and other warnings.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Claim Barred by Risk-Utility Doctrine)

36.     Plaintiff's claims and purported causes of action are barred in whole or in part by the risk/utility doctrine.  If it is determined that there was a risk inherent in the use of PCBs or any other product allegedly sold or supplied by Old Monsanto, then such risk was outweighed by the benefits of PCBs or any other product allegedly at issue.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Economic Loss Rule)

37.     Plaintiff's claims are barred by the economic loss rule.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Punitive Damages Not Available)

38.     The conduct and/or acts of Defendants as alleged in the Complaint were not and are not willful, wanton, malicious, reckless, fraudulent, or done with a conscious disregard for the rights of Plaintiff and/or the safety of the public.  Nor do any of the conduct and/or acts of Defendants as alleged in the Complaint demonstrate that Defendants acted with a high degree of moral culpability.  In fact, Defendants exercised reasonable care at all times alleged in the Complaint and Plaintiff has failed to clearly establish any entitlement to punitive damages based on these allegations under Washington state law.  In addition, imposition of punitive damages here would violate the United States Constitution and applicable state law.

1   ### THIRTY-NINTH AFFIRMATIVE DEFENSE

2   **(Assumption of Risk)**

3   39.   Plaintiff's claims are barred by the doctrine of assumption of risk.

4   ### FORTIETH AFFIRMATIVE DEFENSE

5   **(Attorney Fees Not Available)**

6   40.   Plaintiff's claim for an award of attorney fees and expenses fails

7   because Washington law does not permit recovery of such fees and expenses under

8   the circumstances of this action.

9   ### FORTY-FIRSTAFFIRMATIVE DEFENSE

10   **(No Double Recovery)**

11   41.   In the event that Plaintiff is found to have sustained and to be entitled

12   to recovery of any damages, Defendants are liable only for that portion of

13   Plaintiff's damages in excess of any recovery or payments made to Plaintiff by

14   third-parties for the same loss, injury, or damage Plaintiff alleges in this case.

15   ### FORTY-SECOND AFFIRMATIVE DEFENSE

16   **(Reservation of Defenses/Rights)**

17   42.   The Complaint does not describe its claims or events with sufficient

18   particularity to permit Defendants to ascertain what other affirmative defenses may

19   exist and Defendants presently have insufficient knowledge or information to form

20   a belief as to whether it has additional, as yet unstated, affirmative defenses

21   available to it.  Defendants therefore reserve the right to assert all affirmative

22   defenses which may pertain to the Complaint once the precise nature of the claims

23   is ascertained and in the event discovery indicates that they would be appropriate.

24

# COUNTERCLAIMS

## JURISDICTION AND VENUE

1.      Jurisdiction in this Court is proper under 42 U.S.C. Sections 9613(b) and 9607(a), 28 U.S.C. Sections 1331, 1332, 1367, and 2201-02 and Federal Rule of Civil Procedure 13 with respect to Monsanto Company, Pharmacia LLC, and Solutia, Inc.'s ("Defendants/Counter-Claimants") counterclaims.  The amount in controversy for all of the counterclaims exceeds $75,000, and all of the counterclaims arise out of the same transaction or occurrence as Plaintiff's claims and thus fall squarely within this Court's supplemental/ancillary jurisdiction.

2.      Venue in this court is proper pursuant to 42 U.S.C. Section 9613(b), and 28 U.S.C. Section 1391(b) because the property is located within this judicial district, the releases or threatened releases alleged herein occurred within this judicial district, and the Counter-Defendant has submitted to personal jurisdiction within this judicial district by initiating the present action.

## INTRODUCTION

3.      The City of Spokane's (the "City") Complaint seeks to hold Defendants liable for alleged contamination in the Spokane River, even though Defendants are not alleged to have done *anything* since the 1970s and are not alleged to have discharged any polychlorinated biphenyls ("PCBs") into those waters *ever*.  Instead, it is the City's own conduct vis-à-vis the River, marked by decades of neglect, mismanagement, and contamination, which has led to the conditions of which it complains.  Defendants' counterclaims are based on the City's decades of polluting the Spokane River and eleventh-hour attempts to shift blame to Defendants.

1        4.      These counterclaims are brought pursuant to the Comprehensive

2    Environmental Response, Compensation, and Liability Act of 1980, as amended by

3    the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et

4    seq. ("CERCLA" also known as "Superfund").

5        5.      Defendants/Counter-Claimants intend to bring additional

6    counterclaims pursuant to federal and state law, including the Federal Water

7    Pollution Control Act, or Clean Water Act, 33 U.S.C. § 1251 et seq. ("CWA"), as

8    well as state law negligence, unjust enrichment, contribution, and equitable

9    indemnity claims, relating to environmental contamination of the Spokane River.

