1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 14, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CITY OF SPOKANE, a municipal
corporation located in the County of
Spokane, State of Washington,

Plaintiff,

v.

MONSANTO COMPANY, SOLUTIA
INC., and PHARMACIA
CORPORATION, and DOES 1 through
100,

Defendants.

No.   2:15-CV-00201-SMJ

**ORDER GRANTING PLAINTIFF'S
MOTION TO DISMISS
COUNTERCLAIMS**

## I.   INTRODUCTION

In July 2015, the City of Spokane filed this action against the Monsanto Company, Solutia Inc., and Pharmacia Corporation (collectively "Monsanto") alleging that Monsanto was responsible for polychlorinated biphenyl (PCB) contamination in the Spokane River. ECF No. 1. Spokane alleged public nuisance, products liability, negligence, and equitable indemnity claims. ECF No. 1 at 27–34. On October 26, 2016, the Court dismissed Spokane's common-law products-liability claim for lack of standing, but the Court denied Monsanto's request to

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 1

1    dismiss each of Spokane's other claims. ECF No. 74. On November 8, 2016,

2    Monsanto answered Spokane's complaint and counterclaimed against Spokane for

3    cost recovery and declaratory judgment under the Comprehensive Environmental

4    Response, Compensation, and Liability Act of 1980 (CERCLA) and Declaratory

5    Judgment Act, alleging that Spokane is responsible for PCB contamination in the

6    River.[1] Spokane now moves do dismiss Monsanto's CERCLA counterclaims. ECF

7    No. 83.

8        Spokane argues that Monsanto's counterclaims must be dismissed for three

9    alternative reasons: first, because Monsanto lacks standing; second, because

10   Monsanto's interests are not within the zone of interests CERCLA was intended to

11   protect; and third, because Monsanto cannot establish the elements necessary to

12   prevail on a CERCLA cost-recovery claim. ECF No. 83 at 3–15. Because Monsanto

13   alleges an injury in fact—response costs relating to PCB contamination in the

14   Spokane River—that is fairly traceable to Spokane's alleged discharges into the

15   River and would be redressed by a favorable decision, Monsanto has established

16   Article III standing. And Monsanto's interest in recovering response costs from a

17   party it alleges is responsible for contamination falls within CERCLA's zone of

18   interests. However, Monsanto fails to allege facts plausibly showing that it has

19   _____

20   [1] Monsanto represents that it intends to move to amend its answer to add additional counterclaims pursuant to state and federal law following completion of the required notice processes for those claims. ECF No. 79 at 36–38.

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 2

1  incurred or will incur response costs that are necessary and consistent with the

2  national contingency plan, as required to state a CERCLA cost-recovery claim.

3  Accordingly, and as discussed in greater detail below, Monsanto's counterclaims

4  under CERCLA and the Declaratory Judgment Act are dismissed.

5                              ## II.  BACKGROUND

6       The Spokane River is contaminated with PCBs and listed on the Washington

7  State Water Quality Assessment list of impaired water bodies under section 303(d)

8  of the Clean Water Act (CWA). ECF No. 1 at 4. Monsanto produced PCBs in the

9  United States from 1935 until the late 1970s. ECF No. 1 at 2; ECF No. 79 at 39.

10 Spokane alleges that Monsanto was aware for decades that PCBs were toxic and

11 contaminating natural resources and living organisms. ECF No. 1 at 2, 16–25.

12 Spokane filed this action alleging that Monsanto is responsible for, and liable for

13 resulting damages from, PCB contamination in the River.[2] ECF No. 1.

14      In its answer, Monsanto alleges that PCBs have numerous origins other than

15 Monsanto's manufacturing, that Spokane authorized and continues to authorize the

16 use of products containing PCBs, and that Spokane is responsible for discharging

17 PCB's into the River. ECF No. 79 at 39–42. Accordingly, Monsanto counterclaims

18 that Spokane is liable under CERCLA for costs associated with cleaning up PCBs

19 _____

20 [2] A more detailed discussion of Spokane's factual allegations and legal claims is
contained in the Court's order addressing Monsanto's motion to dismiss. ECF No.
74.

