FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 10, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CITY OF SPOKANE, a municipal corporation located in the County of Spokane, State of Washington,<br><br>                    Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY; SOLUTIA INC.; and PHARMACIA CORPORATION; and DOES 1 through 100,<br><br>                    Defendants. | No.  2:15-CV-00201-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS** |

## I.  INTRODUCTION

The City of Spokane filed this action against the Monsanto Company, Solutia Inc., and Pharmacia Corporation (collectively "Monsanto") alleging that Monsanto is responsible for polychlorinated biphenyl (PCB) contamination in the Spokane River under several state tort-law theories of liability. ECF No. 1. Monsanto answered Spokane's complaint and counterclaimed for cost recovery and declaratory judgment under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) and Declaratory Judgment

Act, alleging that Spokane is liable for PCB contamination in the River. ECF No. 79. The Court dismissed Monsanto's counterclaims because Monsanto failed to allege facts sufficient to state a plausible CERCLA cost-recovery claim, ECF No. 100, but the Court granted Monsanto's motion for leave to file amended counterclaims.

In its amended counterclaims, Monsanto again alleges CERCLA and declaratory relief claims, adding investigatory and analytical activities to its alleged response costs. ECF No. 153 at 74–75. Monsanto also adds claims for statutory violations of the Clean Water Act (CWA), regulatory violations of federal permits, and several state tort claims. *Id.* at 79–87. Spokane now moves to dismiss these amended counterclaims, arguing that Monsanto: does not allege a "response" sufficient to state a CERCLA claim, ECF No. 156. at 5–6; lacks standing to bring a CWA citizen suit, *id.* at 6–8; and fails to allege a cognizable injury sufficient to support its state-law tort claims, *id.* at 8–11.

The Court concludes that each of Monsanto's amended counterclaims fails to state a claim upon which relief may be granted. Monsanto fails to allege any new facts plausibly showing that it has incurred or will incur response costs that are necessary and consistent with the national contingency plan, as required to state a CERCLA cost-recovery claim. Monsanto fails to allege a basis for Article III standing to bring its CWA citizen-suit claim because it cannot show that its alleged

injury is traceable to actions by Spokane or would be redressed by the remedies available under the CWA. As for Monsanto's tort claims, Monsanto fails to allege any injury or potential injury caused by actions other than its own. Accordingly, Spokane's motion to dismiss Monsanto's counterclaims is granted.

## II. BACKGROUND

The Spokane River is contaminated with PCBs and listed on the Washington State Water Quality Assessment list of impaired water bodies under section 303(d) of the Clean Water Act (CWA). ECF No. 1 at 3. Monsanto produced PCBs in the United States from 1935 until the late 1970s. ECF No. 1 at 2; ECF No. 79 at 39. Spokane alleges that Monsanto was aware for decades that PCBs were toxic and contaminating natural resources and living organisms. ECF No. 1 at 2, 16–25. Spokane filed this action alleging that Monsanto is responsible for, and liable for resulting damages from, PCB contamination in the River.[1] ECF No. 1.

In its amended answer, Monsanto alleges that PCBs have numerous origins other than Monsanto's manufacturing, that Spokane authorized and continues to authorize the use of products containing PCBs, and that Spokane is responsible for discharging PCB's into the River. ECF No. 153 at 51–52. Accordingly, Monsanto counterclaims that Spokane is liable under CERCLA for costs associated with

_____

[1] A more detailed discussion of Spokane's factual allegations and legal claims is contained in the Court's order addressing Monsanto's motion to dismiss. ECF No. 74.

