# EXHIBIT E

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

No. 17-35641

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF WASHINGTON,

*Plaintiff–Appellee*,

v.

MONSANTO COMPANY, *ET AL.*,

*Defendants–Appellants.*

On Appeal from the United States District Court
for the Western District of Washington,
D.C. No. 2:17-cv-00053-RSL

## DEFENDANTS-APPELLANTS' OPENING BRIEF

Donald F. Zimmer, Jr.
Cheryl A. Sabnis
Anne M. Voigts
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
fzimmer@kslaw.com
csabnis@kslaw.com
avoigts@kslaw.com
Tel: 415.318.1200

Jennifer L. Campbell
Connie Sue Martin
Claire L. Rootjes
SCHWABE, WILLIAMSON &
WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
jcampbell@schwabe.com
csmartin@schwabe.com
crootjes@schwabe.com
Tel: 206.622.1711

December 20, 2017

*Counsel for Appellants Monsanto Company, et al.*

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellants Monsanto Company, Solutia Inc., and Pharmacia LLC respectfully submit the following corporate disclosure statement:

Defendant-Appellant Solutia Inc. is organized under the laws of Delaware, with its principal place of business in St. Louis, Missouri. Solutia Inc. is a wholly-owned subsidiary of Eastman Chemical Company ("Eastman"). Eastman is a publicly traded corporation organized under the laws of Delaware. Eastman does not have a parent corporation, and no publicly-held corporation owns 10% or more of its stock.

Defendant-Appellant Pharmacia LLC is a Delaware limited liability company. The sole member of Pharmacia LLC is Wyeth Holdings LLC, a Maine limited liability company. Wyeth Holdings LLC is wholly owned by Pfizer Holdings Americas Corporation, which is incorporated under the laws of Delaware, with its principal place of business in New York. Pfizer Holdings Americas Corporation in turn is owned by Pfizer, Inc., a publicly-traded company. Pfizer, Inc. is incorporated under the laws of Delaware, with its principal place of business in New York. Pfizer, Inc. does not have a parent corporation, and no publicly-held company owns 10% or more of its stock.

i

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Defendant-Appellant Monsanto Company does not have a parent corporation, and no publicly-held corporation owns more than 10% of its stock.

Respectfully Submitted,

 /s/ *Donald F. Zimmer, Jr.*
Donald F. Zimmer, Jr.
KING & SPALDING LLP

*Counsel for Appellants Monsanto Company, et al.*

ii

275

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT................................................... i

TABLE OF CONTENTS.......................................................................... iii

INTRODUCTION .................................................................................1

JURISDICTION....................................................................................5

STATEMENT OF THE ISSUE.................................................................6

STATEMENT OF THE CASE.................................................................7

    A.   Factual Background...................................................................7

        1.   Overview ..........................................................................7

        2.   "For National Defense": The Federal Government Sponsors The Production of PCBs Before and During World War II.......................8

        3.   The Federal Government Continued To Require The Use Of PCBs After World War II.................................................................11

        4.   The Federal Government Compels Old Monsanto To Continue Manufacturing PCBs ...........................................................12

    B.   Washington State Files Suit In Its Own Courts .........................15

    C.   Defendants Timely Remove The Case.....................................16

    D.   The State Moves To Remand .................................................18

    E.   The District Court Remands The Case......................................18

SUMMARY OF ARGUMENT ...............................................................23

ARGUMENT ....................................................................................26

    THE DISTRICT COURT ERRED IN REMANDING THE CASE................26

    A.   Standard of Review.............................................................26

    B.   The Federal Officer Removal Statute Is To Be Interpreted Broadly ........27

    C.   The Standard For Federal Officer Removal ..............................29

        1.   The "casual nexus" requirement.........................................30

        2.   The district court applied the wrong legal standard............................33

        3.   The casual nexus requirement is satisfied...........................................36

        4.   None of the district court's other arguments support remand .............26

        5.   The Other Two Prongs For Removal Are Satisfied............................46

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

    a.   The State did not dispute that Defendants are "persons" for purposes of federal officer removal ............................................... 46

    b.   Defendants asserted colorable federal defenses ........................... 47

CONCLUSION ................................................................................................. 54

STATEMENT OF RELATED CASES ................................................................. 56

CERTIFICATE OF COMPLIANCE ..................................................................... 57

CERTIFICATE OF SERVICE .............................................................................. 58

iv

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>**Cases**</u>

*In re Agent Orange Prod. Liab. Litig.*,
  304 F. Supp. 2d 404 (E.D.N.Y. 2004) ...............................................................50

*In re Agent Orange Prod. Liab. Litig.*,
  534 F. Supp. 1046 (E.D.N.Y. 1982) ..................................................................49

*AIG Europe (UK) Ltd. v. McDonnell Douglas Corp.*,
  No. CV 02–8703–GAF, 2003 WL 257702 (C.D. Cal. Jan. 28,
  2003) ...................................................................................................................9

*Anderson v. Hackett*,
  646 F. Supp. 2d 1041 (S.D. Ill. 2009)...............................................29, 45, 46

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006).........................................................................................47

*Arizona v. Manypenny*,
  451 U.S. 232 (1981).........................................................................................48

*Badilla v. Nat'l Air Cargo, Inc.*,
  No. 12-CV-1066-A, 2014 WL 6390324 (W.D.N.Y. Nov. 17, 2014)................45

*Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.,* 285 P.3d 70, 81
  (Wash. Ct. App. 2012) .....................................................................................53

*Bailey v. Monsanto Co.*,
  176 F. Supp. 3d 853 (E.D. Mo. 2016) ..............................................................38

*Bennett v. MIS Corp.*,
  607 F.3d 1076 (6th Cir. 2010) ...............................................................9, 37, 46

*Boyle v. United Techs. Corp*.,
  487 U.S. 500 (1988).....................................................................................49, 50

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
  797 F.3d 720 (9th Cir. 2015) .................................................................6, 35, 36

v

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

*Campbell v. Brook Trout Coal, LLC,*
 No. 2:07-0651, 2008 WL 4415078 (S.D. W. Va. Sept. 25, 2008) ....................45

*Cannon v. Univ. of Chicago,*
 441 U.S. 677 (1979)........................................................................................31

*Caver v. Central Alabama Electric Cooperative,*
 845 F.3d 1135 (11th Cir. 2017) ............................................................28, 31, 37

*In re Commonwealth's Motion to Appoint Counsel Against or*
 *Directed to Def. Ass'n of Phila.*, 790 F.3d 457 (3d. Cir. 2015), *as*
 *amended* (June 16, 2015), *cert. denied*, 136 S. Ct. 994 (2016) ..............30, 31, 46

*Cuomo v. Crane Co.,*
 771 F.3d 113 (2d Cir. 2014) ............................................................................48

*Dayton v. Alaska,*
 584 F. App'x. 699 (9th Cir. 2014) .....................................................................6

*Degel v. Majestic Mobile Manor, Inc.,* 914 P.2d 728, 731 (Wash.
 1996) ...............................................................................................................53

*Despres v. Ampco-Pittsburgh Corp.,*
 577 F. Supp. 2d 604 (D. Conn. 2008).........................................................33, 35

*Durham v. Lockheed Martin Corp.,*
 445 F.3d 1247 (9th Cir. 2006) ....................................................................28, 29

*Ellis v. Pneumo Abex Corp.,*
 798 F. Supp. 2d 985 (C.D. Ill. 2011) ...............................................................47

*Fireman's Fund Ins. Co. v. City of Lodi, California,*
 302 F.3d 928 (9th Cir. 2002) ...........................................................................53

*Goncalves v. Rady Children's Hosp. San Diego,*
 865 F.3d 1237 (9th Cir. 2017) ...................................................................*passim*

*Gordon v. Air & Liquid Systems Corp.,*
 990 F. Supp. 2d 311 (E.D.N.Y. 2014) ....................................................33, 35, 41

*Gurda Farms, Inc. v. Monroe Cnty. Legal Assistance Corp.,*
 358 F. Supp. 841 (S.D.N.Y. 1973) ...................................................................28

vi

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

*Hagen v. Benjamin Foster Co.*,
  739 F. Supp. 2d 770 (E.D. Pa. 2010)................................................28

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
  No. 08-CV-1166-IEG, 2009 WL 6597891 (S.D. Cal. Dec. 23,
  2009) ........................................................................................40

*Humphries v. Elliot Co.*,
  760 F.3d 414 (5th Cir. 2014) ...........................................................45

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) ..................................................*passim*

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999)..................................................................29, 30

*Kelly v. Monsanto Co.*,
  No. 4:15-CV-1825-JMB, 2016 WL 3543050 (E. D. Mo. June 29,
  2016) ........................................................................................38

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
  805 F. Supp. 2d 932 (C.D. Cal. 2011) ..............................................39

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*,
  298 F.3d 600 (7th Cir. 2002) ...........................................................40

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .................................................*passim*

*Maryland v. Soper*,
  270 U.S. 9 (1926)..............................................................32, 33, 34

*McKay v. Rockwell Int'l Corp.*,
  704 F.2d 444 (9th Cir. 1983) ...........................................................49

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)........................................................................31

*Papp v. Fore-Kast Sales Co., Inc.*,
  842 F.3d 805 (3d Cir. 2016) ...........................................................40

*Patel v. Del Taco, Inc.*,
  446 F.3d 996 (9th Cir. 2006) ...........................................................26

vii

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

*Reed v. Fina Oil & Chem. Co.*,
  995 F. Supp. 705 (1998) ...................................................................................29

*Ritch v. Puget Sound Bridge & Dredging Co., Inc.*,
  156 F.2d 334 (9th Cir. 1946) ...........................................................................39

*Rollins Envtl. Servs. (FS), Inc. v. St. James Parish*,
  775 F.2d 627 (5th Cir. 1985) ...........................................................................52

*Ruppel v. CBS Corp.*,
  701 F.3d 1176 (7th Cir. 2012) ...................................................................37, 40

*Sawyer v. Foster Wheeler LLC*,
  860 F.3d 249 (4th Cir. 2017) ...........................................................29, 33, 40

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)............................................................................................31

*Trigueros v. Adams*,
  658 F.3d 983 (9th Cir. 2011) ...........................................................................39

*Twitty v. North Carolina*,
  527 F. Supp. 778 (E.D.N.C. 1981) ...................................................................52

*Watson v. Philip Morris Cos., Inc.*,
  551 U.S. 142 (2007)............................................................................34, 37, 46

*Willingham v. Morgan*,
  395 U.S. 402 (1969)...................................................................................*passim*

*Zeringue v. Crane Co.*,
  846 F.3d 785 (5th Cir. 2017) ....................................................................44, 48

**U.S. Constitution and Federal Statutes**

U.S. Const. art. I, § 8, cl. 17............................................................................6, 17

1 U.S.C. § 1 .........................................................................................................46

15 U.S.C. § 2601(c) ............................................................................................52

15 U.S.C. § 2605(a) ............................................................................................52

15 U.S.C. § 2605(c)(1)(D) ..................................................................................52

viii

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

15 U.S.C. § 2605(e) ...........................................................................................8, 13

15 U.S.C. § 2605(e)(2)(A) ......................................................................................54

21 U.S.C. § 4557 ..............................................................................................50, 51

28 U.S.C. § 1291 ......................................................................................................6

28 U.S.C. § 1331 ...............................................................................................6, 17

28 U.S.C. § 1442 ...............................................................................................*passim*

28 U.S.C. § 2671 ....................................................................................................38

42 U.S.C. § 9601 ....................................................................................................19

42 U.S.C. § 9607(a)(4)(C) .....................................................................................23

42 U.S.C. § 9607(f)(1) ...........................................................................................23

42 U.S.C. § 9613(b) ...............................................................................................17

28 U.S.C. § 1442(a)(1) ......................................................................................*passim*

50 U.S.C. § 4501 ....................................................................................................13

1976 Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601, *et
seq.* ..............................................................................................7, 13, 51, 52

Comprehensive Environmental Response, Compensation, and
Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*. ................*passim*

Defense Production Act of 1950, 50 U.S.C. § 4501, *et seq*.............................*passim*

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* ..............................35

**State Statutes**

RCW 4.24.630..........................................................................................................15

RCW 7.48.................................................................................................................15

RCW 7.72.................................................................................................................15

ix

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

**Federal Rules and Regulations**

40 C.F.R § 761.1, *et seq.* ............................................................................13

40 C.F.R. § 761.20 ...............................................................................8, 13

47 Fed. Reg. 37,342 (Aug. 25, 1982) ........................................................52

Fed. R. App. P. 4 .........................................................................................6

Fed. R. Evid. 201(d)...................................................................................39

**Legislative History And Other Authorities**

H.R. Rep. No. 112–17, pt. 1 (2011), *reprinted in* 2011 U.S.C.C.A.N.
    420.........................................................................................................32

14C Wright, Miller, Cooper & Steinman, <u>Federal Practice &</u>
    <u>Procedure</u> § 3727 .................................................................................29

Black's Law Dictionary 282 (9th ed. 2009) ..............................................48

x

283

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

## INTRODUCTION

Title 28, United States Code Section 1442(a)(1) allows for removal of any civil action commenced in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." Because its purpose is to provide a forum free from local interests and potential prejudice and to prevent state courts from interfering with federal activity, that right of removal is absolute, and the statute must be liberally construed in favor of removal jurisdiction.   Accordingly, an entity seeking removal under Section 1442(a)(1) need only show that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense.

The district court remanded this case because it concluded (wrongly) that Defendants failed to satisfy the second prong.  While under the statute's plain language the federally-directed actions only have to *relate to* the underlying tort, the district court held those actions had to actually *be* the underlying tort.  Not so.

The district court's test is both unfair and unprecedented.  Here, the State of Washington (the "State") haled Defendants into a Washington state court – the quintessential example of home court advantage – seeking tort damages for alleged polychlorinated biphenyl ("PCB") contamination of bodies of water caused by

1

284

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

PCBs manufactured for and on behalf of the federal government by Old Monsanto[1] from 1935 to 1977, and used and/or discharged into those bodies of water by third parties (including the federal government itself).  Defendants sought to remove the case because Old Monsanto had manufactured PCBs: (1) at the express direction and command of the federal government pursuant to the Defense Production Act despite Old Monsanto's own objections; (2) as a direct contractor for multiple departments and agencies of the federal government, sometimes for facilities actually located in Washington; (3) for federal defense contractors who needed PCBs to meet exacting military specifications; (4) for uses required by federal OSHA regulations; and (5) in facilities financed by the federal government to meet the military's needs for PCBs pursuant to "Necessity Certificates."[2]

At the heart of this case, the story of Old Monsanto's PCBs is, in large part, one written by the federal government.  For decades, Monsanto produced PCBs for the federal government and its military contractors, to its specifications, often at facilities financed by the federal government to fulfill "national defense" needs associated with multiple wars, beginning with World War II.  So important were

---

[1] "Old Monsanto" is a predecessor to Pharmacia LLC and allegedly made PCBs from 1935-1977.  The three appellants are alleged to be its successors or indemnitors.  For convenience, appellants are referred to collectively as "Defendants."

[2] "Necessity Certificates" authorized financial incentives for industrial expansion deemed necessary for the national defense in an emergency period.

2

285

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

those PCBs to the U.S. military that the federal government compelled their production even after Monsanto sought to stop making PCBs in the 1970s. Indeed, the district court acknowledged that the government made regular use of PCBs (during multiple wars) and even ordered Old Monsanto to make PCBs in the 1970s. It is difficult to imagine a more clear and straightforward example of someone acting "pursuant to a federal officer's direction" than the activities of Old Monsanto that give rise to this action.

Moreover, the federal government did not just play a role in PCB's manufacture, but also in specific discharges relevant to the State's claims. For example, in 1974, the federal government was responsible for a massive spill of 1,000 kg of PCBs it purchased into the Duwamish River (one of the bodies of water at issue in the State's complaint and an event central to this dispute), when General Services Administration personnel dropped a large transformer destined for an Air Force facility during transport. Evidence relating to that federal discharge and others, which were indisputably the responsibility of the federal government and its officers, will be presented in this case. These are precisely the sort of facts and circumstances the federal officer removal statute is intended to address.[3]

---

[3] Defendants also sought removal because the State's tort claims arose on federal enclaves and under federal laws.

3

286

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Nevertheless, the district court remanded the case based on a novel removal standard that conflicts with both the law and the legislative purpose behind it. As courts have recognized, the requirement of a causal nexus has always been a low bar, made even lower by recent amendments to the removal statute – amendments the district court did not take into account. That amended statutory text expressly provides that actions taken under the direction of a federal officer need only "relat[e] to" the tort. 28 U.S.C. §1442(a)(1). The federally-directed actions do not have to *be* the tort itself. Instead, the causal nexus element requires only that the allegedly tortious act occurred while defendants were performing the duties imposed by federal officers.

Inexplicably, the district court applied a different, and far more restrictive test, holding that, "Monsanto has failed to show that it produced PCBs – *and then deliberately concealed their toxicity – 'pursuant to a federal officer's direction*,' and accordingly . . . failed to meet the second element of the Ninth Circuit's test for federal officer jurisdiction." Excerpts of Record ("ER") 8 (emph. added). Although the district court noted that the U.S. Department of Commerce sent Old Monsanto letters "directing Monsanto to deliver PCBs," it discounted those letters because they did ". . . not direct Monsanto to conceal the toxicity of PCBs[, and] [a]ccordingly, Monsanto has failed to demonstrate a 'causal nexus' between Washington's claims and any actions that Monsanto took pursuant to a federal

4

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

officer's direction." ER 11. In short, the district court required Defendants to show not only that federal officers directed Old Monsanto to produce PCBs, but also that they specifically directed Old Monsanto to engage in tortious activity at the government's behest.[4] Thus, the district court reasoned, because Defendants had not shown that federal officers directed Monsanto to "conceal" the toxicity of PCBs, there was no federal officer jurisdiction. However, concession of a tort at the direction of federal officers is not the standard for federal officer removal, nor should it be. A defendant need not prove nor admit to a plaintiff's claims at any stage, much less a preliminary, jurisdictional one, to establish federal jurisdiction for purposes of removal. Because the district court's standard rewrites the statutory requirements for federal officer removal and frustrates the purpose behind that statute, this Court should reverse the district court's order remanding this suit to state court.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1442(a)(1) because this case is a civil action brought against a person acting under color of an officer or

---

[4] Indeed, this restrictive standard does not just defy the actual language of the statute, but also common sense: Taken to its logical conclusion, the effect of the Court's ruling requires Defendants to prove that the federal government directed Old Monsanto to conceal the toxicity of PCBs from the federal government.

5

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

agency of the United States.[5]  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  Unlike remand decisions under some other removal provisions, remand orders regarding federal officer removal are appealable.  *See Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 727 n.1 (9th Cir. 2015); *Dayton v. Alaska*, 584 F. App'x. 699, 699 (9th Cir. 2014) ("We have jurisdiction to hear appeals of remand orders under 28 U.S.C. § 1291 if the case was removed pursuant to 28 U.S.C. § 1442 [the federal officer statute].").

The district court entered its order remanding the case to state court on July 28, 2017.  ER 675; Clerk's Record ("CR") 36.  Defendants filed a timely notice of appeal.  Fed. R. App. P. 4; ER 1-3; CR 38.

## STATEMENT OF THE ISSUE

The district court acknowledged that the federal officer statute "must be liberally construed to give full effect to [its] purpose" (ER 6), that the federal government required the use of PCBs for the national defense, and that in some instances, the federal government even compelled Old Monsanto to provide them over Old Monsanto's objections.  Despite those acknowledgements, did the district court nevertheless employ an improperly high bar for the statute's "causal nexus" element by erroneously requiring Defendants to prove not only that the federally-

---

[5]  The district court also had jurisdiction under 28 U.S.C. § 1331 and U.S. Const. art. I, § 8, cl. 17, because the state's tort claims arose, in part, on "federal enclaves" and under federal laws.

6

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

directed actions were "relat[ed] to" the alleged tort, but that those actions were the tort?

## STATEMENT OF THE CASE

**A.**   **Factual Background**

**1.**   **Overview**

Commercial production of polychlorinated biphenyls (or PCBs) began in 1929 and provided the electrical industry with improved dielectric insulating fluids with increased fire resistance for use in transformers and capacitors.  ER 137-138, 162-163, 184, 283.   PCBs' heat and fire resistance made them safer and indispensable, particularly in a variety of military applications.  *See, e.g.,* ER 44-45, 105, 110, 116, 120, 122-127, 129-133, 137-138, 140-149, 162-163, 175-180, 184, 283, 285, 287.  Monsanto sold PCBs in bulk, often under trade names such as "Aroclor," "Pydraul," "Inerteen," and "Pyranol."  ER 44, 122-127, 131, 137, 184. Although Old Monsanto never manufactured PCBs in Washington State, it sold them to federal government facilities, federal contractors, and other companies in Washington.  ER 44, 634, 637-653.

In 1970, Old Monsanto decided to stop manufacturing PCBs for certain applications, such as paint, adhesives, and sealants.  ER 47.  And, eventually, with the 1976 Toxic Substances Control Act (the "TSCA"), 15 U.S.C. § 2601, *et seq.*, Congress barred the importation and new manufacture of PCBs above concentrations of 50 ppm after July 2, 1979, but delegated authority to the EPA to

7

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

allow continuing use of PCBs where there was no "unreasonable risk of injury to health." *See* 15 U.S.C. § 2605(e).  In fact, the EPA allowed many continuing uses of PCBs based on findings that they did not present unreasonable health risks.  *See, e.g.*, 40 C.F.R. § 761.20 (identifying permitted uses of PCBs).

When Old Monsanto manufactured PCBs, it did so in several ways covered by the federal officer statute, including at the express direction and command of the federal government pursuant to the Defense Production Act; as a direct contractor for multiple departments and agencies of the federal government, supplying PCBs to facilities located in Washington state and elsewhere; for federal defense contractors who needed PCBs to meet exacting military specifications; for uses required by federal OSHA regulations; and in facilities financed by the federal government to meet the military's needs pursuant to "Necessity Certificates."  ER 44, 184.

### 2. "For National Defense": The Federal Government Sponsors The Production of PCBs Before and During World War II

Leading up to World War II, the majority of PCBs Old Monsanto produced were for use by the U.S. military.  ER 45.  These uses included coatings, insulation materials, missile launch tubes, non-flammable wire coatings, banding and sheet rubber, heat-resistant paints, anti-fouling paints, and electrical transformers.  *See e.g.,* ER 45, 105, 110, 116, 120, 122-127, 129-133, 137-138, 140-149, 162-163, 174-180, 184, 202-210.   The federal government specifically approved PCBs

8

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

produced by Old Monsanto for the military for certain uses, and PCBs often were produced to specifications dictated by the federal government. *Id*. For example, the government approved the use of PCBs in heat-resistant paint, bought PCBs "for National Defense" for use in transformers and as lubricants, and prescribed their use in material for missiles. *Id*.

Indeed, by mid-1941, federal demand for PCBs to fill military and other orders was so much "greater than can be supplied," ER 142-143, that the government issued multiple Necessity Certificates on behalf of Old Monsanto. ER 45, 128-172, 181-217, 242-252. Those Certificates approved and financed expansions of Old Monsanto's facilities so that it could expand production of PCBs for the military and its defense contractors. *Id*. Thus, when Old Monsanto asked in May 1941 for a Necessity Certificate and $275,000 from the government to expand its production of PCBs, it sent an application stating that 100% of the new facilities would be used for "defense purposes." ER 46, 129-138. Federal officials agreed with those recommendations "[b]ecause of the need of this material [PCBs] in the defense program," ER 143, and because "the additional facilities are necessary to the national defense." ER 140.

That was not the only instance of the federal government authorizing and funding expansions of Old Monsanto's PCB-manufacturing facilities to meet military demand. *See* ER 248; *see also* ER 155-172, 181-217, 242-252. While the

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

historical record is incomplete because of the passage of time, Defendants submitted to the district court several examples of the federal government's escalating requests for, and funding of, multiple expansions of Old Monsanto's PCB-manufacturing facilities to meet those military demands. *Id.* Those requests (or the federal government's assessment of them) noted, for example, that "the United States Navy requires cable covered with material containing Aroclor," ER 184, that transformers with PCBs were being "widely used in plants built for the defense program," ER 184, that new facilities would double production of Aroclors (from 600,000 lbs. to 1,200,000 lbs.), ER 196, that this increased production "will be used 100% in national defense," ER 196, 202, and (as noted by the U.S. Office of Production Management) that increased PCB production was "necessary in the interest of national defense during the emergency period," ER 204. Other requests noted that "the use of Aroclor in electric transformers and condensers is a vital need and advantage in our defense and war program," ER 163, and acknowledged the "increased use of Pyranol transformers on defense orders" requiring Old Monsanto "to increase promptly [its] production facilities [. . . ] in order that the demand for this type of equipment will not be delayed," ER 172. By 1942, 80% of the production at Old Monsanto's Anniston, Alabama factory was for national defense purposes. ER 176. This plant was nominated for and received multiple

10

293

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Army-Navy "E" (excellence) Awards for its support of the national defense.  ER 174-180.

### 3. The Federal Government Continued To Require The Use Of PCBs After World War II

The need for PCBs for critical defense work did not end with World War II. As Monsanto demonstrated, federal government facilities and federal contractors located in Washington state bought PCBs from Old Monsanto from 1950 to 1971. ER 634, 636-653.  And, federal military specifications for government and defense contractors continued to require PCBs well into the 1970s.  ER 47.  For example, a 1961 "Federal Specification" for "heat resisting aluminum paint" for military use expressly called for the use of Aroclor.  ER 46, 105, 110.  Other military products had specifications for fire resistance, thermal and electrical conductivity, and other attributes that required the use of PCBs, even if the specifications did not expressly call for them.  ER 45, 47.  Thus, for example, Aroclor was "used exclusively in cellulosic lacquer utilized to meet Military Specs. for lacquer used in wire and cable applications."  ER 254.  In some instances, the contractors who used the product "did not know what the Aroclor did or why – only that the military had approved it – and it was used without any questions."  ER 256.

11

294

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

4.    **The Federal Government Compels Old Monsanto To Continue Manufacturing PCBs**

After Old Monsanto decided in the early 1970s to stop manufacturing PCBs for certain applications like paints, adhesives, and sealants, the federal government invoked the Defense Production Act, 50 U.S.C. § 4501, *et seq.*, to *require* Old Monsanto to continue manufacturing PCBs for such uses by military contractors. ER 47-48, 259-260, 261-270, 288-294. The federal government did so despite knowing at the time about risks potentially associated with PCBs. ER 47-49, 274, 282-283. Thus, for example, in 1972, the U.S. Atomic Energy Commission ("USAEC") concluded in 1972 that the use of PCBs was in fact "critical to the national defense" without "acceptable substitutes." ER 49, 293. Similarly, the federal government's Interdepartmental Task Force Report from 1972 determined that PCBs' continued use was "necessary" in certain electrical applications and that no alternative product was available. ER 285. Accordingly, the Report stated, the "use of PCBs should not be banned entirely," and the "continued use for transformers and capacitors in the near future is considered necessary because of the significantly increased risk of fire and explosion and the disruption of electrical service which would result from a ban on PCB use." *Id.* Thus, while Old Monsanto tried to stop or reduce commercial PCB production wherever possible, the federal government continued to require its use. (In particular, from 1971 onwards, Old Monsanto worked closely with the electrical equipment

12

295

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

manufacturing industry to stop commercial PCB production where acceptable substitutes were available.[6] ER 49.)

Thus, for example, in November 1972, the United States Department of Commerce ordered Old Monsanto to accept a purchase order for thousands of pounds of Aroclor "pursuant to Section 101 of the Defense Production Act of 1950." ER 47-48, 259. Old Monsanto pushed back on this request. ER 262-264. Although it ultimately complied with the government's directive to continue selling PCBs, Old Monsanto explained that it had otherwise stopped selling PCBs "because of the increasing environmental concerns expressed about products containing polychlorinated biphenyls (PCBs) . . . for the uses which we understand [the defense contractors] intend for the Aroclor 1242 we have been directed to deliver." ER 48, 262-264.

Nevertheless, the federal government continued to invoke the Defense Production Act to require Old Monsanto to sell PCBs to defense contractors for

─────────────

[6] As noted above, in 1976, Congress enacted the TSCA (15 U.S.C. § 2601, *et seq.*), which (1) provided the EPA with broad power to promulgate a comprehensive regulatory scheme governing the manufacture, use, distribution, disposal, and remediation of PCBs; (2) barred new manufacture of PCBs after July 2, 1979; and (3) delegated to the EPA the authority to allow continuing use of PCBs where the agency determined no "unreasonable risk of injury to health" existed. *See* 15 U.S.C. § 2605(e); 40 C.F.R § 761.1, *et seq.* (In fact, the EPA allowed many continuing uses of PCBs based on findings that they did not present unreasonable health risks. *See, e.g.*, 40 C.F.R. § 761.20 (identifying permitted uses of PCBs).)

13

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

certain uses through at least mid-1974.  ER 48, 289-349, 474-475.  In July 1974, the U.S. Department of Commerce directed Old Monsanto to sell PCBs to Raytheon for use pursuant to Section 101 of the Defense Production Act.  ER 289. In April 1973, Raytheon noted that the government had directed it to manufacture missiles, but had refused to authorize Raytheon to use new materials that would avoid the use of PCBs.  ER 120.  Raytheon also expressly acknowledged that "Monsanto in all of our dealings has expressed a strong preference *not to sell this product to us* and is proceeding with the sale *only at the direction of the government* and because we have made . . . concessions . . . ."  *Id.* (emphasis added).

In fulfilling these orders, Old Monsanto warned federal officials and government contractors that based on new scientific understanding, PCBs could persist in the environment, that care was required in their handling, possession, use, and disposition, that tolerance limits had been or would be set for them, and that sale of the products had been discontinued.  ER 262-270, 291-294.  Indeed, when the United States Atomic Energy Commission directed Old Monsanto to sell heat transfer fluid PCBs in the 1970s to fulfill military defense needs, Old Monsanto had both the Commission and the government contractor acknowledge its warnings about potential hazards associated with PCBs.  ER 293-294.

14

297

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

**B.**     **Washington State Files Suit In Its Own Courts**

In December 2016, Washington State filed suit against Defendants in King County Superior Court, asserting that they should be held liable for alleged PCB contamination of water, land, and wildlife throughout the State.  ER 14-41.  The State's complaint seeks to recover tort damages through six alleged state-law public nuisance, product liability, and trespass claims with regard to third parties' purported use and/or discharge of PCBs allegedly manufactured by Old Monsanto from 1935 to 1979, as well as damages for alleged injury to natural resources.  ER 35-41.

Specifically, the State asserts the following state-law claims: (1) Old Monsanto's manufacture, distribution, marketing, and promotion of PCBs created a public nuisance, in violation of RCW 7.48; (2) PCBs were defectively designed, in violation of RCW 7.72; (3) Old Monsanto failed to warn of risks associated with PCBs, in violation of RCW 7.72; (4) Old Monsanto acted negligently in its manufacture of PCBs and alleged failure to warn of their danger; (5) Defendants must indemnify the State pursuant to principles of equitable indemnity; and (6) Old Monsanto's alleged conduct caused injury to public natural resources resulting in a trespass under RCW 4.24.630.  ER 35-41.

15

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

### C.   <u>**Defendants Timely Remove The Case**</u>

Defendants filed a timely notice of removal to the United States District Court for the Western District of Washington, alleging three bases for removal: federal officer removal, federal enclave jurisdiction, and federal question jurisdiction.  ER 42-68.  In support of removal, Defendants attached hundreds of pages of exhibits, including Necessity Certificates, correspondence with the government, and government reports.  ER 69-361, 470-477, 633-653.   Among other things, Defendants put before the district court: (1) letters from the U.S. Department of Commerce sent in 1972 and 1974 directing Old Monsanto to fulfill a third party's purchase order for PCBs under the Defense Production Act of 1950; (2) federal specifications calling for the use of PCBs; (3) invoices for and records of PCBs bought by the federal government and its contractors, including for facilities in Washington state; (4) a report about the federal government's accidental spillage of PCBs into the Duwamish River in 1974; (5) business correspondence related to the federal government ordering Old Monsanto to produce PCBs; (6) 1970s government reports acknowledging risks associated with PCBs, but concluding that PCBs were nonetheless necessary for defense projects; and (7) Old Monsanto's warnings in the 1970s to the government and its contractors about risks associated with PCBs.  *Id.*

16

299

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Defendants asserted that Old Monsanto produced PCBs while acting under color of federal officers and agencies, and that, as a result, they were entitled to a federal forum under 28 U.S.C. § 1442(a)(1).  ER 42-61.  Defendants further argued that they had significant and, at a minimum, colorable federal defenses based on the government contractor defense and federal preemption (express and implied) which they were entitled to have adjudicated in a federal forum.[7]  *Id.*

---

[7] Defendants raised two other arguments for federal jurisdiction:  First, under 28 U.S.C. § 1331 and article I, section 8, clause 17 of the U.S. Constitution, actions that arise on federal enclaves necessarily present questions of federal law.  Because the State's complaint alleged that approximately 120 specific water bodies and "others" throughout the State of Washington were contaminated with PCBs manufactured by Old Monsanto, based in part upon alleged releases on several federal enclaves within the State of Washington, Defendants also asserted they were entitled to federal enclave jurisdiction.  ER 61-64.  Second, Defendants contended that the complaint raised a claim under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq*., notwithstanding the State's efforts to avoid any specific mention of CERCLA in the complaint.  ER 64-68.  Because (1) the complaint alleges damages to the State's "natural resources" at least 25 times; (2) it asserts that the State is the designated "trustee" for purposes of recovering "natural resource damages;" (3) it seeks lost economic value and costs of restoration of natural resources; (4) "natural resource damages" is a statutory term of art expressly included within CERCLA; and; (5) none of the six state law claims the State asserted mention or authorize "natural resource damages," the complaint arose under CERCLA, presenting a federal question subject to exclusive federal jurisdiction.  42 U.S.C. § 9613(b); ER 64-68.

17

300

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

### D.    **The State Moves To Remand**

The State moved to remand the case, arguing that: (1) Old Monsanto was not a federal officer because it was a mere vendor, not an arm of the federal government; (2) Defendants had not established "federal enclave" jurisdiction pursuant to Article I, Section 8, Clause 17; and (3) there was no federal question jurisdiction because the State had not specifically invoked CERCLA by name to support its natural resources damages claim in its complaint.  ER 5; CR 15.  The State did not submit any evidentiary materials of its own going to any of the key issues about whom PCBs were manufactured for, or the role of the federal government in their manufacture and use.  Instead, it submitted a study noting that Old Monsanto manufactured PCBs (which was undisputed), ER 479-492, an article about the properties of PCBs, ER 493-536, some documents about alleged levels of PCB contamination in Washington state bodies of water, *see, e.g.,* ER 601, 609, opinions from other district courts, ER 537-594, 610-632, 656-664, and a one-page summary of the Old Monsanto records of sales to federal facilities and contractors in Washington state (which Defendants submitted in support of removal),  ER 666.

### E.    **The District Court Remands The Case**

Without holding a hearing, the district court granted the State's motion to remand.  ER 4-13.

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

With respect to federal officer removal, the district court acknowledged that the statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting . . . within the scope of their authority." ER 5. The district court also acknowledged that the statute must be liberally construed to give full effect to that purpose. ER 6 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). Nevertheless, the district court took a narrow view of federal officer removal and concluded it was unavailable to Defendants. ER 6-11.

The district court acknowledged that a private entity may invoke federal officer jurisdiction if it can show that: (1) it is a "person" within the meaning of the statute; (2) a causal nexus exists between the plaintiff's claims and "the actions the entity took pursuant to a federal officer's direction;" and (3) it has a colorable federal defense to the plaintiff's claims. ER 6. In ruling against Defendants, the district court did not address the first or third elements. ER 11. Instead, it remanded based solely on its conclusion that Defendants had not satisfied the causal nexus requirement. *Id*.

Even so, the district court acknowledged the major role played by the federal government and its officers in Old Monsanto's production of PCBs, including that:

19

302

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

- The government bought PCBs directly from Old Monsanto.  ER 7.

- After World War II, the federal government included Old Monsanto's PCBs by trade name in military specifications of products like electrical wire and heat-resistant aluminum paint.  *Id.*

- In 1972 and 1974, the government directed Old Monsanto to fulfill third parties' purchase orders for PCBs by a particular date and invoked Section 101 of the Defense Production Act.  ER 10.

- The federal government relied on Old Monsanto's PCBs for military uses.  ER 7.   Old Monsanto produced PCBs for use by federal contractors, and the federal government authorized construction of additional facilities to produce more.[8]  *Id.*

Nevertheless, the district court concluded that Defendants had failed to show the requisite causal nexus because it interpreted that element as requiring not just that Old Monsanto produced PCBs pursuant to a federal officer's direction, but also that the company deliberately concealed their toxicity pursuant to a federal

---

[8] Documents produced with Army-Navy "E" (excellence) Awards given to Old Monsanto for its support of the national defense identify Old Monsanto as a "subcontractor," ER 176, 178; commend it for "producing an ever growing output of ordnance," ER 175; state receipt of this award "indicate[s] [Old Monsanto's] determination to supply our fighting forces with the materials needed to bring the war to a successful conclusion," ER 179; and congratulate the men and women of Old Monsanto "for the splendid production record that has been established and maintained since the time that the original Army-Navy 'E' was granted."  ER 180.

20

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

officer's direction.  ER 8.  In other words, the district court interpreted the element as requiring more than a causal nexus between plaintiff's tort claims and actions Old Monsanto took at a federal officer's direction.  It held that those actions had to actually be the tort itself.

The State did not make this argument in its motion and the district court did not cite any authority for the proposition that the causal nexus element requires a showing that the government directed the commission of the alleged tortious act itself.  Nor did the district court address the impact of the recent amendment to the federal officer removal statute lowering the standard for removal and expressly relaxing the causal nexus element so that it requires only that the actions taken at federal direction "relat[e] to" the tort.  *See* 28 U.S.C. § 1442(a)(1).

Instead, the district court quibbled with Defendants' evidentiary submission in two respects.  First, it claimed that two letters from the U.S. Department of Commerce "direct[ing] Monsanto to fulfill a third party's purchase order for PCBs," did "not actually direct Monsanto to produce PCBs that it had not already, or would not have otherwise, produced."  ER 11.  However, this claim ignores the other evidence Defendants submitted that Old Monsanto was in fact limiting its production and sales of PCBs, and that Old Monsanto expressly told the government it did not want to fulfill one such contract – an objection that the government overrode.  *See* ER 47-48, 259, 262-270.

21

304

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Second, although the district court acknowledged that government specifications listed certain Old Monsanto PCBs as examples of component parts that would satisfy specifications for other products, the remand order claimed that these PCBs were only "*mentioned* in a government specification, not *produced* to government specifications." ER 8-9 (emphasis in original). This ignored Defendants' evidence that there were no comparable substitutes, even as late as 30 years after PCBs were widely used in World War II. *See, e.g.,* ER 49, 293-294.

The district court also ignored the evidence that in 1974, a large government-owned transformer destined for an Air Force facility was dropped during transport by the General Services Administration, resulting in a massive spill of 1,000 kilograms of PCBs into the Duwamish River. *See* ER 218-241. (Nor did it acknowledge the evidence that, from 1950 through 1971, the federal government bought PCBs from Old Monsanto for facilities located in Washington state. ER 634, 637-653.) Evidence of that discharge along with others that were also the responsibility of the federal government and its officers will be presented in this case.

The district court "expresse[d] no opinion" as to the two remaining elements of the federal officer statute, namely, whether: (1) Defendants are persons within

305

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

the meaning of the statute; and (2) Defendants can assert a colorable federal defense.[9]  ER 11.

## SUMMARY OF ARGUMENT

The fundamental purpose of federal officer removal is to afford a federal forum to adjudicate federal defenses asserted by federal officers and those who work for or with them.  As one court put it, Congress created a road to federal forums for such cases, and courts should not impose additional tolls on that

---

[9] While Defendants believe that the district court also erred in rejecting removal based on federal enclave and federal question jurisdiction, they are not appealing those aspects of the district court's decision.  In rejecting "federal enclave" jurisdiction, the district court did not rely on the allegations in the complaint, but instead on the State's belated representation that it did not seek relief for contamination of federal territories.  ER 11-12.  Despite the fact that several of the allegedly contaminated water bodies mentioned in the State's complaint are "on or near" federal territories, including military bases, the district court took at face value the State's assertion in its motion that it did not seek damages for contamination to waters and land within federal territories.  ER 12.  This is akin to claiming one seeks recovery for a contaminated swimming pool, but only as to alleged contamination entering from the left side of the pool, not the right.

As for traditional federal question jurisdiction, the district court noted that "[i]t is true that CERCLA establishes a federal cause of action for 'damages for injury to, destruction of, or loss of natural resources," 42 U.S.C. § 9607(a)(4)(C), and that an action under this provision may be brought by a state "on behalf of the public as trustee of such natural resources to recover for such damages," 42 U.S.C. § 9607(f)(1).  However, as with the federal enclave issue, the district court took at face value the State's characterization of its own claims as not invoking CERCLA despite the fact that the plain language of the State's complaint sought relief available only under CERCLA.  ER 12-13.

23

306

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

process. *See infra* at 28-29.  That, however, is precisely what the district court did here.

Although the district court acknowledged that the federal government: (1) included PCBs in its product specifications; (2) authorized and financed the expansion of Old Monsanto facilities because PCBs were necessary to it and to its contractors for the national defense; (3) bought PCBs itself; and (4) ordered Old Monsanto to sell PCBs even over Old Monsanto's objections, the court nevertheless held that Defendants had failed to establish a causal nexus between the State's claims and these actions taken pursuant to a federal officer's direction. That ruling was wrong.  Defendants provided evidence demonstrating that the federal government deemed PCBs "necessary to the national defense," and that it requested (and in some instances ordered) PCBs to be provided to it, its Washington-based contractors, and its military installations pursuant to its specifications to help carry out multiple wars.  Moreover, as the district court acknowledged, in the 1970s, the federal government *required* Old Monsanto to continue selling PCBs to it and to its contractors, even over its own objections. And, Defendants provided evidence that the federal government itself had spilled a massive amount of PCBs (1,000 kg) it had purchased into one of the water bodies at issue in the State's complaint (the Duwamish River) – something Defendants intend to present in this case.  ER 218-241.

24

307

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

That is more than enough to satisfy the low bar set by the "causal nexus" prong.  As amended, 28 U.S.C. Section 1442(a)(1) requires only that the actions taken at federal direction "relat[e] to" the tort.  And in construing that broad language, courts have consistently held that the causal nexus prong simply requires that the alleged tort occurred while Defendants were performing the duties imposed by federal officers.  That requirement is easily met here:  the federal government required Old Monsanto to produce and supply it with PCBs for national defense, even when Old Monsanto did not want to do so, and the alleged tort occurred during and in connection with Old Monsanto's performance of those required actions.

The district court did not apply this settled standard.  Instead, it invented a new standard that imposed a far more rigorous requirement than the statute provides for or than Congress intended.  Under the district court's standard, a defendant must confess to the commission of a tort and then show that the federal officers directed the commission of the tort itself – that the federal required actions not just "relate to" the tort, but that they *be* the tort.  The district court cited no authority for this proposition, and there is none.  Congress intended that federal officer removal be broadly available and construed liberally, and it doubled down on that intent when it amended the statute to broaden the availability of federal officer removal, rather than restrict it.

25

308

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Because the district court erred in finding that Defendants had not satisfied the second prong and because they can satisfy the remaining prongs of that test (that they are "persons" for purposes of federal officer jurisdiction and have a colorable federal defense to the claims), this Court should reverse the district court's order.

## ARGUMENT

### THE DISTRICT COURT ERRED IN REMANDING THE CASE

**A.    Standard Of Review**

This Court reviews *de novo* the trial court's decision to remand a removed case. *See Patel v. Del Taco, Inc.*, 446 F.3d 996, 998 (9th Cir. 2006). Review of a challenge to the existence of removal jurisdiction turns on the nature of the challenge. *See Leite v. Crane Co.,* 749 F.3d 1117, 1121-1122 (9th Cir. 2014). Parties may challenge removal jurisdiction in two ways: either as a *facial* attack, which accepts as true the allegations in support of removal, but asserts that they are insufficient on their face to invoke jurisdiction; or as a *factual* attack, which contests the truth of the factual allegations in support of removal, usually by introduction of evidence. *Id.* at 1121.

Here, the State made a *facial* attack and did not introduce any relevant evidence of its own.[10] In resolving a facial attack, the district court must accept the

---

[10] The bulk of the State's exhibits were district court decisions. ER 537-594, 610-632, 656-664. The two articles it submitted along with documents about

26

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

removing party's allegations as true and draw all reasonable inferences in the removing party's favor in deciding whether the allegations are sufficient as a matter of law to invoke the court's jurisdiction. *Id.* The district court failed to apply this standard. Instead, the district court applied the standard for a factual attack, overlooking the fact that the State provided no relevant evidence of its own to refute the evidence submitted by Defendants.[11] ER 5-11.

## B.    The Federal Officer Removal Statute Is To Be Interpreted Broadly

Section 1442(a)(1) of Title 28 of the U.S. Code allows for removal of *any* civil action commenced in state court against "*any* officer (or *any* person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to *any* act under color of such office" (emphasis added).[12] It is "an incident of federal supremacy," *Caver v. Central Alabama*

---

alleged levels of PCB contamination had nothing to do with the role the federal government played in the manufacture and use of PCBs and thus whether removal under the federal officer statute was appropriate. ER 479-492, 493-536, 601, 609. It also submitted a one-page summary of the Old Monsanto records of sales to federal facilities and contractors in Washington state Defendants submitted in support of removal. ER 666.

[11] If a plaintiff raises a factual attack to removal, the removing party must support its removal allegations with competent proof under the same evidentiary standard that governs in the summary judgment context. *Leite*, 749 F.3d at 1121. If jurisdiction turns on disputed factual issues, the district court may resolve those issues itself. *Id.*

[12] The statute defines a "civil action" to "include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order . . . is sought or issued." *Id.* § 1442(d)(1).

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

*Electric Cooperative*, 845 F.3d 1135, 1142 (11th Cir. 2017), intended to protect not just federal officers, but also "persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 133 (2d Cir. 2008); *Gurda Farms, Inc. v. Monroe Cnty. Legal Assistance Corp.,* 358 F. Supp. 841, 847 (S.D.N.Y. 1973) (same). After all, "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1253 (9th Cir. 2006).

As this Court has held, "defendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute." *Leite*, 749 F.3d at 1122. "The right of removal is 'absolute for conduct performed under color of federal office,' and the 'policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Goncalves v. Rady Children's Hosp. San Diego,* 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *Hagen v. Benjamin Foster Co.,* 739 F. Supp. 2d 770, 782-783 (E.D. Pa. 2010) ("For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it.").

28

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

For the same reasons, not all of the controversies in the case need involve a federal officer or agency. Instead, federal officer removal "authorizes removal of an entire case, even though only one of its controversies might involve a federal officer or agency." *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1051 (S.D. Ill. 2009) (citing *N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989)); *see Sawyer v. Foster Wheeler LLC,* 860 F.3d 249, 257 (4th Cir. 2017); *Bennett v. MIS Corp.,* 607 F.3d 1076, 1084 n.7 (6th Cir. 2010) (same); *AIG Europe (UK) Ltd. v. McDonnell Douglas Corp.,* No. CV 02-8703-GAF, 2003 WL 257702, at *1 (C.D. Cal. Jan. 28, 2003) (same); 14C Wright, Miller, Cooper & Steinman, <u>Federal Practice & Procedure</u> § 3727 (same). And the nexus need not exist for all of the actions or all of the relevant time period, so long as it applies to some portion thereof. *See Reed v. Fina Oil & Chem. Co.,* 995 F. Supp. 705, 711-712 (1998).

## C.   <u>The Standard For Federal Officer Removal</u>

An entity seeking removal under § 1442(a)(1) need only show "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (quoting *Durham*, 445 F.3d at 1251, and *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)). In turn, that showing need only be by a preponderance of the

29

evidence.  *Leite*, 749 F.3d at 1122, 1124.  Defendants have more than met that standard.

### 1.    The "causal nexus" requirement

Prior to 2011, a party seeking to remove a case under the federal officer statute simply had to show that it had been sued "for any act under color of [federal] office."  28 U.S.C. § 1442(a)(1) (2010).  In other words, defendants had to "show a nexus, a 'causal connection' between the charged conduct and asserted official authority."  *Jefferson Cnty.,* 527 U.S. at 431 (internal quotations omitted).  That was not a particularly demanding standard: proponents of removal jurisdiction under § 1442 needed only to "demonstrate that the acts for which they [we]re being sued" occurred at least in part "because of what they were asked to do by the Government."  *Isaacson*, 517 F.3d at 137.  And, in assessing whether that nexus existed, courts were required to credit the defendant's theory of the case. *Leite*, 749 F.3d at 1124.

In 2011, Congress amended the federal officer statute to relax that relatively lenient requirement even further to expand removal to encompass suits "for *or relating to* any act under color of [federal] office."  28 U.S.C. § 1442(a)(1) (2011) (emphasis added); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.* (*"Commonwealth's Motion"*), 790 F.3d 457, 470 (3d Cir. 2015), *as amended* (June 16, 2015), *cert. denied*, 136 S. Ct. 994 (2016)

30

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

(discussing amendment).  "Relating to" is a remarkably broad formulation for a legal nexus, as courts and Congress have consistently recognized.  *See Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (1992) ("The ordinary meaning of the[] words ['relating to'] is a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'") (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *see also Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96-97 & n.16 (1983); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979) (holding it appropriate to presume that Congress was familiar with existing case law and that it expected its enactment to be interpreted in conformity with that case law).

Thus, while pre-amendment cases stressed that the nexus was a low bar, that is even clearer post-amendment.  This Court and others have acknowledged that the 2011 amendment was intended to broaden the statute's reach.  *See Goncalves*, 865 F.3d at 1250 (noting that Congress enacted the amendment "because Congress felt that the courts were construing the statute too narrowly").  In considering that amendment, other Circuits have concluded that the phrase "relating to" requires nothing more than a "connection" or "association" between the act in question and the federal office.  *Caver,* 845 F.3d at 1144; *Commonwealth's Motion*, 790 F.3d at 471-72.  That understanding comports with the legislative history of the amendment to Section 1442(a)(1), which shows that the addition of the words "or

31

314

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

relating to" was purposely intended to "broaden the universe of acts that enable Federal officers to remove to Federal court." *Id.* (citing H.R. Rep. No. 112–17, pt. 1 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 420, 425). "The purpose of the [federal officer] removal statute, clarified by H.R. 368, is to ensure that State courts lack the authority to hold Federal officers criminally or civilly liable for actions performed in the execution of their duties." H.R. Rep. No. 112–17, pt. 1 (2011), as reprinted in 2011 U.S.C.C.A.N. 420, 421. "Congress wrote the statute because it deems the right to remove under these conditions essential to the integrity and preeminence of the Federal Government within its realm of authority." *Id.* at 422. "Federal officers or agents [. . . ] should not be forced to answer for conduct asserted within their Federal duties in a state forum that invites 'local interests or prejudice' to color outcomes." *Id.* (noting without this statutory protection, "Federal officers[ . . . ] could be subject to political harassment, and Federal operations generally would be needlessly hampered."). This is not to say that federal officer jurisdiction is limitless: A person seeking removal on grounds of federal officer jurisdiction still must assert a colorable federal defense and a causal connection between the charged conduct and the asserted federal authority. *Id.*

Thus, to show causation under the amended statute, defendants need only show that the act that is the subject of the plaintiff's attack "occurred *while*

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Defendants were performing their duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original) (even if plaintiffs were to prove that dioxin contamination occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the contamination); *see also Willingham*, 395 U.S. at 409; *Maryland v. Soper*, 270 U.S. 9, 33 (1926); *Gordon v. Air & Liquid Systems Corp.*, 990 F. Supp. 2d 311, 318 (E.D.N.Y. 2014) (causal nexus satisfied where defendants showed that they "made their products because the Navy agreed to procure them."); *Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 609 (D. Conn. 2008) (causal nexus satisfied by defendant's assertions that the use of asbestos occurred while defendant was carrying out Navy-directed duties).

### 2. The district court applied the wrong legal standard

The district court, however, did not apply that test, but invented a stricter legal standard of causation than Congress chose. That is reversible error. *See Sawyer*, 860 F.3d at 258 (reversing and remanding where the "district court imposed a stricter standard of causation than that recognized by the statute"). As the district court framed the issue, Defendants had to show that Old Monsanto had "produced PCBs – and then deliberately concealed their toxicity – 'pursuant to a federal officer's direction.'" ER 8. In other words, the court held, Defendants had

33

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

to confess to committing a tort and prove that the government directed them to do so.[13]  There is no authority for such a standard.

The district court's test is flatly at odds with Section 1442(a)(1) and its purpose.  *See supra.*  It cannot be squared with the language before amendment, let alone the even broader language post-amendment.  Indeed, the district court never expressly acknowledged the amendment, much less explained it away.  The statute was intended to assure private entities that comply with government orders that they will have the protection of a federal forum, but the district court's approach reduces this broad right to a nullity.  Not only does it distort the standard beyond recognition, it erects such negative consequences that a defendant could never afford to invoke it.  The corollary of showing that the federal officer directed tortious conduct, as the district court required, would be admitting that tortious conduct occurred.  In other words, to remove, the defendant has to admit liability.  This is the reverse of the settled rule that "a defendant invoking § 1442(a)(1) 'need

---

[13]  The pre-2011 version of the statute also did "not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority.  It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."  *Soper,* 270 U.S. at 33.  Accordingly, Defendants had only to show "that the challenged acts 'occurred *because* of what they were asked to do by the Government.'"  *Goncalves*, 865 F.3d at 1245 (emphasis in original).  Although the federal officer removal statute is not limitless, "[t]he words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.'"  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

not win his case before he can have it removed.'" *See, e.g., Leite,* 749 F.3d at 1124

(quoting *Willingham,* 395 U.S. at 407).  What good is a right to a federal forum if a

defendant has to admit that it loses the case in order to invoke it?

No cases support the district court's approach – not even pre-amendment

cases and certainly not post-amendment ones.  *Isaacson*, 517 F.3d at 137–38 (pre-

amendment case; enough that the contracts gave rise to the contamination); *see*

*also Willingham,* 395 U.S. at 409; *Soper,* 270 U.S. at 33; *Gordon,* 990 F. Supp. 2d

at 311; *Despres,* 577 F. Supp. 2d at 609.  Nor do the cases on which the district

court relied support its conclusion.  For example, *Cabalce v. Thomas E. Blanchard*

*& Associates*, 797 F.3d 720 (9th Cir. 2015), involved a deadly explosion of seized

fireworks that were to have been stored and destroyed by a company (VSE) for the

government.  *Id.* at 723-724.  However, VSE hired a subcontractor to store and

destroy the fireworks, which resulted in an unplanned and deadly explosion, killing

some of the subcontractor's employees.  *Id.*  After VSE was sued by the decedent's

estates, it removed the suits to federal court under the federal officer statute and

filed a third party complaint against the United States seeking contribution and

equitable indemnity under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

*Id.* at 724-725.  The government moved to dismiss VSE's FTCA lawsuit and the

district court granted that motion, ruling that there was no evidence any

government employee or agency controlled or substantially supervised the day-to-

35

318

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

day destruction of the fireworks, and noting that there was no dispute that VSE and its subcontractor devised and prepared the destruction plans for the fireworks (not the other way around). *Id.* at 725-726. Consistent with this ruling, the district court remanded the removed cases to state court. *Id.* This Court affirmed because VSE failed to challenge the factual findings the district court made when ruling on the motion to dismiss the third party complaint. *Id.* at 728. Nothing in that opinion – or any other – supports the proposition that defendants had to establish that the government directed the underlying tort.

### 3.    The causal nexus requirement is satisfied

Here, the federal government did not simply regulate Old Monsanto's products, it compelled and financed their manufacture, specified that they should be used in other products it bought for defense purposes, bought some of those PCBs itself (including for facilities in Washington state), ultimately required Old Monsanto to sell those products after Old Monsanto tried to stop and over Old Monsanto's objections, and by its own admission caused some of the PCB contamination to water bodies at issue in the State's complaint. That is more than enough to show that Old Monsanto acted under the authority of federal officers when supplying PCBs to the federal government and military contractors.

First, the "acting under" requirement is satisfied because Old Monsanto's manufacture of PCBs helped the federal government with national defense work

36

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

during World War II and later wars.  For a private entity to "act[] under" a federal officer, the private entity must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior."  *Watson*, 551 U.S. at 152 (emphasis in original); *Caver*, 845 F.3d at 1142 (holding that the phrase "acting under" is "broad," and that courts must "liberally construe" this portion of Section 1442(a)(1) (quoting *Watson*, 551 U.S. at 147)); *see also, e.g., Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir. 2012) ("'Acting under' covers situations . . .  where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."); *Bennett v. MIS Corp.,* 607 F.3d 1076, 1088 (6th Cir. 2010) (company satisfied "acting under" requirement when "in the absence of a contract with" the company, the government "itself would have had to perform" the task).

Here, the federal government deemed Old Monsanto's PCBs essential to the national defense to help carry out multiple wars, starting with World War II.  *See, e.g.,* ER 45-49, 129-138, 140, 143, 163, 174-180, 204.  As correspondence and other documents demonstrated, leading up to World War II, the majority of PCBs Old Monsanto produced were for use by the U.S. military in coatings, insulation materials, missile launch tubes, non-flammable wire coatings, banding and sheet rubber, heat-resistant paints, anti-fouling paints, and electrical transformers.  *See, e.g.*, ER 45, 105, 110, 116, 120, 122-127, 129-133, 137-138, 140-149, 162-163,

37

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

174-180, 184, 202-210.  Old Monsanto was recognized with Army-Navy "E" (excellence) Awards for its "splendid production record" (ER 180), production of "an ever growing output of ordnance" (ER 175), and support of the national defense during World War II (ER 174-180).  The federal government recognized Old Monsanto as a "subcontractor" (ER 176, 178) that had demonstrated its "determination to supply our fighting forces with the materials needed to bring the war to a successful conclusion."  ER 179.

Second, this case is far different from the facts presented in the "food chain" cases the State cited to the district court.  *See, e.g., Kelly v. Monsanto Co.*, No. 4:15 CV 1825 JMB, 2016 WL 3543050 (E. D. Mo. June 29, 2016); *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853 (E.D. Mo. 2016).  Federal officer jurisdiction exists here not only because Old Monsanto manufactured and supplied PCBs over its own objections at the behest of the federal government (ER 47-48, 259, 262-270), but also because the federal government relied upon Old Monsanto to manufacture and supply PCBs to Washington-based military facilities (ER 634, 637-53), and (by its own admission) was responsible for PCB contamination caused by such facilities within the state of Washington (ER 218-241).  For example, as noted above, in 1974, a large government-owned transformer destined for an Air Force facility was dropped during transport by the General Services Administration, resulting in a massive spill of 1,000 kg of PCBs into the Duwamish River, one of the water

38

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

bodies at issue in the State's complaint.  ER 218-241.  Evidence of such discharges by the federal government will be featured in this case.

Nor has the federal government denied its responsibility for PCB contamination.  To the contrary, it has publicly acknowledged its part in contributing to PCB contamination at the Puget Sound Naval Shipyard Complex (PSNS) on Puget Sound, another body of water at issue here, where the U.S. Navy has owned and operated facilities since 1891.[14]  The alleged contamination for

---

[14] U.S. Env. Protection Agency, Cleanup Activities: Background, Superfund Site: Puget Sound Naval Shipyard Complex, Bremerton, WA (last visited Dec. 19, 2017),
https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.Clean up&id=1001107#bkground.  According to the U.S. EPA's Superfund Site, "[t]he PSNS is responsible for overhaul, maintenance, modernization, repair, docking and decommissioning of ships and submarines, and technical and logistics support," and those "activities generate large amounts of hazardous waste that have impacted soil, groundwater and marine sediment with petroleum hydrocarbons, heavy metals, volatile organic compounds (VOCs), semi-volatile organic compounds (SVOCs) and polychlorinated biphenyls (PCBs)."  *Id.* (emphasis added); *see also Ritch v. Puget Sound Bridge & Dredging Co., Inc.*, 156 F.2d 334, 334-335 (9th Cir. 1946) (describing U.S. Naval activities regarding the mooring and repair of combat ships on Puget Sound).

Although not included in the district court record, this Court may take judicial notice of the EPA website cited here.  A "court may take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), including on appeal.  *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).  Moreover, government websites, like that of the EPA, are properly subject to judicial notice because they are recognized as a source of reliable documentation.  *See, e.g., L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011) (granting judicial notice of record searches from the California Secretary of State website); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG, 2009 WL 6597891, at *1 (S.D. Cal. Dec. 23, 2009) (holding that pages

39

322

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

which the State seeks recovery with its instant lawsuit *directly* relates to contamination caused by the federal government's use of PCBs that the federal government demanded Old Monsanto provide.

Third, Old Monsanto's actions went beyond simple compliance with the law by manufacturing PCBs for the federal government at its request (and over Old Monsanto's objection) and pursuant to the federal government's specifications. *See Goncalves*, 865 F.3d at 1245 ("[t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law and help[ ] officers fulfill other basic governmental tasks").  "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*."  *See Sawyer v. Foster Wheeler,* 860 F.3d 249, 255 (4th Cir. 2017) (emphasis in original); *see, e.g., Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 813 (3d Cir. 2016) (Boeing's actions under a federal contract to produce military aircraft for the government sufficient to satisfy requirement that it act under a federal officer); *Ruppel,* 701 F.3d at 1181 (corporation that supplied the Navy with turbines satisfied the "acting under" requirement); *Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 137-38 (2d Cir. 2008) (enough that contractual relationship gave rise

---

printed from FDA website were "similarly reliable to other traditional public documents"); *accord Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,* 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from FDIC's official website).

40

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

to Agent Orange contamination even if the contract did not call for it); *Gordon,* 990 F. Supp. 2d at 318 (causal nexus met where defendants "made their products because the Navy agreed to procure them," thus allowing "defendant's conduct to fall under the color of a federal office regardless of whether there were contractual terms concerning asbestos").

Fourth, in the case of PCBs, Old Monsanto did not simply manufacture a product that it voluntarily sold to all – including on occasion the federal government. Nor was its use by the federal government and its contractors mere happenstance. PCBs were subject to specifications dictated by and approved for particular uses by the federal government. *See, e.g.*, ER 45, 105, 110, 116, 120, 122-127, 129-133, 137-38, 140-149, 162-163, 174-180, 184, 202-210. And, at times, Monsanto was required to manufacture and sell PCBs over its objections. For example, in correspondence in 1972 and 1973, a federal officer within the Department of Commerce directed Old Monsanto to accept purchase orders for Aroclor 1242 pursuant to Section 101 of the Defense Production Act of 1950. ER 47-48, 259, 262-270, 289, 291. Although Old Monsanto objected to the request due to new understandings of environmental concerns, it complied with the federal government's directive. *Id.*

Similarly, correspondence dated April 25, 1973 from Raytheon to Old Monsanto, stated that:

41

324

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

> The government has directed [Raytheon] to proceed to manufacture missiles but has *refused to authorize Raytheon to qualify a new potting material which would avoid use of Aroclor 1242.*

ER 120 (emphasis added; orig. in all caps).  Raytheon's correspondence further confirmed Old Monsanto's objection to the sale, stating:

> We also wish to acknowledge the fact that Monsanto in all of our dealings has expressed a strong preference *not* to sell this product to us and *is proceeding with the sale only at the direction of the government* and because we have made the concessions outlined above.

*Id.* (emphasis added; orig. in all caps).  The district court wholly ignored this correspondence from Raytheon.

Finally, federal officer jurisdiction does not depend upon whether or not the removing party is ultimately proven right as to whether the federal government had anything to do with the action giving rise to liability.  *Leite*, 749 F.3d at 1124 ("Crane may not be right – indeed, it may be that the Navy had nothing to do with Crane's failure to warn.  But the question 'whether the challenged act was outside the scope of [Crane's] official duties, or whether it was specifically directed by the federal Government, is one for the federal – not state – courts to answer.");  *Isaacson*, 517 F.3d at 138 (same); *Willingham v. Morgan,* 395 U.S. 402, 409 (1969).  In other words, the right to a federal forum does not depend on proof that the defendants will ultimately prevail in that forum.  Here, although the district court found that the correspondence with the U.S. Commerce Department was the

42

325

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

"strongest evidence in support of federal officer jurisdiction," it nonetheless declared this evidence insufficient because the letters did "not actually direct [Old] Monsanto to produce PCBs that it had not already, or would not have otherwise, produced." ER 10-11. However, the district court did not cite a single case that requires a removing party to rule out alternative scenarios as it did here. *Id.* Indeed, such a requirement is inconsistent with *Leite*. The only question for the district court was whether these facts established an adequate causal nexus, not whether they were the *only possible* causal nexus. As the record shows, a more than adequate nexus existed here.

### 4.    None of the district court's other arguments support remand

The district court concluded that PCBs were only "mentioned in a government specification, not produced to government specifications." ER 9. This conclusion is flawed for two independent reasons. First, the district court's conclusion ignores the evidence that the federal government in fact: (1) required PCBs through their product specifications and purchase requests (ER 45, 105, 110, 114, 116, 120, 122-127, 129-133, 137-138, 140-149, 162-163, 174-180, 184, 202-210, 634, 636-53); (2) viewed the production and use of PCBs as necessary to the national defense (*see, e.g.,* ER 45-49, 129-138, 140, 143, 163, 174-180, 204); (3) concluded that there were no comparable substitutes for PCBs (ER 49, 293); and (4) ultimately *required* Old Monsanto over its objections to sell PCBs to it and to

43

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

its contractors (ER 47-48, 259, 262-270, 289, 291).  Second, even if this were a fair reading of the evidentiary materials (and it is not), this is not the law: "Requiring 'precise federal direction' to show a causal nexus . . . would not only render the 'colorable' federal defense requirement a nullity, as the causal nexus requirement would hold the removing party to a heightened burden, but would also be contrary to the Supreme Court's admonishment that the 'test for removal should be broader, not narrower, than the test for official immunity.'"  *Zeringue v. Crane Co.,* 846 F.3d 785, 794 (5th Cir. 2017) (citing *Willingham*, 395 U.S. at 404)).

The district court also asserted that the federal government "valued PCBs for their flame-resistant characteristics," not their "toxicity."  ER 10.  But the court cited no cases holding that the government must intend the ill effects that result from federally-directed actions.  Moreover, Defendants demonstrated that the federal government was aware by the 1970s of potential risks posed by PCBs (and that Old Monsanto repeatedly warned it and other buyers of such risks), but nonetheless continued to require PCBs' use because of the lack of adequate substitutes.  *See* ER 47-49, 259-260, 261-270, 274, 282-283, 285, 288-294.

Nor does the fact that Old Monsanto sold to federal contractors as well as to the federal government alter the analysis.  Courts have repeatedly held that federal subcontractors can act under the color of federal office and may invoke the federal officer removal statute just like direct federal contractors.  *See, e.g., Humphries v.*

44

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

*Elliot Co.,* 760 F.3d 414, 417 (5th Cir. 2014) (defense contractor did not waive

right to invoke federal officer removal statute after primary contractor dismissed);

*Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066-A, 2014 WL 6390324, at *2, 7

(W.D.N.Y. Nov. 17, 2014) (defendant acted under color of federal office, even

though it "did not have a contract directly with the United States," but instead "was

providing services . . . pursuant to a subcontract . . . ."); *Campbell v. Brook Trout

Coal, LLC*, No. 2:07-0651, 2008 WL 4415078, at *1 (S.D. W. Va. Sept. 25, 2008)

(subcontractor acted under color of federal office).

Defendants provided evidence that they would not have sold PCBs to federal

government contractors *but for* an express directive by the federal government (ER

47-48, 259, 262-270, 289, 291), that they sold PCBs directly to the federal

government (including to facilities in Washington state) (ER 634, 637-53), and that

the federal government knew of potential risks posed by PCBs (ER 47-49, 274,

282-283).[15]   This was more than enough to meet their burden.   To reach the

_____

[15] Washington relied heavily below on district court orders remanding cases removed by Monsanto.  Those cases, five of which came from a single district court, reached their conclusions on different grounds, with different factual records, against a different legal framework, and measured against different claims. *See* ER 538-594, 611-632.  Those cases do not support the district court's decision here for multiple reasons.  First, five of those cases involved the *disposal* of PCBs (*see Anderson v. Hackett,* 646 F. Supp. 2d 1041, 1054 (S.D. Ill. 2009); ER 538, 558, 566, 578), while Washington's complaint involves a challenge to the manufacture of PCBs (ER 35, 39).  Second, those five were decided *before* the 2011 amendments to the federal officer removal statute, which were intended to loosen the requirements for removal, not tighten them.  *See Anderson,* 646 F. Supp.

45

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

opposite conclusion requires reading the record in a way that simply makes no sense and conflicts with this Court's requirement that courts credit defendants' theory of the case. *See Leite*, 749 F.3d at 1124.

### 5. The Other Two Prongs For Removal Are Satisfied

#### a. The State did not dispute that Defendants are "persons" for purposes of federal officer removal

Courts of appeals have uniformly held that corporations, like Defendants, are "person[s]" under § 1442(a)(1).    *See Goncalves*, 865 F.3d at 1244; *Commonwealth's Motion*, 790 F.3d at 467-68 (holding that § 1442(a)(1)'s use of the term "person" includes corporations); *Bennett v. MIS Corp.,* 607 F.3d 1076, 1085 (6th Cir. 2010) (same); *Isaacson,* 517 F.3d at 135-36 (same); *see also* 1 U.S.C. § 1 (defining "person" to include, unless the context indicates otherwise, "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"); *see also Watson,* 551 U.S. at 152-154 (using the term "private person" and "company" interchangeably in the context of

---

2d at 1041; ER 538, 558, 566, 574.  Third, despite Washington's claims to the contrary below, the evidentiary records are fundamentally different.  The records in the remanded cases did not include, for example, contracts for direct sales to federal agencies, orders to ship PCBs pursuant to the DPA, or Necessity Certificates financing and authorizing the expansion of PCB manufacturing facilities that were "100%" for "Defense Purposes."  Fourth, that record takes on different significance when evaluated against the factual background in this case.  For example, evidence of a government spill of PCBs in Washington is of particular relevance to claims brought by the Washington based on alleged harm incurred in the state.

46

329

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

§ 1442(a)(1), but holding that the defendant-company could not remove the action). The State did not challenge Defendants' standing as "persons" in its motion to remand, because it could not.

### b.    Defendants asserted colorable federal defenses

Although the district court did not reach this prong, Defendants met it as well. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citing *Willingham*, 395 U.S. at 406-07); *Ellis v. Pneumo Abex Corp.,* 798 F. Supp. 2d 985, 990 (C.D. Ill. 2011) (court must simply determine if defense is plausible).[16] "At its core, the defense prong simply requires that the defendant raise a claim that is 'defensive' and 'based in federal law.'" *Isaacson*, 517 F.3d at 138 (*citing Mesa v. California*, 489 U.S. 121, 129-130 (1989)). Critical to the analysis under that "colorable defense" prong is that "one of the most important reasons for removal is to have the validity of the defense . . . tried in a federal court. The officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

Because a core purpose of the statute is to let the validity of the federal defense be tried in federal court, "a defendant seeking removal need not virtually

---

[16] A non-colorable federal claim for purposes of federal question jurisdiction is one that is "'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 513 n.10 (2006).

47

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

win his case, nor must his defense even be 'clearly sustainable' on the facts." *Cuomo v. Crane Co.*, 771 F.3d 113, 115-116 (2d Cir. 2014) (internal quotations and citations omitted). *Cf.* Black's Law Dictionary 282 (9th ed. 2009) (defining a colorable claim as "a claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)"). "Unless the substantive defense by the federal officer is completely frivolous," he is entitled to have the merits of such defense decided in federal court. 16 Fed. Proc., L. Ed. § 40:821. "But definitive proof is not necessary for removal" – instead the removing party need only assert "a not-insubstantial and non-frivolous basis" for a federal defense. *Zeringue*, 846 F.3d at 792.

This principle applies with particular force here, where the plaintiff is the State of Washington suing in its own courts. It is hard to imagine a clearer case of home court advantage. *See Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (removal permits trial to occur free from "local interests or prejudice"). Because Defendants asserted significant and, at a minimum, colorable federal defenses based on the government contractor defense and federal preemption (express and implied), they are entitled to have those defenses heard in a federal forum.

The government contractor defense. The government contractor defense applies when "(1) the United States approved reasonably precise specifications; (2)

48

331

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). Defendants satisfied each prong.

First, the PCBs that Old Monsanto manufactured for the federal government all had reasonably precise specifications for particular uses by the federal government. *See, e.g.,* ER 45, 57, 105, 110, 116, 120, 122-127, 129-133, 137-138, 140-149, 162-163, 174-180, 184, 202-210. Moreover, to satisfy this element, the product supplied does not have to be specially designed by the military with no input from the manufacturer. *See McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 450 (9th Cir. 1983) (rejecting plaintiff's argument that the government contractor defense "is only available where the specifications in the contract leave no discretion to the supplier in the formulation of the product's design"). Instead, "all that is necessary on this element of the defense is for defendant to prove that the product it supplied was a particular product specified by the government." *In re Agent Orange Prod. Liab. Litig.*, 534 F. Supp. 1046, 1056 (E.D.N.Y. 1982). Here, the Department of Defense expressly included PCBs in product specifications and on product order forms because of their performance characteristics. ER 58, 351, 359-360. Indeed, PCBs were specified, approved, and used extensively precisely because of their unique properties, which were unavailable to the military and

49

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

other federal agencies in other products or components. *See, e.g.,* ER 58, 293-294.

Second, the various PCBs manufactured by Old Monsanto and sold to the federal government, or at its direction, met all applicable product specifications and satisfied government-required inspections. *See, e.g.,* ER 58, 116, 174-180.

Third, contractors do not have to warn the government of dangers already known to it. *In re Agent Orange Prod. Liab. Litig.,* 304 F. Supp. 2d 404, 435 (E.D.N.Y. 2004). Old Monsanto was not aware of dangers related to PCBs that were not also known to the government. ER 58-59, 262-270, 272-287, 291, 293-294. But, even so, Old Monsanto included warnings in communications with the government regarding PCBs. *See, e.g.,* ER 59, 262-270, 291, 293-294.

As in *Boyle*, the purported state-imposed duty in this case – to hold Defendants responsible for Old Monsanto's manufacturing of PCBs four to eight decades ago – is "precisely contrary" to the duty imposed by the government contract. *See Boyle*, 487 U.S. at 509. Because evidence demonstrates that (1) the federal government approved reasonably precise specifications calling for PCBs; (2) Old Monsanto provided PCBs that conformed to those specifications; and (3) Old Monsanto provided safety information to the government, which was already aware of risks associated with PCBs, Defendants, as the alleged successors, have a colorable government contractor defense and are entitled to a federal forum in which to present it. *Id.* at 512.

50

333

<u>Defense Production Act</u>.  The Defense Production Act provides that "[n]o person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this chapter, notwithstanding that any such rule, regulation, or order shall thereafter be declared by judicial or other competent authority to be invalid."  21 U.S.C. § 4557.  Here, the State is suing Defendants for Old Monsanto's manufacture and supply of PCBs that were demanded by federal officers pursuant to the Defense Production Act.  ER 47-48, 259-260, 289 (Department of Commerce officials ordering Old Monsanto to accept purchase orders "pursuant to Section 101 of the Defense Production Act of 1950").  Thus, federal officers issued directives to Old Monsanto under threat of criminal prosecution pursuant to the Defense Production Act to manufacture and supply PCBs and Old Monsanto complied with those directives.  ER 47-48, 259-260, 262-270, 289, 291.  Because the State seeks to hold Defendants liable as Old Monsanto's successors for complying with the government's mandates under the Defense Production Act, Defendants have a colorable federal defense under 21 U.S.C. § 4557.

<u>Express and Implied Preemption.</u>  Defendants also have another significant and colorable federal defense available because TSCA preempts the State's claims.  TSCA provides a comprehensive regulatory approach to PCBs and other

51

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

chemicals, and Congress endowed EPA with the authority to balance the risks and benefits of such chemicals in selecting regulatory and enforcement procedures. *See, e.g.,* 15 U.S.C. §§ 2601(c), 2605(a), 2605(c)(1)(D).

For PCBs in particular, the government balanced the risks and determined that preexisting uses of PCBs were essential for the safety of the nation's electrical grid to prevent fires and explosions. *See, e.g*., 47 Fed. Reg. 37,342-01 (Aug. 25, 1982) ("An immediate ban of [PCBs] would not only have disrupted electric service but would also have caused severe economic hardship for the public and United States industry"). Courts therefore have held that TSCA preempts common law and statutory claims related to PCBs. *See, e.g., Rollins Envtl. Servs. (FS), Inc. v. St. James Parish*, 775 F.2d 627, 637 (5th Cir. 1985) (TSCA preempted local ordinance that functionally prohibited disposal of PCBs); *Twitty v. North Carolina*, 527 F. Supp. 778, 781 (E.D.N.C. 1981) (nuisance and violation of county ordinance claims preempted by TSCA).

Among other colorable defenses, CERCLA provides an additional basis for preemption. The State seeks to recover natural resource damages – damages expressly available under (and only through[17]) CERCLA and as to which

_____

[17] Section 107(f)(1) of CERCLA (42 U.S.C. § 9607(f)(1)) expressly provides for the State to sue "on behalf of the public as trustee" for the "natural resources within the State" to "recover for . . . damages" to "such natural resources," language parroted by the State in the Complaint, albeit without quotation marks and express citations to CERCLA. *See, e.g.,* ER 17-18. By contrast, none of the

52

335

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

CERCLA provides for a comprehensive and reticulated scheme by which those parties are identified, and through which the damages are apportioned among them. There can be little question about the State's intent in this regard: The term "natural resources" appears at least 25 times in the complaint (ER 14-41) and the second item in the "Prayer for Relief" seeks "[d]amages for injury to natural resources, including the economic impact to the State and residents."  ER 41. Thus, to the extent the natural resources damages claims purport to rest on state tort law, which would be novel in itself, the suit frustrated CERCLA's purposes by seeking to evade and undermine the comprehensive, detailed statutory scheme that Congress created to determine natural resource damages and to allocate responsibility for cleanup costs among multiple parties.  *See Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 943 (9th Cir. 2002) (CERCLA preemption will be found where "state law stands as 'an obstacle to the accomplishment and execution of [CERCLA's] full purposes and objectives.'").

---

State's six enumerated state law claims for public nuisance, product liability (design defect and failure to warn), negligence, equitable indemnity, or trespass recognizes or authorizes recovery for "damages" to "natural resources."  *See* Wash. Rev. Code. § 7.48.130 (public nuisance statute; no mention of natural resources damages); Wash. Rev. Code § 7.72.030 (product liability statute; no mention of natural resources damages); *Degel v. Majestic Mobile Manor, Inc.*, 914 P.2d 728, 731 (Wash. 1996) (citing elements of common law negligence; no mention of natural resources damages); *Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 285 P.3d 70, 81 (Wash. Ct. App. 2012) (discussing elements of equitable indemnity; no mention of natural resources damages); Wash. Rev. Code § 4.24.630(1) (statutory trespass statute; no mention of natural resources damages).

53

336

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

Finally, the State's claims are barred by conflict preemption. Specifically, the State's claims that its laws imposed a contemporaneous duty on Old Monsanto not to manufacture PCBs conflict with federal directives requiring the manufacture of PCBs under the Defense Production Act, federal government orders and purchases, and statutes permitting the continued use of PCBs, *e.g.*, 15 U.S.C. § 2605(e)(2)(A).

## CONCLUSION

Despite acknowledging its obligation to liberally construe Section 1442(a)(1) to give full effect to its purpose, the district court remanded this case based on a new removal standard that conflicts with the statute and its purpose. Defendants provided ample evidence that the federal government required Old Monsanto to manufacture and supply PCBs for the national defense even over Old Monsanto's objections. Moreover, Defendants demonstrated that the federal government itself spilled PCBs in the very water bodies for which the State seeks relief in this lawsuit. In resolving the State's attack on Defendants' removal, the district court should have accepted Defendants' theory of the case and held their

54

337

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE

allegations sufficient to invoke its jurisdiction.  For these and all the foregoing

reasons, this Court should reverse the district court's order remanding the case.


Dated: December 20, 2017          Respectfully submitted,

                                  /s/ Donald F. Zimmer, Jr.
                                  Donald F. Zimmer, Jr.
                                  Cheryl A. Sabnis
                                  Anne M. Voigts
                                  fzimmer@kslaw.com
                                  csabnis@kslaw.com
                                  avoigts@kslaw.com
                                  KING & SPALDING LLP
                                  101 Second Street, Suite 2300
                                  San Francisco, CA 94105
                                  Telephone: +1 415 318 1200


                                  Jennifer L. Campbell
                                  Connie Sue Martin
                                  Claire L. Rootjes
                                  SCHWABE, WILLIAMSON & WYATT, P.C.
                                  1420 5th Avenue, Suite 3400
                                  Seattle, WA  98101
                                  jcampbell@schwabe.com
                                  csmartin@schwabe.com
                                  crootjes@schwabe.com
                                  Tel: +1 206 622 1711

                                  Attorneys for Defendants-Appellants
                                  Monsanto Company, *et al.*


55


338

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel for appellants is not aware of

any related cases.

                             /s/ *Donald F. Zimmer, Jr.*   
                            Donald F. Zimmer, Jr.
                            KING & SPALDING LLP

                            *Counsel for Appellants Monsanto*
                            *Company, et al.*

339

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rule 32(a)(7)(C), I certify

that this brief complies with the length limitations set forth in Rule 32(a)(7)(B)(i)

because it contains 11,467 words, as counted by Microsoft Word, excluding the

items that may be excluded under Rule 32(a)(7)(B)(iii).

 /s/ *Donald F. Zimmer, Jr.*
Donald F. Zimmer, Jr.
KING & SPALDING LLP

*Counsel for Appellants Monsanto Company, et al.*

57

340

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I certify that on December 20, 2017, I filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 /s/ *Donald F. Zimmer, Jr.*
Donald F. Zimmer, Jr.
KING & SPALDING LLP

*Counsel for Appellants Monsanto Company, et al.*

DECLARATION OF ALICIA D. BUTLER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE