Geana M. Van Dessel, WSBA #35969
KUTAK ROCK
510 W. Riverside Avenue, Suite 800
Spokane, WA 99201
Phone: (509) 252-2691

Adam E. Miller, MO Bar No. 40945 (*Pro Hac Vice*)
Michael W. Cromwell, MO Bar No. 70484 (*Pro Hac Vice*)
Susan L. Werstak, MO Bar No. 55689 (*Pro Hac Vice*)
CAPES, SOKOL, GOODMAN AND SARACHAN, PC
8182 Maryland Ave., Fifteenth Floor
St. Louis, Missouri 63105-3916
Phone (314) 754-4810

Thomas M. Goutman, PA Bar No. 30236 (*Pro Hac Vice*)
David. S. Haase, PA Bar No. 73835 (*Pro Hac Vice*)
Kim Kocher, PA Bar No. 66557 (*Pro Hac Vice* to be filed)
SHOOK HARDY & BACON LLP
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 575-3136

Richard L. Campbell, MA Bar No. 663934 (*Pro Hac Vice*)
Melissa Nott Davis MA Bar No. 654546 (*Pro Hac Vice*)
SHOOK HARDY & BACON LLP
125 Summer Street, Suite 1220
Boston, MA 02110
Phone: (617) 531-1411

Attorneys for Defendants (Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| CITY OF SPOKANE, a municipal corporation, located in the County of Spokane, State of Washington,<br><br>Plaintiff,<br><br>vs.<br><br>MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA CORPORATION, and DOES 1-100,<br><br>Defendants. | Case No. 15-cv-00201-SMJ<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ALTERNATIVE THEORIES OF LIABILITY**<br><br>Hearing: March 11, 2020<br>Richland<br>With Oral Argument |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

STATEMENT OF THE CASE....................................................................1

   A.    Factual Background ........................................................................1

   B.    Procedural History..........................................................................2

STANDARD FOR SUMMARY JUDGMENT.........................................4

ARGUMENT ..............................................................................................5

I.    Plaintiff Failed, as a Matter of Law, to Establish a WPLA Claim..................5

II.   Plaintiff Failed, as Matter of Law, to Establish a Negligence Claim..............8

III.  Plaintiff Failed, as Matter of Law, to Establish a Claim for Equitable

      Indemnity ........................................................................................9

CONCLUSION.........................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 249 (1986)................................................................................4

*Bultena v. Wash. State Dep't of Agric.*,
    319 F. Supp. 3d 1215, 1221 (E.D. Wash. 2018).....................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................4

*City of Seattle v. Monsanto Company*,
    237 F. Supp. 3d 1096, 1109 (W.D. Wash. 2017) ................................................10

*Davis v. Wash. State Dep't of Soc. & Health Servs.*,
    2018 WL 6251375 (E.D. Wash. Nov. 29, 2018) ...................................................4

*Gordon v. Kitsap Cty.*,
    187 Wn. App. 1023 (2015), 2015 WL 2124383 (May 5, 2015)..........................6

*Hiner v. Bridgestone/Firestone, Inc.*,
    138 Wn. 2d 248 (1999) ..................................................................................7

*Macias v. Saberhagen Holdings, Inc.*,
    175 Wn. 2d 402 (2012) ..............................................................................6, 8

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................4

*Palmer v. Massey-Ferguson, Inc.*,
    3 Wn. App. 508 (1970) ..................................................................................8

*Sabey v. Howard Johnson & Co.*,
    101 Wn. App. 575 (2000) ..............................................................................9

*Seybold v. Neu*,
    105 Wn. App. 666 (2001) ..............................................................................6

*Simonetta v. Viad Corp.*,
    165 Wn. 2d 341 (2008) ..........................................................................................8

*Stevens v. Security Pac. Mortgage Corp.*,
    53 Wn. App. 507 (1989) ........................................................................................9

*Sullins v. Exxon/Mobil Corp.*,
    729 F. Supp. 2d 1129 (N.D. Cal. 2010) .................................................................9

*Washington Water Power Co. v. Graybar Elec. Co.*,
    112 Wn. 2d 847 (1989) ..........................................................................................8

*Zweig v. Hearst Corp.*,
    521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025 (1975) ...............................4

**Statutes**

RCW 4.22.040(3) ..............................................................................................................9

RCW 7.72.030 ..........................................................................................1, 2, 5, 6, 8, 10

RCW 7.72.030(1)(C) ........................................................................................................6

**Rules**

LCivR 56 ..........................................................................................................................1

# INTRODUCTION

The City of Spokane seeks to recover its alleged costs to reduce its discharge of polychlorinated biphenyls ("PCBs") into the Spokane River from Monsanto under non-actionable product liability, negligence, and equitable indemnity theories.[1]

Monsanto seeks dismissal of Plaintiff's product liability claims because Plaintiff cannot, based its own admissions and failure of proofs, establish any triable claim under the Washington Products Liability Act ("WPLA").

Monsanto seeks dismissal of Plaintiff's negligence claims because any post-1981 claim is pre-empted by the WPLA and any claim pre-dating the WPLA fails, like Plaintiff's common law product liability claims, for lack of standing.

Monsanto seeks dismissal of Plaintiff's equitable indemnity claim because Plaintiff has no obligation to pay damages to a third party, Plaintiff cannot establish that Monsanto owes any legal duty to pay its costs, and Plaintiff admittedly cannot establish that Monsanto is liable for the entirety of Plaintiff's costs.

# STATEMENT OF THE CASE

**A.    Factual Background**

Pursuant to LCivR 56, Monsanto's Statement of Material Facts Not in Dispute is separately filed and referred to herein as "DSOF."

---

[1] Plaintiff the City of Spokane is referred to as "Plaintiff" or "the City" and Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC are referred to collectively as "Monsanto" herein.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S ALTERNATIVE THEORIES OF LIABLITY

1

## B. Procedural History

In its complaint, Plaintiff asserts claims for public nuisance, product liability, negligence, and equitable indemnity. ECF No. 1. The Court granted in part and denied in part Monsanto's Motion to Dismiss. ECF No. 74.

Plaintiff asserts claims for defective design and failure to warn arising from Monsanto's manufacture of PCBs from the 1930s to 1970s. ECF No. 1 at 2, 11, 12. In response to Monsanto's Motion to Dismiss Plaintiff's product liability claims, Plaintiff admitted that "Monsanto's injury-producing events all occurred prior to 1981." ECF No. 37 at 5. In ruling on Monsanto's motion, the Court held that Plaintiff lacks standing to bring common law product liability claims because the City does not fall within the class of plaintiffs that common law product liability is intended to protect. ECF No. 74 at 17. The Court, therefore, dismissed all of Plaintiff's product liability claims predating the effective date of the WPLA, June 26, 1981. The Court limited Plaintiff to product liability claims arising under the WPLA, noting, however, that "[m]ost, if not all of [the injury-producing events] occurred before the WPLA's effective date [June 26, 1981]." ECF No. 74 at 11, 17.

The Court declined to dismiss Plaintiff's negligence claim on the basis that Plaintiff adequately alleged that PCB contamination of the environment was foreseeable to Monsanto. ECF No. 74 at 24.

The Court also found that Plaintiff adequately alleged a claim for equitable indemnity on the basis that "Spokane alleges that it is legally obligated to remove PCBs from wastewater and stormwater before discharging into the Spokane River

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S ALTERNATIVE THEORIES OF LIABLITY

2

and that Monsanto is responsible for contaminating the wastewater and stormwater." ECF No. 74 at 25.

Monsanto now seeks dismissal of Plaintiff's product liability, negligence, and equitable indemnity causes of action for Plaintiff's failure, as a matter of law, to establish a triable claim under any of these theories. Monsanto separately seeks dismissal of Plaintiff's nuisance claim for Plaintiff's failure, as a matter of law, to establish a nuisance, property damage, or liability-producing conduct. In a concurrently filed Motion for Summary Judgment, Monsanto also seeks dismissal of all of Plaintiff's causes of action based on the statute of limitations.

# STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no genuine dispute as to the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135-36 (9th Cir.), cert. denied, 423 U.S. 1025 (1975). After the moving party points to the absence of any genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Davis v. Wash. State Dep't of Soc. & Health Servs.*, 2018 WL 6251375, *5 (E.D. Wash. Nov. 29, 2018) (Mendoza, D.J.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). If the nonmoving party fails to proffer a *prima facie* showing of any of the elements essential to its case as to which it would have the burden of proof at trial, summary judgment is required. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bultena v. Wash. State Dep't of Agric.*, 319 F. Supp. 3d 1215, 1221 (E.D. Wash. 2018) (Mendoza, D.J.).

# ARGUMENT

## I. Plaintiff Failed, as a Matter of Law, to Establish a WPLA Claim

Pursuant to the Court's ruling on Monsanto's Motion to Dismiss, Plaintiff is limited to product liability claims under the WPLA. To the extent, if any, that Plaintiff intends to pursue a WPLA cause of action, Plaintiff failed, as a matter of law, to establish any viable claim.

### A. Plaintiff Conceded the Inapplicability of the WPLA

As this Court previously held, Plaintiff's product liability claims are limited to conduct occurring after the June 26, 1981 effective date of the WPLA. ECF No. 74 at 11-17. Plaintiff admits, however, that "Monsanto's injury-producing events all occurred prior to 1981." ECF No. 37 at 5. Indeed, Monsanto ceased production of PCBs in 1977. DSOF252. And, as the cause of harm, "Spokane does not allege that disposal or improper use of PCB-containing products resulted in contamination" at any time. ECF No. 74 at 22. By Plaintiff's own admissions, therefore, Plaintiff has no factual basis on which to pursue any claim under the WLPA.

### B. Plaintiff Has No Viable WPLA Claim

Alternatively, Plaintiff can point to no evidence, expert opinion, or legal authority establishing a viable product liability claim based on post-1981 conduct.

The WPLA expressly limits the post-sale duty to warn to "product users." RCW 7.72.030 ("This duty is satisfied if the manufacturer exercises reasonable care to inform product users.").

The City's chemical waste expert, Dr. Jack Matson, admits that the EPA placed explicit responsibility for appropriate PCB handling and disposal on the generators of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S ALTERNATIVE THEORIES OF LIABLITY

5

PCB-containing waste from industrial facilities in 1976. DSOF300. After the EPA promulgated detailed regulations setting forth approved methods of PCB disposal in 1978, Matson acknowledged that all industrial facilities generating PCB-containing waste were required to follow these disposal regulations. DSOF301.

Plaintiff can identify no authority establishing any post-sale legal duty owed by Monsanto to provide its customers additional handling or disposal instructions above and beyond the EPA regulations. To the contrary, under the WPLA, a manufacturer's post-sale duty is limited to the provision of warnings to make the product safe for its intended use. RCW 7.72.030(1)(C); *Macias v. Saberhagen Holdings, Inc.*, 175 Wn. 2d 402, 418 (2012) (explaining whether product is unreasonably unsafe involves consideration of use and predictability of hazards when the product is used as intended).

Nor does Plaintiff have the necessary expert to testify that Monsanto failed to provide adequate, or provided inaccurate, warnings after 1981. *See Gordon v. Kitsap Cty.*, 187 Wn. App. 1023 (2015), 2015 WL 2124383 (May 5, 2015) (requiring expert testimony to establish the standard of care for highly technical or specialized roles); *Seybold v. Neu,* 105 Wn. App. 666, 676 (2001) ("Expert testimony is required when an essential element in the case is best established by an opinion that is beyond the expertise of a layperson").

The City has no expert in chemical handling or disposal practices or the state of the art of disposal practices after 1981. Nor does the City proffer any expert in waste disposal who will testify that it was the standard of care for a chemical manufacturer to either provide for disposal of its product or provide instructions for

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S ALTERNATIVE THEORIES OF LIABLITY

6

the disposal of its product as of 1981. Matson does not know of any standard governing the instruction of customers regarding proper PCB disposal practices. DSOF328. Likewise, the City's historian, David Rosner, Ph.D., who admittedly has no expertise in toxicology, chemistry, or the environment, knows of no standards that dictated when a manufacturer should have provided recommendations or what the recommendations should have been regarding disposal of a product then or now. DSOF325-38.

Nor can Plaintiff establish that any post-sale warning or instruction would have prevented its alleged injury. *Hiner v. Bridgestone/Firestone, Inc.*, 138 Wn. 2d 248, 258 (1999) (entering judgment against plaintiff where "there was not substantial evidence in the entire record upon which a reasonable jury could infer that, but for the absence of warnings, [plaintiff's] accident and injuries would not have occurred."). Plaintiff admits that Monsanto's customers were large, sophisticated entities with their own top-level scientists and engineers. DSOF239, 242, 247. But Matson fails to identify any additional information beyond the EPA guidance and regulations that these sophisticated manufacturers would have needed to determine how to handle, use, or dispose of PCBs.

The City, moreover, has adduced no evidence that any Monsanto customer caused PCBs to enter the Spokane River because of any failure by Monsanto to provide adequate disposal or other instructions. In fact, the City's 30(b)(6) witness, Scott Windsor, admitted there is no evidence that any PCBs ever migrated from any landfills into the City's stormwater system or the Spokane River. DSOF181.

## II. Plaintiff Failed, as Matter of Law, to Establish a Negligence Claim

"Insofar as a negligence claim is product-based, the negligence theory is subsumed under the WPLA product liability claim." *Macias,* 175 Wn. 2d at 409. To the extent, therefore, that Plaintiff asserts negligence-based claims against Monsanto based on post-1981 conduct, Plaintiff's post-1981 claims are pre-empted by the WPLA. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn. 2d 847, 856 (1989).

To the extent, if any, that Plaintiff asserts negligence-based claims against Monsanto based on pre-1981 conduct, Plaintiff's claims fail for the same reasons as its common law product liability claims. The distinction between strict liability and negligence in the product liability context is that, "in a negligence action, the focus is on the conduct of the defendant; in a strict liability action, the focus is on the product itself and the reasonable expectations of the user." *Simonetta v. Viad Corp.*, 165 Wn. 2d 341, 356-57 (2008). To whom the manufacture owes a duty is coextensive under common law strict liability and negligence. As under common law strict liability, the scope of a manufacturer's duty in negligence is limited to "those who use [the product] for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use." *Palmer v. Massey-Ferguson, Inc.*, 3 Wn. App. 508 (1970). Because Plaintiff does not fall within the class of users, consumers, or bystanders that common law strict product liability is intended to protect, ECF No. 74 at 17, Plaintiff likewise has no viable negligence claim.

## III. Plaintiff Failed, as Matter of Law, to Establish a Claim for Equitable Indemnity

The City satisfies no element of an equitable indemnity cause of action.

An indemnity action arises when: (1) "the party seeking indemnity pays or is 'legally adjudged obligated to pay' damages to a third party;" (2) there is a legal duty owed between the parties; and (3) the party seeking indemnity is entitled to a full transfer of liability to the defendant. *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 588-593 (2000).

The City's purported permit compliance costs do not arise from any liability to any third party. Nor do the City's claimed costs constitute damages owed or paid to a third party. *See Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1138 (N.D. Cal. 2010) (finding plaintiff not entitled to equitable indemnity for costs incurred under final cleanup order as order was not a judgment or settlement). No legal authority stands for the proposition that regulatory compliance costs constitute damages owed to a third party.

Nor has the City established that a legal duty exists between the parties. Plaintiff's characterization of its sewer system as a "passive conduit" for Monsanto's PCBs does not *ipso facto* create in Monsanto a legal duty to pay Plaintiff's own costs where none exists. RCW 4.22.040(3) ("The common law right of indemnity between active and passive tortfeasors is abolished."). Absent a duty in tort, Plaintiff cannot establish Monsanto's liability for its costs.

Additionally, the City cannot establish that Monsanto could be liable for the entirety of its costs. "Indemnity . . . transfers liability from the one who has been compelled to pay damages to another who should bear the *entire loss*." *Stevens v.*

*Security Pac. Mortgage Corp.*, 53 Wn. App. 507, 517 (1989) (emphasis added); *see also City of Seattle v. Monsanto Company*, 237 F. Supp. 3d 1096, 1109 (W.D. Wash. 2017) (dismissing Seattle's equitable indemnity claim because it failed to allege facts suggesting that Monsanto is responsible for all of the contamination Seattle must remedy). It is undisputed that the City incurred its claimed costs to address multiple sources of contamination, including phosphorous, ammonia, and CBOD5, all of which are specifically regulated under its NPDES permits. DSOF119. Monsanto could not, therefore, be held responsible, if at all, for Plaintiff's *entire* costs.

## CONCLUSION

Based on the foregoing, Monsanto requests that the Court enter judgment in Monsanto's favor on Plaintiff's product liability (WPLA) claims, negligence claims, and equitable indemnity claim.

Date: January 28, 2020

By:*/s/ Thomas M. Goutman*
Thomas M. Goutman, PA Bar No. 30236
(Admitted *Pro Hac Vice*)
David. S. Haase, PA Bar No. 73835
(Admitted *Pro Hac Vice*)
Kim Kocher PA Bar No. 66557
(*Pro Hac Vice* to be filed)
SHOOK HARDY & BACON LLP
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
P: (215) 575-3136
tgoutman@shb.com
dhaase@shb.com
kkocher@shb.com

Richard L. Campbell, MA Bar No. 663934
(Admitted *Pro Hac Vice*)

Melissa Nott Davis MA Bar No. 654546
(Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON LLP
125 Summer Street, Suite 1220
Boston, MA 02110
Phone: (6174) 531-1411
rcampbell@shb.com
mndavis@shb.com

Geana M. Van Dessel, WSBA #35969
KUTAK ROCK
510 W. Riverside Avenue, Suite 800
Spokane, WA 99201
P: (509) 252-2691
Geana.VanDessel@KutakRock.com

Adam E. Miller, MO Bar No. 40945
(Admitted *Pro Hac Vice*)
Susan L. Werstak, MO Bar No. 55689
(Admitted *Pro Hac Vice*)
Michael W. Cromwell, MO Bar No. 70484
(Admitted *Pro Hac Vice*)
CAPES, SOKOL, GOODMAN
AND SARACHAN, PC
8182 Maryland Ave., Fifteenth Floor
St. Louis, Missouri 63105-3916
P: (314) 754-4810
miller@capessokol.com
werstak@capessokol.com
cromwell@capessokol.com

Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

## **CERTIFICATE OF SERVICE**

I certify that on January 28, 2020, I caused the foregoing to be electronically filed with the clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

By: */s/ Thomas M. Goutman*
Thomas M. Goutman, PA Bar No. 30236
(Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON LLP
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
P: (215) 575-3136
tgoutman@shb.com