1  Geana M. Van Dessel, WSBA #35969
   KUTAK ROCK
2  510 W. Riverside Avenue, Suite 800
   Spokane, WA 99201
3  Phone: (509) 252-2691

4  Adam E. Miller, MO Bar No. 40945 (*Pro Hac Vice*)
   Michael W. Cromwell, MO Bar No. 70484 (*Pro Hac Vice*)
5  Susan L. Werstak, MO Bar No. 55689 (*Pro Hac Vice*)
   CAPES, SOKOL, GOODMAN AND SARACHAN, PC
6  8182 Maryland Ave., Fifteenth Floor
   St. Louis, Missouri 63105-3916
7  Phone (314) 754-4810

8  Thomas M. Goutman, PA Bar No. 30236 (*Pro Hac Vice*)
   David. S. Haase, PA Bar No. 73835 (*Pro Hac Vice*)
9  Kim Kocher, PA Bar No. 66557 (*Pro Hac Vice* to be filed)
   SHOOK HARDY & BACON LLP
10 2001 Market Street, Suite 3000
   Philadelphia, PA 19103
11 Phone: (215) 575-3136

12 Richard L. Campbell, MA Bar No. 663934 (*Pro Hac Vice*)
   Melissa Nott Davis MA Bar No. 654546 (*Pro Hac Vice*)
13 SHOOK HARDY & BACON LLP
   125 Summer Street, Suite 1220
14 Boston, MA 02110
   Phone: (617) 531-1411

15
   Attorneys for Defendants (Additional Counsel on Signature Page)
16
## UNITED STATES DISTRICT COURT
17 ## EASTERN DISTRICT OF WASHINGTON

18 | CITY OF SPOKANE, a municipal corporation, located in the County of Spokane, State of Washington, | Case No. 15-cv-00201-SMJ |

19                 Plaintiff,                  **DEFENDANTS' MOTION FOR
                                               SUMMARY JUDGMENT ON
20          vs.                                PLAINTIFF'S NUISANCE
                                               CLAIM**
21 MONSANTO COMPANY, SOLUTIA
   INC., and PHARMACIA                         Hearing: March 11, 2020 at 8:30am
22 CORPORATION, and DOES 1-100,                Richland
                                               With Oral Argument
                Defendants.
23

24

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

STATEMENT OF THE CASE..............................................................................2

STANDARD FOR SUMMARY JUDGMENT.....................................................3

ARGUMENT .......................................................................................................3

I.      Plaintiff Failed to Establish the Existence of a Nuisance................................3

    A.      Plaintiff Bears the Burden of Proving that PCBs at the Levels in the River and Fish Are Injurious to Human Health ..............................4

    B.      Plaintiff Failed to Establish that PCBs at the Levels in the River and Fish Are Injurious to Human Health ..............................................6

II.     Plaintiff Failed to Establish Compensable Injury or Property Damage ........10

    A.      Plaintiff Sustained No Actionable Property Damage .........................10

        1.      PCBs Have Not Caused Property Damage ...............................10

        2.      The Alleged Nuisance Caused No Property Damage...............11

    B.      Plaintiff Cannot Recover Costs as Property Damage .........................12

        1.      Plaintiff Is Not "Required" to Incur Costs Due to PCBs..........12

        2.      Permit Compliance Costs Are Not Property Damage ..............15

        3.      Plaintiff Has No Injury for Lack of Out-of-Pocket Costs.........16

    C.      Plaintiff Failed to Establish that Monsanto Caused Its Costs .............16

III.    Plaintiff Failed to Establish Monsanto's Liability for Creation of the Alleged Nuisance.......................................................................................................17

CONCLUSION ..................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abarca v. Franklin Cty. Water Dist.*,
  761 F. Supp. 2d 1007 (E.D. Cal. 2011) ...............................................7

*Allen v. Pa. Eng'g Corp.*,
  102 F.3d 194 (5th Cir. 1996) .............................................................8

*Am. Stevedores v. Porello*,
  330 U.S. 446 (1947)...........................................................................15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................3

*Anderson v. Teck Metals, Ltd.*,
  2015 WL 59100 (E.D. Wash. Jan. 5, 2015)......................................18

*Bodin v. City of Standwood*,
  79 Wn. App. 313 (1995) .......................................................................4

*Bradley v. Amer. Smelting & Refining Co.*,
  635 F. Supp. 1154 (W.D. Wash. 1986) ................................5, 9, 10, 11

*Burst v. Shell Oil Co.*,
  2015 WL 3755953 (E.D. La. 2015).....................................................9

*City of Moses Lake v. United States*,
  430 F. Supp. 2d 1164 (E.D. Wash. 2006).....................................5, 9, 14

*County of Santa Clara v. Atlantic Richfield Co.*,
  137 Cal. App. 4th 292 (2006) ...........................................................12

*Davis* v. *Fendell*,
  158 Wn. App. 1043 (2010) ..................................................................19

*Davis v. Wash. State Dep't of Soc. & Health Servs.*,
  2018 WL 6251375 (E.D. Wash. Nov. 29, 2018)..................................3

*Gates v. Rohm & Haas Co.*,
  265 F.R.D. 208 (E.D. Pa. 2010), *aff'd,* 655 F.3d 255 (3d Cir. 2011)..................8

*Henricksen v. ConocoPhillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009) ........................................................... 7

*Holden-McDaniel Partners, LLC v. City of Arlington*,
  197 Wn. App. 1027 (2017) ........................................................... 18

*Hurley v. Port Blakely Tree Farms L.P.*,
  182 Wn. App. 753 (2014) ........................................................... 18

*In re Roundup Prod. Liab. Litig.*,
  390 F. Supp. 3d 1102 (N.D. Cal. 2018) ........................................................... 7

*O'Neal v. Dep't of the Army*,
  852 F. Supp. 327 (M.D. Pa. 1994) ........................................................... 9

*Pepper v. J.J. Welcome Constr. Co.*,
  73 Wn. App. 523 (1994) ........................................................... 18

*Phillips v. E.I. Dupont de Nemours & Co.*,
  497 F.3d 1005 (9th Cir. 2007) ........................................................... 19

*Rhodes v. E.I. Du Pont de Nemours and Co.*,
  253 F.R.D. 365 (S.D.W.V. 2008) ........................................................... 8

*Rowe v. E.I. duPont de Nemours & Co.*,
  2008 WL 5412912 (D.N.J. Dec. 23, 2008) ........................................................... 8

*Sutera v. Perrier Grp. of Am. Inc.*,
  986 F. Supp. 655 (D. Mass. 1997) ........................................................... 9

*Tioga Pub. Sch. Dist. No. 15 of Williams Cty., State of N.D. v. U.S. Gypsum Co.*,
  984 F.2d 915 (8th Cir. 1993) ........................................................... 17

*Trail v. Civil Eng'r Corps., U.S. Navy, Naval Facilities Eng'g Command*,
  849 F. Supp. 766 (W.D. Wash. 1994) ........................................................... 10

*Ulmer v. Ford Motor Co.*,
  75 Wn. 2d 522 (1969) ........................................................... 17

*Zweig v. Hearst Corp.*,
  521 F.2d 1129 (9th Cir. 1975) ........................................................... 3

**Statutes**

33 U.S.C. § 1311(a) ...................................................................................................3

33 U.S.C. § 1313 ........................................................................................................3

33 U.S.C. § 1313(d) ...................................................................................................3

40 C.F.R. § 130(2)(f) ................................................................................................4

RCW 7.48.010 ...........................................................................................................4

RCW 7.48.020 ......................................................................................10, 11, 12, 13, 15

RCW 7.48.210 ........................................................................................................10

# **INTRODUCTION**

The City of Spokane launched this $283,678,610.46 damages suit against Monsanto to remedy what discovery has revealed to be a non-existent problem: reduce the City's discharge of 1.54 ounces per year of polychlorinated biphenyls ("PCBs") into the Spokane River that was then and is now in compliance with water quality standards for PCBs. The Spokane River has many problems but the undisputed facts show that PCBs are not the cause. For over 100 years, the City has failed to stop the discharge of raw sewage into the River. The River is subject to regulatory limits on the discharge of numerous pollutants (Total Maximum Daily Loads or "TMDLs") but is not now, nor has ever been, subject to a TMDL for PCBs. After Plaintiff's bald allegations survived Monsanto's Motion to Dismiss, Plaintiff's own 30(b)(6) and expert witness admissions now defeat every essential element of its burden of proof and contradict its core claim that it is required to reduce the level of PCBs in its effluent. Plaintiff puts forth a public nuisance claim for property damage for which there is no nuisance, no property damage, and no liability-producing conduct:

*First*, Plaintiff cannot establish that PCBs in the Spokane River constitute a public nuisance because no expert will testify that PCB levels in the River or fish cause human disease. Indeed, Plaintiff admits that the Spokane River meets the 170 ppq (parts per quadrillion) water quality standard for PCBs.

*Second*, Plaintiff cannot prove that PCBs have caused property damage because: (i) Plaintiff lawfully discharges PCBs in compliance with its NPDES (National Pollution Discharge Elimination System) permit; (ii) no governmental

entity or regulation requires it to reduce its PCB discharge; (iii) Plaintiff's city-wide effluent contains only a fraction of an ounce of PCBs per day; (iv) the City's share of contribution to PCBs in the River is only about 6.2% and Plaintiff admits that the reduction of its PCB discharge will not eliminate the River's 303(d) listing or fish advisories; (v) PCB levels in the Spokane River have been declining for decades; (vi) no Washington law recognizes permit compliance costs as property damage; and (vii) Plaintiff, otherwise, has suffered no injury to the extent it has received State funding to cover its costs.

*Third*, as Plaintiff's nuisance theory depends on purported regulatory actions, Plaintiff cannot prove that Monsanto produced PCBs knowing it would create a nuisance, or subsequent property damage, based on regulatory limits that did not even exist until decades after Monsanto stopped making PCBs.

## STATEMENT OF THE CASE

Pursuant to LCivR 56, Monsanto's Statement of Material Facts Not in Dispute is separately filed and referred to herein as "DSOF." This is not an abatement action, but "a private civil action for damages." ECF No. 74 at 18. Plaintiff is not suing to remove PCBs from the River, but for alleged costs to upgrade its sewer system to allegedly reduce PCBs in its effluent. The City initially claimed approximately $150 million for projects in the "Combined Sewer Overflow Basins" ("CSO Basins") as well as stormwater basins, but has since dropped its CSO basin claims. ECF No. 343 at 3. Plaintiff's past damages claims are limited to costs allegedly incurred to comply with its Stormwater NPDES permit. DSOF 213-14, 216. In total, from its original $283,678,610.46 damages

claim, Plaintiff's remaining claims now total: (1) $16,909,529 in past costs and (2) $75 million in unrecoverable future damages.[1] DSOF 216.

## STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135-36 (9th Cir. 1975). If the nonmoving party fails to proffer significant probative evidence in support of any element essential to its case on which it would have the burden of proof at trial, summary judgment is required. *Davis v. Wash. State Dep't of Soc. & Health Servs.*, 2018 WL 6251375, *5 (E.D. Wash. Nov. 29, 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## ARGUMENT

## I. Plaintiff Failed to Establish the Existence of a Nuisance

The Spokane River is subject to multiple TMDLs for toxic pollutants including ammonia, lead, and dissolved oxygen. DSOF 9. No TMDL exists for PCBs. DSOF 11.[2] The PCBs in the River meet current water quality standards.

---

[1]As set forth in Monsanto's Motion for Summary Judgment on the Statute of Limitations, Plaintiff, at best, may seek past damages incurred between July 31, 2013 and the filing of this action under the continuing nuisance doctrine.

[2]The Clean Water Act ("CWA") requires states to adopt water quality standards under federal oversight. 33 U.S.C. § 1313. The state is required to designate any water body or segment that does not meet the water quality standard on a so-called 303(d) list. *See* 33 U.S.C. § 1313(d). The CWA regulates the discharge of pollutants through NPDES permits. 33 U.S.C. § 1311(a). A TMDL is the maximum amount

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFF'S NUISANCE CLAIM

1   DSOF 16. Plaintiff's evidence fails to show that the PCB levels in the River and

2   fish cause human disease. Absent evidence that PCBs in the River are "injurious to

3   health," Plaintiff cannot demonstrate the existence of a nuisance.

### A. Plaintiff Bears the Burden of Proving that PCBs at the Levels in the River and Fish Are Injurious to Human Health

An actionable nuisance is "whatever is injurious to health or indecent or

offensive to the senses, or an obstruction to the free use of property, so as to

essentially interfere with the comfortable enjoyment of life and property," RCW

7.48.010, and must be "substantial and unreasonable," *Bodin v. City of Standwood*,

79 Wn. App. 313 n. 2 (1995).

Plaintiff identifies PCBs in the Spokane River as the public nuisance on the

basis that: (1) the River is listed as "impaired" under the CWA due to PCBs, and

might someday become subject to a TMDL, ECF No. 1, ¶¶12-17, 88-90; ECF No.

37 at 8; and (2) the PCB concentrations in the River have resulted in fish advisories

in parts of the river, and the consumption of fish from affected areas in higher

quantities than advised may be associated with serious health risks, ECF No. 1, ¶¶

7-10; ECF No. 37 at 8; ECF No. 346 at 3, 5.[3]

_____

of a pollutant that a water body can receive on a daily basis without violating water

quality standards. 40 C.F.R. § 130(2)(f).

[3]Plaintiff abandoned any claim regarding alleged obstruction of the public's right

to fish or use the River for recreation or other activities as a basis for a public

nuisance. ECF No. 346 at 3 ("[w]hether people fish recreationally in the Spokane

River" is irrelevant); ECF No. 346 at 5 ("[e]vidence that PCBs have not affected

1    Because PCBs are imperceptible to the human senses, DSOF 240, to

2 establish a nuisance, Plaintiff must establish that PCBs at levels in the River and

3 fish cause human disease. *See, e.g.*, *City of Moses Lake v. United States*, 430 F.

4 Supp. 2d 1164, 1170 (E.D. Wash. 2006); *Bradley v. Amer. Smelting & Refining*

5 *Co.*, 635 F. Supp. 1154, 1157-58 (W.D. Wash. 1986). In *Moses Lake*, the Court

6 rejected a city's nuisance claim for trichloroethylene ("TCE") contamination of its

7 drinking water wells allegedly emanating from a nearby Air Force base. *Moses*

8 *Lake*, 430 F. Supp. 2d at 1166-67. The Court found that the city failed to establish

9 the existence of a nuisance because TCE in the city's wells is imperceptible to

10 human senses, all of the wells tested below the maximum contaminant level, and

11 the city presented no evidence of an actual existing danger. *Id.* at 1183-84.

12 Likewise, in *Bradley*, the Court rejected a property owner's nuisance action based

13 on the emission of arsenic and cadmium particles from a neighboring refinery that

14 settled on the plaintiff's property. *Bradley*, 635 F. Supp. at 1155. The Court found

15 that the plaintiff failed, as a matter of law, to establish the existence of a nuisance

16 due to the presence of the arsenic and cadmium particles on its property because

17 the particles are imperceptible to human senses and the concentrations posed no

18 danger to human health. *Id.* at 1158. Pursuant to *Moses Lake* and *Bradley,* Plaintiff

19 likewise cannot establish a nuisance absent proof that the concentrations of PCBs

20 in the River and fish are capable of causing human disease.

21 ───────────────

22 recreational uses of the River" is irrelevant). As Plaintiff admittedly is not a trustee

23 of the River and does not own the River, its sediment, or its wildlife, DSOF 200, it

24 lacks standing to sue for alleged harm to the "ecological health" of the River.

### B. Plaintiff Failed to Establish that PCBs at the Levels in the River and Fish Are Injurious to Human Health

Plaintiff proffers no evidence that the levels of PCBs found in the River and fish are capable of causing human disease. No expert will say that PCB levels in the River or fish cause human disease. None of Plaintiff's experts has identified any study that purports to demonstrate that the PCB levels found in fish and water in the River cause human disease. To the contrary, Plaintiff's experts admit: (1) there are no scientific studies that purport to show that consumption of fish containing PCB concentrations found in the Spokane River fish cause human disease, DSOF 19, 193; and (2) there are no studies or data that indicate that PCBs at the current levels in the River cause adverse effects on the mammals, birds, or fish. DSOF 195. Plaintiff's public health expert, David O. Carpenter, M.D., and toxicology experts, James Olson, Ph.D., and Richard DeGrandchamp, Ph.D., admittedly have no knowledge of PCB exposure data in the Spokane River and did not do a risk assessment of the PCBs in the River or fish. DSOF 196.

Instead of presenting expert testimony that the PCB levels found in the River and fish cause human disease, Plaintiff attempts to backfill that missing, but required, expert testimony by invoking the CWA 303(d) listing and fish advisories. A fish "advisory" does not even purport to establish actual human health risk. DSOF 189-91. The EPA recognizes in its Guidance for Assessing Chemical Contaminant Data for Use in Fish Advisories that the risk calculations "provide an upper estimate of risk; the actual risk may be significantly lower and may be as low as zero." DSOF 189. Plaintiff's expert, DeGrandchamp, confirmed that "the use of uncertainty and modifying factors represents risk policy and not necessarily

science[,] [t]hat is, uncertainty is always addressed by introducing increasing amounts of conservatism without determining whether it is warranted or scientifically valid." DSOF 190. The fact that PCBs in the River have triggered a preventative public health measure like a fish advisory does not, therefore, satisfy Plaintiff's burden of proving that PCBs in the River are "injurious to health."

Nor does use of a magic word like "risk" (as Olson does) suffice. *See Henricksen v. ConocoPhillips Co.,* 605 F. Supp. 2d 1142, 1165-66 (E.D. Wash. 2009) (rejecting no safe level as proof of unreasonable risk as contrary to toxicological law of dose-response). "[A]n association does not equal causation . . . ." *Id.* at 1175.  As Olson admits, risk simply refers to an association found in a scientific study that may or may not be causal (*e.g.* the association between grey hair and heart disease). DSOF 191.

Because the purpose of risk assessments by public health entities is to establish conservative estimates of hypothetical risk and provide a wide margin of protection for human health, courts routinely reject regulatory risk assessments as legally insufficient to satisfy the plaintiff's burden of proving causation in tort actions. *See, e.g., In re Roundup Prod. Liab. Litig.,* 390 F. Supp. 3d 1102, 1115 (N.D. Cal. 2018) (rejecting IARC classifications as legally insufficient to meet plaintiff's burden of proving causation because "IARC conducts its inquiry at a higher level of generality than what the Court must do in [civil litigation]"); *Abarca v. Franklin Cty. Water Dist.,* 761 F. Supp. 2d 1007, 1041 (E.D. Cal. 2011) ("Because a risk assessment [for a public health body] overstates the risk to a population to achieve its protective and generalized goals, it is impossible to

conclude with reasonable certainty that any one person exposed to a substance above the criterion established by the risk assessment has suffered a significantly increased risk"); *Gates v. Rohm & Haas Co.,* 265 F.R.D. 208, 227 (E.D. Pa. 2010) (rejecting "prophylactic safety marker" as perhaps appropriate for regulatory use, but not "a predictive measure of actual risks"), *aff'd,* 655 F.3d 255 (3d Cir. 2011); *Allen v. Pa. Eng'g Corp.,* 102 F.3d 194, 198 (5th Cir. 1996) ("Regulatory and advisory bodies such as IARC, OSHA and EPA utilize a 'weight of the evidence' method to assess the carcinogenicity of various substances in human beings and suggest or make prophylactic rules governing human exposure. This methodology results from the preventive perspective that the agencies adopt in order to reduce public exposure to harmful substances. The agencies' threshold of proof is reasonably lower than that appropriate in tort law, which 'traditionally make[s] more particularized inquiries into cause and effect' and requires a plaintiff to prove 'that it is more likely than not that another individual has caused him or her harm.'"); *Rowe v. E.I. duPont de Nemours & Co.,* 2008 WL 5412912, *16 (D.N.J. Dec. 23, 2008) ("Given the protective goal and conservative nature of risk assessments, this Court finds that reliance on them for purposes of defining the classes in this case is inappropriate, as it would result in overinclusive classes."); *Rhodes v. E.I. Du Pont de Nemours and Co.,* 253 F.R.D. 365, 377 (S.D.W.V. 2008) ("[a risk assessment] is of limited utility in a toxic tort case, especially for the issue of causation, because of the risk assessment's distinct purpose. Risk assessments have largely been developed for regulatory purposes and thus serve a protection function in providing a level below which there is no appreciable risk to the general

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFFF'S NUISANCE CLAIM

population. They do not provide information about actual risk or causation. . . . Because of their appropriately prudent assumptions when there are limited data, risk assessments intentionally encompass the upper range of possible risks.") (citation omitted); *Sutera v. Perrier Grp. of Am. Inc*., 986 F. Supp. 655, 664 (D. Mass. 1997) (rejecting regulatory standards as a measure of causation as the purpose of regulatory standards is to "reduce public exposure to harmful substances") (citation omitted); *O'Neal v. Dep't of the Army*, 852 F. Supp. 327, 333 (M.D. Pa. 1994) (finding EPA risk figures based on upper-bound estimates for a chemical are "appropriate for regulatory purposes in which the goal is to be particularly cautious [but] overstate the actual risk and, so, are inappropriate for use in determining whether medical monitoring should be instituted."); *Burst v. Shell Oil Co.,* 2015 WL 3755953, *8 (E.D. La. 2015) (rejecting expert testimony based on regulatory classifications as failing to provide a reliable basis for establishing legal causation).

By the City's own admission, the Spokane River meets the Washington state water quality standard for PCBs of 170 ppq. DSOF 16. The City officially declared that the 170 ppq level was safe in 2017 and 2018. DSOF 168, 203. The City knows of no individual claiming illness from the PCBs in the River. DSOF 199.

Like the plaintiffs in *Moses Lake* and *Bradley*, the City cannot, as a matter of law, establish the existence of a nuisance premised on the mere concern about a possible health risk caused by the presence of an imperceptible substance. *See, e.g*., *Moses Lake*, 430 F. Supp. 2d at 1170; *Bradley*, 635 F. Supp. at 1157-58. Absent proof that PCBs at levels in the River and fish are injurious to human health,

1  Plaintiff failed, as a matter of law, to establish the existence of nuisance.

2  **II.    Plaintiff Failed to Establish Compensable Injury or Property Damage**

3      This is a property damage lawsuit for which there is no actionable property

4  damage. The presence of PCBs – an imperceptible substance – on Plaintiff's

5  property causes no harm to the stormwater system. Instead, under the guise of a

6  public nuisance claim for property damage, Plaintiff is attempting to shift to

7  Monsanto costs to upgrade its sewer system allegedly to reduce PCBs in its

8  effluent, which is not required by any regulation and will not abate the alleged

9  nuisance in the River.

10      **A.    Plaintiff Sustained No Actionable Property Damage**

11      The Court identified Plaintiff's "injury" as the costs that Plaintiff will incur

12  to reduce the PCBs discharged into the River from its stormwater and wastewater

13  systems. ECF No. 74 at 19, 20. The Court ruled that Plaintiff adequately pleaded

14  both a special injury under RCW 7.48.210 and property damage under RCW

15  7.48.020 due to alleged "injurious effects" to its wastewater and stormwater

16  systems caused by PCBs. ECF No. 74 at 19 n.2.

17      ***1.    PCBs Have Not Caused Property Damage***

18      Under Washington law, Plaintiff cannot establish property damage caused

19  by the mere presence of PCBs in its stormwater or wastewater system. *See, .e.g.,*

20  *Bradley*, 635 F. Supp. at 1157; *Trail v. Civil Eng'r Corps., U.S. Navy, Naval*

21  *Facilities Eng'g Command*, 849 F. Supp. 766, 767 (W.D. Wash. 1994) (rejecting

22  nuisance claim where plaintiff could not show that contamination of its property

23  resulted in physical injury to the property or posed danger to health). In *Bradley*,

24

where the deposition of imperceptible substances on the plaintiff's property caused no demonstrable effect or health risk, "[t]he court conclude[d] that the concentrations of arsenic and cadmium in plaintiff's soil are not harmful and do not in themselves constitute an injury to plaintiffs' property." *Bradley*, 635 F. Supp. at 1157. Plaintiff does not claim that PCBs have caused physical damage to its stormwater system. Nor does Plaintiff claim that the levels of PCBs in its stormwater system are capable of causing human disease. Because Plaintiff has no evidence that PCBs caused physical damage to its stormwater system and no evidence that PCBs at the levels found in the stormwater system cause human disease, the presence of PCBs in the stormwater system does not, as a matter of law, constitute property damage.

### 2. The Alleged Nuisance Caused No Property Damage

Nor can Plaintiff establish that the alleged public nuisance – PCBs in the Spokane River – caused the alleged property damage to its stormwater system as required by RCW 7.48.020 (permitting recovery of damages to "any person whose property is . . . injuriously affected . . . by the nuisance."). The Court initially found proximate causation based on its characterization of Monsanto's conduct as the public nuisance, ECF No. 74 at 19-20, but, as the Court subsequently held, it is the presence of PCBs in the Spokane River that constitutes the alleged public nuisance, ECF No. 241 at 5. The Court did not specifically address any purported causal connection between the claimed public nuisance in the River and the City's alleged property damage. The City may show that PCBs enter its stormwater system from rainwater runoff, but it cannot possibly establish that PCBs in the River cause

property damage to its upstream stormwater system. Absent a causal connection between the alleged nuisance and harm to Plaintiff's property, Plaintiff has no actionable claim for property damage under RCW 7.48.020. Instead, as Plaintiff solely claims property damage from Monsanto's manufacture of PCBs, Plaintiff's action is not an action for property damage caused by a nuisance, but a disguised product liability action for property damage allegedly caused by a product.[4]

## B. Plaintiff Cannot Recover Costs as Property Damage

Plaintiff has conceded that it is seeking costs to remove PCBs from its stormwater and wastewater solely to comply with purported permit requirements. *See* ECF No. 346 at 4. Plaintiff cannot, as a matter of law, recover purported permit compliance costs as a substitute for property damage.

### 1. Plaintiff Is Not "Required" to Incur Costs Due to PCBs

At the outset, Plaintiff cannot establish the central component of its property damage claim that it is "legally required" to reduce its discharge of PCBs into the River. ECF No. 1, ¶12, 16, 17, 90; ECF No. 37 at 8, 15. The City identifies no federal, state, or local statute, regulation, or order requiring it to reduce the level of PCBs in its effluent. Rather, according to the City, its actions with respect to stormwater and wastewater management are driven by its two NPDES permits.

---

[4] Plaintiff invokes California nuisance law, ECF No. 37 at 10, but, under California law, Plaintiff's cause of action too would be governed by product liability law. *Accord County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 313 (2006) (rejecting public nuisance action for damages against product manufacturer, reasoning that it is better addressed through the law of product liability).

DSOF 121-24. In its NPDES Permits, there are no quantitative limits for PCB discharges. DSOF 122. There are no TMDLs for PCBs. *Id*. In fact, the City admits that it is not subject to any quantitative or numerical limit, at all, with respect to the discharge of PCBs into the Spokane River. DSOF 123.

The City only vaguely contends that "its efforts to reduce discharge of PCBs into the Spokane River . . . are necessary because PCBs in the Spokane River exceed safety and regulatory standards." ECF No. 346 at 3. However, as part of the Spokane River Regional Toxics Task Force, the City's only obligation is to demonstrate "measurable progress" toward reduction of PCBs to an average concentration in the River of 170 ppq, the lowest benchmark level. DSOF 13. Plaintiff's 30(b)(6) and expert witnesses have conceded that the River already meets that benchmark. DSOF 14-16. The City, therefore, has no regulatory compulsion to reduce PCBs in its effluent.

The City's assertion that a TMDL for PCBs is imminent, ECF No. 1, ¶14, 88; ECF No. 37 at 2-3, does not establish an existing injury. It is also rank speculation. According to the Department of Ecology, no TMDL for PCBs will be issued as long as the River meets water quality standards. DSOF 13. In a 2015 court filing, the EPA explained that, if the Spokane River met certain PCB benchmark levels between 2019 and 2030, then a TMDL would *never* be imposed. DSOF 12-13, 137-39. The River undisputedly meets the lowest benchmark water quality standard of 170 ppq. DSOF 14-16. It is undisputed that PCB levels in the River have been *declining* for decades. DSOF 17. The City thus lacks any basis to claim that a PCB TMDL is imminent and it must now incur costs to reduce PCBs.

Plaintiff also admits that its reduction of PCBs will not eliminate the River's 303(d) listing or fish advisories. ECF No. 346 at 4 ("[t]he efficacy of Spokane's past and proposed damages hinges on its reduction of PCB discharge to the Spokane River – not on whether this reduction will allow for greater consumption of Spokane River fish. Therefore, any evidence that Plaintiff's efforts would not reduce the ultimate level of PCBs in fish is irrelevant."). According to Plaintiff's expert, David Dilks, PCB discharges from City facilities are *de minimis* – 1.54 ounces per year – which is only 6% of the total 1.5 pounds of PCBs entering the River annually. DSOF 6.[5]

Based on the undisputed facts, therefore, Plaintiff fares no better than the municipality in *Moses Lake*, which failed to establish a right to recover the cost of making design modifications and improvements to its water system, including the construction of a new reservoir, to address TCE contamination in its wells. *Id.* at 1181. The Court ruled that the city did not prove "actual and substantial injury or damage to property" because the TCE in the well water posed no actual health risk. *Id.* at 1184. Absent proof of property damage, the Court rejected the city's claim for remediation costs, concluding that the city had simply "chosen" to make improvements to its system due to its concern about possible health risks, *id.*, which is not recoverable in nuisance. Like the plaintiff in *Moses Lake*, Plaintiff may have concerns about possible health risks associated with the discharge of PCBs in its

---

[5]The PCB load in the River is also far less than regulated constituents: 341,940,000 lbs of raw sewage and untreated waste water, 700,000 lbs of zinc, 36,000 lbs of lead, 105,800 lbs of phosphorous, and 2,900 lbs of cadmium. DSOF 5.

effluent, but any improvements Plaintiff has chosen to make to its system to reduce its PCB discharge do not constitute compensable injury or damages.

### 2. Permit Compliance Costs Are Not Property Damage

Washington permits the recovery of property damage caused by a nuisance, RCW 7.48.020, but Plaintiff's alleged costs neither constitute "property damage" nor "damages" for harm to Plaintiff's property.

First, PCBs caused no "damage" to Plaintiff's property, thus, Plaintiff cannot recover "damages" due to PCBs. By styling its costs as "property damage," Plaintiff improperly conflates "injury" with "damages." *Am. Stevedores v. Porello*, 330 U.S. 446, 450 (1947) ("there is a distinction between damage and damages. Black's Law Dictionary cautions that the word 'damage,' meaning 'loss, injury, or deterioration,' is 'to be distinguished from its plural, – 'damages,' – which means a compensation in money for a loss or damage.'").

Second, Plaintiff admits that its costs result solely from alleged regulatory requirements. ECF No. 346 at 4. In fact, Plaintiff states that it is irrelevant whether its reduction of PCBs in its effluent would reduce the PCB levels in fish. ECF No. 346 at 3-4. By its own admission, therefore, Plaintiff's costs are not caused by the alleged nuisance in the River, but by the purported regulatory requirements governing Plaintiff's discharge of PCBs into the River.

No Washington state or federal court has held that permit compliance costs constitute property damage (or a form of damages) in tort. By seeking to impute liability to Monsanto for its "passive" discharge of PCBs into the River, the City is simply attempting to shift its permit compliance costs directly to Monsanto – a non-

regulated entity – which is nothing but a form of "backdoor" regulation that conflicts with the regulatory framework governing environmental contamination under the Clean Water Act; the Toxic Substances Control Act; the Comprehensive Environmental Response, Compensation, and Liability Act; and the Resource Conservation and Recovery Act. While the environmental statutes and regulations may not bar all state tort law remedies, Plaintiff is impermissibly attempting to *create* a state tort law remedy out of an environmental regulation. In the end, this lawsuit is nothing but an attempt to shift to Monsanto, a non-regulated entity, purported permit compliance costs, for which there is no tort law remedy.

### 3. *Plaintiff Has No Injury for Lack of Out-of-Pocket Costs*

Alternatively, as Plaintiff defines its injury as costs, Plaintiff has sustained no injury to the extent it has incurred no costs. Plaintiff's 30(b)(6) witness regarding the City's stormwater and wastewater conveyance system, Marcia Davis, testified that the City has received over $6 million of its claimed $17 million for past projects from State Ecology grants and that the City anticipates that it will receive another $15 million towards its future planned projects from the State. DSOF 214. Accordingly, if Plaintiff's claimed permit compliance costs constitute property damage, then Plaintiff has suffered no loss because it has received, or will receive, State funding to cover the costs.

### C. Plaintiff Failed to Establish that Monsanto Caused Its Costs

Plaintiff failed, as matter of law, to establish a triable property damage claim for the additional independent reason that it cannot establish a causal connection between Monsanto and Plaintiff's claimed costs. First, as detailed in Monsanto's

Motion for Summary Judgment on Damages, Plaintiff failed to establish that the presence of PCBs in its sewer system caused it to incur its claimed costs. DSOF 1, 84, 207-12, 218-229, 230-38. Second, Plaintiff cannot establish a right to recover its claimed regulatory costs against Monsanto absent proof, at a minimum, that it was reasonably foreseeable to Monsanto at the time it produced PCBs that Plaintiff would incur regulatory compliance costs decades later.[6] It would defy logic and common sense for a jury to conclude that it was foreseeable to Monsanto that the City would incur compliance costs to reduce PCBs in its effluent pursuant to regulations that would not come into existence until decades after it last manufactured PCBs.

## III. Plaintiff Failed to Establish Monsanto's Liability for Creation of the Alleged Nuisance

No Washington Appellate Court has recognized Plaintiff's novel nuisance theory for a product manufacturer's production, sale, and promotion of its product. Under Washington law, product safety is regulated by product liability law. Under product liability law, the duty of a manufacturer is limited to the production of a product safe for its intended use. *See Ulmer v. Ford Motor Co.*, 75 Wn. 2d 522, 526 (1969). If nuisance were to encompass product liability law, "[n]uisance would thus become a monster that would devour in one gulp the entire law of tort . . . ." *Tioga Pub. Sch. Dist. No. 15 of Williams Cty., State of N.D. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993).

---

[6]As detailed Section III, Plaintiff bears the burden of proving tortious intent, not the mere foreseeability of harm, but cannot even meet the foreseeability standard.

The City expressly couches its nuisance claim as an intentional tort. ECF No. 37 at 6 (citing ECF No. 1 at 18-20). If Washington law permits Plaintiff's novel nuisance theory, Plaintiff is required to pursue it as intentional tort to avoid merger of the claim with product liability and negligence. *Anderson v. Teck Metals, Ltd.*, 2015 WL 59100, *11 (E.D. Wash. Jan. 5, 2015).

"Tortious intent is found where 'the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it.'" *Id.* (citation omitted). The failure to act sounds in negligence not an intentional tort. *Holden-McDaniel Partners, LLC v. City of Arlington,* 197 Wn. App. 1027 (2017). Pursuant to Plaintiff's own characterization of its burden of proving intentional conduct, Plaintiff must demonstrate that Monsanto designed, manufactured, and sold PCBs from the 1930s to 1970s knowing that its PCBs would create the alleged nuisance conditions in the Spokane River. *Compare Anderson*, 2015 WL 59100 at *11-*12 (finding adequate allegation of tortious intent where smelting company intentionally discharged chemicals into air and dumped slag into Columbia River believing that it was substantially certain to follow that substances would contaminate the Upper Columbia River Region and cause bodily injury to plaintiffs) *with Hurley v. Port Blakely Tree Farms L.P.*, 182 Wn. App. 753, 770 (2014) (finding no tortious intent for intentional act of felling trees where there was no evidence that defendant knew or was substantially certain its logging activities would result in landslide onto plaintiff's downhill property); *Pepper v. J.J. Welcome Constr. Co.,* 73 Wn. App. 523, 547 (1994) (finding no tortious intent due to lack of evidence that defendant intended or was substantially

certain that mud, gravel, and silt would be deposited on plaintiff's neighboring property); *Davis* v. *Fendell*, 158 Wn. App. 1043 (2010) (finding no tortious intent where defendant spread manure on its own property with no knowledge or substantial certainty that it would run off onto plaintiff's property).

Plaintiff proffers no evidence that Monsanto produced PCBs in the 1930s to 1970s knowing that PCBs would migrate from intended uses (or otherwise) into the Spokane River at levels that cause human disease. In fact, Plaintiff's own experts admit that no study even exists today that purports to demonstrate that PCB levels found in the River and fish are harmful to human health. DSOF 197-98. If, as Plaintiff contends, the 303(d) listing and fish advisories constitute the nuisance condition, Plaintiff certainly cannot establish that Monsanto knew, or had substantial certainty, that, after it ceased production of PCBs in 1977, PCBs would migrate into the River at levels that would trigger fish advisories and water quality limits pursuant to regulations not enacted until decades later.

To the extent that Plaintiff seeks to directly charge Monsanto with liability for creating the alleged nuisance in the River via Plaintiff's stormwater system as a "passive conduit" for PCBs, Plaintiff's claim fails, as a matter of law, because Plaintiff concedes that reduction of its PCB discharge will not eliminate the River's 303(d) listing or fish advisories. ECF No. 346 at 4. In other words, Plaintiff effectively concedes that its discharge of PCBs is a not substantial factor in the creation of the alleged nuisance in the River. *See Phillips v. E.I. Dupont de Nemours & Co.*, 497 F.3d 1005, 1028 (9th Cir. 2007) (requiring proof of substantial factor causation in toxic tort case). Plaintiff, in fact, has no evidence, expert or

otherwise, that its discharge of PCBs contributes in any significant way to the PCB loading in the River under the 170 ppq water quality standard.

## CONCLUSION

Based on the foregoing, Monsanto requests that the Court enter judgment in its favor on Plaintiff's nuisance claim for any or all of the independent reasons that: Plaintiff failed, as a matter of law, to establish the existence of a nuisance; Plaintiff failed, as a matter of law, to establish property damage; and Plaintiff failed, as a matter of law, to establish liability-producing conduct.

Date: January 28, 2020

By: */s/ Thomas M. Goutman*
Thomas M. Goutman, PA Bar No. 30236
(Admitted *Pro Hac Vice*)
David. S. Haase, PA Bar No. 73835
(Admitted *Pro Hac Vice*)
Kim Kocher PA Bar No. 66557
(*Pro Hac Vice* to be filed)
SHOOK HARDY & BACON LLP
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
P: (215) 575-3136
tgoutman@shb.com
dhaase@shb.com
kkocher@shb.com

Richard L. Campbell, MA Bar No. 663934
(Admitted *Pro Hac Vice*)
Melissa Nott Davis MA Bar No. 654546
(Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON LLP
125 Summer Street, Suite 1220
Boston, MA 02110
Phone: (6174) 531-1411
rcampbell@shb.com
mndavis@shb.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Geana M. Van Dessel, WSBA #35969
KUTAK ROCK
510 W. Riverside Avenue, Suite 800
Spokane, WA 99201
P: (509) 252-2691
Geana.VanDessel@KutakRock.com


Adam E. Miller, MO Bar No. 40945
(Admitted *Pro Hac Vice*)
Susan L. Werstak, MO Bar No. 55689
(Admitted *Pro Hac Vice*)
Michael W. Cromwell, MO Bar No. 70484
(Admitted *Pro Hac Vice*)
CAPES, SOKOL, GOODMAN
AND SARACHAN, PC
8182 Maryland Ave., Fifteenth Floor
St. Louis, Missouri 63105-3916
P: (314) 754-4810
miller@capessokol.com
werstak@capessokol.com
cromwell@capessokol.com


Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

# <u>CERTIFICATE OF SERVICE</u>

I certify that on January 28, 2020, I caused the foregoing to be electronically filed with the clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

By: */s/ Thomas M. Goutman*
Thomas M. Goutman, PA Bar No. 30236
(Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON LLP
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
P: (215) 575-3136
tgoutman@shb.com