1  Geana M. Van Dessel, WSBA #35969
   KUTAK ROCK
2  510 W. Riverside Avenue, Suite 800
   Spokane, WA 99201
3  Phone: (509) 252-2691

4  Adam E. Miller, MO Bar No. 40945 (*Pro Hac Vice*)
   Michael W. Cromwell, MO Bar No. 70484 (*Pro Hac Vice*)
5  Susan L. Werstak, MO Bar No. 55689 (*Pro Hac Vice*)
   CAPES, SOKOL, GOODMAN AND SARACHAN, PC
6  8182 Maryland Ave., Fifteenth Floor
   St. Louis, Missouri 63105-3916
7  Phone (314) 754-4810

8  Thomas M. Goutman, PA Bar No. 30236 (*Pro Hac Vice*)
   David. S. Haase, PA Bar No. 73835 (*Pro Hac Vice*)
9  Kim Kocher, PA Bar No. 66557 (*Pro Hac Vice* to be filed)
   SHOOK HARDY & BACON LLP
10 2001 Market Street, Suite 3000
   Philadelphia, PA 19103
11 Phone: (215) 575-3136

12 Richard L. Campbell, MA Bar No. 663934 (*Pro Hac Vice*)
   Melissa Nott Davis MA Bar No. 654546 (*Pro Hac Vice*)
13 SHOOK HARDY & BACON LLP
   125 Summer Street, Suite 1220
14 Boston, MA 02110
   Phone: (617) 531-1411

15
   Attorneys for Defendants (Additional Counsel on Signature Page)
16
                **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
17
   CITY OF SPOKANE, a municipal
18 corporation, located in the County of      CASE NO. 15-cv-00201-SMJ
   Spokane, State of Washington,
19                                            **DEFENDANTS' MOTION FOR**
               Plaintiff,                     **SUMMARY JUDGMENT ON**
20                                            **STATUTE OF LIMITATIONS**
          v.
                                              Hearing: March 11, 2020
21 MONSANTO COMPANY, SOLUTIA             Richland
   INC., and PHARMACIA                        With oral argument
22 CORPORATION, and DOES 1 - 100,

23             Defendants.

24
   DEFENDANTS' MOTION FOR SUMMARY
   JUDGMENT ON STATUTE OF LIMITATIONS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF THE CASE..............................................................................2

    A.    Factual Background ...........................................................................2

    B.    Procedural History .............................................................................5

STANDARD FOR SUMMARY JUDGMENT......................................................6

ARGUMENT .........................................................................................................7

I.     The Statutes of Limitations Bar All of Plaintiff's Claims.............................7

II.    Alternatively, the Continuing Tort Doctrine Bars Plaintiff's Pre-2013 and

     Future Damage Claims ..................................................................10

CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................6

*Bultena v. Washington State Dep't of Agric.*,
   319 F. Supp. 3d 1215 (E.D. Wash. 2018) ........................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................6

*City of Moses Lake v. U.S.*,
   430 F. Supp. 2d 1164 (E.D. Wash. 2006) ...................................7, 11

*Davis v. Wash. State Dep't of Soc. & Health Servs.*,
   2018 WL 6251375 (E.D. Wash. Nov. 29, 2018) ..............................6

*Doran v. City of Seattle*,
   24 Wn. 182 (1901) ........................................................................11

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ......................................................12

*Fradkin v. Northshore Util. Dist.*,
   96 Wn. App. 118 (1999) ..........................................................10, 11

*Gaffner v. Johnson*,
   39 Wn. 437 (1905) ..........................................................................7

*Giraud v. Quincy Farm & Chem.*,
   102 Wn. App. 443 (2000) ................................................................8

*Island Lime Co. v. City of Seattle*,
   122 Wn. 632 (1922) ......................................................................11

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................6

*Pac. Sound Res. v. Burlington N. Santa Fe Ry. Corp.*,
   130 Wn. App. 926 (2005) ..............................................................10

*Pardo v. Olson & Sons, Inc.*,
    40 F.3d 1063 (9th Cir. 1994) .......................................................................12, 13

*Parkridge Assocs. v. Ledcor Indus.*,
    113 Wn. App. 592 (2002) ...........................................................................8, 13

*Pifer v. Bank of Am., N.A.*,
    2019 WL 4037935 (W.D. Wash. Aug. 27, 2019)................................................12

*Skokomish Indian Tribe v. United States*,
    410 F.3d 506 (9th Cir. 2005) ..........................................................................11

*Univ. Underwriters Ins. Co. v. Security Indus. Inc.*,
    391 F. Supp. 326 (W.D. Wash. 1974) ...............................................................7

*Wallace v. Lewis County*,
    134 Wn. App. 1 (2006) ............................................................................7, 10

*Woldson v. Woodhead*,
    159 Wn. 2d 215 (2006) .........................................................................10, 11

*Wolfe v. State Dep't of Transp.*,
    173 Wn. App. 302 (2013) ...............................................................................7

*Zweig v. Hearst Corp.*,
    521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025 (1975)...........................6

**Statutes**

RCW 4.16.080(3) ...................................................................................................7

RCW 4.16.130 .......................................................................................................7

RCW 7.72.060 ..............................................................................................12, 13

RCW 7.72.060(2) .................................................................................................13

RCW 7.72.060(3) ..............................................................................................7, 8

**Rules**

LCivR 56................................................................................................................1

1

2

## **INTRODUCTION**

The City of Spokane seeks to recover purported regulatory compliance costs from Monsanto allegedly arising from the City's discharge of polychlorinated biphenyls ("PCBs") into the Spokane River.[1]  The City incurred its claimed compliance costs due to a host of constituents in its effluent unrelated to PCBs, including its longstanding failure to comply with court and state agency orders to stop discharging over 300,000 pounds of raw sewage and untreated wastewater into the River per year.  DSOF2-5.[2]  But taking the City's allegations at face value, its claims against Monsanto are time-barred because the City knew of its alleged PCB-related injury long before the statutory bar dates.

The City admits that it knew in the 1990s that PCBs were found in fish in the River, knew by 2001 and no later than 2007 of PCB concentrations in its own effluent, and knew in 2011 that it was tasked to "develop a comprehensive plan to bring the Spokane River into compliance with applicable water quality standards for PCBs."  In 2010, Plaintiff began, in fact, to incur the very costs it claims it incurred to address PCBs in its stormwater discharge.  Based on Plaintiff's own evidence, therefore, the City knew, or should have known, of its alleged injury and its cause

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

---

20

[1]The City of Spokane is referred to as "Plaintiff" or "the City" and Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC are referred to collectively as "Monsanto" herein.

21

22

23

[2]Pursuant to LCivR 56, Monsanto's Statement of Material Facts Not in Dispute is separately filed and referred to herein as "DSOF."

24

as of 2001, and no later than 2007. As of 2011, the City, in fact, had actual knowledge of its claimed obligation to reduce its discharge of PCBs into the Spokane River for which it seeks recovery in this lawsuit. The City, however, failed to file this lawsuit until July 2015, well beyond the applicable statutes of limitations. Monsanto, therefore, seeks dismissal of all of Plaintiff's claims as time-barred. If, alternatively, the Court finds that the continuing tort doctrine is applicable, as Plaintiff contends, Plaintiff is limited to the recovery of damages incurred in the two years preceding this lawsuit. Assuming the applicability of the continuing tort rule, Monsanto seeks, in the alternative, dismissal of Plaintiff's future damages and past damages pre-dating July 2013.

## STATEMENT OF THE CASE

### A.    Factual Background

The City operates a separate storm sewer system ("MS4"), Combined Sewer Overflow ("CSO") outfalls, and the Riverside Park Water Reclamation Facility ("RPWRF"). DSOF20, 27. After the enactment of the Clean Water Act in 1972, wastewater treatment facility operators were required to apply for and comply with certain effluent limitations set forth in a National Pollutant Discharge Elimination System permit ("NPDES Permit"). DSOF22. There are two separate permits that apply to the City: the MS4 NPDES Permit and the Wastewater NPDES Permit. DSOF121. The Wastewater NPDES Permit applies to the effluent from the RPWRF and all CSO outfalls. The MS4 NPDES Permit covers the City's MS4 system and all stormwater basins. DSOF121. The City discharges its effluent into the Spokane

River either treated or untreated from each system pursuant to its permits. (DSOF23, 29).

The City learned of the presence of PCBs in the Spokane River as early as 1984. DSOF148. By the late 1980s or early 1990s, the City Director of Environmental Programs was aware of reports that PCBs were found in fish in the Spokane River. DSOF149.

On June 20, 1990, the City was cited for violations of PCB regulations governing documentation in its wastewater treatment plant, and was assessed a civil penalty of $20,400. DSOF150.

On December 20, 2001, the City was notified that wastewater from nearby dischargers contained PCBs. DSOF153. The Washington Department of Ecology took effluent samples from the County of Spokane, Inland Empire Paper Co, Kaiser Aluminum and Chemical Co, (Trentwood), and Liberty Lake Sewer District, and found that some samples contained significant amounts of PCBs, ranging from 1,500 to 10,000 pg/L. DSOF153. Based on the City's prior knowledge of PCBs in the Spokane County's wastewater treatment facility, the City had reason to believe as of 2001 that its effluent also contained PCBs. DSOF154.

In December 2007, the Washington Department of Ecology published a report entitled, "Spokane River – PCB TMDL Stormwater Loading Analysis – Final Technical Report," which stated that "stormwater is considered the major ongoing contributor of PCBs to the [Spokane River]," and that PCBs were manufactured by Monsanto and have not been produced in the United States since 1977. DSOF155. The City received a copy of this report. DSOF155. Lars Hendron, the City's

30(b)(6) designee, admitted that the City had actual knowledge of PCBs in its stormwater discharge in 2007.  DSOF156.

In December 2009, the Spokane Riverkeeper (an environmental advocacy organization) served a notice of intent to sue the City, alleging various violations of the Clean Water Act related to PCB discharges by the City. DSOF157.   On August 23, 2011, the City and Spokane Riverkeeper entered into a Consent Decree, which imposed a series of obligations on the City, such as cash payments, supplemental environmental projects, and compliance with the "Adaptive Management Plan for Reducing PCBs in Stormwater Discharges, March, 2011."  DSOF158.

In June 2011, the City's Wastewater NPDES Permit required the City to participate in a Regional Toxics Task Force, the express goal of which is to "develop a comprehensive plan to bring the Spokane River into compliance with applicable water quality standards for PCBs," as well as other functions related to "other toxics."  DSOF159.

In this action, in which the City seeks recovery of its alleged costs to address its discharge of PCBs into the River, the City claims damages dating as far back as 2010, for alleged PCB-related work on storm water curb markers and PCB sample and cleanup.  The City also claims damages in this action for its development of the Consent Decree in September 2011.  DSOF204.  The City also claims damages in this action for its participation in the Toxics Task Force beginning in December 2011.  DSOF204.  Additionally, it claims damages for MS4 projects allegedly undertaken to address PCB loading to the River, including claims dating back to June 2012, for work on the River Runoff Reduction project.  DSOF204.

**B.    Procedural History**

Plaintiff filed this action on July 31, 2015 asserting claims for public nuisance, product liability, negligence, and equitable indemnity.  ECF No. 1.  Monsanto moved to dismiss Plaintiff's complaint on the basis that the statute of limitations began to run no later than 2011 based on Plaintiff's factual allegations that its NPDES permit required it to participate in the Task Force.  ECF No. 29 at 17-18.  In response, Plaintiff invoked the continuing tort doctrine.  ECF No. 37 at 15-16.  The City otherwise asserted that the statute of limitations does not apply to actions for public nuisance.  ECF No. 37 at 16.  The Court declined to dismiss Plaintiff's complaint as time-barred, reasoning that:  (1) it could not determine from Plaintiff's complaint when the claims began to accrue, ECF No. 74 at 8; and (2) it could not determine at the pleadings stage if the continuing tort doctrine applies to Plaintiff's cause of action, ECF No. 74 at 8-9.  Monsanto now moves for summary judgment on the statute of limitations because Plaintiff failed to establish the applicability of the continuing nuisance doctrine and the undisputed facts establish, as a matter of law, that Plaintiff's claims are time-barred.

## STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no genuine dispute as to the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135-36 (9th Cir.), cert. denied, 423 U.S. 1025 (1975).  After the moving party points to the absence of any genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Davis v. Wash. State Dep't of Soc. & Health Servs.*, 2018 WL 6251375, *5 (E.D. Wash. Nov. 29, 2018) (Mendoza, D.J.) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986)).  If the nonmoving party fails to proffer a *prima facie* showing of any of the elements essential to its case as to which it would have the burden of proof at trial, summary judgment is required.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bultena v. Washington State Dep't of Agric.*, 319 F. Supp. 3d 1215, 1221 (E.D. Wash. 2018) (Mendoza, D.J.).

1

## ARGUMENT

2    Plaintiff's claims are subject to the following statutes of limitations and

3  corresponding bar dates by which Plaintiff bears the burden of proving that it did not

4  know, nor reasonably could have known through the exercise of reasonable

5  diligence, of its injury and its cause:

| Cause of Action | Limitations Period | Bar Date |
|---|---|---|
| Public Nuisance | 2 years<br>RCW 4.16.130;<br>*City of Moses Lake v. U.S.*, 430 F. Supp. 2d 1164, 1170 (E.D. Wash. 2006) | July 30, 2013 |
| WPLA | 3 years<br>RCW 7.72.060(3) | July 30, 2012 |
| Negligence | 2 years<br>RCW 4.16.130;<br>*Wolfe v. State Dep't of Transp.*, 173 Wn. App. 302, 306 (2013) | July 30, 2013 |
| Equitable Indemnity | 2 years<br>RCW 4.16.130; *Gaffner v. Johnson,* 39 Wn. 437, 438 (1905) or | July 30, 2013 |
| | 3 years<br>RCW 4.16.080(3); *Univ. Underwriters Ins. Co. v. Security Indus. Inc.*, 391 F. Supp. 326, 328 (W.D. Wash. 1974) | July 30, 2012 |

16  **I.    The Statutes of Limitations Bar All of Plaintiff's Claims**

17    Plaintiff's claims are time-barred, as a matter of law, because Plaintiff

18  admittedly knew as of 2011, at the latest, of its injury and its cause, but did not file

19  suit until July 2015.

20    The two-year limitations period for nuisance accrues when the plaintiff

21  initially suffers some actual and appreciable harm or should have discovered the

22  basis for the nuisance action. *Wallace v. Lewis County*, 134 Wn. App. 1, 19 (2006).

23  The three-year WPLA statute of limitations accrues when the "claimant discovered

24

or in the exercise of due diligence should have discovered the harm and its cause."

WRC 7.72.060(3).   A cause of action for negligence accrues when the plaintiff

knows or should know of its injury and its cause.  *Giraud v. Quincy Farm & Chem.*,

102 Wn. App. 443, 450 (2000).   The limitations period for equitable indemnity

accrues when the plaintiff pays or become legally obligated to pay damages or a

judgment to a third party.  *Parkridge Assocs. v. Ledcor Indus.*, 113 Wn. App. 592,

603 (2002).

Washington adheres to an inquiry notice rule for the accrual of a cause of

action:

> The general rule in Washington is that when a plaintiff is placed
> on notice by some appreciable harm occasioned by another's
> wrongful conduct, the plaintiff must make further diligent
> inquiry to ascertain the scope of actual harm. The plaintiff is
> charged with what a reasonable inquiry would have
> discovered." Stated more succinctly, ***the law does not require
> a smoking gun in order for the statute of limitations to
> commence***.

*Giraud*, 102 Wn. App. at 450 (citations omitted) (emphasis added).

Based on its receipt of media publications and reports of fish studies, the City

knew, or should have known, as of the 1990s, that PCBs were found in fish in the

River.  DSOF149.   At about the same time, in 1990, the City knew it had PCB

concentrations at its wastewater treatment plant.  DSOF150.

As of 2001, the City admittedly learned that wastewater from nearby

dischargers contained significant amounts of PCBs.  DSOF153.  Based on the City's

knowledge of PCBs in wastewater from nearby dischargers, the City knew, or should

have known, that its effluent also contained PCBs.  DSOF154.

By 2007, the City, in fact, admittedly had actual knowledge of PCBs in its stormwater discharge. DSOF155-56. And, in December 2007, the City received the Department of Ecology's report entitled, "Spokane River – PCB TMDL Stormwater Loading Analysis – Final Technical Report," which stated that "stormwater is considered the major ongoing contributor of PCBs to the [Spokane River]," and that PCBs were manufactured by Monsanto and have not been produced in the United States since 1977. DSOF155.

In December 2009, the City was confronted with the Spokane Riverkeeper lawsuit targeting the City's alleged violations of the Clean Water Act related to PCB discharges. DSOF157. In the Consent Decree, which the City entered to resolve the lawsuit on August 23, 2011, the City agreed to comply with an "Adaptive Management Plan for Reducing PCBs in Stormwater Discharges, March, 2011," DSOF158, which gives rise to Plaintiff's damage claims in this action.

In June 2011, the City's 2011 Wastewater NPDES Permit required the City to participate in a Task Force to "develop a comprehensive plan to bring the Spokane River into compliance with applicable water quality standards for PCBs," DSOF159, which is the focus of Plaintiff's damage claims in this action.

In 2010, Plaintiff, in fact, began to incur the alleged costs to address PCBs in its sewer system for it which seeks recovery in this action. The City claims damages for alleged PCB-related work on storm water curb markers and PCB sample and cleanup beginning in 2010. The City also claims damages in this action for its development of the Consent Decree in September 2011, DSOF200; its participation in the Task Force beginning in December 2011, DSOF204; and for MS4 projects

dating back to June 2012, DSOF204; all allegedly due to PCBs in its stormwater system.

Based on Plaintiff's own evidence, therefore, the City knew, or should have known, of its alleged injury and its cause as early as 2001 and no later than 2007.  If, as Plaintiff contends, its "costs" are its injury, Plaintiff began to incur the alleged costs to address PCBs in its stormwater system that it seeks to recover in this action in 2010.  There is no question that Plaintiff's causes of action accrued, at the latest, by 2011, when Plaintiff had actual knowledge of its claimed obligation to reduce PCBs in its effluent, which is the very basis of its claims in this lawsuit.  Because Plaintiff delayed filing suit until 2015, all of its claims are time-barred.

## II.    Alternatively, the Continuing Tort Doctrine Bars Plaintiff's Pre-2013 and Future Damage Claims

Plaintiff invoked the continuing tort doctrine in opposition to Monsanto's Motion to Dismiss.  Under the continuing tort doctrine, a plaintiff is limited to the recovery of past damages incurred during the applicable limitations period preceding the suit until the time of trial. *Wallace*, 134 Wn. App. at 19.  In a continuing tort action, "prospective damages are not allowed." *Woldson v. Woodhead*, 159 Wn. 2d 215, 223 (2006).  Instead, the plaintiff has the right to bring successive actions for injuries subsequent to trial. *Id*.

"A tort is continuing if the intrusive condition is reasonably abatable and not permanent." *Pac. Sound Res. v. Burlington N. Santa Fe Ry. Corp.*, 130 Wn. App. 926, 941 (2005).  "The condition must be one that can be removed 'without unreasonable hardship and expense.'" *Fradkin v. Northshore Util. Dist.*, 96 Wn.

App. 118, 126 (1999). "It is the plaintiff's burden to prove reasonable availability." *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 518 (9th Cir. 2005). The discovery rule does not apply to continuing torts. *Fradkin*, 96 Wn. App. at 125.

Under the continuing tort doctrine, Plaintiff's recovery in its nuisance action would be limited to past damages incurred during the two-year period preceding this lawsuit. *Moses Lake*, 430 F. Supp. 2d at 1179. Plaintiff would be barred from recovering all future damages. *Woldson*, 159 Wn.2d at 223; *Doran v. City of Seattle*, 24 Wn. 182, 186 (1901); *Island Lime Co. v. City of Seattle*, 122 Wn. 632, 634 (1922).

Plaintiff failed to establish the applicability of the continuing nuisance doctrine because Plaintiff has proffered no evidence that the alleged nuisance in the River is reasonably abatable. Plaintiff identifies no mechanism which would result in the reduction of PCB levels in fish sufficient to remove the 303(d) listing. Plaintiff has admitted that its own sewer upgrades and miscellaneous costs that comprise its damages claims will not significantly contribute in any way to the elimination of PCBs from the Spokane River, or decrease PCB fish tissue concentrations that will result in the lifting of the fish advisories or 303(d) listing, because its contribution to PCBs in the River is the proverbial "drop in the bucket." ECF No. 346 at 3. Nor does Plaintiff's stormwater system expert, Michael Trapp, Ph.D., make any such claim. DSOF186. Because Plaintiff failed to prove that the alleged "intrusive condition is reasonably abatable," this Court should find, as a matter of law, that the continuing tort doctrine does not apply to this case. If, however, the Court finds that Plaintiff made a *prima facie* showing of reasonable availability, Monsanto is entitled

to summary judgment on all of Plaintiff's pre-July 30, 2013 damages and all future damages claims in Plaintiff's nuisance action.

With respect to Plaintiff's product liability and negligence actions, the continuing tort doctrine does not apply, as a matter of law, because, outside of the nuisance or trespass context, the doctrine arises from continuous tortious conduct, not the result of past conduct. *Pifer v. Bank of Am., N.A.*, 2019 WL 4037935, *2 (W.D. Wash. Aug. 27, 2019) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("When a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends.").  It is undisputed that Monsanto ceased the manufacture of PCBs in 1977, and Plaintiff's liability experts identify no Monsanto conduct that could have even arguably caused Plaintiff's alleged injury in the last several decades.  Indeed, this Court recognized that "[m]ost, if not all of [the injury-producing events] occurred before the WPLA's effective date [June 26, 1981]."  ECF No. 74 at 11, 17.  But, even assuming the applicability of the continuing tort doctrine to Plaintiff's product liability or negligence claims, Monsanto is entitled to summary judgment on:  (1) all of Plaintiff's pre-July 30, 2012 damages in relation to its WPLA claim pursuant to the applicable three-year statute of limitations; (2) all of Plaintiff's pre-July 30, 2013 damages in relation to its negligence claim pursuant to the applicable two-year statute of limitations; and (3) all future damages for both claims.

Plaintiff's WPLA claim is also barred by RCW 7.72.060 because the alleged harm occurred decades after the "useful safe life" of Monsanto's product. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994).  The "'[u]seful safe life'

1    begins at the time of delivery of the product and extends for the time during which

2    the product would normally be likely to perform or be stored in a safe manner."

3    RCW 7.72.060. "If the harm was caused more than twelve years after the time of

4    delivery, a presumption arises that the harm was caused after the useful safe life had

5    expired."  RCW 7.72.060(2); *Pardo*, 40 F.3d at 1066.  As the Court recognized,

6    "Spokane is alleging injury based on the accumulated contamination resulting from

7    leaching or migration of PCBs into its wastewater systems as the result of the use

8    and disposal of an allegedly defective product over many years by multitudes of

9    customers." ECF No. 74 at 17.  Plaintiff cannot possibly overcome the presumption

10    that the useful safe life of PCBs had expired long before the time that the PCBs

11    allegedly migrated from intended or other uses into the environment, then into

12    Plaintiff's sewer system, and ultimately into the Spokane River over 40 years after

13    Monsanto ceased production.

14        The continuing tort doctrine also does not apply to Plaintiff's claim for

15    equitable indemnity because such a claim does not accrue until the plaintiff pays or

16    becomes legally obligated to pay damages or a judgment to a third party. *Parkridge*,

17    113 Wn. App. at 603.

18

19

20

21

22

23

24

## **CONCLUSION**

Monsanto requests that the Court:

(1) find, as a matter of law, that the continuing tort doctrine is inapplicable to all of Plaintiff's claims;

(2) find, as a matter of law, that Plaintiff's causes of action accrued before 2011 and no later than June 2012; and

(3) enter judgment in Monsanto's favor on the basis of the statutes of limitations on all claims.

In the alternative, Monsanto requests that the Court:

(1) apply the continuing tort doctrine to Plaintiff's nuisance claim;

(2) dismiss Plaintiff's future damages as well as past damages claims pre-dating July 2013 with respect to its nuisance claim; and

(3) enter judgment in Monsanto's favor on the basis of the statutes of limitations and/or repose on Plaintiff's remaining claims.

1  Respectfully submitted this 28th day of January, 2020.

2

3                                      By:/s/ Thomas M. Goutman
                                       Thomas M. Goutman, PA Bar No. 30236
4                                      (Admitted Pro Hac Vice)
                                       David. S. Haase, PA Bar No. 73835
5                                      (Admitted Pro Hac Vice)
                                       Kim Kocher PA Bar No. 66557
6                                      (Pro Hac Vice to be filed)
                                       SHOOK HARDY & BACON LLP
7                                      Two Commerce Square
                                       2001 Market Street, Suite 3000
8                                      Philadelphia, PA 19103
                                       P: (215) 575-3136
9                                      tgoutman@shb.com
                                       dhaase@shb.com
10                                     kkocher@shb.com

11                                     Richard L. Campbell, MA Bar No. 663934
                                       (Admitted Pro Hac Vice)
12                                     Melissa Nott Davis MA Bar No. 654546
                                       (Admitted Pro Hac Vice)
13                                     SHOOK HARDY & BACON LLP
                                       125 Summer Street, Suite 1220
14                                     Boston, MA 02110
                                       Phone: (6174) 531-1411
15                                     rcampbell@shb.com

16                                     Geana M. Van Dessel, WSBA #35969
                                       KUTAK ROCK
17                                     510 W. Riverside Avenue, Suite 800
                                       Spokane, WA 99201
18                                     P: (509) 252-2691
                                       Geana.VanDessel@KutakRock.com

19                                     Adam E. Miller, MO Bar No. 40945
                                       (Admitted Pro Hac Vice)
20                                     Susan L. Werstak, MO Bar No. 55689
                                       (Admitted Pro Hac Vice)
21                                     Michael W. Cromwell, MO Bar No. 70484
                                       (Admitted Pro Hac Vice)
22                                     CAPES, SOKOL, GOODMAN
                                       AND SARACHAN, PC
23                                     8182 Maryland Ave., Fifteenth Floor

24  DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT ON STATUTE OF LIMITATIONS      15

St. Louis, Missouri 63105-3916
P: (314) 754-4810
miller@capessokol.com
werstak@capessokol.com
cromwell@capessokol.com


Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

1

## CERTIFICATE OF SERVICE

2    I certify that on January 28, 2020, I caused the foregoing to be electronically

3 filed with the clerk of the Court using the CM/ECF System which in turn

4 automatically generated a Notice of Electronic Filing (NEF) to all parties in the case

5 who are registered users of the CM/ECF system. The NEF for the foregoing

6 specifically identifies recipients of electronic notice.

7

8    *s/ Thomas M. Goutman*
Thomas M. Goutman, PA Bar No. 30236

9    (Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON LLP

10    Two Commerce Square
2001 Market Street, Suite 3000

11    Philadelphia, PA 19103
P: (215) 575-3136

12    tgoutman@shb.com
dhaase@shb.com

13    kkocher@shb.com

14    *Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC*

15

16

17

18

19

20

21

22

23

24    DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON STATUTE OF LIMITATIONS    17