Geana M. Van Dessel, WSBA #35969
KUTAK ROCK
510 W. Riverside Avenue, Suite 800
Spokane, WA 99201
Phone: (509) 252-2691
Adam E. Miller, MO Bar No. 40945 (*pro hac vice*)
Michael W. Cromwell, MO Bar No. 70484 (*pro hac vice)*
Susan L. Werstak, MO Bar No. 55689 (*pro hac vice)*
CAPES, SOKOL, GOODMAN AND SARACHAN, PC
8182 Maryland Ave., Fifteenth Floor
St. Louis, Missouri 63105-3916
Phone (314) 754-4810

Thomas M. Goutman, PA Bar No. 30236 (*pro hac vice*)
David. S. Haase, PA Bar No. 73835 (*pro hac vice*)
Rosemary R. Schnall, PA Bar No. 73455 (*pro hac vice*)
SHOOK HARDY & BACON LLP
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 575-3136

Richard L. Campbell, MA Bar No. 663934 (*pro hac vice*)
Melissa Nott Davis, MA Bar No. 654546 (*pro hac vice*)
SHOOK HARDY & BACON LLP
125 Summer St., Ste. 1220
Boston, MA 02110
Phone: (816) 559-4025

Attorneys for Defendants (Additional Counsel on Signature Page)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CITY OF SPOKANE, a municipal corporation, located in the County of Spokane, State of Washington, | Case No. 15-cv-00201-SMJ |
| Plaintiff, | Consolidated Reply Brief in Support of Defendants' Motions In Limine |
| v. | Hearing: Spokane, WA With Oral Argument |
| MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA CORPORATION, and DOES 1 - 100, | Monday February 10, 2020, at 1:30 p.m. |
| Defendants. | |

Table of Contents

Page

I.   MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE AND
     REFERENCE TO MONSANTO'S RECOMMENDATIONS
     FOR THE DISPOSAL OF PCBS .................................................................. 1

     A.   Evidence regarding Monsanto's alleged failures to act to
          prevent improper disposal of PCBs is irrelevant to
          Plaintiff's claims. ...................................................................... 1

          1.   Foreseeability does not create a duty. ................................ 2

          2.   Monsanto's alleged failure to warn against
               improper disposal is not actionable. ................................ 3

          3.   EPA regulations governed disposal after Monsanto
               ceased producing PCBs. ..................................................... 5

          4.   Plaintiff's experts cannot establish a duty to warn
               regarding disposal. ............................................................. 5

          5.   Plaintiff cannot establish a duty to prevent
               improper disposal based on Monsanto's corporate
               documents. ........................................................................... 7

          6.   Monsanto owes no duty to protect the world. ................. 7

     B.   Evidence regarding Monsanto's PCB disposal
          recommendations is irrelevant to all Plaintiff's claims. ............. 8

          1.   Plaintiff misidentifies its burden of proving
               causation. ............................................................................. 8

          2.   Plaintiff fails to limit its claims to the 1970-1978
               timeframe. ............................................................................ 9

          3.   Plaintiff cannot establish any actionable claim
               based on Monsanto's disposal recommendations. .......... 9

               a.   Landfill Recommendations ..................................... 9

               b.   Waterway Warnings ................................................. 9

               c.   Spokane Area Facilities ........................................ 10

               d.   Public Statements ................................................. 10

          4.   Plaintiff lacks the required expert testimony ............... 12

     C.   Conclusion ...................................................................................... 12

Table of Contents
(continued)

II.   MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE,
      TESTIMONY, AND ARGUMENT REGARDING
      IRRELEVANT SOURCES OF PCBS. ........................................................ 13

      A.   The City seeks to eliminate its burden of proof as to the
           identification of Monsanto products. .................................................. 13

      B.   The City has had over five years to develop evidence of
           PCB sources to the Spokane River and has failed to do
           so. ...................................................................................................... 14

           1.   The City admits it has no evidence that landfills
                are a source of PCBs to the Spokane River, but the
                City would like the jury to speculate in direct
                contradiction to that sworn testimony. ................................... 15

           2.   The City's experts admit there is no evidence that
                open applications are a source of PCBs to the
                Spokane River, but the City would like the jury to
                speculate in direct contradiction to that sworn
                testimony. ................................................................................ 16

           3.   The City has no evidence that Therminols
                constitute a source of PCBs to the Spokane River. ............... 18

      C.   Monsanto's conduct, including marketing and promotion
           of products or uses, is irrelevant and unfairly prejudicial
           in the absence of any evidence that those products or uses
           exist in or around the Spokane River. ................................................ 19

III.  MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE
      ABOUT MONSANTO'S NON-PCB PRODUCTS ................................... 20

      A.   There is no reason to admit evidence of Roundup
           Products. ............................................................................................ 20

      B.   Evidence regarding DDT is highly prejudicial and should
           be excluded. ....................................................................................... 23

IV.   MOTION IN LIMINE NO. 4 ...................................................................... 24

V.    MOTION IN LIMINE NO. 5 ...................................................................... 24

VI.   MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE
      REGARDING IBT AND PHIL SMITH TESTIMONY. ........................... 30

VII.  MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE
      AND REFERENCE TO PAUL WRIGHT'S 1976 AWARD
      AND COMMENTS TO THE EPA. .............................................................. 36

Table of Contents
(continued)

Page

VIII.   MOTION IN LIMINE NO. 8.................................................................40

IX.   MOTION IN LIMINE NO. 9 – LOBBYING AND PUBLIC
RELATIONS ACTIVITIES..........................................................40

X.   MOTION IN LIMINE NO. 10.................................................................43

XI.   MOTION IN LIMINE NO. 11 TO EXCLUDE EVIDENCE
REGARDING MONSANTO'S DECISION NOT TO SUPPLY
CUSTOMER LISTS TO CONGRESSMAN RYAN 50 YEARS
AGO. ................................................................................................43

XII.   MOTION IN LIMINE NO. 12 TO EXCLUDE EVIDENCE
THE DESOLATE YEAR..................................................................46

XIII.   MOTION IN LIMINE NO. 13 TO EXCLUDE EVIDENCE
CONCERNING OTHER PCB PERSONAL INJURY OR
ENVIRONMENTAL CLAIMS. ..................................................49

XIV.   MOTION IN LIMINE NO. 14 TO EXCLUDE EVIDENCE
CONCERNING SOLUTIA AND NEW MONSANTO. ...........................52

XV.   MOTION IN LIMINE NO. 15 TO EXCLUDE EVIDENCE
CONCERNING CORPORATE WEALTH OR FINANCIAL
STATUS. ........................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Teck Metals, Ltd.*,
   2015 WL 59100 (E.D. Wash. Jan. 5, 2015) ........................................................ 4

*Bondali v. Yum! Brands, Inc.*,
   620 Fed. Appx. 483 (6th Cir. 2015) .................................................................. 7

*Cabrera v. Cordis Corp.*,
   134 F.3d 1418, 48 Fed. R. ............................................................................ 27

*Carrelo v. Advanced Neuromodulation System, Inc.*,
   777 F. Supp. 2d 315 (D.P.R. 2011) ................................................................ 27

*Chambers-Castanes v. King County*,
   100 Wn.2d 275 (1983).................................................................................... 7

*City of Modesto Redev. Agency v. Super. Ct.*,
   119 Cal. App. 4th 28 (2004)........................................................................ 4, 8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ..................................................................................... 27

*Davis v. Wash. State Dep't of Soc. & Health Servs.*,
   2018 WL 6251375 (E.D. Wash. Nov. 29, 2018)................................................ 6

*Dawson v. Delaware*,
   503 U.S. 159 (1992) ..................................................................................... 42

*Diviero v. Uniroyal Goodrich Tire Co.*,
   114 F.3d 851 (9th Cir.1997)......................................................................... 27

*Durbin v CBS Corp.*,
   No. 06-2-11349-2, 2008 WL 4829140 (Wash. Super. Jan. 14,
   2008)............................................................................................................ 14

*Empress Casino Joliet Corp. v. Johnston*,
   No. 09-C-3585, 2014 WL 6735529 (N.D. Ill. No. 28, 2014) ...................... 38, 41

*First Bancorp Mortg. Corp. v. Giddens*,
   251 Ga. App. 676 (Ga. App. 2001) (applying Georgia evidence
   rules that parallel the FRE to hold that evidence of other lawsuits
   was properly excluded)................................................................................ 51

*Fisher v. Ciba Specialty Chems. Corp.*,
   238 F.R.D. 273 (S.D. Ala. 2006)................................................................. 6

*Fujifilm Corp. v. Motorola Mobility LLC*,
   WL 757575, *27 (N.D. Cal. Feb. 20, 2015)............................................... 6

*In re Gonda*,
   No. 10-58722, 2011 WL 5240154 (Bankr. N.D. Cal. Oct. 31, 2011)............... 35

*Gordon v. Kitsap Cty.*,
   187 Wn. App. 1023 (2015)......................................................................... 12

*Gray v. Shell Oil Co.*,
   469 F.2d 742 (9th Cir. 1972)..................................................................... 26

*Guillory v. Domtar Industries, Inc.*,
   95 F.3d 1320 (5th Cir. 1996)................................................................ 27, 28

*Hansen v. Friend*,
   118 Wn. 2d 476 (1992)................................................................................ 2

*Hartley v. State*,
   698 P.2d 77 (Wash. 1985) ........................................................................... 9

*Hrynda v. U.S.*,
   933 F.Supp. 1047 (M.D. Fla. 1996) .......................................................... 42

*Koker v. Armstrong Cork, Inc.*,
   60 Wn. App. 466 (1991)............................................................................. 3

*Laguna v. Wash. State Dep't of Transp.*,
   146 Wn. App. 260 (2008)............................................................................ 2

*Lockwood v. A.C. & S., Inc.*,
   109 Wn.2d 235 (1987)...................................................................... 13, 16, 19

*Macias v. Saberhagen Holdings, Inc.*,
   175 Wn. 2d 402 (2012)........................................................................... 3, 4

*McLaughlin v. Fisher Eng'g*,
    834 A.2d 258 (N.H. 2003) (applying New Hampshire evidence
    rules that parallel the FRE to find that probative value of evidence
    of other lawsuits against the defendant was substantially
    outweighed by the danger of misleading the jury or needless
    presentation of cumulative evidence) .................................................. 51

*McLeod v. Parsons Corp.*,
    73 Fed. Appx. 846 (6th Cir. 2003) ..................................................... 50

*Nelson v. Brunswick Corp.*,
    503 F.2d 376 (9th Cir. 1974) .............................................................. 51

*Palmer v. Massey-Ferguson, Inc.*,
    3 Wn. App. 508 (1970) ......................................................................... 4

*In re Related Asbestos Cases*,
    543 F. Supp. 1152 (N.D. Cal. 1982) .................................................. 51

*In re Rezulin Prod. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................. 6

*Safeco Ins. Co. of Am. v. JMG Rest., Inc.*,
    37 Wn. App. 1 (1984) (applying Washington evidence rules that
    parallel the FRE to find that in insurance company's claim for
    declaratory relief seeking non-liability under fire insurance policy,
    it was proper to exclude evidence of previous fires at insured's
    other restaurants) ................................................................................ 51

*Senart v. Mobay Chem. Corp.*,
    597 F. Supp. 502 (D. Minn. 1984) ............................................... 39, 42

*Seybold v. Neu*,
    105 Wn. App. 666 (2001) .................................................................... 12

*Shiow-Huey Chang v. County of Santa Clara*,
    726 Fed. Appx. 565 (9th. Cir. 2018) ................................................. 50

*Simonetta v. Viad Corp.*,
    165 Wn.2d 341 (2008) .......................................................................... 2

*Sosa v. DireTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................... 11, 38, 41

*State v. Public Service Commission,*
114 Wash. 646 (1921) ................................................................................ 54, 55

*Taylor v. Stevens County,*
111 Wn.2d 159, 759 P.2d 447 (1988) ................................................................ 7

*Thomasson v. Perry,*
895 F.Supp. 820 (E.D. Va. 1995) .................................................................... 43

*Thompson-Cadillac Co. v. Matthews,*
173 Wash. 353 (1933) ................................................................................ 54, 55

*U.S. Football League v. Nat'l Football League,*
634 F. Supp. 1155 (S.D.N.Y. 1986) ............................................................ 38, 41

*Washington Water Power Co. v. Graybar Elec. Co.,*
112 Wn. 2d 847 (1989).................................................................................... 4

*Weit v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago,*
641 F.2d 457 (7th Cir. 1981) ..................................................................... 39, 42

*In re Welding Fume Prod. Liab. Litig.,*
2010 WL 7699456 (N.D. Oh. June 4, 2010) ..................................................... 6

*Williams v. Monsanto Co., et al.,*
Case No. BC461315, Sup. Ct. of Cal., ......................................................... 53

*Wisconsin v. Mitchell,*
508 U.S. 476 (1993) ...................................................................................... 42

*Zeke's Distrib. Co. v. Brown-Forman Corp.,*
779 P.2d 908 (Mont. 1989) (applying Montana evidence rules thatf
parallel the FRE to conclude admission of evidence of other
lawsuits against defendant was unfairly prejudicial; new trial
granted)......................................................................................................... 52

## Statutes

EPA Comments ............................................................................................. 36

RCW 4.24.510 ........................................................................................... 38, 41

RCW 7.72.030(1)(C) ....................................................................................... 3

Washington Products Liability Act ............................................................. 2, 25

WPLA ...................................................................................................... 3, 4, 25

1

2    Defendants Monsanto Company ("New Monsanto"), Solutia, Inc. ("Solutia",

3    and Pharmacia LLC ("Pharmacia" or "Old Monsanto") (collectively "Defendants"

4    or "Monsanto") seek orders in limine as set forth in ECF No. 351 and below,

5    excluding irrelevant and prejudicial argument, testimony and references, as well as

6    inadmissible facts and opinions.

## I.    Motion *In Limine* No. 1 to exclude evidence and reference to Monsanto's recommendations for the disposal of PCBs.

7

8    No actionable claim exists for: (1) Monsanto's alleged failure to warn

9    against (or otherwise prevent) improper disposal of PCBs or (2) Monsanto's

10   alleged provision of improper disposal instructions and, therefore, evidence

11   relating to Monsanto's alleged disposal recommendations, or lack thereof, has no

12   place in this case.[1]

### A.    Evidence regarding Monsanto's alleged failures to act to prevent improper disposal of PCBs is irrelevant to Plaintiff's claims.

13

14   Plaintiff asks this Court to create an unprecedented, new, all-purpose duty

15   under Washington law owed by the product manufacturer to everyone,

16   everywhere, to prevent harm to the environment from the disposal of its product

17   after its use by third parties. On top of the non-actionable claim that Monsanto had

18   a duty to provide its customers disposal instructions, Plaintiff even suggests that

19   Monsanto had a duty to build additional incinerators, ECF No. 375 at 6, ensure

20   customer compliance with disposal recommendations, ECF No. 375 at 8; and

21   second-guess the adequacy of the EPA's regulations governing disposal of its

22   _____

23   [1] Monsanto incorporates its motions for summary judgment on Plaintiff's nuisance

24   claim, ECF No. 394, and alternative theories of liability, ECF No. 391.

Defendants' Reply in Support of Motions in Limine-1

1    product, ECF No. 375 at 6. Monsanto, as a product manufacturer, owed no duty to

2    warn its customers against (or otherwise prevent) improper disposal of PCBs under

3    any legal theory because: (a) the alleged foreseeability of harm did not create a

4    duty in Monsanto to prevent it; (b) Monsanto's duty to warn, if any, is governed

5    exclusively by the Washington Products Liability Act ("WPLA"), which does not

6    impose a duty on a manufacturer to warn regarding disposal of its spent product;

7    (c) EPA regulations supplanted any duty to warn regarding proper handling and

8    disposal of PCBs as of 1978; (d) Plaintiff's experts cannot articulate a new duty

9    where it does not exist; (e) Plaintiff cannot, as a matter of law, establish the

10   existence of a duty from Monsanto's own documents; and (f) Plaintiff relies on a

11   non-actionable duty owed to the world.

12              **1.     Foreseeability does not create a duty.**

13        Plaintiff bases its entire disposal-related claim on the fundamental

14   misperception that the foreseeable range of danger imposes a duty on a

15   manufacturer to prevent it. ECF No. 375 at 4 ("Monsanto had a duty to provide

16   disposal warnings and instructions . . . because it was foreseeable that ordinary

17   disposal of PCBs would result in environmental contamination"). "Foreseeability

18   does not create a duty but sets limits once a duty is established." *Simonetta v. Viad*

19   *Corp.*, 165 Wn.2d 341, 349 n.4 (2008) (explicitly rejecting product liability

20   claimant's contention that foreseeability of harm imposed duty on manufacturer to

21   warn against it); *Laguna v. Wash. State Dep't of Transp.*, 146 Wn. App. 260, 264-

22   65 (2008) ("Foreseeability limits the scope of a duty, but it does not independently

23   create a duty."); *Hansen v. Friend*, 118 Wn. 2d 476, 483 (1992) ("the concept of

24

foreseeability determines the scope of the duty owed").[2] The alleged foreseeability of environmental harm from improper disposal of PCBs did not, therefore, create a duty in Monsanto to prevent it.

### 2. Monsanto's alleged failure to warn against improper disposal is not actionable.

Monsanto's duty, as a product manufacturer, is regulated by product liability law. Plaintiff's product liability claims are limited to conduct occurring after the June 26, 1981, effective date of the WPLA. ECF No. 74 at 11-17. The WPLA imposes no duty on a manufacturer to warn about proper disposal of its used product. To the contrary, the WPLA limits a manufacturer's post-sale duty to the provision of warnings to make the product safe for its intended use. RCW 7.72.030(1)(C); *Macias v. Saberhagen Holdings, Inc*., 175 Wn. 2d 402, 418 (2012) (explaining whether product is unreasonably unsafe involves consideration of use and predictability of hazards when the product is used as intended).

Monsanto, likewise, owed no duty in negligence to warn its customers regarding the proper disposal of spent PCBs. "Insofar as a negligence claim is product-based, the negligence theory is subsumed under the WPLA product

---

[2] In *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466 (1991), there was no question that the manufacturer owed a duty to make its product, asbestos insulation, reasonably safe for its intended use. The question was whether the manufacturer's duty extended to a pipefitter exposed to asbestos-containing insulation. The court explained that the "test of foreseeability" determines whether the harm to a pipefitter falls within the duty imposed on the defendant to make the product safe for its intended use. *Id*. at 480.

1    liability claim." *Macias*, 175 Wn. 2d at 409. To the extent, therefore, that

2    Plaintiff's negligence-based claim against Monsanto relates to post-1981 conduct,

3    it is pre-empted by the WPLA. *Washington Water Power Co. v. Graybar Elec. Co.*,

4    112 Wn. 2d 847, 856 (1989). To the extent Plaintiff's negligence claim relates to

5    pre-1981 conduct, like Plaintiff's common law strict liability claim, ECF No. 74 at

6    17, it is non-cognizable for Plaintiff's lack of standing. *Palmer v. Massey-*

7    *Ferguson, Inc*., 3 Wn. App. 508 (1970) (limiting standing to sue for common law

8    negligence-based product liability to "those who use [the product] for a purpose for

9    which the manufacturer should expect it to be used and to those whom he should

10   expect to be endangered by its probable use").

11          Plaintiff's failure-to-warn claim is also not actionable under Plaintiff's

12   nuisance theory. Plaintiff styles its nuisance claim as an intentional tort. ECF No.

13   37 at 6. Plaintiff is required to pursue its nuisance claim as an intentional tort to

14   avoid merger with its product liability and negligence claims. *Anderson v. Teck*

15   *Metals, Ltd.*, 2015 WL 59100, *11 (E.D. Wash. Jan. 5, 2015). As an intentional

16   tort, Plaintiff's nuisance theory requires proof that Monsanto engaged in

17   affirmative nuisance-creating conduct. *See id*. Any "failure" on the part of

18   Monsanto to act cannot, as a matter of law, establish tortious intent. Even the

19   California law, on which Plaintiff relies, precludes nuisance liability against a

20   product manufacturer for failing to warn of the dangers of improper disposal of its

21   product. *City of Modesto Redev. Agency v. Super. Ct.*, 119 Cal. App. 4th 28, 43

22   (2004), as modified on denial of reh'g (June 28, 2004).

23

24                    **3.    EPA regulations governed disposal after Monsanto ceased
                              producing PCBs.**

Defendants' Reply Brief In Support of Motions in Limine - 4

1    The EPA's comprehensive regulations set forth approved methods for the

2  handling and disposal of PCBs as of 1978. The City's chemical waste expert, Dr.

3  Jack Matson, admits the EPA placed explicit responsibility for appropriate PCB

4  handling and disposal on the generators of PCB-containing waste from industrial

5  facilities. ECF No. 352-1 at 481 at 267:7-18.[3] Monsanto had no duty to second-

6  guess the adequacy of the EPA's guidance issued in 1976 and regulations enacted

7  in 1978. Matson himself fails to identify any inadequacy in the EPA guidance and

8  regulations governing PCB disposal. Indeed, after the EPA promulgated its PCB

9  disposal regulations, Matson acknowledged that all industrial facilities generating

10  PCB-containing waste were required to follow these approved disposal practices.

11  *Id.* at 263:6 – 264:6.

12          **4.    Plaintiff's experts cannot establish a duty to warn regarding
               disposal**.

13    Plaintiff effectively concedes it has no expert who will testify the standard of

14  care for a PCB manufacturer required instructions for the disposal of its product as

15  of 1981 (or any other time). Instead, Plaintiff seeks to fill the gap with inadmissible

16  expert testimony on "corporate social responsibility" and Monsanto's corporate

17  documents to establish a purported duty to prevent the improper disposal of PCBs.

18    Plaintiff must establish that Monsanto violated a legal standard, not an

19  ethical rule, to establish tort liability. Expert opinion as to whether Monsanto's

20  conduct measured up to ethical standards does not establish Monsanto had a legal

21  _____

22  [3] All pin cites are to the pagination given each document in the top right corner by

23  the ECF system after filing. Specifically, this cite refers to Page 481 of 813,

24  PageID.11797, filed 01/14/20, also paginated "Dec of GMV ISO MIL000560."

1    duty to warn its customers regarding disposal of PCBs. *In re Welding Fume Prod.*

2    *Liab. Litig.*, 2010 WL 7699456, \*25 (N.D. Oh. June 4, 2010). "While [a

3    manufacturer] may be liable in the court of public opinion, or before a divine

4    authority for any ethical lapses, expert opinion as to the ethical character of their

5    actions simply is not relevant." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d

6    531, 544 (S.D.N.Y. 2004). Accordingly, "expert ethics opinions" are inadmissible

7    because they suggest an "alternative and improper" basis for decision "other than

8    the pertinent legal standards." *Id.*

9        Nor can Plaintiff rely on its experts to provide an advocacy-based

10   interpretation of Monsanto's corporate documents. *See, e.g., id.* at 551. Plaintiff's

11   proposed commentary by Rosner and Matson on Monsanto's corporate documents

12   is not the proper subject of expert testimony. *Fujifilm Corp. v. Motorola Mobility*

13   *LLC*, WL 757575, \*27 (N.D. Cal. Feb. 20, 2015). Rather, it is an impermissible

14   interpretation of Monsanto's knowledge and conduct under the guise of expert

15   testimony. *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273 (S.D. Ala.

16   2006).

17       Plaintiff's experts, thus, cannot articulate a new legal standard that does not

18   otherwise exist. *Davis v. Wash. State Dep't of Soc. & Health Servs.*, 2018 WL

19   6251375, \*7 (E.D. Wash. Nov. 29, 2018) ("Under Federal Rule of Evidence 702,

20   'matters of law are inappropriate subjects for expert testimony.'") (citations

21   omitted).

22

23       **5.    Plaintiff cannot establish a duty to prevent improper
         disposal based on Monsanto's corporate documents.**

24

1     Plaintiff cannot establish the existence of a duty in Monsanto to warn its

2  customers regarding the disposal of PCBs, which does not otherwise exist, based

3  on Monsanto's corporate documents. As discussed above, Plaintiff cannot establish

4  the existence of a duty to prevent improper disposal of PCBs by showing the

5  alleged foreseeability to Monsanto, through its documents or otherwise, of PCBs

6  migrating into the environment. Nor can Plaintiff establish that Monsanto adopted

7  any legally binding duty in its documents to protect the environment because

8  Monsanto's internal corporate position statements merely reflect the company's

9  aspirations, not a binding legal duty owed to any third party. *See Bondali v. Yum!*

10  *Brands, Inc*., 620 Fed. Appx. 483, 490 (6th Cir. 2015) ("a code of conduct is not a

11  guarantee that a corporation will adhere to everything set forth in its code of

12  conduct.").

13          **6.      Monsanto owes no duty to protect the world.**

14          To be actionable, the manufacturer's legal duty must also be one owed to the

15  injured plaintiff, not to the public in general. *Taylor v. Stevens County*, 111 Wn.2d

16  159, 163, 759 P.2d 447 (1988). "[A] duty to all is a duty to no one." *Id.* (quoting

17  *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303 (1983)), overruled on other

18  grounds, *Taylor*, 111 Wn.2d at 167; *see also Chambers-Castanes v. King County*,

19  100 Wn.2d 275, 284 (1983). As Plaintiff identifies the "harm" at issue as

20  "ubiquitous environmental contamination," ECF No. 375 at 11, Plaintiff is

21  attempting to stretch the product-manufacturer's duty to everyone, everywhere, to

22  prevent harm from the disposal of the product after its use, which is not an

23  actionable duty owed to Plaintiff.

24

Defendants' Reply Brief In Support of Motions in Limine - 7

**B.    Evidence regarding Monsanto's PCB disposal recommendations is irrelevant to all Plaintiff's claims**.

To the extent that Plaintiff seeks to pursue a claim that Monsanto provided improper disposal warnings to its customers, Plaintiff has no proof that Monsanto intentionally provided its customers with any improper disposal recommendations knowing of the alleged hazard it would create in the Spokane River, *Modesto*, 119 Cal. App. 4th 28, 43, or that Monsanto's alleged improper disposal instructions caused the alleged nuisance in the River or Plaintiff's alleged property damage.

**1.    Plaintiff misidentifies its burden of proving causation.**

Plaintiff misidentifies the "public harm at issue" in this case as "ubiquitous environmental contamination," ECF No. 375 at 11, when Plaintiff specifically bases its nuisance claim on Spokane River fish advisories and the River's CWA 303(d) listing, and claims property damage due to the presence of PCBs in its sewer system, ECF No. 37 at 8. Plaintiff cannot avoid its burden of proving causation by improperly redefining the alleged harm in this case as "ubiquitous environmental contamination." Plaintiff, in fact, lacks standing to sue for "ubiquitous environmental contamination." By misidentifying the harm at issue, Plaintiff takes the remarkable position that proof of causation is unnecessary: "Plaintiff does not need to show that Monsanto's recommendations (or lack thereof) regarding disposal resulted in contamination of the Spokane River." ECF No. 375 at 11. To establish proximate causation, Plaintiff bears the burden of proving that Monsanto's alleged improper disposal instructions constitute the cause in fact and legal cause of harm in this case: the alleged nuisance in the River and

1  Plaintiff's alleged property damage. *See Hartley v. State*, 698 P.2d 77 (Wash.

2  1985) (requiring proof of but for and proximate causation of harm).

3         **2.**     **Plaintiff fails to limit its claims to the 1970-1978 timeframe.**

4        Monsanto first provided disposal recommendations in 1970. See ECF No.

5  352-1 at 265-266, 353, 354 (warning letters). Afterwards, ANSI issued disposal

6  guidelines to the industry beginning in 1974, the EPA issued guidance in 1976, and

7  the EPA enacted comprehensive regulations in 1978. ECF No. 352-1 at 406-440

8  (ANSI Guidelines 1974), ECF No. 352-1 at 376-404 (EPA Disposal Reg., 1976

9  and 1978). Plaintiff does not contend Monsanto provided its customers with any

10  disposal instructions that violated the EPA regulations. ECF No. 375 at 6.

11  Accordingly, Plaintiff's claims relating to alleged improper disposal instructions

12  must necessarily be limited to the 1970 to 1978 timeframe.

13         **3.**     **Plaintiff cannot establish any actionable claim based on Monsanto's disposal recommendations.**

14        Plaintiff grossly mischaracterizes the record as a smoke screen to hide its

15  core failures of proof that any Monsanto disposal recommendations constituted

16  nuisance-creating conduct.

17            ***a.***     ***Landfill Recommendations***

18        Plaintiff contends Monsanto improperly advised customers to landfill PCBs

19  in 1970, ECF No. 375 at 11, but the City admitted there is no evidence that any

20  PCBs ever migrated from any landfills into the City's stormwater system or the

21  Spokane River. ECF No. 352-1 at 488-508 ("Windsor Dep.").

22            ***b.***     ***Waterway Warnings***

23

24

1    Plaintiff admits Monsanto's product bulletins in 1970 advised customers not

2  to dispose of PCBs where they could reach waterways. ECF No. 375 at 8. Plaintiff,

3  however, contends that Monsanto should have additionally gone out to ensure that

4  its customers followed the warnings. ECF No. 375 at 8. As previously discussed,

5  Monsanto had no duty (or ability) to enforce customer compliance with warnings.

6              *c.      Spokane Area Facilities*

7    Plaintiff contends that Kaiser Aluminum discharged PCBs into the Spokane

8  River from 1994 to 2011, ECF No. 375 at 11-12, and that Spokane Transformer

9  discharged PCBs to nearby ground and local dry wells from 1961 to 1979, ECF

10  No. 375 at 11-12, but Plaintiff proffers no evidence of any instructions that

11  Monsanto provided to either customer during 1970-78 time frame (or any time).

12  Plaintiff, thus, baldly asserts the relevancy of "[t]he disposal recommendations that

13  Monsanto issued to Spokane Transformer and its other customers regarding the

14  disposal of PCBs," ECF No. 375 at 12, without any evidence of any actual disposal

15  instructions that Monsanto provided to Kaiser or Spokane Transformer or that

16  either company improperly disposed of PCBs due any such instructions.

17              *d.      Public Statements*

18    Plaintiff claims Monsanto deceived the government, but proffers no

19  evidence of any misrepresentation to any governmental entity. Nor can Plaintiff

20  establish that any public statement affected the actions of any governmental entity,

21  much less caused the alleged nuisance in the Spokane River or Plaintiff's property

22  damage. Monsanto's communications with the government are also First

23

24

Defendants' Reply Brief In Support of Motions in Limine - 10

1    Amendment-protected, *Sosa v. DireTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006),

2    and, therefore, admission of its statements would be presumptively prejudicial.

3        Plaintiff inaccurately contends "Monsanto repeatedly represented to the

4    public, to regulators, and to the government that they 'cannot conceive of how

5    PCBs were getting into the environment,'" ECF No. 375 at 13, when the record

6    shows no proof any such statement was ever made to the public, regulators, or the

7    government. Decl. of Geana Van Dessel Re: Defendants' Reply In Support of

8    Defendants' Motions *In Limine* ("Reply Decl. Van Dessel") at ¶2, Ex. QQ (Kaley

9    Jan. 8 Dep. at 330:14-20), at ¶3 Ex. RR.

10       Plaintiff inaccurately insinuates that, in 1972, Monsanto sought to dissuade

11   the government from banning PCBs by representing that "closed system

12   applications pose no threat to ecology," ECF No. 375 at 14, when the record shows

13   that the Interdepartmental Task Force found in 1972 that closed systems were not a

14   likely source of PCBs getting into the environment. ECF No. 426-16 at 15.

15       Plaintiff inaccurately claims "Monsanto [untruthfully] represented to the

16   government that it had taken steps to reduce PCB usage and environmental losses

17   and that the steps they took would result in significant reduction in PCB output."

18   ECF No. 375 at 14. The record shows instead that Monsanto made the subject

19   report to the Task Force on PCBs in 1972, after Monsanto had issued multiple

20   disposal warnings, instituted a returned goods policy, withdrew all PCBs for

21   plasticizers and modifiers from the market, and built an incinerator to dispose of

22   liquid PCBs. *See* Reply Decl. Van Dessel at ¶4, Ex. SS (1/20/72 Withdrawal

23   Notice), at ¶5, Ex. TT (10/19/70 Incinerator Appropriation Request); ECF No. 352-

24

1  1 at 265-66, 353, 354 (Warning letters); ECF No. 427-20 at 2-3 (8/14/70 Customer

2  Communication).

3  **4.    Plaintiff lacks the required expert testimony**

4  Plaintiff also lacks the necessary expert testimony that Monsanto provided

5  inaccurate warnings between 1970 and 1978. *See Gordon v. Kitsap Cty.*, 187 Wn.

6  App. 1023 (2015) (requiring expert testimony to establish specialized standard of

7  care); *Seybold v. Neu*, 105 Wn. App. 666, 676 (2001) (requiring expert testimony

8  for subject matter beyond the expertise of a layperson). The City has no expert in

9  chemical handling or disposal practices or the state of the art of disposal practices

10  from 1970 to 1978. Nor does the City proffer any expert in waste disposal who will

11  testify as to the standard of care for a chemical manufacturer to provide

12  instructions for the disposal of its product from 1970 to 1978. Matson does not

13  know of any standard governing the instruction of customers regarding proper PCB

14  disposal practices. ECF No. 352-1 at 479 (Dep. at 61:1-9). Likewise, Rosner

15  admits he does not know industry standards governing the standard of care for

16  disposal of PCBs. ECF No. 352-1 at 450 (Dep. at 29:18-24).

17  **C.    Conclusion**

18  The Court should preclude Plaintiff from presenting any evidence, opinions,

19  testimony, or argument regarding Defendants' recommendations, or alleged lack

20  thereof, regarding the disposal of PCBs as not relevant and prejudicial.

21

22

23

24

Defendants' Reply Brief In Support of Motions in Limine - 12

1

2

**II.    Motion *in Limine* No. 2 to exclude evidence, testimony, and argument regarding irrelevant sources of PCBs.**

    **A.    The City seeks to eliminate its burden of proof as to the identification of Monsanto products.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

    In lieu of proffering necessary proof that certain specific applications (so called "open uses" such as caulk and floor wax, as well as PCBs used for heat transfer systems – "Therminols") and sources (landfills) of Monsanto's PCBs have contributed PCBs to the Spokane River as required by Washington law, the City seeks to eliminate its burden of proof and allow the jury to speculate that any and all specific PCB applications are sources of PCBs in the Spokane River and that landfills also are a source of PCBs, even though the City's 30(b)(6) witness unequivocally testified otherwise. Plaintiff does this in order to justify placing into evidence certain liability allegations regarding Monsanto's sale of PCBs for these particular applications as well as disposal instructions concerning landfills. Fatally, Plaintiff failed to develop proof of the factual predicates for these liability allegations: that PCBs were actually used in these particular applications in Spokane and that PCBs migrated from Spokane-area landfills. Instead, the City relies solely upon Monsanto's marketing of PCBs for open applications and Therminols, as well as Monsanto's share of domestic PCB sales. *See* ECF No. 375 at 15. This is a clear attempt to circumvent the City's burden of proof under Washington law to establish product identification.

21

22

23

24

    Washington law on product identification is clear. To sustain a cause of action a plaintiff "must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of the product." *Lockwood v. A.C. & S., Inc.,* 109 Wn.2d 235, 245 (1987). Here, the City is unable to establish any

1  "reasonable connection" between the claimed damages alleged to arise from PCBs

2  in the Spokane River and the products and uses that are subject to the instant

3  motion: open applications and Therminols. Contrary to the City's position, market

4  share is not a replacement for product identification. *See Durbin v CBS Corp.*, No.

5  06-2-11349-2, 2008 WL 4829140 (Wash. Super. Jan. 14, 2008) (granting

6  defendant's motion *in limine* to preclude argument of market share liability). As set

7  forth below, absent any "reasonable connection" between the specific damages the

8  City claims related to the Spokane River, and landfills, open applications, and

9  Therminols, the City should not be permitted to allow the jury to speculate

10  concerning these hypothetical sources of PCBs.

### B.    The City has had over five years to develop evidence of PCB sources to the Spokane River and has failed to do so.

11

12         The City has had over five years of extensive discovery to develop evidence

13  in support of its claims of particular sources of PCBs to the Spokane River,

14  however, the City failed to develop necessary proof that landfills, open

15  applications, and Therminols are sources of PCBs in the Spokane River. Indeed,

16  publicly available information on PCB sources in the Spokane River can be easily

17  found in the records of the Spokane River Regional Toxics Task Force (SRRTTF),

18  of which the City is a member, or through examination of EPA and Department of

19  Ecology records of decisions for various Spokane-area clean-up sites. Instead of

20  offering evidence to support its burden of proof, the City seeks to eliminate its

21  burden of proof and invite the jury to base its verdict not on evidence but on rank

22  speculation.

23

24

Defendants' Reply Brief In Support of Motions in Limine - 14

Based on the testimony and evidence in the record, the City should be precluded from offering testimony, evidence, or argument related to landfills, open applications, and Therminols.

> **1.    The City admits it has no evidence that landfills are a source of PCBs to the Spokane River, but the City would like the jury to speculate in direct contradiction to that sworn testimony.**

The City invites the jury to speculate that landfills are a source of PCBs to the Spokane River in contradiction to the City's sworn admissions. The City's designated witness to give binding testimony through a Rule 30(b)(6) deposition on the topic of disposal sites and landfills, Scott Windsor, repeatedly testified that the City has no evidence that any PCBs located at Spokane-area waste disposal sites migrated off-site, and further, migrated to the Spokane River. *See* ECF No. 351 at 11, 13, 14. Mr. Windsor straightforwardly testified the City has no information, sampling, modeling, or quantitative evidence that any Spokane-area landfill is a source of the PCBs at issue in this case. *Id*. at 13-14. Mr. Windsor admitted that detailed historical records of area landfills that investigated numerous constituents and chemical substances did not identify PCBs. For example, EPA Records of Decision for Superfund cleanups of Northside Landfill and Colbert Landfill did not identify PCBs in groundwater. ECF No. 352-1 at 492, 493, 504 (Windsor Dep. at 57:16 –58:22; 69:15 – 70). Likewise, Mr. Windsor admitted that Washington Department of Ecology site summaries of Marshall Landfill and Southside Landfill, and Spokane County summaries of Mica Landfill and Greenacres Landfill, did not identify PCBs. *Id*. at 495-502 (Windsor Dep. at 60 –

1   67). This unequivocal sworn testimony forecloses any evidence concerning

2   landfills in this case.

3          The City concedes it has no evidence that landfills are a source of PCBs to

4   the Spokane River. In place of evidence, the City offers an unbroken chain of

5   speculation: that PCBs that *might* have been manufactured by Monsanto *might*

6   have been deposited in Spokane-area landfills and *might* have migrated from the

7   landfills and *might* have entered the Spokane River. Evidence that posits that the

8   foregoing is theoretically possible does not tend to make any fact more probable

9   for the issues at trial in this case; nor are those facts "of consequence in

10  determining the action," where the City lacks evidence to reasonably connect them

11  to the PCBs in the Spokane River. *See Lockwood*, 109 Wn.2d at 245 (quoting W.

12  Prosser, *The Law of Torts*, § 241 (4th Ed. 1971)). In essence, Plaintiff would invite

13  the jury to disbelieve the sworn, binding testimony of its own 30(b)(6) witness and

14  in its place, believe a series of might-have-been assumptions that are impermissible

15  under Washington law.

16          **2.    The City's experts admit there is no evidence that open
                    applications are a source of PCBs to the Spokane River, but
17                  the City would like the jury to speculate in direct
                    contradiction to that sworn testimony.**

18          The City invites the jury to speculate that open applications of PCBs, like

19  plasticizers and caulk, are a source of PCBs to the Spokane River in contradiction

20  to the testimony of its own expert witnesses. Two of the City's retained experts,

21  David Dilks and Kevin Coghlan, testified there was no information or data to

22  support any claim that open applications of PCBs constituted a source of PCBs in

23  the Spokane River. Mr. Dilks admitted he had no knowledge or information of any

24

1  sampling conducted of Spokane-area buildings for open applications of PCBs.

2  Reply Decl. Van Dessel at ¶5, Ex. TT (Dilks Dep. at 29:13 – 30:6). Furthermore,

3  Dilks testified that not only was there no report defining the quantity of PCBs

4  present in Spokane-area buildings, he was not aware of any inventory or data that

5  identified if any PCBs were present in buildings at all. *Id*. at 31:22–32:3. Similarly,

6  Coghlan testified he was not aware of any Spokane-specific data of PCBs in

7  buildings. *See* ECF No. 352-1 at 513-521. The City lacks any evidence that open

8  applications of PCBs are present in buildings in Spokane; and further, that any of

9  those PCBs migrated from buildings to the Spokane River.

10        Regardless, the City seeks to negate its evidentiary burden for product

11  identification and request that the jury speculate that open uses of PCBs might be a

12  source of the PCBs in the Spokane River. The sole basis the City provides is its

13  experts' estimate of domestic PCBs manufactured by Monsanto. *See* ECF No. 375

14  at 15. Not only does market share or percentage of production not satisfy its burden

15  of proof under Washington law, the percentage provided is irrelevant for purposes

16  of the products at issue in this motion.[4] 77 percent of all PCBs manufactured by

17  Monsanto were made for use in closed electrical systems, like transformers, which

18  are not the subject of the instant motion. Reply Decl. Van Dessel at ¶7, Ex. VV.

19  (USEPA, Management of Polychlorinated Biphenyls in the United States, Jan. 30,

20  1997, at 4). Open applications constitute a small fraction of that. *Id*.

21  _____

22  [4] The figure cited in the Opposition also ignores non-Monsanto inadvertent PCBs

23  in the Spokane River, which the City's expert described as its "main problem."

24  *See* ECF No. 402 at 5.

1      Again, the City could have used the discovery period to develop facts to

2  support its theories through testing, sampling, and analysis of open uses as a source

3  to the River, and then supported such testing and analysis with the testimony with

4  an expert witness on the subject of fate and transport of chemicals. The City also

5  had available the work of the SRRTTF to supplement its own discovery efforts.

6  But the City opted not to take any of those necessary steps to develop evidence.

7  Because the jury must reach its verdict based upon relevant, admissible evidence,

8  all argument, evidence, or testimony related to open applications of PCBs must be

9  excluded.

### 3.    The City has no evidence that Therminols constitute a source of PCBs to the Spokane River.

12      The City offers no evidence to support that Therminols constitute a source of

13  PCBs to the Spokane River. *See* ECF No. 375 at 15. Therminols, a PCB-containing

14  fire safety fluid, were used at one time as heat transfer fluids. ECF No. 427-24

15  (Therminol Conversion Bulletin, Bates No. 0585960). Heat transfer fluids

16  constituted only 1.6 percent of total Monsanto PCB production. Reply Decl. Van

17  Dessel at ¶7, Ex. VV. Therminols lack any relevance to this case in the absence of

18  specific evidence reasonably connecting the product to the Spokane River.

19      Moreover, the City has zero evidence that Therminols were intended for use

20  in food products; that Therminols caused any accidental contamination of any food

21  products that were marketed, sold and consumed by Spokane residents; or were

22  marketed and sold in the Spokane River area for those purposes. Any such

23  argument to the jury is factually unsupported and unfairly prejudicial to Monsanto.

24  If the City intended to offer evidence that Therminols are a source of PCBs to the

Spokane River, it had every opportunity to do so during discovery.  Unsupported argument and evidence related to Therminols must be excluded under Rule 402.

### C.  Monsanto's conduct, including marketing and promotion of products or uses, is irrelevant and unfairly prejudicial in the absence of any evidence that those products or uses exist in or around the Spokane River.

The City asserts that because Monsanto marketed and promoted various products and uses for PCBs, that evidence of every single marketed use – regardless if that product constitutes a source to the Spokane River – is admissible as evidence. ECF No. 375 at 15-16. According to the City, the mere existence of a Monsanto PCB-containing product means the product is "fair game" for trial, without any showing that such product bears any relation to the specific claims related to the Spokane River. The City's argument ignores entirely the need for a reasonable connection between those marketed uses and the PCBs in the specific claims it makes in this case. *See Lockwood*, 109 Wn.2d at 245. Absent any such "reasonable connection," the evidence of landfills, open uses, and Therminols is irrelevant and inadmissible under Fed. R. Evid. 402.

In addition, the City does not attempt to address Monsanto's argument that presentation to the jury of argument concerning open use products or landfills – products or locations that the jurors may have encountered in their everyday lives – is unfairly prejudicial, confusing, and misleading. Presenting jurors with argument that products they may have handled, like caulk or carbonless copy paper, are a source of PCBs without any reasonable connection to the Spokane River, improperly appeals to juror emotions and is likely to confuse and mislead. An

1   invitation for the jury to speculate that these specific products or uses exist in or

2   around the Spokane River absent actual proof is improper and should be excluded.

3          The Court should grant Defendants' Motion *In Limine* No. 2.

**III.   Motion *In Limine No. 3* to exclude evidence about Monsanto's non-PCB**
4   **products.[5]**

5          The City seeks to admit highly prejudicial evidence regarding Monsanto's

6   manufacturing of Roundup despite offering no evidence that Roundup has

7   contributed a molecule of byproduct PCBs to the Spokane River. Similarly, the

8   City seeks to admit evidence regarding Monsanto's manufacturing of DDT, a

9   completely different product than Monsanto's PCBs. Only Monsanto's PCBS are

10  the subject of this lawsuit. Roundup and DDT both may elicit strong negative

11  reactions from jurors – they are much demonized products in the  press that will

12  surely prejudice and confuse the jury. The City should not be permitted to admit

13  evidence for which it has shown no relevance to this case, especially when the

14  prejudicial effect on Monsanto will vastly outweigh any probative value in this

15  PCB lawsuit.

16         **A.     There is no reason to admit evidence of Roundup Products.**

17         Introducing evidence about Roundup is an attempt to distract and inflame

18  the jury with evidence about a Monsanto product that has no bearing on Plaintiff's

19  claims but one the jury may believe is harmful. It will merely serve to remind the

20  jury that Monsanto manufactured a different product that has been the subject of

21  _____

22  [5] The City agrees not to introduce evidence regarding Monsanto's manufacture of

23  Agent Orange or recombinant bovine growth hormone, ECF No. 375 at 21, so the

24  Court should so order.

Defendants' Reply Brief In Support of Motions in Limine - 20

1   several exorbitant jury awards against Monsanto and recently in the national news.

2   There is no factual predicate that Roundup has contributed any byproduct PCBs to

3   the Spokane River. Despite over three and a half years of discovery in this case, the

4   City has offered no evidence that a single molecule of byproduct PCBs from

5   Roundup ever made it to the Spokane River. Roundup has no relevance to the

6   City's claim that Monsanto's PCBs have harmed the Spokane River.

7       Plaintiff seeks to admit Roundup evidence solely to remind the jury of the

8   recent significant verdicts against Monsanto in the Roundup litigations. A simple

9   Lexis search for "Monsanto w/5 Roundup" identified 5,729 articles about Roundup

10   from January 1, 2019 to February 1, 2020. Reply Decl. Van Dessel at ¶8, Ex. WW.

11   The articles include in part:

12      • "Monsanto's Roundup, a masqueraded monster"

13      • "BREAKING NEWS: Jury slams Monsanto in 2nd Roundup Cancer Trial"

14      • "Shareholder Alert: Over 10,000 Lawsuits in connection with Monsanto's

15         Roundup announced by Shareholders Foundation"

16   *Id.*  A Google search for "Roundup litigation" turned up over 2 million hits, the

17   first dozen of which were law firms looking for plaintiffs. *Id.* at ¶9, Ex. XX. The

18   City's counsel, the law firm of Baron and Budd, represents Roundup plaintiffs and

19   has a page on its website dedicated to finding more. *Id.* at ¶10, Ex. YY.

20       Plaintiff wants to use Roundup to paint Monsanto as a bad company that

21   makes bad products that harm people and remind the jury that they can award a

22   multibillion dollar verdict to teach Monsanto a lesson. There can hardly be a more

23

24

Defendants' Reply Brief In Support of Motions in Limine - 21

prejudicial Monsanto product in the world at this moment in time. All evidence regarding Roundup should be excluded.[6]

The City claims it seeks to include Roundup evidence to show that Roundup contains byproduct PCBs. ECF No. 375 at 23. The "PCBs in Municipal Products" study cited by the City reported a total PCB concentration of 0.012 ug/kg in the Roundup sample. ECF No. 376-2 at 14. That means the Roundup sample tested by the City in 2015 was estimated to contain 0.0000000012% byproduct PCBs – the smallest possible trace without being a total non-detect. Furthermore, after three and a half years of discovery, the City has offered no evidence that Roundup is a source of byproduct PCBs to the Spokane River.

To the extent the Municipal Products study constitutes the thinnest possible evidence of Roundup containing the smallest possible trace of byproduct PCBs, the City's proffered byproduct PCB expert, Lisa Rodenburg, does not support that position. While Rodenburg's analysis evaluated the presence of byproduct PCBs in Roundup, all the samples in her analysis were flagged by the laboratory as problematic and unreliable due to either laboratory blank contamination or trace

---

[6] The City's representation that it will not introduce evidence of Roundup-related lawsuits, ECF No. 375 at 21, does not solve the manifest prejudice of allowing any mention of Roundup in this trial. One can expect that most jurors on the panel will have heard about the Roundup litigation, the resulting exorbitant verdicts against Monsanto and seen the commercials advertising for plaintiffs. The City does not have to mention the litigation to severely prejudice Monsanto in the eyes of this jury – merely mentioning Roundup in this PCB trial would be sufficient.

1  amounts that were so low that they could not be accurately quantified because they

2  were below the laboratory instrument's calibration range. ECF No. 403-1 at 42 of

3  215; Reply Decl. Van Dessel at ¶16, Ex. EEE. The City's own proffered expert on

4  byproduct PCBs could not produce reliable evidence that Roundup contains

5  byproduct PCBs, or that Roundup has contributed even one molecule of byproduct

6  PCBs to the Spokane River.

7      On this slender thread of a suggestion that Roundup might have byproduct

8  PCBs and might be contributing byproduct PCBs to the Spokane River, which is

9  unsupported by their own expert's Roundup analysis, the City would bring

10  immeasurable prejudice to Monsanto if allowed to introduce evidence regarding

11  Roundup.  The probative value, if any, would be vastly outweighed by the severe

12  prejudice to Monsanto if Roundup evidence is admitted in this case.

13  **B.    Evidence regarding DDT is highly prejudicial and should be excluded.[7]**

14      Evidence regarding DDT is not relevant to any issue involving PCBs, the

15  only Monsanto chemical compound alleged to have caused Plaintiff's damages.

16  _____

17  [7] Plaintiff intends to rely on its expert Richard DeGrandchamp for the proposition

18  that because Monsanto manufactured DDT and DDT has certain characteristics in

19  the food web, Monsanto must have known PCBs would have an impact on the food

20  web. ECF No. 375 at 22-23. To the extent DeGrandchamp's testimony is not

21  otherwise excluded, *see* ECF No. 380, he should not be permitted to discuss Old

22  Monsanto's historic manufacturing of DDT even if he is permitted to offer his

23  speculation about what industry in general "should have known" based on alleged

24  similarities between the two chemicals.

Defendants' Reply Brief In Support of Motions in Limine - 23

1  Monsanto stopped manufacturing DDT in 1957. Reply Decl. Van Dessel at ¶11,

2  Ex. ZZ (Kaley Dep. at 36:16-36:21). Reference to Monsanto's manufacture of

3  DDT is certain to confuse and prejudice the jury.

4       DDT is not the same as PCBs. *Id.* at 39:24-40:6. DDT is generally known by

5  the public to be a pesticide designed to kill mosquitos and other pests by being

6  purposely sprayed in the environment. Reply Decl. Van Dessel at ¶12, Ex. AAA

7  (Markowitz Dep. at 54:9-54:16). In stark contrast, PCBs were designed for fire

8  safety and durability. They were intended to stay put and not disperse in the

9  environment. *Id.* at ¶13, Ex. BBB (Coghlan Dep. at 156:5-157:6). Unlike DDT,

10 PCBs were never designed to kill insects or to be sprayed throughout the

11 environment. Allowing the City to introduce evidence of Monsanto's decades-old

12 manufacture of DDT when the City alleges damages only from Monsanto's PCBs

13 would only serve to inflame and confuse the jury, and severely prejudice

14 Monsanto, while adding no probative value. All evidence regarding Monsanto

15 DDTs should be excluded.

16 **IV.    Motion *In Limine* No. 4**

17      Plaintiff does not oppose Defendants' motion *in limine* No. 4 so the Court

18 should enter an order precluding Plaintiff from introducing at trial evidence,

19 arguments, or references to "PCBs: Is the Cure Worth the Cost?" and the film "Big

20 Fears: Little Risks".

21 **V.    Motion *In Limine* No. 5**

22      It is clear from its opposition that Plaintiff is attempting to hold Monsanto

23 liable for its alleged failure to conduct long-term cancer studies on PCBs prior to

24

Defendants' Reply Brief In Support of Motions in Limine - 24

1    1969. Indeed, Plaintiff suggests that such evidence is relevant "to establish . . .

2    whether, in fact, Monsanto knew or should have known that its PCBs were toxic,

3    for purposes of determining foreseeability." ECF No. 375 at 25. Plaintiff, however,

4    has no actionable pre-1981 failure-to-test claim. As more fully explained in

5    Defendants' Motion for Summary Judgment on Plaintiff's Alternative Theories of

6    Liability, Monsanto seeks the dismissal of Plaintiff's negligence-based product

7    liability claims because any post-1981 claim is pre-empted by the Washington

8    Products Liability Act ("WPLA") and any claim pre-dating the WPLA fails for

9    lack of standing for the reasons detailed by this Court in its Order on Monsanto's

10   Motion to Dismiss. *See* ECF No. 391 at 1-2, 8. Plaintiff suggests "such evidence is

11   relevant to determining, for purposes of the City's public nuisance claim, whether

12   Monsanto new, or should have known that PCB contamination would seriously

13   and unreasonably interfere with the ordinary comfort, use, and enjoyment of any

14   coastal marine areas." ECF No. 375 at 25. Putting aside whether the Spokane River

15   constitutes a "costal marine area," Plaintiff's public nuisance claim is an

16   intentional tort, and a failure to do anything, including long-term cancer testing, is

17   irrelevant to such a claim. *See* ECF No. 394 at 17-20.

18          Even if Plaintiff were permitted to bring these claims, its assertions about

19   toxicological testing Monsanto supposedly should have conducted, what those

20   earlier tests supposedly would have shown, and what Monsanto (and others) would

21   have done in response to earlier tests, lacks foundation and contains layer upon

22   layer of speculation. In essence, Plaintiff would invite the jury to speculate on a

23   long list of unknowables: (1) that animal toxicology testing performed in the 1930s

24

Defendants' Reply Brief In Support of Motions in Limine - 25

1  to 1960s, before the advent of established cancer testing protocols, would have

2  shown that PCBs cause cancer in laboratory animals, even though most PCB

3  animal cancer tests using modern protocols are negative; (2) that the results of

4  those tests would have resulted in Monsanto ceasing the production of PCBs, even

5  though PCBs were then and are still used today, the only nonflammable fire safety

6  fluid for electrical equipment; (3) that the domestic users of PCBs would not have

7  simply imported foreign-made PCBs; and (4) that the government might have

8  taken regulatory action prohibiting the sale or use of PCBs, even though dozens of

9  substances known to cause cancer in laboratory experiments were permitted then

10  and to this day. This is a veritable layered cake of speculation and should not be

11  permitted.

12      This is not, as Plaintiff states, a debate about the weight of the evidence; this

13  is a situation where the evidence is inadmissible because it is layer upon layer of

14  pure speculation. Indeed, Plaintiff readily admits that "[o]pinions on what would

15  have happened in the past . . . are always in some sense speculative." ECF No. 375

16  at 27. However, it suggests its experts—namely, Drs. DeGrandchamp, Rosner, and

17  Carpenter—should not be precluded from offering such opinions given their

18  "substantial expertise" and their review of "extensive scientific literature on

19  PCBs," and that it "falls upon cross-examination to negate the facts or factual

20  assumptions underlying an expert's opinion." *Id*. at 27-28. Regardless of Plaintiff's

21  position to the contrary, opinion testimony without a factual basis in the record is

22  inadmissible. *Gray v. Shell Oil Co*., 469 F.2d 742, 749–50 (9th Cir. 1972)

23  (properly excluding expert's opinion that was speculative and not supported by the

24

1    evidence); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422–23, 48 Fed. R. Evid.

2    Serv. 874 (9th Cir. 1998) (properly excluding experts as unreliable when their

3    opinions represented unsupported and untested conclusions); *Diviero v. Uniroyal*

4    *Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir.1997) ("Rule 702 demands that

5    expert testimony relate to scientific, technical, or other specialized knowledge,

6    which does not include unsubstantiated speculation and subjective beliefs."). Rule

7    702(a) requires that the expert's "knowledge" must assist the trier of fact, and "the

8    word 'knowledge' connotes more than subjective belief or unsupported

9    speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).

10        Plaintiff's reliance on *Carrelo v. Advanced Neuromodulation System, Inc.*,

11    777 F. Supp. 2d 315, 319 (D.P.R. 2011) is misplaced. Specifically, the sentence

12    from *Carrelo* that Plaintiff cites in its opposition brief, *see* ECF No. 375 at 27, is

13    based on First Circuit law, not Ninth Circuit law. *See Carrelo*, 777 F. Supp. 2d at

14    318-19 (citing *United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006). Plaintiff

15    cited no controlling case to support its mistaken argument that speculative expert

16    opinions may be admissible in the Ninth Circuit. Moreover, the *Carrelo* Court

17    excluded as insufficient and unreliable the expert's opinions about the "failure to

18    warn" because it was not premised on factors suggested in Daubert. *Id.* at 320.

19        The Fifth Circuit case that Plaintiff relies on, *Guillory v. Domtar Industries,*

20    *Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) is also misplaced. It held that the district

21    court properly excluded Defendant's expert testimony which was not based upon

22    the facts in the record but on altered facts and speculation designed to bolster

23    Defendant's position. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th

24

1    Cir. 1996). Specifically, the district court expressed its dissatisfaction with the

2    foundation upon with the expert based his conclusions, stating:

3        All right, Counsel, I have an obligation under the Daubert case to
         exercise control over the scope of expert testimony, and Dr. Reed's
4        testimony for the last many minutes has been a series of, basically,
         speculations concerning what probably happened, what possibly could
5        have happened based upon not even testimony in certain circumstances
         but his version of what might have happened based upon some
6        foundation which is not clear to me. I have a problem with letting this
         continue in this manner. If there is some testimony that you all have or
7        can elicit from Dr. Reed based upon scientific methods that are not
         speculative, I will allow him to continue, but if this is the way all the
8        testimony is going to proceed, the court cannot allow it to continue. It's
         highly prejudicial. It's not sufficiently based upon scientific methods
9        that we discussed earlier.

10   *Guillory*, 95 F.3d at 1330.  In short, Plaintiff has not done anything to overcome

11   the lack of foundation and speculative nature of this testimony.

12       First, there is no support for any assertion that companies in the 1930s

13   through the 1960s were required to perform long-term cancer studies on all

14   industrial chemicals. Plaintiff instead relies on the unsupported opinions of their

15   experts as to what they believe a reasonable company should have done.  However,

16   Dr. Rosner cannot point to a single document setting forth a specific rule that

17   chronic animal cancer testing was the industry standard for all chemicals in the

18   1930s-1960s. *See* ECF No. 352-2 at 313 (Van Dessel Decl., Ex. JJ at 1403:7-9, 13-

19   25 through 1404:1-2).

20       Second, Plaintiff's assertions about what earlier tests supposedly would have

21   shown are entirely speculative. Even Dr. Rosner admits he does not know and in

22   fact, nobody knows, what scientists would have found had they conducted chronic

23   testing of laboratory animals for PCB's in the 1930s-1950s, and he agrees that

24

Defendants' Reply Brief In Support of Motions in Limine - 28

1    anyone attempting to answer this question would be speculating. *See* ECF No. 352-

2    1 at 764-767 (Rosner Dep. at 127, 128, 129:2-13). Furthermore, it is undisputed

3    that the "modern" tests Plaintiff argues should have been conducted earlier have

4    mixed results. Many animal tests conducted in the 1970s, and as late as the 1990s,

5    did not reveal a link between PCBs and cancer. *See* ECF No. 352-1 at 764-767

6    (Van Dessel Decl., Ex. T); Reply Decl. Van Dessel at ¶14, Ex. CCC (HEW News

7    Release, April 21, 1978) (Report by the National Cancer Institute found that

8    "Aroclor 1254 was not carcinogenic to the rats under the test conditions.")); at ¶15,

9    Ex. DDD (Depo Olson at 256:5-24) (admitting that more often than not post-1970

10   research on cancer have been negative). Notably, these modern cancer tests

11   were/are performed using high dosages or rates of exposure which are, in fact, on

12   orders of magnitude higher than any possible exposures from consuming fish from

13   the Spokane River.

14       Finally, even if Plaintiff's experts are correct, any assertion by Plaintiff or its

15   experts about what Monsanto (or others) would have done in response to earlier

16   tests is even more speculative. Indeed, Plaintiff is inviting the jury to infer

17   hypothetical actions following such tests as a basis for negligence. This third layer

18   of speculation is too much. Testimony concerning Monsanto's alleged failure to

19   conduct long-term cancer tests in the 1930s through the 1960s is not admissible

20   unless it can somehow be tied to the Plaintiff's own injuries. Plaintiff must show

21   that a completed, positive test somehow would have prevented or otherwise

22   impacted its claimed damages. Plaintiff cannot make that connection. To say that a

23   positive long-term animal cancer test in the 1930s, 1940s, 1950s, or 1960s would

24

Defendants' Reply Brief In Support of Motions in Limine - 29

1   have resulted in an immediate, total ban on the continued domestic production of

2   PCBs, as well as the importation of foreign-made PCBs, is pure speculation.

3   Indeed, thousands of products that are carcinogenic in animals are still widely used

4   today—some of which are in the produce aisle of every grocery store in the

5   country. ECF No. 352-1 at 758 (DeGrandchamp Depo. at 1815:22-1817:4).

6          The purported evidence at issue is a series of speculations of what might

7   have happened or possibly could have happened if Monsanto had conducted

8   animal testing decades ago. Plaintiff has no basis in fact or law to link Monsanto's

9   alleged failure to conduct long-term animal testing to the City's alleged injuries in

10  this case. Consequently, Plaintiff and its experts should not be allowed to speculate

11  at trial about what might have happened had Monsanto conducted certain tests at

12  certain earlier times, and how, if any of that might have affected Plaintiff's claims

13  in this matter.

14  **VI.    Motion *In Limine* No. 6 to exclude evidence regarding IBT and Phil
         Smith testimony.**

15         Evidence related to the IBT fraud investigation generally and the testimony

16  of a former-IBT employee, Philip Smith, is not relevant to any issue in the case, is

17  unfairly prejudicial and should be excluded. The Court gave Plaintiff the

18  opportunity to conduct discovery on its theory that Monsanto has a "pattern and

19  practice" of falsifying scientific research on its products in cooperation with IBT,

20  ECF No. 375 at 31, when it ordered Defendants to produce all documents related

21  to the IBT fraud investigation generally and all documents relating to Smith,

22  explaining that the discovery "could lead to matters bearing on a potential issue in

23  this case—whether IBT fraud in other cases infiltrated PCB testing." ECF No. 300

24

Defendants' Reply Brief In Support of Motions in Limine - 30

1   at 5. It has not. And Plaintiff's Opposition to Defendants' Motion *in Limine* No. 6

2   only confirms there is no evidence that IBT fraud or Smith testimony bears on any

3   potential issue in this case.

4          Plaintiff has developed no evidence to prove that Old Monsanto had a

5   "pattern and practice of falsifying scientific research" or that any allegedly

6   "falsified" research played any role in the federal government's 1972

7   characterization of PCBs in the environment as safe or judgment not to ban PCBs.

8   Nor has Plaintiff shown that Old Monsanto's alleged "pattern and practice" and

9   "falsified" research impacted the development or implementation of regulations in

10  the late 1970's to ban the intentional manufacture of PCBs, specify the method of

11  disposal of PCBs, permit the continued use of PCBs in closed electrical equipment

12  such as transformers and capacitors, or permit the continued manufacture and sale

13  of byproduct PCBs from hundreds of known chemical processes. In short, Plaintiff

14  has offered no evidence that Monsanto knew its PCB studies were affected by

15  irregularities at IBT or that, even if the studies had demonstrated the

16  carcinogenicity of PCBs, such results would have affected in any way the course of

17  PCB use or disposal in the United States.

18         In an effort to demonstrate relevance, Plaintiff conflates the IBT studies on

19  products *other* than PCBs that were subject to the criminal trial with the IBT

20  studies on Old Monsanto's PCBs. For instance, Plaintiff asserts that Paul Wright's

21  job at IBT was to "supervise the PCB tests" and implies that because the three IBT

22  employees convicted of fraud worked on the PCB studies and the studies occurred

23  at the same time, the PCB studies must have been fraudulent. ECF No. 375 at 29-

24

Defendants' Reply Brief In Support of Motions in Limine - 31

1  30. This speculation is not supported by any evidence. In fact, contrary to

2  Plaintiff's fabricated version of history, Old Monsanto was declared by the

3  government a victim of IBT's fraud and had no knowledge of IBT's fraudulent

4  conduct. ECF No. 352-1 at 786, 788, 792, 793. In addition, Plaintiff admits that

5  "the federal convictions were not directly related to Monsanto's PCB studies."

6  ECF No. 375 at 30. There is no evidence that Old Monsanto aided IBT in its

7  commission of fraud in any of the dozens of studies Old Monsanto commissioned

8  IBT to conduct.

9        The evidence that Plaintiff does cite to support its fabricated narrative does

10  not demonstrate any connection between the fraudulent conduct of IBT and the

11  issues in this case. Plaintiff cites a 1973 Monsanto document that speculates that

12  IBT's PCB tests were "the most important data that led the government agencies to

13  permit the continued but restricted use of [PCBs]" to somehow establish "what

14  Monsanto knew or should have known regarding the toxicity of its PCB products

15  and whether Monsanto acted as a reasonably prudent manufacturer in continuing to

16  market PCB products for widespread consumer and commercial use." ECF No.

17  375 at 29. The statements about the speculative role the IBT tests played in the

18  mind of the federal government has no logical connection to the alleged fraud for

19  which the document is offered.

20        Plaintiff further contends that the jury can "conclude that IBT falsified its

21  research at Monsanto's request" based on a memo from Monsanto to IBT in which

22  Monsanto asks IBT to change language regarding the results of its study on

23  Aroclor 1254 from "appears to be slightly tumorgenic" to "does not appear to be

24

1   carcinogenic." ECF No. 375 at 30. Changing language from "slightly tumorgenic"

2   to "does not appear to be carcinogenic" does not create a falsity; rather, ***as***

3   ***Plaintiff's experts agree***, it reflects a more scientifically accurate statement of the

4   results. Reply Decl. Van Dessel at ¶17, Ex. FFF (DeGrandchamp Depo, Dec. 5,

5   2014) at 70:22-25); at ¶18, Ex. GGG (DeGrandchamp Depo., Aug. 21, 2014 at

6   139:7-16); Compare Reply Decl. Van Dessel at ¶¶19, 20, Ex. HHH (O. Fitzhugh

7   and A. Nelson Article) showing DDT is tumorigenic with Ex. III (A. Lehman

8   Report) at 16 discussing the Fitzhugh and Nelson tumorigenic findings as

9   noncarcinogenic. While tumorigenic and carcinogenic have different meanings, not

10  all tumors are carcinogenic, and by changing the language from "slightly

11  tumorgenic" to "does not appear to be carcinogenic," Monsanto was in fact being

12  more descriptive and providing more (and accurate) information. *Id*. In short, there

13  will be no evidence that the request to change the description of the results was

14  scientifically inaccurate or led anyone to a false conclusion. Evidence of scientific

15  accuracy cannot be the basis of liability, as Plaintiff wishes it to be.

16      Furthermore, Monsanto requested IBT to change language from "appears to

17  be slightly tumorgenic" to "does not appear to be carcinogenic" to be consistent

18  with the language used in the previous reports for Aroclor 1242 and 1260. Reply

19  Decl. Van Dessel at ¶21, Ex. JJJ (July 18, 1975 Memorandum re "Aroclor 2-year

20  Rat Feeding Studies").

21      Finally, even if the IBT study results had been the result of irregularities

22  (about which Monsanto knew nothing), studies like the one conducted by the

23  National Cancer Institute were underway and would become the studies on which

24

1  the scientific community relied. And, despite the proposed change in how the study

2  results were characterized, the results of a two-year toxicity conducted on Aroclor

3  1254 reported in 1978 by the National Cancer Institute provided similar results.  *Id.*

4  at ¶14, Ex. CCC ("Aroclor 1254 was not carcinogenic to the rats under the test

5  conditions."). Thus, even if the IBT studies were flawed, the National Cancer

6  Institute, relying on its own study, was free to reach a different conclusion had

7  their results warranted.

8      Even if, *arguendo*, IBT's two-year rat chronic toxicity studies on Old

9  Monsanto's PCBs were found to be carcinogenic in laboratory animals, Plaintiff

10  has provided no evidence and it would be completely speculative to suggest that

11  different government actions would have been taken in response to such results.

12  Indeed, the government did not change its position or decide to no longer permit

13  the production of PCBs for use in transformers and capacitors in 1975 when Dr.

14  Renate Kimbrough, formerly of the Environmental Protection Agency and then of

15  the Centers for Disease Control, found hepatocarcinogenic effects in rats from

16  exposure to Aroclor 1260. *See* Reply Decl. Van Dessel at ¶2, Ex. KKK.

17      With respect to Smith's testimony, Plaintiff erroneously states that Smith

18  testified that Old "Monsanto's PCB studies were fraudulent as well." ECF No. 375

19  at 30. Years after the criminal trial of IBT employees for studies unrelated to Old

20  Monsanto's PCBs, Smith offered inconsistent testimony that certain information

21  on body weight of laboratory animals was falsified. Mr. Smith, an untrained

22  laboratory assistant, testified that he joined IBT in the summer of 1971, several

23  months before the two-year studies were concluded. Body weights for laboratory

24

1   rats were accurately recorded before he arrived and at the conclusion of the study.

2   At most, intermediate weights for several months were estimated. This testimony

3   should be excluded because it is inadmissible hearsay and because it is irrelevant.

4   The testimony relates to the reliability of studies the Defendants will not use in

5   arguing the safety of consuming fish from the Spokane River.

6          Smith's testimony should be excluded as unreliable hearsay because Plaintiff

7   has done nothing to demonstrate that they have tried to locate Mr. Smith or that he

8   is unavailable for trial. Rule 804 requires that the proponent of prior testimony

9   prove the witness' unavailability. The declarant is not considered unavailable

10  unless the proponent of his statement makes a good faith effort to obtain the

11  declarant's presence. *In re Gonda*, No. 10-58722, 2011 WL 5240154, at *4 (Bankr.

12  N.D. Cal. Oct. 31, 2011) (citing *United States v. Olafson,* 213 F.3d 435, 441 (9th

13  Cir.2000) (a witness is unavailable when "the proponent of his statement has been

14  unable to procure his attendance or testimony by process or other reasonable

15  means"). No such showing has been made here. Rather, Plaintiff merely asserts

16  that the prior testimony will be used "in the event that the City cannot compel the

17  attendance of Mr. Smith at trial." Such conditional, hypothetical language is

18  insufficient to meet the standard under the Rule.

19         Even in the event Plaintiff were to unsuccessfully make a good faith effort to

20  obtain Smith's presence at trial, Smith's testimony should be excluded as

21  irrelevant. As explained in their Motion *in Limine* No. 6, Defendants only intend to

22  introduce evidence that Old Monsanto undertook chronic studies at a scientifically

23  reasonable point in time. Defendants do not intend on presenting the data or the

24

1  results—merely the fact that the studies were conducted. This does not open the

2  door to permit Plaintiff to put on a side trial regarding irrelevant issues that are

3  extremely prejudicial to Defendants. Thus, any testimony of a disgruntled former

4  employee stating that some of the data in the PCB study was falsified is irrelevant

5  and far outweighed by the prejudice it would cause to Defendants.

6      Evidence related to the IBT fraud investigation generally and the testimony

7  of a former-IBT employee, Philip Smith, is irrelevant and misleading. Hence why

8  other courts considering this issue have excluded such prejudicial and irrelevant

9  evidence. ECF 351 at 52, n.13 and Exs. U, HH, and J to ECF No. 351. This Court

10  should do the same and grant Defendants' Motion *in Limine* No. 6.

11  **VII.    Motion *In Limine* No. 7 to exclude evidence and reference to Paul**
       **Wright's 1976 Award and Comments to the EPA.**

12      Monsanto took issue with the scientific basis for various assumptions made

13  by the EPA in proposing the standards, including the bioconcentration factor

14  selected by the EPA. The bioconcentration factor is part of the equation the EPA

15  uses to estimate the uptake of PCBs by fish from surrounding water. Monsanto

16  (and Wright) argued that the bioconcentration factor was not experimentally

17  derived and that a lower bioconcentration factor would be more appropriate:

18      In the establishment of the PCB effluent standard for freshwater
       systems a bioaccumulation factor of 200,000 was selected. This factor
19      has no extrapolatable relationship to either the residues of PCB in
       salmon eggs or to PCB residues of fresh water forage fish. The only
20      published report (27) of an accumulation factor of the magnitude
       selected was that for the hepatopancreas of the pink shrimp, Penaeus
21      durarum. Even though an accumulation of 204,000 in the
       hepatopancreas has occurred, a nearly complete elimination of PCB
22      from that tissue was achieved when the shrimp were placed in water
       free of added PCB. The equilibrium whole body accumulation plateau
23      indicated an approximate accumulation factor of 22,000. These results
       are in agreement with those reported by Stallings and Mayer (29), and
24

1
2
3

> with the studies of Ryther (28), Greichus et al (24) and Crump-Weisner, at al (22) showing equilibrium biomagnification factors between water and fish ranging between 1,000 and 75,000 depending on the presence and absence of sediment and the specific PCB mixture present. These data would support the selection of a factor considerably lower than the factors which were applied.

4   Reply Decl. Van Dessel at ¶23, Ex. LLL at 6124. Plaintiff has offered no evidence

5   that Monsanto's recommended bioconcentration factor was wrong, scientifically

6   improper, or that the recommendation actually led EPA to conclude that no water

7   quality criteria could be developed at that time (1974).

8         In addition, Plaintiff's contention that the EPA relied on Dr. Wright's

9   submission in setting EPA's Proposed Toxic Pollutant Effluent Standards relating

10  to PCBs is not supported by evidence and is nothing more than speculation.

11  Plaintiff argues that an internal Monsanto document relating to a review of Dr.

12  Wright's performance, wherein it states that "[p]articularly noteworthy were [Dr.

13  Wright's] efforts on polychlorinated biphenyls (Aroclors)" related to "his excellent

14  analysis and synthesis of widely scattered observations played a prominent role in

15  forestalling EPA's promulgation of unrealistic regulations to limits discharges of

16  polychlorinated biphenyls," is evidence that Dr. Wright's submission impacted

17  EPA's regulations. *See* ECF No. 375 at 33. However, an internal document

18  summarizing work of a Monsanto employee is not evidence of what motivated

19  EPA to propose the standard that it did or that EPA did or did not rely on Dr.

20  Wright's submissions. At best this is rank speculation.

21        Although Plaintiff claims that it "does not seek to hold Monsanto liable for

22  successfully lobbying against more regulation," ECF. No. 375 at 32, that is

23  precisely what Plaintiff is doing by seeking to introduce evidence of Defendants'

24

Defendants' Reply Brief In Support of Motions in Limine - 37

1    lobbying efforts via Monsanto's former employee, Dr. Paul Wright, and a

2    subsequent employee achievement award based on such efforts. In fact, according

3    to Plaintiff, "[e]vidence of Wright's lobbying activities to delay government

4    regulation impacting PCBs has probative value . . . ." *Id.* at 34. Both federal and

5    Washington law preclude Defendants from being held liable based on their

6    communications to any branch or agency of federal, state, or local government.

7    *See Sosa v. DirectTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); RCW 4.24.510.

8    Admission of such evidence is contrary to applicable law, wholly irrelevant to any

9    issue in this matter and unduly prejudicial to Defendants.

10       In its Opposition, Plaintiff claims that Defendants' lobbying activities are

11   admissible because "it demonstrates Monsanto's pattern and practice of protecting

12   its market for PCBs and promoting the use of PCBs" and it "tends to establish

13   Monsanto's knowledge, intent, and/or motive." *See* ECF No. 375 at 32, 33. Yet,

14   Plaintiff has failed to demonstrate how Wright's 1974 submission to the EPA

15   commenting on proposed regulations to limit discharges of PCBs and a related

16   award demonstrate that Monsanto had a "pattern and practice of protecting its

17   market for PCBs and promoting the use of PCBs" or Monsanto's "knowledge,

18   intent, and/or motive" relevant to any issue in this case. *See Empress Casino Joliet*

19   *Corp. v. Johnston*, No. 09-C-3585, 2014 WL 6735529, at *5 (N.D. Ill. No. 28,

20   2014). Because this evidence is not relevant and only intended to seek an

21   emotional response from the jury, it should be excluded.

22       Lastly, ascribing liability to Defendants based on constitutionally protected

23   lobbying activity would be presumably prejudicial. *U.S. Football League v. Nat'l*

24

1    *Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986) (such evidence was

2    "clearly designed to place defendants in the harshest light"). This is precisely the

3    point that was made by the Seventh Circuit in *Weit v. Cont'l Illinois Nat. Bank &*

4    *Tr. Co. of Chicago*, 641 F.2d 457, 467 (7th Cir. 1981), when it rejected the

5    admissibility of such evidence, and in other cases. *See also Senart v. Mobay Chem.*

6    *Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984) (excluding evidence of lobbying

7    activity where "plaintiffs assail[ed] defendants for taking a particular view in a

8    scientific debate and for trying to retain a regulatory standard which defendants

9    preferred," because "[n]ot only do these actions not constitute torts, they are

10   protected by the first amendment."). By conceding in its Opposition that the

11   scientific validity of Dr. Wright's work has no bearing on the relevance of the

12   evidence, Plaintiff shows the irrelevant and prejudicial nature of this evidence and

13   Plaintiff's intent to use it to show nothing more than Defendants were involved in

14   lobbying efforts related to PCBs. As Defendants point out in their Motion, there is

15   no evidence that (1)  information Dr. Wright provided to the EPA was invalid or

16   incorrect, (2) the EPA based any regulatory decision regarding the proposed PCB

17   effluent standards on Dr. Wright's information, nor (3) that Dr. Wright receiving

18   an achievement award for his submission was somehow improper. *See* ECF No.

19   351 at 45.

20        It is hard to see how Plaintiff could use Wright's 1974 submission to the

21   EPA and related award for any other reason but to hold Defendants liable for its

22   lobbying efforts. Admission of this evidence is not only prejudicial but also likely

23   to confuse the jury by asking it to ascribe significance to activities on which they

24

Defendants' Reply Brief In Support of Motions in Limine - 39

are not permitted to decide liability upon. Accordingly, the Court should exclude all evidence, argument, or reference to Wight's comments on EPA's PCB Proposed Effluent Standards and subsequent award.

**VIII.  Motion *In Limine* No. 8**

Plaintiff does not oppose Defendants' motion *in limine* No. 8 so the Court should enter an order precluding Plaintiff from introducing at trial any evidence, argument, or reference to allegations that Monsanto has ghostwritten scientific articles or studies relating to PCBs.

**IX.    Motion *In Limine* No. 9 – Lobbying and Public Relations Activities**

Plaintiff's Opposition to Defendants' motion *in limine* to exclude all evidence, argument, or reference to Defendants' lobbying activities with respect to PCBs disregards the applicable law. Under the *Noerr-Pennington* doctrine and Washington law, evidence relating to Defendants' lobbying activities is inadmissible to prove liability and presumptively prejudicial when used for that purpose.  In fact, Plaintiff concedes that evidence of First Amendment protected lobbying activity should be excluded if it is irrelevant or unfairly prejudicial. *See* ECF 375 at 35-36 ("Evidence relating to activities protected by the *Noerr-Pennington* doctrine is admissible unless there is some other reason, such as relevance or unfair prejudice, for excluding it."). Here, such evidence is both irrelevant and unfairly prejudicial.

Plaintiff claims that Defendants' lobbying and public relations activities should be admissible because "they tend[] to establish Monsanto's knowledge, intent, and/or motive." *See* ECF No. 375 at 36 (seeking to admit evidence of Monsanto's lobbying activities "that tends to establish Monsanto's knowledge,

1    intent, and/or motive"). Yet, Plaintiff has not identified what evidence of lobbying

2    it intends to offer nor what admissible knowledge, what intent, and what motive it

3    intends to prove by what it offers. Rather, Plaintiff's Opposition nebulously refers

4    to "documents related to Monsanto's participation in lobbying efforts, and its

5    participation in trade associations". *See* ECF No. 375 at 35.

6         Nor has Plaintiff demonstrated how Defendants' knowledge or alleged

7    motives in conducting their First Amendment protected activities are relevant to

8    the damages at issue here: (i) whether the presence of PCBs in Spokane River fish

9    over which the City has no ownership constitutes a public nuisance, despite being

10   at levels that do not cause human health effects, and (ii) whether the presence of

11   PCBs in the City's stormwater and wastewater systems has caused harm to the

12   City's stormwater and wastewater infrastructure. *See Empress Casino Joliet Corp.*

13   *v. Johnston*, No. 09-C-3585, 2014 WL 6735529, at *5 (N.D. Ill. No. 28, 2014).

14   Both federal and Washington law preclude Defendants from being held liable

15   based on their communications to any branch or agency of federal, state, or local

16   government. *See Sosa v. DirectTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); RCW

17   4.24.510. Indeed, Plaintiffs' Opposition completely ignores the immunity from

18   civil liability provided by Washington law.

19        Furthermore, ascribing liability to Defendants based on constitutionally

20   protected lobbying activity would be presumably prejudicial. *U.S. Football League*

21   *v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986) (such evidence

22   was "clearly designed to place defendants in the harshest light"). This is precisely

23   the point that was made by the Seventh Circuit in *Weit v. Cont'l Illinois Nat. Bank*

24

1  & *Tr. Co. of Chicago*, 641 F.2d 457, 467 (7th Cir. 1981), when it rejected the

2  admissibility of such evidence, and in other cases. *See also Senart v. Mobay Chem.*

3  *Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984) (excluding evidence of lobbying

4  activity where "plaintiffs assail[ed] defendants for taking a particular view in a

5  scientific debate and for trying to retain a regulatory standard which defendants

6  preferred," because "[n]ot only do these actions not constitute torts, they are

7  protected by the first amendment."). Of course, admission of this evidence is not

8  only prejudicial but also likely to confuse the jury by asking it to ascribe

9  significance to activities on which they are not permitted to decide liability upon.

10       Finally, Plaintiff's reliance on inapplicable case law is unavailing. At issue

11  in the two cases cited by Plaintiff was whether the First Amendment prohibited

12  consideration during sentencing of a criminal defendant's motive for committing

13  the crime or association with a racist prison gang. *See Wisconsin v. Mitchell*, 508

14  U.S. 476, at 484-85 (1993) ("But the fact remains that under the Wisconsin statute

15  the same criminal conduct may be  more heavily punished if the victim is selected

16  because of his race or other protected status than if no such motive obtained."); *see*

17  *also Dawson v. Delaware,* 503 U.S. 159, 163 (1992) (holding admission of

18  evidence criminal defendant's membership in a white racist prison gang violated

19  his First Amendment rights). The other two cases relied upon by Plaintiff

20  considered whether the U.S. Navy violated the plaintiffs' First Amendment rights

21  by discharging them based on their sexual orientation. *See generally Hrynda v.*

22  *U.S.*, 933 F.Supp. 1047 (M.D. Fla. 1996) (finding  the Navy did not violate

23  plaintiff's First Amendment rights by using her spoken and written speech to

24

Defendants' Reply Brief In Support of Motions in Limine - 42

1  discharge her); *Thomasson v. Perry*, 895 F.Supp. 820 (E.D. Va. 1995) (holding the

2  military's "Don't Ask, Don't Tell" policy did not violate plaintiff's First

3  Amendment right to freedom of association). In short, these cases have nothing to

4  do with protection of lobbying activities under the First Amendment or the

5  admissibility of lobbying-related evidence.

6       The Court should exclude all evidence, argument, or reference to

7  Defendants' lobbying activities with respect to PCBs, and any argument that such

8  activities are evidence of allegedly nefarious conduct.

9  **X.    Motion *In Limine* No. 10**

10       Plaintiff stated it "does not intend to introduce evidence or argument that []

11  Monsanto violated the Delaney Clause." ECF No. 375 at 37. Yet Plaintiff argues

12  that "evidence of Monsanto's failure to conduct carcinogenicity testing"—to the

13  extent it is encompassed in Monsanto's Motion No. 10 in Limine (it is not)—is

14  relevant to its "state law claims of negligence, products liability, and public

15  nuisance." *Id*. at 38. Plaintiff's allegations regarding Monsanto's alleged failure to

16  conduct carcinogenicity testing are inadmissible for those reasons addressed in

17  Monsanto's Motion No. 5 *in Limine* to exclude evidence regarding Monsanto's

18  alleged failure to conduct long-term animal cancer tests before 1969, ECF No. 351

19  at 27-35, and its Reply in Support of Its Motion No. 5, *suppra*. Accordingly,

20  Monsanto's Motion No. 10 in Limine should be granted.

21  **XI.    Motion *In Limine* No. 11 to exclude evidence regarding Monsanto's decision not to supply customer lists to Congressman Ryan 50 years ago.**

22       Plaintiff contends that Monsanto's declination to voluntarily give

23  Congressman Ryan its proprietary customer lists and/or sales figures in 1970 is

1   "relevant and probative of Monsanto's continued pattern and practice of

2   untruthfulness regarding its PCB products[.]" *See* ECF No. 375 at 38-39. It is not.

3       Monsanto had no obligation to provide this information.  It elected not to do

4   so because it did not receive adequate assurances its confidential information

5   would be treated as such. Plaintiff's attempt to impute a nefarious motive on this

6   decision is speculative at best. As set out in Monsanto's Motion in Limine,

7   numerous courts have disagreed with Plaintiff on this precise issue, and excluded

8   evidence regarding Monsanto's declination to turn over its customer list to

9   Congressman Ryan. *See* ECF No. 351 at 73-74, fn. 17.

10      Simply put, the purported relevancy of this evidence to the Plaintiff's case is

11  completely absent. Fifty years ago Monsanto did not turn over its confidential,

12  proprietary customer lists and sales records to New York Congressman Ryan

13  without assurances from Congressman Ryan that the confidentiality of the

14  documents would be maintained. Congressman Ryan never subpoenaed these

15  documents, despite his ability to do so. This evidence is irrelevant and has nothing

16  to do with what Monsanto did or did not know about PCB hazards. It is certainly

17  not evidence of Plaintiff's fabricated narrative of Monsanto's "continued pattern

18  and practice of untruthfulness"—the prejudicial conclusion that Plaintiff would

19  invite the jury to reach without any evidentiary support. Indeed, Plaintiff continues

20  to put forward this narrative in the negative—suggesting that inaction by

21  Monsanto, including, here, not turning over its confidential, proprietary customer

22  lists and sales records, is somehow relevant to its public nuisance claim. ECF No.

23

24

1  375 at 38-39. Public nuisance is an intentional tort and failure to do anything is

2  irrelevant to such a claim. *See* ECF No. 394 at 17-20.

3      Plaintiff contends that Monsanto "complete[ly] refused to cooperate with

4  Congressman Ryan and the scientists investigating the mess Monsanto made." *See*

5  ECF 375 at 41.  First, Monsanto did not refuse to cooperate with Congressman

6  Ryan and the scientists' investigations; it declined to disclose proprietary

7  information to Congressman Ryan in the absence of assurances that such

8  information would be kept confidential. Second, Monsanto is not on trial for any

9  purported refusal to cooperate with the government but for the purported post-1981

10 defective nature of its long-discontinued product. *See* ECF No. 391 at 5-7. The

11 documents were never even subpoenaed by Congressman Ryan. What Monsanto

12 did or did not provide to Congressman Ryan fifty years ago has nothing to do with

13 whether PCBs were defective and/or caused Plaintiff's modern-day alleged

14 damages. Third, the Congressman Ryan evidence is relevant to Plaintiff's claims

15 only by asking the jury to speculate as to how Mr. Ryan and/or Congress would

16 have reacted to the disclosure of these customer lists and/or sales records and how,

17 if at all, would such reactions have impacted Plaintiff's claims. Any argument as to

18 what Mr. Ryan or Congress may have done with this information is pure

19 speculation, and certainly is much more prejudicial than probative.

20 relevant and probative of Monsanto's continued pattern and practice of

21 untruthfulness regarding its PCB products

22      Plaintiff's argument that Monsanto's election not to provide customer lists to

23 Congressman Ryan was a part of a "continued pattern and practice" is simply

24

Defendants' Reply Brief In Support of Motions in Limine - 45

1 unsupported speculation regarding Monsanto's motive. This is evidenced by the

2 fact that Monsanto did provide this information to other government agencies. In

3 1971, Monsanto disclosed sales information to the Federal Government. *See* ECF

4 No. 426-16 (Interdepartmental Task Force on PCBs, "Polychlorinated Biphenyls

5 and the Environment (May 1972). In 1975, Monsanto responded to a questionnaire

6 from the EPA, which included providing its customer lists. *See* Reply Decl. Van

7 Dessel at ¶24, Ex. MMM (Product/Customer Sales Reports at 1-5, 25-316, 367-

8 395). The EPA did nothing concrete with the lists. Thus, not only does the 1971

9 sales submission and the 1975 letter to the EPA demonstrate Monsanto's

10 cooperation and responsiveness, it provides further evidence that, like the EPA,

11 Congressman Ryan would not have done anything with the customer lists either.

12 Any evidence of Monsanto's declination to voluntarily provide Congressman Ryan

13 with its customer lists is wholly irrelevant.

14      For these reasons, the Court should exclude any and all evidence, testimony,

15 exhibits, questions, references, and arguments in the presence of the jury, whether

16 direct or indirect, by Plaintiff, its counsel, or their witnesses, concerning

17 Monsanto's declination to provide PCB customer lists to Congressman Ryan or

18 anyone else, and for any other relief the Court deems proper.

19 **XII.   Motion *In Limine* No. 12 to exclude evidence The Desolate Year.**

20      Plaintiff raises two arguments supporting the inclusion of  The Desolate

21 Year (the "Article")—an article entirely about chemical pesticides such as DDT

22 (and not PCBs). Both arguments fail. All evidence about the Article should be

23 excluded; it is not relevant and highly prejudicial.

24

1    Plaintiff's first argument is really three-pronged: (1) DDT and PCBs have

2    chemical and structural similarities, (2) DDT allegedly resulted in widespread

3    environmental contamination, and (3) consequently, Monsanto should have known

4    that PCBs would allegedly result in widespread environmental contamination. *See*

5    ECF No. 375 at 42. Plaintiff, however, is comparing apples and oranges. Notably,

6    DDT and PCBs are dissimilar in many ways, not the least of which is that PCBs,

7    unlike DDT, were not an insecticide designed to be broadcast widely into the

8    environment to kill pests. At its core, Plaintiff is suggesting that Monsanto's

9    knowledge that the widespread use in the environment of a product (DDT) that was

10   designed and intended to have widespread use in the environment somehow means

11   that Monsanto should have also understood another compound it produced (PCBs),

12   which was not intended to be used in the environment at all, would also allegedly

13   be found widespread in the environment.  Plaintiff's proposition is without merit

14   (let alone evidentiary support).  Further, Plaintiff's argument in support of the

15   Article's relevance is based entirely on inadmissible opinions/testimony and

16   speculation. Plaintiff asserts, without support, that the Article was intended to

17   mock a different book published in 1962 titled "Silent Spring," by Rachel Carson.

18   The Article, rather, was intended to urge consideration of the benefits of chemical

19   pesticides for the production of food and fiber—benefits not otherwise discussed

20   by Rachel Carson's 1962 publication Regardless, the only evidence in support for

21   its argument that the Article is relevant is inadmissible testimony from Plaintiff's

22   expert Robert DeGrandchamp regarding the alleged shared characteristics between

23   PCBs and DDT. Defendants moved to exclude DeGrandchamp's opinions under

24

1   Daubert so his challenged "opinions" cannot be the basis for arguing relevance.

2   See ECF No. 380. Moreover, even if DeGrandchamp's opinions (that DDT has

3   similar characteristics to PCB) were considered, it is an impermissible speculative

4   leap to tell the jury that it must then conclude that therefore "environmental

5   contamination was foreseeable to Monsanto prior to 1966." See ECF No. 375 at

6   43, 44.  Lastly, even if Plaintiff overcame the speculative hurdle, it has still not

7   provided any rationale as to why the Article supports this conclusion.

8   Plaintiff's second argument--that the Article allegedly establishes a "pattern and

9   practice of disregard for the environmental dangers posed by [Monsanto's]

10  products"—is improper character evidence. Under Evid. R. 404(a), evidence of a

11  defendant's "character or character trait is not admissible to prove that on a

12  particular occasion the person acted in accordance with the character or trait."

13  Here, Plaintiff clearly intends to use the Article to suggest that "just as it did with

14  DDT, Monsanto endeavored to downplay the risks of and harms caused by its PCB

15  products once found widespread throughout the environment." This is inadmissible

16  character or propensity evidence. Plaintiff cannot argue to the jury that because

17  Old Monsanto allegedly downplayed the risks of and harms caused by DDT

18  (which is denied, inter alia because Old Monsanto ceased the production of DDT

19  several years before Rachel Carson's 1962 publication of Silent Spring) it also

20  must have disregarded the risks associated with PCBs.  Since this clearly is the

21  purpose behind Plaintiff's introduction of the Article, it should not be admitted.

22  Even if, arguendo, the Article somehow were relevant to an alleged "downplaying"

23  by Old Monsanto as to DDT—a substance it no longer produced at the time of the

24

1962 publication—allegedly "bad" conduct in one circumstance cannot be used to show a propensity to act badly in other circumstances.

Finally, Plaintiff failed to address Defendants' Rule 403 arguments for excluding the Article—any marginal probative value and relevance to this case in admitting the Article (there is none) is significantly outweighed by the potential for jury confusion and prejudice to Defendants. This is why other courts have kept this evidence out. *See* ECF. No. 351 at 67, n.19. The Court should similarly exclude all evidence of The Desolate Year and grand Defendants' Motion.

**XIII.  Motion *In Limine* No. 13 to exclude evidence concerning other PCB personal injury or environmental claims.**

Plaintiff agrees "not to submit evidence that other people and governmental entities have recently sued Monsanto for the purpose of demonstrating the extent of PCB contamination in the environment or that PCBs caused certain diseases in certain individuals."  ECF No. 375 at 45.  However, Plaintiff still seeks for the Court to deny Defendants' motion because, it argues, evidence suggesting the existence of other PCB lawsuits—without actually identifying what evidence it is referring to—will be relevant and is not unduly prejudicial. Id.

Plaintiff's suggestion that it "will use testimony of Monsanto's corporate representative from other PCB cases when presenting its case in chief" misreads the subject matter of Defendants' motion. Id. Defendants request an order limiting the admissibility of evidence of other lawsuits, not the admissibility of evidence that may have been obtained from those other lawsuits. Surely, Plaintiff's counsel can question Defendants' corporate representative without specifically referring to prior litigation against Monsanto..

1    Plaintiff does request, however, that it be permitted to introduce evidence of

2  lawsuits that were filed in the 1970s and 1980s "as evidence of Monsanto's

3  knowledge regarding the potential harm caused by PCBs." Id. at 46.[8] While it is

4  unclear to what "historic lawsuits" Plaintiff is referring, such evidence remains

5  irrelevant and should be excluded. *See Shiow-Huey Chang v. County of Santa*

6  *Clara*, 726 Fed. Appx. 565, 567 (9th. Cir. 2018) (affirming district court's decision

7  to exclude evidence of prior lawsuits against the defendants because the facts

8  underlying the prior lawsuits were not sufficiently similar to the present case and

9  the prior lawsuit against one defendant was too remote in time where it occurred 7

10  years prior to trial); *McLeod v. Parsons Corp.*, 73 Fed. Appx. 846 (6th Cir. 2003)

11  (affirming exclusions of evidence of other discrimination lawsuits filed against

12  defendant employer under Rule 402 because they were not relevant and under 403

13  because the probative value was far outweighed where there was no nexus between

14  the prior lawsuits and the present case).

15    Even if such information were relevant (it is not), it would be unfairly

16  prejudicial to allow such evidence that is only meant for one thing—to cast

17  Defendants in a negative light. Moreover, such evidence will create a trial within

18  this trial where the Parties would be required to rehash decades old allegations—

19  allegations that are not proof of any harm incurred by Plaintiff that Defendants

20  _____

21  [8] Notably, Old Monsanto no longer produced PCBs after 1977, so it is difficult to

22  discern what relevance lawsuits from 1970s and, especially, 1980s have on

23  demonstrating "Monsanto's early knowledge regarding the potential for harm

24  connected to the use and/or disposal of PCBs." ECF No. 375 at 46.

Defendants' Reply Brief In Support of Motions in Limine - 50

1    have to disprove in this case. *See, e.g., Nelson v. Brunswick Corp.*, 503 F.2d 376,

2    380 (9th Cir. 1974) (affirming district court's decision to exclude evidence of prior

3    explosions and fire intended to establish defendant was negligent in the

4    performance of this particular work after considering "the collateral nature of the

5    proof, the danger that it may afford a basis for improper inferences, the likelihood

6    that it may cause confusion or operate to unfairly prejudice the party against whom

7    it is directed and that it may be cumulative"); *In re Related Asbestos Cases*, 543 F.

8    Supp. 1152 (N.D. Cal. 1982) (prohibiting plaintiffs' counsels from referring to the

9    existence or settlement of, or judgment or verdict in, any other asbestos-related

10   lawsuits pending anywhere in the United States); *Safeco Ins. Co. of Am. v. JMG*

11   *Rest., Inc*., 37 Wn. App. 1 (1984) (applying Washington evidence rules that

12   parallel the FRE to find that in insurance company's claim for declaratory relief

13   seeking non-liability under fire insurance policy, it was proper to exclude evidence

14   of previous fires at insured's other restaurants); *McLaughlin v. Fisher Eng'g*, 834

15   A.2d 258, 261-62 (N.H. 2003) (applying New Hampshire evidence rules that

16   parallel the FRE to find that probative value of evidence of other lawsuits against

17   the defendant was substantially outweighed by the danger of misleading the jury or

18   needless presentation of cumulative evidence); *First Bancorp Mortg. Corp. v.*

19   *Giddens*, 251 Ga. App. 676, 677-78 (Ga. App. 2001) (applying Georgia evidence

20   rules that parallel the FRE to hold that evidence of other lawsuits was properly

21   excluded); *Zeke's Distrib. Co. v. Brown-Forman Corp*., 779 P.2d 908, 911 (Mont.

22   1989) (applying Montana evidence rules thatf parallel the FRE to conclude

23

24

1    admission of evidence of other lawsuits against defendant was unfairly prejudicial;

2    new trial granted).

3           Neither those items Plaintiff has agreed to not enter into evidence nor the

4    "historic lawsuits" it seeks to enter have any relevance to the issues in this case and

5    would be unfairly prejudicial to Defendants. Consequently, Defendants' Motion in

6    Limine No. 13 should be granted.

7    **XIV.  Motion *In Limine* No. 14 to exclude evidence concerning Solutia and New Monsanto.**

8           Plaintiff agrees not to offer evidence regarding New Monsanto's agricultural

9    business practices or crop seeds. ECF No. 375 at 46. Monsanto, however,

10   maintains that *all* evidence concerning New Monsanto *and* Solutia should be

11   excluded.

12          As explained in Monsanto's Motion in Limine, Pharmacia is the <u>only</u> entity

13   whose conduct is at issue, not Solutia or New Monsanto.  Solutia did not even exist

14   until 1997—more than twenty years *after* Old Monsanto last manufactured or sold

15   PCBs in 1977.  New Monsanto did not exist until 2000—decades after PCBs were

16   last manufactured by Old Monsanto.  Neither of these companies ever

17   manufactured PCBs.  The operations of Solutia and New Monsanto have nothing

18   to do with the Spokane River and these companies cannot be held directly liable to

19   Plaintiff.   Indeed, in a prior lawsuit, a trial court has found evidence of the

20   indemnity relationship between Pharmacia and New Monsanto was not relevant.[9]

21   Thus, any and all evidence and arguments about these entities should be excluded

22   as irrelevant and lacking any probative value.

23   _____

24   [9] *See* ECF No. 352-2 at 187, 191-193.

Defendants' Reply Brief In Support of Motions in Limine - 52

1    Furthermore, because the operations and conduct of Solutia and New

2  Monsanto are not at issue, any evidence regarding Solutia and/or New Monsanto

3  will confuse the jury, cause undue delay, waste time and resources, and unfairly

4  prejudice Pharmacia.  For these reasons, Monsanto respectfully requests that the

5  Court exclude any and all evidence, testimony, exhibits, questions, references, and

6  arguments in the presence of the jury, whether direct or indirect, by Plaintiffs, their

7  counsel, or their witnesses, concerning Defendants Solutia and New Monsanto, and

8  for any other relief the Court deems proper.

9  **XV.    Motion *In Limine* No. 15 to exclude evidence concerning corporate wealth or financial status.**

10    "Plaintiff concedes it does not intend to present such evidence or argument

11  regarding Defendant Monsanto's current corporate net worth") ECF No. 375 at

12  48), therefore, the Court should enter an order granting Defendants' motion *in*

13  *limine* excluding evidence of current net worth. The Court should also enter an

14  order precluding Plaintiff from offering evidence of Monsanto's *past* financial

15  status; it is not relevant and is unfairly prejudicial.

16    Plaintiff asserts, without support, that Monsanto's past financial status is

17  relevant to how Monsanto's financial conditions influenced its decisions related to

18  PCBs. Aside from this vague statement, Plaintiff fails to explain any reasonable

19  nexus between Monsanto's past financial status and how this may have affected its

20  decisions that are allegedly relevant to the issues in this case. Further, it is unclear

21  how Plaintiff intends to offer evidence of Monsanto's past financial status, and

22  what specific evidence it intends to offer. Plaintiff fails to offer or describe the

23  evidence that Plaintiff wants to admit and fails to describe the details and

24

Defendants' Reply Brief In Support of Motions in Limine - 53

1    circumstances that this Court must consider in deciding whether the information is

2    relevant and admissible under Rules 402 and 403. The Court should grant

3    Monsanto's motion to exclude.

4         Plaintiff's reliance on *Thompson-Cadillac Co. v. Matthews*, 173 Wash. 353

5    (1933) and *State v. Public Service Commission*, 114 Wash. 646 (1921) offer little

6    support for Plaintiff's argument that Monsanto's past financial status somehow

7    shows it influenced Monsanto's decisions related to PCBs and is therefore relevant

8    and not prejudicial. Plaintiff ignores Defendants' prejudice argument, but the Court

9    cannot ignore it and must assess the evidence in light of Fed. R. Evid. 403.  In

10   *Matthews*, the sole reference to "financial status" is limited to one vague statement

11   in a case involving fraud and an employer escaping liability for property damage

12   by entering into an independent contract with a third person to perform the work

13   on the property. From reading the case, it is impossible to determine what financial

14   status information was considered and exactly why. A single sentence plucked

15   from *Matthews*, without context, does not support admissibility of Monsanto's past

16   financial status.  While it is unclear how Plaintiff intends on offering such

17   evidence, unlike *Matthews*, there are no issues related to fraud or independent

18   contractors in this litigation.

19        The same can be said for *Public Service Commission*, a 1921 case. There,

20   the issue was the reasonableness of utility rates. The Washington Supreme Court

21   held that a table and report prepared by the expert together with the testimony of

22   the person preparing the report was relevant to setting the utility rates; part of

23   which includes *showing the conditions under which a utility operated its business*.

24

1   *State v. Public Service Com'n*, 114 Wash. at 649 (emphasis added). Again,

2   Plaintiff offers no analysis or analogous facts. Because Plaintiff failed to articulate

3   what evidence it wants to admit and what decisions the financial status allegedly

4   affected, Plaintiff's reliance on *Public Service Commission* is unhelpful.

5          The Court should grant Defendants' Motion *in Limine* No. 15 and exclude

6   under Fed. R. Evid. 401 and 403 all evidence of Monsanto's financial status, past

7   and present.

8

9   Respectfully submitted February 4, 2020.

10                                    By: s/ Geana M. Van Dessel

11                                    Geana M. Van Dessel, WSBA #35969
                                      KUTAK ROCK
                                      510 W. Riverside Avenue, Suite 800
12                                    Spokane, WA 99201
                                      P: (509) 252-2691
13                                    Geana.VanDessel@KutakRock.com

14                                    By: s/ Adam E. Miller

15                                    Adam E. Miller, MO Bar No. 40945
                                      (Admitted *Pro Hac Vice*)
16                                    Susan L. Werstak, MO Bar No. 55689
                                      (Admitted *Pro Hac Vice*)
17                                    Michael W. Cromwell, MO Bar No. 70484
                                      (Admitted *Pro Hac Vice*)
18                                    CAPES, SOKOL, GOODMAN
                                      AND SARACHAN, PC
19                                    8182 Maryland Ave., Fifteenth Floor
                                      St. Louis, Missouri 63105-3916
20                                    P: (314) 754-4810
                                      miller@capessokol.com
21                                    cromwell@capessokol.com
                                      werstak@capessokol.com

22                                    Thomas M. Goutman, PA Bar No. 30236
                                      (Admitted *Pro Hac Vice*)
23                                    David. S. Haase, PA Bar No. 73835
                                      (Admitted *Pro Hac Vice*)
24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

SHOOK HARDY & BACON LLP
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
P: (215) 575-3136
tgoutman@shb.com
dhaase@shb.com

Richard L. Campbell, MA Bar No. 663934
(Admitted *Pro Hac Vice*)
Melissa Nott Davis, MA Bar No. 654546
(Admitted *Pro Hac Vice*)
SHOOK HARDY & BACON LLP
125 Summer St., Ste. 1220
Boston, MA 02110
P: (816) 559-4025
rcampbell@shb.com

James A. Pardo, NYBA #2969491
(Admitted *Pro Hac Vice*)
Anthony N. Upshaw, FLBA #861091
(Admitted *Pro Hac Vice*)
Lisa A. Gerson, NYBA #4518940
(Admitted *Pro Hac Vice*)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922
Phone: (212) 547-5353
jpardo@mwe.com
aupshaw@mwe.com
lgerson@mwe.com

Robert M. Howard, CSBA #145870
(Admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Phone: (858) 523-5400
robert.howard@lw.com
kelly.richardson@lw.com

Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

Defendants' Reply Brief In Support of Motions in Limine - 56

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

4

5

6

I certify that on February 4, 2020, I caused the foregoing to be electronically filed with the clerk of the Court using the CM/ECF System which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

7

8

s/ Geana M. Van Dessel

Geana M. Van Dessel, WSBA #35969

9

KUTAK ROCK
510 W. Riverside Ave., Suite 800

10

Spokane, WA 99201
Phone: (509) 252-2691

11

Geana.VanDessel@KutakRock.com

12

*Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC*

13

14

15

16

17

18

19

20

21

22

23

24