10   With respect to Defendants'/Counter-Claimants' Clean Water Act claim against

11   the City, per 33 U.S.C. Section 1365(b)(1)(A), Defendants/Counter-Claimants are

12   required to provide notice of the alleged violations and their intent to file suit, to

13   the U.S. Attorney General, Administrator of the U.S. Environmental Protection

14   Agency ("EPA"), Administrator of EPA Region X, the Washington Department of

15   Ecology, and the City.  On November 23, 2016, Defendants/Counter-Claimants

16   provided such notice.  Similarly, pursuant to RCW 4.96.020 "[a]ll claims for

17   damages arising out of tortious conduct" "against any local governmental entity"

18   must be "presented to the agent of the governing body thereof" prior to filing such

19   claims in court if RCW 4.96.020 applies.  On November 23, 2016,

20   Defendants/Counter-Claimants presented their state law negligence, unjust

21   enrichment, contribution, and equitable indemnity claims to the City on the City's

22

23

24

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 36

1   standard tort claim form.[3]  Upon the expiration of the 60-day periods prescribed by

2   both 33 U.S.C. Section 1365(b)(1)(A) and RCW 4.96.020(4), Defendants/Counter-

3   _____

4   [3]  Defendants/Counter-Claimants presented these Washington state law

5   counterclaims to the City under RCW 4.96.020 in an abundance of caution,

6   although it is far from clear that the claim-presentment requirement of that

7   provision applies here.  A federal court in this state has noted that the issue of

8   whether the provision applies to counterclaims is presently open and unresolved.

9   *See Lexington Ins. Co. v. Port of Bellingham*, 2014 U.S. Dist. LEXIS 98179, at

10  *12-13 (W.D. Wash. July 18, 2014) (describing it as "an issue of first impression"

11  that the court declined to resolve).

12     Because RCW 4.96.020 is a limitation on the waiver of the City's sovereign

13  immunity and the City has already waived sovereign immunity as to the scope of

14  this present dispute by initiating this action, RCW 4.96.020's applicability to the

15  state law counterclaims raised here is doubtful.  Moreover, by its terms, RCW

16  4.96.020 applies only to claims for "damages arising out of tortious conduct" and

17  thus would not apply to counterclaims that seek equitable relief or non-tort claims.

18  RCW 4.96.020(4).  Nor would RCW 4.96.020 apply to federal counterclaims,

19  since its claim-presentment requirement would be preempted as an obstacle to

20  enforcement of federal rights.  *See Allenmore Med. Inv'rs, LLC v. City of Tacoma*,

21  2014 U.S. Dist. LEXIS 171694, at *5 (W.D. Wash. Dec. 11, 2014) ("State notice-

22  of-claim requirements do not apply—and, as a matter of federal supremacy, cannot

23  apply—to federal claims"); *Aarlie v. Akins*, 2007 U.S. Dist. LEXIS 34353, at *11

24  (E.D. Wash. May 10, 2007) (holding that RCW 4.96.020 "does not apply to section

1 Claimants will seek leave to amend their answer and counterclaims to assert their

2 Clean Water Act and state law negligence, unjust enrichment, contribution and

3 equitable indemnity claims.  Leave to add such claims is appropriate under Ninth

4 Circuit precedent.  *See, e.g., Caswell v. Calderon*, 363 F.3d 832, 839-40 (9th Cir.

5 2004) (reversing denial of request for leave to add new claims once they were

6 exhausted as an abuse of discretion).

7       6.    The Spokane River begins in northern Idaho at the outlet of Coeur

8 d'Alene Lake and flows west 112 miles to the Columbia River.  The watershed

9 encompasses over 6,000 square miles in Washington and Idaho.  The Spokane

10 River flows through the smaller cities of Post Falls and Coeur d'Alene in Idaho

11 and large urban areas of the Spokane Valley and Spokane in Washington.  Other

12 cities in the basin include Liberty Lake, Deer Park, and Medical Lake,

13 Washington, as well as Wallace and Kellogg, Idaho upstream from Lake Coeur

14 d'Alene.  Various areas of the River have been industrialized and used for

15 electrical power and waste discharge.

16       7.    Over the past three decades, the Washington Department of Ecology

17 ("WDOE") has investigated pollutants in the Spokane River, including PCBs,

---

19 1983 claims brought in federal court because of the supremacy of federal law");

20 *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) (interpreting Washington's

21 prior notice of claim statute and finding that "state notice of claim provisions are

22 inapplicable to section 1983 actions brought in federal court").

23     Nonetheless, to avoid unnecessary litigation as to RCW 4.96.020's

24 applicability, Defendants/Counter-Claimants presented all of the instant state law

counterclaims to the City on November 23, 2016.

1    metals, phosphorous, bacteria, toxics, and their components (collectively,

2    "Contaminants of Concern" or the "COCs").

3        8.    WDOE, in conjunction with the Spokane River Regional Toxics Task

4    Force, is currently pursuing cleanup efforts for the Spokane River.

5        9.    In July 2015, the City sued Defendants/Counter-Claimants under

6    public nuisance and other tort theories for recovery of the costs of complying with

7    storm water controls included in its National Pollutant Discharge Elimination

8    System ("NPDES") CWA Permits.  Those claims are premised on the City's

9    allegation that Defendants/Counter-Claimants are the alleged successors and/or

10   indemnitors to "Old Monsanto"—a company which manufactured and distributed

11   PCBs from approximately 1935 to 1977.

12       10.   Old Monsanto's PCB manufacturing activities took place at two

13   industrial plants located in Anniston, Alabama and Sauget, Illinois.  Old Monsanto

14   did not manufacture any PCBs in Spokane, or indeed anywhere in the State of

15   Washington or the Spokane River Basin.

16       11.   Old Monsanto has not discharged PCBs into the Spokane River.

17       12.   PCBs were also manufactured domestically by Geneva Industries in

18   Houston, Texas, for heat transfer applications between approximately 1971/1972

19   and 1973/1974.

20       13.   PCBs were/are also manufactured internationally by various

21   corporations, including, but not limited to:  Prodelec, Caffaro, Flick, Kanegahuohi,

22   and other European producers.[4]  International PCB manufacturing is estimated to

23   _____

24   [4]  Complaint, Ex. A at 4; PCBs and the Environment, at 5, Ex. 1 (excerpted).

1   have comprised over 50% of worldwide production during the period when Old

2   Monsanto manufactured PCBs.[5]

3       14.    In addition to historic domestic manufacturing and foreign imports,

4   PCBs continue to be generated through today as by-products of various other

5   routine manufacturing and chemical processes, including the production of dyes.

6   Defendants do not manufacture or produce dyes.  EPA has estimated that 100,000

7   lbs. of "inadvertently generated" PCBs are produced annually in the U.S., and

8   WDOE recently determined that roughly half of all annual releases of PCBs in

9   Washington are actually "current generation" PCBs, produced after 1979.[6]

10       15.    Regardless of origin, PCBs were used for decades by various

11   commercial, municipal, and industrial entities to, among other things, reduce the

12   risk of fires.  PCBs were valued by customers and municipalities because of their

13   non-flammability, chemical stability, electrical insulating properties, and safety.

14   PCBs continue to be used lawfully to this day in certain applications, including

15   transformers and other electrical equipment.[7]

16       16.    The City authorized and continues to authorize the use of products

17   containing PCBs.  The City's current Electrical Code, passed on July 14, 2014,

18   expressly authorizes the installation and use of Askarel-filled transformers.

19

20   [5] *Id.*

21

22   [6] *See* EPA's Plan for Addressing PCBs in the Spokane River (July 14, 2015), at 3,

23   Ex. 2; WDOE, PCB Chemical Action Plan, at 11, 14 (Feb. 2015), Ex. 3

24   (excerpted).

[7] *See* 40 C.F.R. § 761.30 (2002).

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 40

1   Moreover, the City encourages the installation and use of Askarel-filled

2   transformers by providing that such transformers rated at under 35,000 volts may

3   be installed indoors without the added burden and expense of installing a fire-

4   resistant vault, even though such vaults are required for the indoor installation of

5   other types of transformers.

6       17.    The City is aware that PCBs are currently found in commercially-

7   available products.[8]  Upon information and belief, the City is also aware that many

8   of the commercial products it has purchased contain "inadvertently generated"

9   PCBs in concentrations well above the surface water quality standards set by the

10  State of Washington and the Spokane Tribe, including road and utility paints,

11  firefighting foam, deicers, motor oil, dirt road dust suppressant, crack sealer,

12  hydroseed, PVC pipe, and thermoplastic tape road striping, among others.[9]  Rather

13  than ban the continued purchase and use of PCB-containing products, the City

14  passed an ordinance that expressly allows the continued purchase and use of PCB-

15  containing products—by the City itself—as long as the PCB-containing product is

16  at least 20% cheaper than the non-PCB-containing alternative.[10]

17

18  _____

19  [8]  WDOE, Polychlorinated Biphenyls (PCBs) in General Consumer Products,

20  Publication No. 14-04-035 (June 2014), Ex. 4.

21  [9]  Products purchased by the City containing "inadvertently generated" PCBs

22  include products for which the source of PCBs is not known.

23  [10]  *See* City of Spokane Ordinance C35099, PCB Product & Products In Packaging

24  Procurement Policy (June 2, 2014), Ex. 5.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 41

18.     Commercial, municipal, and industrial activities have been conducted at and adjacent to the Spokane River from at least the late 1800s.

19.     Upon information and belief, the City has, at all relevant times through the present, discharged a variety of COCs into the Spokane River.

20.     Prior to the construction of the City's wastewater treatment system in 1958, the City discharged raw untreated sewage containing pollutants *directly* into the Spokane River, resulting in significant environmental contamination with a wide variety of pollutants.[11]

21.     The City also owns and operates a partially combined sewer-storm water system (i.e., a conjoined system of storm water collection and raw sewage).[12] During times of significant rainfall or snowmelt, the system overflows resulting in discharges of raw, untreated sewage and urban runoff directly into the Spokane River.[13] Those combined overflows have occurred from the construction of the system to the present day.

22.     Upon information and belief, the City's partially combined sewer-storm water system, wastewater treatment system, and separate storm sewer system are inadequate to handle the volume and nature of the City's storm water, waste water, and sewage.

/ / /

---

[11] *See* City of Spokane, Combined Sewers & Reducing Overflows webpage, *available at* https://my.spokanecity.org/publicworks/wastewater/cso/, Ex. 6.

[12] *Id.*

[13] *Id.*

23.     In addition to its own storm water, wastewater, and sewage discharges, the City also has purchased, used, and disposed of products containing "inadvertently generated" PCBs manufactured by entities other than Old Monsanto in a manner that has resulted in discharges into the Spokane River via storm water runoff.

24.     Based on investigations conducted from approximately the 1980s to the present, the WDOE has determined that the Spokane River contains elevated levels of PCBs and other COCs, and is currently pursuing a number of investigative, regulatory, and cleanup actions.[14]

25.     As a result of the City's discharges, Defendants/Counter-Claimants have incurred and will incur response costs, including the costs of investigation of PCB sources into the Spokane River.  In addition to past costs, Defendants/Counter-Claimants will continue to incur response costs as the investigation proceeds, including potentially regulatory, litigation, and other response costs.  In addition, Defendants/Counter-Claimants have incurred legal and other costs pertaining to the present suit, which is actually attributable to and caused by the City's own discharges.

26.     Defendants/Counter-Claimants bring these counterclaims to (i) establish the liability of the City for the contamination of the Spokane River; (ii) require the City to pay various costs of investigating, reducing discharges to, and cleaning up the Spokane River, and (iii) obtain reimbursement of costs that Defendants/Counter-Claimants have incurred as a result of the City's discharges.

---

[14]  *See, e.g.,* http://www.ecy.wa.gov/programs/wq/tmdl/spokaneriver/index.html.

**PARTIES**

27.    Monsanto Company is a Delaware corporation with its principal place of business in St. Louis County, Missouri.

28.    Pharmacia LLC is a limited liability company, with its sole member Wyeth Holdings LLC.  Wyeth Holdings LLC is wholly owned by Pfizer Holdings Americas Corporation, which is incorporated under the laws of Delaware with its principal place of business in New York.

29.    Solutia, Inc. is a Delaware corporation, with its principal place of business in St. Louis County, Missouri.

30.    The City is a municipal corporation, which may be found, conducts its affairs, and renders services within the Eastern District of Washington.

**FACTUAL BACKGROUND**

31.    This action concerns environmental contamination and the public's reasonable use of the Spokane River.

32.    Upon information and belief, the City has from the late 1800s through the present, discharged a variety of COCs into the Spokane River, including PCBs.

**<u>The City's Sewage and Wastewater Discharges</u>**

33.    Prior to the construction of the City's wastewater treatment system in 1958, the City discharged raw untreated sewage directly into the Spokane River, resulting in significant environmental contamination.[15]

---

[15] *See* City of Spokane, Combined Sewers & Reducing Overflows webpage, *available at* https://my.spokanecity.org/publicworks/wastewater/cso/, Ex. 6.

34.     After construction of its wastewater treatment system in 1958, the City continued to discharge sewage, wastewater, and storm water containing COCs through its wastewater and storm water systems.[16]

35.     The City owns and operates in its proprietary capacity a partially combined sewer-storm water system (*i.e.*, a conjoined system of storm water collection and raw sewage), consisting of over 400 miles of pipes, through which it has discharged raw sewage and urban runoff into the Spokane River, from the time it was constructed to the present.[17]

36.     The City's Riverside Park Water Reclamation Facility and combined sewer overflows ("CSOs") are regulated by the NPDES Waste Discharge Permit No. WA-002447-3, issued by WDOE in 2011, attached hereto as Ex. 7.

37.     Section S.13 of NPDES Waste Discharge Permit No. WA-002447-3 prohibits discharges from CSO locations that "cause adverse impacts that threaten characteristic uses of the receiving water as identified in the Water Quality Standards, Chapter 173-201A WAC." Section S.13 of NPDES Waste Discharge Permit No. WA-002447-3 also prohibits dry-weather CSOs. Additionally, Section S.13 requires the City to monitor CSO outfalls and collect data.

38.     During heavy rain or snowmelt events, the influx of storm water into the combined system overwhelms its carrying capacity, causing portions of the storm water-sewage mixture to bypass the local wastewater treatment plant, which results in discharges of untreated sewage and wastewater directly into the Spokane

---

[16] *Id.*

[17] *Id.*

River.[18]  Upon information and belief, the storm water-sewage mixture contains a variety of environmental pollutants, including COCs and PCBs.

39.     The City has been aware of the problems associated with discharging sewage to the Spokane River since the 1880s, and was eventually warned by Washington State of water quality problems during the 1930s.[19]

40.     In 1984, the Washington Supreme Court found that the City created a public nuisance through its discharge of an estimated 100 million gallons of raw untreated sewage into the River.  *Miotke v. Spokane*, 101 Wash. 2d 307, 331-337 (1984), overruled in part on other grounds; *see also State ex rel. Close v. Meehan*, 49 Wash. 2d 426, 427 (1956) (noting the City's historic discharge of raw sewage into the River and that the Department of Health had notified the City that a public nuisance existed in the River as a result).

41.     In 2006, the City received a 60-day notice letter from the Sierra Club, alleging violations of the Clean Water Act from continuing dry-weather CSO discharges into the Spokane River and surrounding tributaries, significant data gaps in CSO monitoring, and failure to perform necessary maintenance and monitoring under its NPDES permit, which resulted in such dry-weather discharges.  The Sierra Club noted that "the violations are of serious concern  . . .

---

[18]  *Id.*

[19]  *See* City of Spokane, Integrated Clean Water Plan (Dec. 2014), at 2-2, Ex. 8.

1  because they involve the discharge of significant amounts of raw sewage, toxics,

2  and other health hazards often during dry weather months . . . ."[20]

3    42.    In 2009, the City received a 60-day notice letter from the Gonzaga

4  Law School Environmental Law Clinic, on behalf of the Spokane Riverkeeper

5  organization, regarding the City's PCB discharges to the Spokane River, via its

6  antiquated and deficient storm water system, wastewater treatment plant, and

7  CSOs, in violation of its storm water and wastewater discharge permits.  Among

8  other things, Spokane Riverkeeper alleged that "city officials have known about

9  illegal PCB discharges from City outfalls since 2004, but have repeatedly failed to

10  report the violations or take meaningful and effective steps to stop them."[21]

11    43.    Over the past three years, the City has experienced at least three dry-

12  weather CSOs, including:  (A) On October 1, 2015, "there was one dry weather

13  overflow of an estimated 5 gallons" at CSO 6, (B) On September 15, 2014, "there

14  ─────────────────

15  [20] *See* Ltr. from R. Eichstaedt, Attorney, Center for Justice, to D. Hession, Mayor,

16  City of Spokane, Notice of Intent to File a Citizen Suit Under the Clean Water Act

17  (Jul. 13, 2006), at 1-2, Ex. 9; *see also* Sierra Club Press Release, Sierra Club gives

18  City of Spokane 60 days to stop dumping raw sewage in the River; City needs to

19  upgrade and fund monitoring and maintenance (Jul. 13, 2006), Ex. 10.

20  [21] *See* Center for Justice News Release, Spokane Riverkeeper serves City of

21  Spokane notice over PCB discharges to Spokane River (Dec. 2, 2009), Ex. 11; Ltr.

22  from M. Chappell, Director, Gonzaga Environmental Law Clinic, to Mary Verner,

23  Mayor, City of Spokane, Notice of Violation and Intent to File Suit Under the

24  Federal Clean Water Act (Dec. 1, 2009), at 7, Ex. 12.

1   was one dry weather overflow" at CSO 34-2 facility, involving "23,600 gallons

2   [which] overflowed for 30 minutes," and (C) On August 7, 2013, "[t]here was one

3   dry weather overflow" that "resulted in an approximate 2,000 gallon overflow out

4   of the CSO 34 outfall for approximately 30 minutes."[22]

5          44.    Over the past three years, the City has experienced more than 500 wet

6   weather CSOs, during which tens of millions of gallons of raw sewage and storm

7   water has been discharged into the River.[23]  In 2014, the City was responsible for

8   261 wet weather CSOs, resulting in the discharge of 85,018,259 gallons over a

9   combined 550 hours.[24]  In 2015, the City was responsible for another 147 CSOs in

10  2015, resulting in the discharge of 54,112,194 gallons over 349 hours, and 116

11  CSOs in 2016, resulting in the discharge of 33,573,665 gallons over approximately

12  186 hours.[25]

13  / / /

14  / / /

15  / / /

16

---

17  [22]  *See* Combined City of Spokane Annual Reports (2013-2015) and Archived

18  Monthly CSO Reports (Jan. 2014-Sept. 2016), at 2015 Annual CSO Report at 2-3;

19  2014 Annual CSO Report, at 5, 19; 2013 Annual CSO Report, at 18, Ex. 13.

20  [23]  *See* Combined City of Spokane Annual Reports (2013-2015) and Archived

21  Monthly CSO Reports (Jan. 2014-Sept. 2016), Ex. 13.

22

23  [24]  *Id.*

24  [25]  *Id.*

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 48

45.     Between January 2014 and September 2016, on at least 262 occasions, the City has omitted information from its monthly CSO reports, or has otherwise failed to properly document its CSO discharges.[26]

### The City's Storm Water Discharges

46.     The City has more than 300 miles of separate storm sewers, which discharge storm water to infiltration facilities, the Spokane River and Latah Creek at over 100 locations, including many bridges.  By the City's own estimate, approximately 1 billion gallons of untreated storm water enters the Spokane River annually.[27]

47.     The City's discharge of storm water from its municipal separate storm sewer system into the Spokane River is regulated by the Eastern Washington Phase II Municipal Storm Water Permit (the "Phase II Permit"), issued by WDOE in 2012, attached hereto as Ex. 15.

48.     Section S4.A of the Phase II Permit prohibits the discharge of toxicants to waters of the State that would violate any water quality standard. Section S4.B of the Phase II Permit prohibits a discharge from a municipal separate storm sewer system that would violate a Washington State surface water quality standard, ground water quality standard, sediment management standards, or human health-based criteria in the National Toxics Rule.  Additionally, under Sections S4.C and S4.D of the Phase II Permit, the City is required to reduce

---

[26] *Id.*

[27] *See* City of Spokane, Public Works & Utilities, Stormwater webpage, *available at* https://my.spokanecity.org/publicworks/storm water/, Ex. 14.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 49

discharges to the maximum extent practicable, and to use "all known, available, and reasonable methods of prevention, control and treatment to prevent and control pollution to waters of the State of Washington."

49.     Section S4.F of the Phase II Permit requires that the City notify WDOE in writing within 30 days of becoming aware of a violation.  Section S4.F of the Phase II Permit also requires the City to submit to WDOE a report describing its current Best Management Practices ("BMPs").

50.     The surface water quality standards regulate, among other things, the amount of toxic substances that may be legally discharged into surface waters. The regulation states that "[t]oxic substances shall not be introduced above natural background levels . . . which have the potential . . . to cause acute or chronic toxicity to the most sensitive biota dependent upon those waters, or adversely affect public health."  WAC 173-201 A-240(1).

51.     From 2012 to 2014, the City monitored three municipal separate storm sewer system basins and two CSO basins on a near-monthly basis.  Data from the monitoring revealed annual loading rates of 29.9 mg/day for municipal separate storm sewer system storm water and 7.6 mg/day for CSOs.[28]  These values are in excess of the State of Washington's 170 pg/L water quality standard for PCBs.

/ / /

/ / /

---

[28] *See* Spokane Regional Toxics Task Force, Pre-Final Draft Comprehensive Plan to Reduce Polychlorinated Biphenyls (PCBs) in the Spokane River (Nov. 9, 2016), at 27, Ex. 16.

52.    As established by the National Toxics Rule, the acceptable human-health criterion for PCBs is 0.00017 micrograms per liter (ug/L).  40 C.F.R. § 131.36(b)(1); 40 C.F.R. § 131.36(d)(14)(ii); WAC 173-201 A-240(5) (human health-based water quality criteria used by the State are contained in 40 C.F.R. 131.36).  In 2011, WDOE's Spokane River PCB Source Assessment (2003-2007)[29] found fish containing PCB levels in excess of the human-health criteria established by the National Toxics Rule.

### The City's Use and Disposal of PCB-Containing Products

53.    In addition to discharging contaminated sewage, wastewater, and storm water that contain COCs, the City at all relevant times through today has purchased, used, and disposed of various PCB-containing products (manufactured by entities other than Old Monsanto and containing "inadvertently generated" PCBs), in a manner that has resulted in discharges into the Spokane River via storm water runoff, through today.  The City's own sampling of these products—which include, without limitation, Freez-Gard road de-icers and Hydroseed erosion control products[30] —reveals that a number of products used by the City contain PCBs in the parts-per-trillion to parts-per-billion range, which is orders of

---

[29]  WDOE, Spokane River PCB Source Assessment (2003-2007) (Apr. 2011), at 89, Ex. 17.

[30]  According to the Spokane River Regional Toxics Task Force "[b]ecause hydroseed is used to manage stormwater, any PCBs in hydroseed will end up in the river."  *See* EPA's Plan for Addressing PCBs in the Spokane River (July 14, 2015), at 9-10, Ex. 2

1 magnitude above the 170 parts-per-*quadrillion* water quality standard for the

2 Spokane River set by the State of Washington.

3     54.    When the City learned that its de-icers contained PCBs, the City

4 Council President publically acknowledged that "[i]t's very hypocritical for us to

5 be purchasing a product that contains PCBs when we're suing Monsanto for

6 producing PCBs."[31]

7     55.    Despite this acknowledgment, Defendants/Counter-Claimants are

8 informed and believe that the City is continuing to use de-icers containing

9 significant levels of PCBs in a manner resulting in ongoing discharges to the

10 Spokane River through storm water runoff.

11     56.    Approximately as early as the 1980s, WDOE began investigating

12 PCBs in the Spokane River.  A storm water loading analysis conducted by WDOE

13 in 2007 identified "stormwater from the City of Spokane . . . as the largest

14 continuing source of PCBs to the river."[32]  A subsequent source investigation by

15 WDOE in 2011 similarly found that the City's riverside wastewater treatment plant

16 to be "the only facility where PCBs were detected in effluent" during all sampling

17 collections.[33]

18 / / /

19 _____

20 [31] *See* The Spokesman-Review, De-icer used by City of Spokane Contains PCBs

21 (Nov. 22, 2015), Ex. 18.

22 [32] *See* Spokane River PCB TMDL Stormwater Loading Analysis, Final Tech.

23 Report (Dec. 2007), at 2, Ex. 19.

24 [33] *See* PCB Source Assessment 2003-2007 (Apr. 2011), at 65, Ex. 17.

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 52

57. Defendants/Counter-Claimants are informed and believe that City's past and continuing discharge of and/or allowance of the discharge of PCBs and other COCs into the environment and the Spokane River, as well as the City's purchase, use, and disposal of products containing "inadvertently generated" PCBs, have caused or contributed to the alleged impairment of beneficial uses in the Spokane River.

58. As a result of the City's discharges, Defendants/Counter-Claimants have incurred and will continue to incur response costs to investigate alleged PCB contamination in the Spokane River. In addition to past costs, Defendants/Counter-Claimants will continue to incur response costs as the investigation proceeds. Defendants/Counter-Claimants have incurred legal and other costs defending the legal action(s) attributable to and caused by the City's own discharges.

## FIRST COUNTERCLAIM FOR RELIEF

### (Cost Recovery Under CERCLA)

59. Defendants/Counter-Claimants reallege and incorporate by reference paragraphs 1 through 58 as though fully set forth herein.

60. The City is a "person" within the meaning of CERCLA § 101(21), 42 U.S.C. § 9601(21).

61. The COCs are "hazardous substance[s]" within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

62. The City is the current owner and/or operator of the City's municipal sewer-storm water system, a "facility" under CERCLA § 101(9), 42 U.S.C.

1 § 9601(9), that has released, continues to release, and threatens to release COCs
2 into the Spokane River.

3       63.     The City is the current owner and/or operator of the City's wastewater
4 treatment system, a "facility" under CERCLA § 101(9), 42 U.S.C. § 9601(9), that
5 has released, continues to release, and threatens to release COCs into the Spokane
6 River.

7       64.     The City has admitted in its Complaint that its municipal sewer-storm
8 water system and wastewater treatment system have discharged and released, and
9 continue to discharge and release, hazardous substances, into the Spokane River
10 (*see* Compl., ¶¶ 5, 21-24).

11      65.     The City is a liable and responsible party under CERCLA § 107(a), 42
12 U.S.C. § 107(a), because it is an "owner" and/or "operator" of a "facility" within
13 the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9), from which there have
14 been "releases" and threatened "releases," within the meaning of CERCLA §
15 101(22), 42 U.S.C. § 9601(22), of "hazardous substances," within the meaning of
16 CERCLA § 101(14), 42 U.S.C. § 9601(14), into the Spokane River.

17      66.     Defendants/Counter-Claimants have paid and will continue to pay
18 necessary response costs consistent with the National Contingency Plan, within the
19 meaning of CERCLA § 101(31), 42 U.S.C. § 9601(31), including costs to assess
20 and investigate contamination caused by the City's releases and/or disposal of
21 hazardous substances to the Spokane River.

22      67.     Additionally, if Defendants/Counter-Claimants are found liable to the
23 City for contamination of the Spokane River, Defendants/Counter-Claimants will

24

1   incur costs to investigate and/or remediate the hazardous substances that the City

2   has released and/or disposed of to the Spokane River.

3        68.    Defendants/Counter-Claimants seek reimbursement from the City,

4   pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), for all necessary response

5   costs that Defendants/Counter-Claimants have incurred and will incur in

6   investigating and/or remediating the hazardous substances that the City has

7   released and/or disposed of to the Spokane River.

8        69.    Pursuant to CERCLA § 113(l), 42 U.S.C. § 9613(l),

9   Defendants/Counter-Claimants have provided a copy of this Counter-Complaint to

10  the Attorney General of the United States and the Administrator of the EPA.

11                      **SECOND COUNTERCLAIM FOR RELIEF**

12  **(Federal Declaratory Relief Under CERCLA and Declaratory Judgment Act)**

13       70.    Defendants/Counter-Claimants reallege and incorporate by reference

14  paragraphs 1 through 69 as though fully set forth herein.

15       71.    CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that in any

16  action for recovery of response costs, the court shall enter a declaratory judgment

17  on liability for response costs or damages that will be binding in any subsequent

18  actions concerning response costs or damages.

19       72.    The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n

20  a case of actual controversy within its jurisdiction . . . , any court of the United

21  States . . . may declare the rights and other legal relations of any interested party

22  seeking such declaration, whether or not further relief is or could be sought."

23       73.    The City constitutes a "person" within the meaning of CERCLA

24  § 101(21), 42 U.S.C. § 9601(21).

74.    The COCs are "hazardous substance[s]" within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

75.    The City is the current owner and/or operator of the City's municipal sewer-storm water system, a "facility" under CERCLA § 101(9), 42 U.S.C. § 9601(9), that has released, continues to release, and threatens to release COCs into the Spokane River.

76.    The City is the current owner and/or operatory of the City's wastewater treatment system, a "facility" under CERCLA § 101(9), 42 U.S.C. § 9601(9), that has released, continues to release, and threatens to release COCs into the Spokane River.

77.    The City has admitted in its Complaint that its municipal sewer-storm water system and wastewater treatment system have discharged and released, and continue to discharge and release, hazardous substances, into the Spokane River (*see* Compl., ¶¶ 5, 21-24).

78.    The City is a liable and responsible party under CERCLA § 107(a), 42 U.S.C. § 107(a), because it is an "owner" and/or "operator" of a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9), from which there have been "releases" and threatened "releases," within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22), of "hazardous substances," within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

79.    Defendants/Counter-Claimants have paid and will continue to pay necessary response costs consistent with the National Contingency Plan, within the meaning of CERCLA § 101(31), 42 U.S.C. § 9601(31), including costs to assess

1   and investigate contamination caused by the City's releases and/or disposal of

2   hazardous substances to the Spokane River.

3       80.    Additionally, if Defendants/Counter-Claimants are found liable to the

4   City for contamination of the Spokane River, Defendants/Counter-Claimants will

5   incur costs to investigate and/or remediate the hazardous substances that the City

6   has released and/or disposed of to the Spokane River.

7       81.    Defendants/Counter-Claimants allege that the City is strictly liable, in

8   whole or in part, for any future response costs incurred by, or awarded against,

9   Defendants/Counter-Claimants.

10      82.    Defendants/Counter-Claimants are informed and believe and on that

11  basis allege that the City denies any liability for such response costs.

12      83.    Thus, there has arisen and now exists an actual controversy between

13  Defendants/Counter-Claimants and the City relating to liability and responsibility

14  under CERCLA for response costs, if any, necessary to abate or otherwise respond

15  to the alleged release or threatened release into the Spokane River of COCs in

16  connection with the City's municipal sewer-storm water system and wastewater

17  treatment system.  The controversy is of sufficient immediacy and reality to

18  warrant the issuance of a declaratory judgment.

19      84.    Absent a judicial declaration setting forth the parties' rights and

20  obligations, a multiplicity of actions may result, and Defendants/Counter-

21  Claimants may be obligated in the future to pay costs and damages that, under

22  CERCLA, are in fact the responsibility of the City.

23      85.    Pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and the

24  Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Defendants/Counter-Claimants

are entitled to a declaration from this Court that the City is jointly and severally liable to Defendants/Counter-Claimants for future response costs incurred by Defendants/Counter-Claimants in connection with the Spokane River, and request judgment in their favor as set forth herein.  Such a declaration would avoid the potential for a multiplicity of actions and effectuate a just and speedy resolution of the issues and liabilities.

## **PRAYER FOR RELIEF**

WHEREFORE, having fully answered the Complaint, Defendants/Counter-Claimants pray for judgment and relief, as follows:

(1)    for Plaintiff's Complaint to be dismissed with prejudice;

(2)    for damages, and/or restitution under CERCLA for past and future response costs, including reasonable attorneys' fees, expert witness' fees, oversight costs, and interest incurred by Defendants/Counter-Claimants to investigate and/or remediate the Spokane River, in an amount to be proven at trial;

(3)    for a judicial determination under CERCLA and the federal Declaratory Judgment Act that the City is liable for future response costs, including reasonable attorneys' fees, expert witness' fees, oversight costs, and interest incurred by Defendants/Counter-Claimants to investigate and/or remediate the Spokane River;

(4)    for Defendants'/Counter-Claimants' costs of suit, reasonable attorneys' fees, consulting fees, expert witness fees, and other fees and expenses incurred herein; and

(5)    for such other and further relief as the Court may deem just and proper.

1  Dated:  November 23, 2016          LEE & HAYES, PLLC

2                                     By:  s/ Geana M. Van Dessel
                                          Geana M. Van Dessel, WSBA #35969
3                                         Bryce J. Wilcox, WSBA #21728
                                          Lee & Hayes PLLC
4                                         601 W. Riverside Avenue, Suite 1400
                                          Spokane, WA 99201
                                          Phone: (509) 324-9256
5                                         Emails:   geanav@leehayes.com
                                                    bryce@leehayes.com

6                                         Brent J. Gilhousen, WSBA #5153
                                          P.O. Box 1345
7                                         Anacortes, WA  98221-6345
                                          Phone: (314) 302-9300
8                                         Email:    brent.gilhousen@earthlink.net

                                          Robert M. Howard, CSBA #145870
9                                         (Admitted Pro Hac Vice)
                                          Kelly E. Richardson, CSBA #210511
10                                        (Admitted Pro Hac Vice)
                                          Andrea M. Hogan, CSBA #238209
11                                        (Admitted Pro Hac Vice)
                                          Latham & Watkins LLP
12                                        12670 High Bluff Drive
                                          San Diego, California  92130
                                          Phone:  (858) 523-5400
13                                        Emails:   robert.howard@lw.com
                                                    kelly.richardson@lw.com
14                                                  andrea.hogan@lw.com

15                                        *Attorneys for Defendants Monsanto
                                          Company, Solutia Inc., and Pharmacia LLC*

16

17

18

19

20

21

22

23

24

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 59

1

2                    <u>**CERTIFICATE OF SERVICE**</u>

3       I hereby certify that on November 23, 2016, I electronically filed the

4   foregoing with the Clerk of the Court using the CM/ECF System which in turn

5   automatically generated a Notice of Electronic Filing (NEF) to all parties in the

6   case who are registered users of the CM/ECF system. The NEF for the foregoing

7   specifically identifies recipients of electronic notice.

8

9                                  *s/ Geana M. Van Dessel*
                                    Geana M. Van Dessel, WSBA #35969
10                                  Lee & Hayes PLLC
                                    601 W. Riverside Avenue, Suite 1400
11                                  Spokane, WA 99201
                                    Phone: (509) 324-9256
12                                  Emails:  geanav@leehayes.com

13                                  *Attorneys for Defendants Monsanto*
                                    *Company, Solutia Inc., and Pharmacia LLC*

14

15

16

17

18

19

20

21

22

23

24

DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS - 60