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 3

and other contaminants in the Spokane River. ECF No. 79 at 44–58. Monsanto alleges the following facts in support of its counterclaims:

Spokane discharged untreated sewage into the Spokane River prior to the construction of Spokane's wastewater treatment system in 1958. ECF No. 79 at 44. Since 1958, Spokane has discharged sewage, wastewater, and storm water containing contaminates, including PCBs, through its wastewater and storm water systems. ECF No. 79 at 45. Spokane's reclamation facility and combined sewer overflows are regulated by an NPDES waste discharge permit. ECF No. 79 at 45. During heavy rain or snowmelt events, the combined system may become overwhelmed, resulting in direct discharge of untreated sewage and wastewater, which include PCBs, into the River. ECF No. 79 at 45–46.

In 1984, the Washington Supreme Court held that Spokane discharged sewage into the River in a manner constituting a public nuisance, *Miotke v. Spokane*, 678 P.2d 803, 817 (Wash. 1984), *abrogated on other grounds by Blue Sky Advocates v. State*, 727 P.2d 644 (Wash. 1986). ECF No. 79 at 46. Additionally, Spokane has received notice letters on several occasions concerning discharges allegedly in violation of the City's NPDES permit. ECF No. 79 at 47. The combined system has experienced over 500 overflow events in the last three years. ECF No. 79 at 47–49.

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 4

1    Spokane also has extensive, separate storm-water systems, which discharge

2    untreated storm water into the Spokane River and Latah Creek at over 100 locations.

3    ECF No. 79 at 49. These systems are regulated by a municipal storm water permit

4    issued by the Washington State Department of Ecology, which, among other things,

5    requires Spokane to use "all known, available, and reasonable methods of

6    prevention, control and treatment to prevent and control pollution to the waters of

7    the State of Washington." ECF No. 79 at 49–50. Monitoring of three separate storm

8    water systems between 2012 and 2014 revealed PCB contamination in excess of

9    State water-quality standards. ECF NO. 79 at 50.

10    Spokane continues to use, purchase, and dispose of PCB-containing products.

11    ECF No. 79 at 51. These include Freez-Gard road de-icers and Hydroseed erosion

12    control products. ECF No. 79 at 51.

13    Monsanto alleges that it has incurred response costs, "including the costs of

14    investigation of PCB sources into the Spokane River" and potential "regulatory,

15    litigation, and other response costs" as a result of Spokane's discharges. ECF NO.

16    79 at 43, 53–55.

17    ### III.  MOTION TO DISMISS STANDARD

18    A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a

19    cognizable legal theory or failure to allege sufficient facts to support a cognizable

20    legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Taylor*, 780 F.3d at 935 (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.  DISCUSSION

### A.    Monsanto has standing under Article III of the Constitution to bring its counterclaims.

The Supreme Court has identified three requirements that constitute the "irreducible constitutional minimum of standing":

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 6

1    action of the defendant, and not the result of independent action of
2    some third party not before the court. Third, it must be likely, as
     opposed to merely speculative, that the injury will be redressed by a
3    favorable decision.

4    *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and

5    quotation marks omitted). "The party invoking federal jurisdiction bears the

6    burden of establishing these elements." *Id.* at 561.

7         Monsanto adequately alleges an injury in fact for standing purposes.

8    Spokane argues that Monsanto does not and cannot allege an interest in the

9    Spokane River that has been affected by the City's discharges. ECF No. 83 at 5.

10   But Monsanto's alleged injury does not arise from an interest in the Spokane

11   River. Rather, Monsanto alleges that it has suffered a direct economic injury

12   because it has "paid and will continue to pay necessary response costs consistent

13   with the National Contingency Plan, within the meaning of CERCLA § 101(31),

14   42 U.S.C. § 9601(31), including costs to assess and investigate contamination

15   caused by the City's releases and/or disposal of hazardous substances to the

16   Spokane River." ECF No. 79 at 54.

17        Spokane also suggests that Monsanto's alleged "response costs" are not a

18   cognizable injury in fact because the costs arise from the City's litigation against

19   Monsanto. ECF No. 83 at 5. While a plaintiff "cannot manufacture [an] injury by

20   incurring litigation costs or simply choosing to spend money fixing a problem that

     otherwise would not affect the organization at all," *La Asociacion de*

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 7

1    *Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.

2    2010), no authority appears to extend this rule to bar a defendant from alleging

3    litigation-related costs as the basis for standing in a counterclaim, and there is no

4    basis to extend the rule here. There is no indication that the response costs alleged

5    by Monsanto, whether or not they are litigation related, were undertaken for the

6    purpose of creating standing for Monsanto's counterclaims.

7          Monsanto also adequately alleges that its injuries are traceable to Spokane's

8    discharge of PCBs into the river. Spokane is correct that, as alleged, the direct

9    cause of Monsanto's injuries is this litigation. *See* ECF No. 83 at 6. Monsanto has

10   pleaded no facts indicating that in the absence of this lawsuit, it would be

11   expending *any* resources on investigating, assessing, or cleaning up contamination

12   in the Spokane River. However, Monsanto makes substantial factual allegations

13   supporting its claim that discharges from Spokane's sewer and storm water

14   systems are responsible for some significant portion of the PCB contamination in

15   the Spokane River, and Spokane's discharges are therefore a cause of this

16   litigation and Monsanto's resultant response costs. Accordingly, on the facts

17   alleged by Monsanto, there is a causal connection between PCB contamination

18   from Spokane's sewer and storm water systems and Monsanto's alleged response

19   costs.

20

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 8

1    Finally, there is little question that Monsanto's alleged injury would be

2    redressed if the Court granted the relief Monsanto requests—damages and

3    restitution "for past and future response costs."

4    **B.    Monsanto's claims fall within CERCLA's zone of interests.**

5    In addition to Article III standing, in order to bring a cause of action

6    pursuant to a federal statute, a plaintiff's asserted interests must fall within the

7    "zone of interests" protected by the statute invoked. *Lexmark Int'l, Inc. v. Static*

8    *Control Components, Inc.*, 134 S. Ct. 1377, 1388–89 (2014). "[W]hether a

9    plaintiff's claims are within a statute's zone of interests is not a jurisdictional

10   question." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1156 (9th Cir.

11   2015) (citing *Lexmark*, 134 S. Ct. at 1387–88). Rather, the inquiry is one of

12   statutory interpretation, which asks whether a particular class of plaintiff's has a

13   cause of action under a particular substantive statute. *Lexmark*, 134 S. Ct. at 1387;

14   *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1120–21 (9th Cir. 2015).

15   The zone-of-interests test is most frequently applied as a limitation on the

16   right of action conferred by the Administrative Procedure Act (APA), but the

17   Supreme Court has held that it applies "to all statutorily created causes of action."

18   *Lexmark*, 134 S. Ct. at 1388 (citing *Bennett v. Spear*, 520 U.S. 154, 163 (1997)).

19   In the APA context, "the test is not 'especially demanding'"; *Id*. (quoting *Match–*

20   *E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199,

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 9

2210 (2012)), it requires only that the Plaintiff's interests "must be 'arguably within the zone of interests to be protected or regulated by the statute,'" *Match–E–Be–Nash–She–Wish*, 132 S. Ct. at 2210 (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). But "the breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the 'generous review provisions' of the APA may not do so for other purposes." *Lexmark*, 134 S. Ct. at 1389 (quoting *Bennett*, 520 U.S. at 163).

In determining whether a plaintiff's claims fall within a statute's zone of interests, courts should look first to the statute's stated purposes. *See Lexmark*, 134 S. Ct. at 1389 ("Identifying the interests protected by the Lanham Act . . . requires no guesswork, since the Act includes an unusual, and extraordinarily helpful, detailed statement of the statute's purposes." (internal quotation marks omitted)). If a plaintiff's claims are not expressly included in a statute's stated purposes, a court may consider whether Congress nevertheless contemplated and intended to protect the plaintiff's interests. *See Ray Charles Found.*, 795 F.3d at 1122 (concluding that although Foundation's interest was not expressly identified, the interest was one "Congress contemplated, regulated, and protected in enacting the [the Copyright Act's] termination provisions").

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 10

1    Spokane argues that CERCLA was not intended to protect manufacturers of

2 chemicals from the costs of defending tort suits for damages caused by those

3 chemicals or to shift responsibility to a claimant whose property is contaminated.

4 ECF No. 83 at 7–8. Monsanto argues that its interests are consistent with

5 CERCLA's purpose of ensuring the responsible party pays for cleanup of

6 contamination. ECF No. 94 at 10.

7    CERCLA does not contain a detailed purpose statement that is dispositive

8 of what interests it was intended to protect. However, CERCLA has been

9 examined in detail in a number of precedential opinions, which have identified

10 two primary purposes of the Act: "(1) to ensure the prompt and effective cleanup

11 of waste disposal sites, and (2) to assure that parties responsible for hazardous

12 substances bore the cost of remedying the conditions they created." *Carson*

13 *Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir. 2001) (quoting

14 *Pinal Creek Grp. v. Newmont Mining Corp.*, 118 F.3d 1298, 1300 (9th Cir.

15 1997)). CERCLA's second purpose is accomplished in part through authorizing

16 "private parties to institute civil actions to recover the costs involved in the

17 cleanup of hazardous wastes from those responsible for their creation." *3550*

18 *Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir.

19 1990) (citing 42 U.S.C. § 9607(a)(1–4)).

20

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 11

Monsanto alleges that Spokane is responsible for contaminating the

Spokane River with PCBs and other hazardous waste. ECF No. 79 at 45–50. And

Monsanto's counterclaims seek to recover costs it has been required to expend or

may expend in the future in investigating and responding to the contamination.

ECF No. 79 at 58. In other words, Monsanto's alleged interest here is in

transferring response costs from itself to the party it alleges is actually responsible

for PCB and other hazardous waste contamination in the Spokane River. That

interest falls squarely within CERCLA's second purpose. Accordingly,

Monsanto's alleged interests are within the zone of interests CERCLA was

intended to protect.

**C.    Monsanto fails to state a claim under CERCLA.**

To prevail on a claim for private cost recovery under Section 107 of

CERCLA, a plaintiff must establish that:

> (1) the site on which the hazardous substances are contained is a
> "facility" under CERCLA's definition of that term, Section 101(9),
> 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any
> "hazardous substance" from the facility has occurred, 42 U.S.C. §
> 9607(a)(4); (3) such "release" or "threatened release" has caused the
> plaintiff to incur response costs that were "necessary" and "consistent
> with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and
> (a)(4)(B); and (4) the defendant is within one of four classes of
> persons subject to the liability provisions of Section 107(a).

*Carson*, 270 F.3d at 870–71 (quoting *3550 Stevens Creek Assocs.*, 915 F.2d at

1358) (internal quotation marks omitted).

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 12

Spokane, for the purpose of this motion, does not dispute whether Monsanto has adequately alleged the first, second, and fourth elements of a Section 107 cost-recovery action. ECF No. 83 at 10. Instead, Spokane argues that even if Monsanto can establish those elements, Monsanto cannot establish the third element—that it incurred necessary response costs caused by Spokane's alleged release of hazardous substances. ECF No. 83 at 10–14. Spokane further argues that costs incurred to defend litigation are not recoverable "response costs." ECF No. 83 at 12–14. Monsanto argues that it has adequately alleged that it has incurred necessary response costs as a result of Spokane's discharges and that a fact-specific inquiry into whether its costs were necessary is inappropriate at the motion to dismiss stage. ECF No. 94 at 11–13. Monsanto also argues that its costs to assess and investigate contamination in the Spokane River are recoverable, ECF No. 94 at 13–14, and that even some litigation-related costs may be recoverable. ECF No. 94 at 19–20.

"Necessary costs are costs that are 'necessary to the containment and cleanup of hazardous releases." *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263, 1271 (E.D. Cal. 1997) (quoting *United States v. Hardage*, 982 F.2d 1436, 1448 (10th Cir. 1992)). "[C]osts cannot be 'necessary' to the containment and cleanup of hazardous releases 'absent some nexus between the alleged

response cost and an actual effort to respond to environmental contamination.'"

*Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005).

Monsanto makes the following allegations concerning the costs it allegedly has and will continue to incur:

> As a result of the City's discharges, Defendants/Counter-Claimants have incurred and will continue to incur response costs to investigate alleged PCB contamination in the Spokane River. In addition to past costs, Defendants/Counter-Claimants will continue to incur response costs as the investigation proceeds. Defendants/Counter-Claimants have incurred legal and other costs defending the legal action(s) attributable to and caused by the City's own discharges.
>
>                  .        .        .
>
> Defendants/Counter-Claimants have paid and will continue to pay necessary response costs consistent with the National Contingency Plan, within the meaning of CERCLA § 101(31), 42 U.S.C. § 9601(31), including costs to assess and investigate contamination caused by the City's releases and/or disposal of hazardous substances to the Spokane River.
>
> Additionally, if Defendants/Counter-Claimants are found liable to the City for contamination of the Spokane River, Defendants/Counter-Claimants will incur costs to investigate and/or remediate the hazardous substances that the City has released and/or disposed of to the Spokane River.

ECF No. 79 at 53–55.

Monsanto is correct that a fact-specific inquiry into whether its response costs were necessary is not appropriate at the Rule 12(b)(6) stage, but Monsanto's conclusory allegations here are simply insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported

ORDER DISMISSING
CERCLA COUNTERCLAIMS - 14

by mere conclusory statements, do not suffice."). Monsanto alleges no facts from which the Court could plausibly conclude that Monsanto's alleged response costs were necessary to the actual containment and cleanup of hazardous releases. Neither does Monsanto allege any facts from which the Court may conclude that its alleged response costs are consistent with the national contingency plan, which sets out extensive requirements governing hazardous substance response. *See* 40 C.F.R. §§ 300.400–.440. Further, Monsanto has not alleged any facts that plausibly show that it has incurred "response costs" other than for the purpose of defending against the claims brought against it by Spokane. Such costs are not recoverable. *See Atl. Richfield Co. v. United States*, 181 F. Supp. 3d 898, 915 (D. N.M. 2016) (holding that litigation costs are not recoverable under CERCLA § 107). Accordingly, Monsanto fails to plead sufficient facts plausibly showing that it has incurred or will incur costs that are necessary and consistent with the national contingency plan.

**D.    Monsanto fails to state a claim for declaratory relief under CERCLA or the Declaratory Judgment Act.**

An action for declaratory relief under Section 113 of CERCLA fails in the "in the absence of a substantive cause of action." *Chevron Envtl. Mgmt. Co.v. BKK Corp.*, 880 F. Supp. 2d 1083, 1091 (E.D. Cal. 2012) (quoting *Union Station Assocs., LLC. v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002)). The same rule applies to Monsanto's claim under the Declaratory

Judgment Act. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1007 (9th Cir. 2007). Accordingly, because Monsanto fails to state a claim under Section 107, Monsanto has no substantive claim for relief upon which to base declaratory judgment.

**E.    Monsanto's CERCLA counterclaims will be dismissed without prejudice.**

Spokane argues that Monsanto's counterclaims should be dismissed with prejudice because the defects in those counterclaims cannot be cured by an amended pleading. ECF No. 83 at 15–16. While it appears unlikely that Monsanto has incurred or will incur recoverable response costs that are necessary and consistent with the national contingency plan, it is not absolutely clear from the record that Monsanto has not incurred or will not incur such costs. Accordingly, the Court will not preemptively deny Monsanto the opportunity to amend its answer to include facts sufficient to state a CERCLA cost-recovery claim, if such facts exist. The dismissal of Monsanto's counterclaims is without prejudice.

**V.    CONCLUSION**

For the reasons discussed, Monsanto has failed to state a claim upon which relief may be granted under CERCLA or the Declaratory Judgment Act.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion to Dismiss Monsanto's Counterclaims, **ECF No. 83**, is **GRANTED**.

2.    Defendant's First Counterclaim for Relief (Cost Recovery Under CERCLA), ECF No. 79 at 53–55, and Second Counterclaim for Relief (Federal Declaratory Relief Under CERCLA and Declaratory Judgment Act), ECF No. 55–58, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 14th day of February 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER DISMISSING
CERCLA COUNTERCLAIMS **-** 17