ORDER DISMISSING
AMENDED COUNTERCLAIMS - 3

cleaning up PCBs and other contaminants in the Spokane River, that Spokane has committed statutory and regulatory violations of CWA effluent standards, and that Spokane is liable for costs incurred by Monsanto under theories of negligence, equitable indemnity, contribution, and unjust enrichment. ECF. No. 153 at 73–87. Monsanto alleges the following facts in support of its counterclaims:[2]

Spokane discharged untreated sewage into the Spokane River prior to the construction of Spokane's wastewater treatment system in 1958. ECF No. 153 at 55. Since 1958, Spokane has discharged sewage, wastewater, and storm water containing contaminants, including PCBs, through its wastewater and storm water systems. ECF No. 153 at 55. Spokane's reclamation facility and combined sewer overflows are regulated by an NPDES waste discharge permit. ECF No. 153 at 56. During heavy rain or snowmelt events, the combined system may become overwhelmed, resulting in direct discharge of untreated sewage and wastewater, which includes PCBs, into the River. ECF No. 153 at 56.

In 1984, the Washington Supreme Court held that Spokane discharged sewage into the River in a manner constituting a public nuisance, *Miotke v. Spokane*, 678 P.2d 803, 817 (Wash. 1984), *abrogated on other grounds by Blue Sky Advocates v. State*, 727 P.2d 644 (Wash. 1986). ECF No. 153 at 56–57.

---

[2] The Court accepts these alleged facts as true for the purpose of considering this motion to dismiss. *See Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) (citation omitted).

ORDER DISMISSING
AMENDED COUNTERCLAIMS - 4

Additionally, Spokane has received notice letters on several occasions concerning discharges allegedly in violation of the City's NPDES permit. ECF No. 153 at 57. The combined system has experienced over 500 overflow events in the last three years. ECF No. 153 at 58.

Spokane also has extensive, separate storm water systems, which discharge untreated storm water into the Spokane River and Latah Creek at over 100 locations. ECF No. 153 at 59. These systems are regulated by a municipal storm water permit issued by the Washington State Department of Ecology, which, among other things, requires Spokane to use "all known, available, and reasonable methods of prevention, control and treatment to prevent and control pollution to the waters of the State of Washington." ECF No. 153 at 60. Monitoring of three separate storm water systems between 2012 and 2014 revealed PCB contamination in excess of State water-quality standards. ECF No. 153 at 61.

Spokane continues to use, purchase, and dispose of PCB-containing products. ECF No. 153 at 62. These include Freez-Gard road de-icers and Hydroseed erosion control products. ECF No. 153 at 62. Sewer storm water contamination also occurs from disposal of building materials that contain PCBs because Spokane does not identify or remove PCB-containing materials prior to construction, renovation, or demolition. ECF No. 153 at 65. Spokane also owns several sites near the "Spokane River that have been identified for investigation and cleanup by EPA and/or

1  [Ecology]," and which discharge PCBs and other contaminants of concern into the

2  river. ECF No. 153 at 66.

3       Monsanto alleges that it has incurred response and defense costs, including:

4       (1) identification and analysis of historic and current sources of
     potential contamination . . . (2) analysis of the potential impacts on the

5       Spokane River . . . (3) review and analysis of sampling and
     investigation data . . . (4) investigation and analysis of the

6       contaminated sediments . . . (5) analysis of potential source control and
     remediation options . . . (6) analysis of PCBs in the Spokane River . . .

7       (7) [Potentially Responsible Party] search activities . . . and (8)
     numerous other activities.

8  ECF No. 153 at 70–71. Monsanto also alleges Spokane's discharges of PCBs has

9  created "significant contingent liability" for Monsanto, which "may arise from

10  lawsuits, such as the instant one" and "potential future federal, state or local

11  regulatory actions." ECF NO. 153 at 69.

12  ### III.  MOTION TO DISMISS STANDARD

13       A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a

14  cognizable legal theory or failure to allege sufficient facts to support a cognizable

15  legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) (citation omitted).

16  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

17  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

18  *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

19  570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual

20  content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citation omitted). A court must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Taylor*, 780 F.3d at 935 (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009)). However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.  DISCUSSION

**A.  Monsanto fails to state a claim under CERCLA.**

To prevail on a claim for private cost recovery under Section 107 of CERCLA,[3] a plaintiff must establish that:

> (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and

---

[3] As discussed in the order dismissing Monsanto's initial CERCLA counterclaim, Monsanto has Article III standing to bring a CERCLA claim and Monsanto's claims fall within CERCLA's zone of interest. ECF No. 100 at 6–12.

(a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

*Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 870–71 (9th Cir. 2001) (quoting *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir. 1990)) (internal quotation marks omitted). Spokane argues that Monsanto fails to adequately allege the third element—that it has incurred necessary response costs caused by Spokane's release of hazardous substances. ECF No. 156 at 5–6.

The potential to recover costs under CERCLA depends on whether the costs are related to a "response," whether those response costs are "necessary" under the national contingency plan, and whether those costs are "consistent with the national contingency plan." *See Key Tronic Corp. v. United States*, 511 U.S. 809, 813 (1994) (citing 42 U.S.C. § 9607(a)(4)(B)). "Response" and "respond" mean "remove, removal, remedy, and remedial action" and "include enforcement activities related thereto." *Key Tronic*, 511 U.S. at 813 (quoting 42 U.S.C. § 9601(25)). "Necessary costs are costs that are 'necessary to the containment and cleanup of hazardous releases." *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263, 1271 (E.D. Cal. 1997) (quoting *United States v. Hardage*, 982 F.2d 1436, 1448 (10th Cir. 1992)). "[C]osts cannot be deemed 'necessary' to the containment and cleanup of hazardous releases absent some nexus between the alleged response cost and an

actual effort to respond to environmental contamination." *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005).

Monsanto argues that it has adequately alleged it has incurred necessary response costs and that its alleged investigative costs are recoverable even to the extent the costs may be related to litigation. ECF No. 160 at 5–9. Monsanto is correct that certain investigative costs may be recoverable under CERCLA. *See Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir. 1986) ("Section 107(a)(2)(B) allows recovery of 'costs of response,' which includes the costs of 'such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances.'"). With respect to legal costs, the rule is much narrower than Monsanto suggests—the Supreme Court has approved cost recovery for certain legal expenses relating to identifying other potentially responsible parties. *Key Tronic*, 511 U.S. at 820. But where Monsanto's argument fails is not on whether the costs it has incurred are "necessary" under CERCLA, it is on whether those costs are connected to a "response."

CERCLA § 107(a) "permits a [potentially responsible party] to recover only the costs it has 'incurred' in *cleaning up a site*." *United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007) (citing 42 U.S.C. § 9607(a)(4)(B)) (emphasis added). As the Supreme Court explained in *Atlantic Research*, in order to bring a cost recovery action under section 107, a plaintiff must have been the party that paid

for the cleanup of a facility—i.e., the "response." *Id.* at 138–139. In other words, section 107 provides a mechanism for a party that has incurred costs cleaning up a facility to recover those costs from other potentially responsible parties by determining their respective liability for the response. *See id.* It does not provide a means for a party that fears it may face liability for some potential future cleanup costs to preemptively bring an action against another party it believes may be liable for those costs.

Monsanto makes the following allegations concerning the costs it allegedly has and will continue to incur:

> Defendants/Counter-Claimants have incurred response costs that would be necessary even in the absence of the present suit. Incurrence of these response costs is a necessary predicate for cleanup efforts, since identifying sources of PCB discharges and the locations of the resulting PCB deposits are requisite first steps to any cleanup.

> Additionally, the City's discharges and releases made incurrence of response costs necessary both due to the City's lawsuit and also to address other potential sources of contingent liability created by the City's conduct.

> .      .      .

> Defendants/Counter-Claimants have paid and will continue to pay necessary costs of response consistent with the National Contingency Plan, within the meaning of CERCLA § 101(31), 42 U.S.C. § 9601(31), including response costs to assess and investigate, assess, identify, trace, quantify and feasibly remove and/or remediate contamination caused by the City's releases and/or disposal of hazardous substances to the Spokane River.

Additionally, if Defendants/Counter-Claimants are found liable to the City for contamination of the Spokane River, Defendants/Counter-Claimants will incur additional response costs and damages to investigate, remove and/or remediate the hazardous substances that the City has released and/or disposed of to the Spokane River.

ECF No. 153 at 71, 74–75.

Monsanto's allegations contain no facts from which the Court could plausibly conclude that Monsanto's alleged costs were necessary to actual containment or cleanup of hazardous releases because there are no allegations that any containment or cleanup have been undertaken by Monsanto. Further, Monsanto has given no indication that it has undertaken these investigative activities for any purpose other than evaluating its liability and defending against legal claims. These costs are not recoverable. *See Atl. Richfield Co. v. United States*, 181 F. Supp. 3d 898, 915 (D. N.M. 2016) (citing *United States v. Hardage*, 982 F.2d 1436, 1448 (10th Cir. 1992) (holding that costs of defending against legal claims are not recoverable under CERCLA § 107). Accordingly, Monsanto fails to plead sufficient facts plausibly showing that it has incurred or will incur necessary response costs.

**B.    Monsanto fails to state a claim for declaratory relief under CERCLA or the Declaratory Judgment Act.**

An action for declaratory relief under Section 113 of CERCLA fails in the "in the absence of a substantive cause of action." *Chevron Envtl. Mgmt. Co. v.*

*BKK Corp.*, 880 F. Supp. 2d 1083, 1091 (E.D. Cal. 2012) (quoting *Union Station Assocs., LLC. v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002)). The same rule applies to claims under the Declaratory Judgment Act. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1007 (9th Cir. 2007). Accordingly, because Monsanto fails to state a claim under Section 107, Monsanto has no substantive claim for relief upon which to base declaratory judgment.

## C. Monsanto lacks Article III standing to bring a claim under the CWA's citizen suit provision.

"The CWA's citizen suit provision extends standing to the outer boundaries set by the 'case or controversy' requirement of Article III of the Constitution." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (citation omitted). Accordingly, the only standing question before the Court is whether Monsanto has established Article III standing to bring its CWA claim. *Id.* ("Because the statutory and constitutional standing issues . . . merge, the only standing issue . . . is whether the plaintiffs have standing under Article III to proceed to the merits of their lawsuit.") "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Monsanto fails to allege that the injuries it suffered are fairly traceable to Spokane's conduct, or that the alleged injuries will be redressed by remedies available in a CWA citizen suit.

1. <u>Monsanto does not allege an adequate causal connection between its injuries and Spokane's alleged CWA violations.</u>

Monsanto alleges that Spokane violates the CWA by discharging contaminated sewer and storm water into the Spokane River in violation of Spokane's NPDES and Phase II permits. ECF No. 153 at 79–83. These violations of the CWA have allegedly caused Monsanto harm by creating contingent liability for Monsanto based on the potential outcome of this litigation and other potential legal or regulatory action. ECF No. 153 at 83. Monsanto does not allege that it owns any property that is affected by contamination of the Spokane River, and Monsanto will have a legal obligation to respond to contamination in the Spokane River only as a result of a court judgment or settlement agreement in this action.[4] This alleged contingent liability is not fairly traceable to Spokane's conduct. If Monsanto is found to be liable in this case, it will be liable for its own conduct,

---

[4] Monsanto's allegations that it may be obligated to respond to contamination in the Spokane River based on undisclosed other potential legal or regulatory actions against it are hypothetical and speculative, and therefore insufficient to support standing. *See Friends of the Earth*, 528 U.S. at 181.

not Spokane's. *See* Wash. Rev. Code § 4.22.005 ("In an action based on fault seeking to recover damages . . . , any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault . . .").

2. The remedies provided for CWA citizen suits would not redress the injuries complained of by Monsanto.

CWA citizen suits permit injunctive relief to compel future compliance with CWA requirements as well as civil penalties paid to the United States Treasury. *Friends of the Earth*, 528 U.S. at 173. Despite being paid directly to the Treasury, civil penalties can redress environmental injuries alleged in citizen suits by encouraging defendants to end current violations and deter them from future violations. *Id.* at 186. Monsanto, however, does not address how either of these remedies will redress the contingent liability they complain of as an injury. Monsanto's alleged economic injury cannot be redressed by remedies that merely deter future violations because Monsanto's alleged injuries are based on remediation of already-existing contamination.

**D. Monsanto fails to state a claim for negligence under Washington law.**

Under Washington law, "[t]he elements of negligence are duty, breach, causation, and injury. Since the Washington State Legislature waived sovereign immunity for municipalities in 1967, municipalities are generally held to the same negligence standards as private parties." *Keller v. City of Spokane*, 44 P.3d 845, 848

(Wash. 2002) (citing *Hartley v. State*, 698 P.2d 77, 82 (Wash. 1985) (detailing the elements of negligence); *Bodin v. City of Stanwood*, 927 P.2d 240, 243–44 (Wash. 1996) (explaining that the same negligence standards generally apply to municipalities and private parties); Wash. Rev. Code § 4.96.010) (internal citations omitted). Monsanto fails to state a state-law negligence claim because Monsanto cannot establish that Spokane owed a duty to Monsanto, or that, if it did, breach of that duty caused Monsanto's harm.

1. <u>Monsanto fails to establish Spokane owed a duty to protect Monsanto from economic harm by violating water quality regulations.</u>

A duty can be established by common law principles or violation of a statute. *Bernethy v. Walt Failor's, Inc.*, 653 P.2d 280, 282 (Wash. 1982). "Whether a municipality owes a duty in a particular situation is a question of law." *Keller*, 44 P.3d at 848 (citing *Hansen v. Friend*, 824 P.2d 483, 485 (Wash. 1992)). Determining whether a duty is owed by a municipality requires the court to "decide not only who owes the duty, but also to whom the duty is owed, and what is the nature of the duty owed." *Id.* (citing *Wick v. Clark Cty.*, 936 P.2d 1201, 1206 (Wash. Ct. App. 1997) (Morgan, J., concurring)). The determination of whether a duty is owed to a plaintiff depends on whether the harm suffered was a foreseeable result of the risk of harm created by the defendant's conduct, without regard to the plaintiff's own fault. *Id.*; *see also Rikstad v. Holmberg*, 456 P.2d 355, 358 (Wash. 1969). "[T]he question is whether the actual harm fell within a general field of

danger which should have been anticipated." *Id.* (quoting *McLeod v. Grant Sch. Dist.*, 255 P.2d 360, 363 (Wash. 1953)); *see also M.H. v. Corp. of Catholic Archbishop of Seattle*, 252 P.3d 917, 919 (Wash. Ct. App. 2011).

Monsanto alleges that the duty owed by Spokane is a general duty of due care in operating and maintaining its sewer, wastewater, and storm water systems based on Spokane's federal and state permits and Washington law. ECF No. 160 at 13–14. However, Monsanto fails to offer any support for its position that this duty is owed to Monsanto or that the nature of the duty is to protect individuals from the harm Monsanto alleges—contribution costs associated with remediation of contamination.

Pursuant to statutes and permits, Spokane has certain duties relating to operating and maintaining its water treatment systems in a manner that avoids unlawful release of contaminants into surface and ground water. The foreseeable harm of breaching these duties is the contamination of waterways, including economic, recreational, and aesthetic harms. Those duties are owed to those with an economic, recreational, or aesthetic interest in foreseeable harm from the release of contaminated water. Monsanto has not alleged any such interest in land or water allegedly contaminated by Spokane's negligence.

//

//

2. Even if Spokane owed a duty to Monsanto, Monsanto fails to allege causation.

As discussed above, Monsanto's only alleged injury is the costs it may be required to pay if it is ultimately found liable or settles this case. If that occurs, Monsanto's liability will be limited to costs resulting from its own actions, not Spokane's. *See* Wash. Rev. Code § 4.22.005.

**E. Monsanto's claim for unjust enrichment based on a possible court judgment is absurd.**

A party is only liable for unjust enrichment if the party possesses the money or property of another and "in equity and good conscience" should not retain it. *Heaton v. Imus*, 608 P.2d 631, 632 (Wash. 1980) (internal quotation marks and citation omitted). Three elements must be satisfied to make a claim for unjust enrichment: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Norcon Builders, LLC v. GMP Homes VG, LLC*, 254 P.3d 835, 844 (Wash. Ct. App. 2011) (quoting *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008)) (internal quotation marks omitted).

Monsanto argues that any amount awarded to Spokane in a court judgment not directly related to cleaning up PCB contamination caused by Monsanto would be inequitable and unjust. Monsanto assumes by its argument that a court judgment on damages for Spokane would be unjust and inequitable. But Washington law

specifically provides, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault." Wash. Rev. Code § 4.22.005. Any contributory fault attributable to Spokane will ensure that a damages awarded would not constitute unjust enrichment.

Monsanto characterizes the Washington case *Young v. Young* as prescribing unjust enrichment as an offset to a jury award of damages. ECF No. 160 at 18. This characterization is simply false. *Young* was a quiet title action in which the defendants counterclaimed for improvements to the property. 191 P.3d 1258, 1260 (Wash. 2008). Monsanto's claims are clearly distinguishable from the unjust enrichment claims in *Young* because Monsanto is not attempting to offset improvements or other costs it has incurred that Spokane will benefit from. Monsanto fails to establish that the circumstances of a court judgment for Spokane could constitute an unjust benefit to Spokane and therefore cannot state a claim for unjust enrichment under Washington common law.

**F.    Monsanto fails to state a contribution or equitable indemnity claim under Washington Law.**

Washington law provides that "[a] right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury." Wash. Rev. Code § 4.22.040. This claim "only exists in limited circumstances, including where the plaintiff is free of fault

and judgment has been entered against two or more defendants." *Mazon v. Krafchick*, 144 P.3d 1168, 1174 (Wash. 2006). Accordingly, there is no basis for a defendant to bring a claim for contribution against the single plaintiff that may secure a judgment against it. Further, as noted, any comparative liability Spokane may have will be accounted for through a proportional reduction in any judgment against Monsanto. *See* Wash. Rev. Code § 4.22.005.

A claim for equitable indemnity is available only "where a legal duty exists between non-joint tortfeasors." *Sabey v. Howard Johnson & Co.*, 5 P.3d 730, 738–39 (Wash. App. 2000). Like contribution, there is no basis for a defendant to bring such a claim against a plaintiff who may secure a judgment against it, as the plaintiff's proportional liability will be addressed in any such judgment.

Monsanto could have an equitable indemnity or contribution claim against Spokane only if Spokane and Monsanto were determined to be liable to a third party for the same tort. Monsanto has not alleged any such liability.

## V.   CONCLUSION

For the reasons discussed, Monsanto has failed to state a claim upon which relief may be granted under CERCLA, the Declaratory Judgment Act, the CWA, or Washington tort law. Monsanto has already amended its CERCLA counterclaims once, and its current pleadings do not permit an inference that any set of facts exist that would permit Monsanto to state a plausible claim under its alleged theories of

liability. Accordingly, the Court finds that further amendment would be futile and dismisses each of Monsanto's counterclaims with prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion to Dismiss Monsanto's First Amended Counterclaims, **ECF No. 156**, is **GRANTED**.

2. Defendant's First Counterclaim for Relief (Cost Recovery Under CERCLA), ECF No. 153 at 73–75, Second Counterclaim for Relief (Federal Declaratory Relief Under CERCLA and Declaratory Judgment Act), ECF No. 153 at 76–79, Third Counterclaim for Relief (Violations of the CWA and the City's NPDES Permits), ECF No. 153 at 79–83, Fourth Counterclaim for Relief (Negligence), ECF No. 153 at 83–85, Fifth Counterclaim for Relief (Unjust Enrichment), ECF No. 153 at 85–86, Sixth Counterclaim for Relief (Contribution), ECF No. 153 at 86–87, and Seventh Counterclaim for Relief (Equitable Indemnification), ECF No. 153 at 87–88, are **DISMISSED WITH PREJUDICE**.

//

//

//

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 10th day of July 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge