1   Geana M. Van Dessel, WSBA #35969
    KUTAK ROCK LLP
2   510 W. Riverside Avenue, Suite 800
    Spokane, WA 99201
3   Phone: (509) 252-2691

4   Adam E. Miller, MO Bar No. 40945 (*pro hac vice*)
    Michael W. Cromwell, MO Bar No. 70484 (*pro hac vice*)
5   Susan L. Werstak, MO Bar No. 55689 (*pro hac vice*)
    CAPES, SOKOL, GOODMAN AND SARACHAN, PC
6   8182 Maryland Ave., Fifteenth Floor
    St. Louis, Missouri 63105-3916
7   Phone (314) 754-4810

8   Thomas M. Goutman, PA Bar No. 30236 (*pro hac vice*)
    David. S. Haase, PA Bar No. 73835 (*pro hac vice*)
9   Rosemary R. Schnall, PA Bar No. 73455 (*pro hac vice*)
    SHOOK HARDY & BACON LLP
10  2001 Market Street, Suite 3000
    Philadelphia, PA 19103
11  Phone: (215) 575-3136

12  Richard L. Campbell, MA Bar No. 663934 (*pro hac vice*)
    Melissa Nott Davis, MA Bar No. 654546 (*pro hac vice*)
13  SHOOK HARDY & BACON LLP
    125 Summer St., Ste. 1220
14  Boston, MA 02110
    Phone: (816) 559-4025

15
    Attorneys for Defendants (Additional Counsel on Signature Page)
16

17              **UNITED STATES DISTRICT COURT**
18              **EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| 19  CITY OF SPOKANE, a municipal corporation, located in the County of Spokane, State of Washington, | Case No. 15-cv-00201-SMJ |
| 20                          Plaintiff, | Defendants' Opposition to Plaintiff's Motion to Exclude Expert Opinions of Perter G. Shields, M.D. |
| 21  v. | |
| 22  MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA CORPORATION, and DOES 1 - 100, | Hearing Date: March 12, 2020 Time: 8:30 a.m. With Oral Argument Location: Richland, WA |
| 23 | |
| 24                          Defendants. | |

# Table of Contents

Page

I.   Introduction .................................................... 1

II.  Argument ...................................................... 2

    1.   Dr. Shields' specific causation opinion is probative, not confusing, and based upon reliable scientific methodologies ............. 2

    2.   Dr. Shields' opinions regarding IARC's PCB Working Group are admissible and based upon proper foundation ............................ 4

    3.   Dr. Shields can testify about lung cancer and smoking, NHL and risk assessment comparisons ........................................ 8

III. Conclusion ...................................................... 11

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Humetrix, Inc., v. Gemplus S.C.A.*,
  268 F.3d 910 (9th Cir. 2001)............................................................. 6

*Lewert v. Boiron, Inc.*,
  212 F.Supp.3d 917 (C.D. Cal. 2016)................................................. 9

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002)............................................................ 9

*United States v. Lewis*,
  240 F.3d 866 (10th Cir. 2001)............................................................ 9

*United States v. Naegele*,
  471 F.Supp.2d 152 (D.D.C. 2007) ..................................................... 9

**Other Authorities**

Fed. R. Evid. 403 ...................................................................................... 8

Fed. R. Evid. 404(a)................................................................................... 7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.     INTRODUCTION

Plaintiff seeks to exclude certain testimony of Defendants' expert, Dr. Peter G. Shields ("Dr. Shields")—an expert Plaintiff chose not to depose in this case. Dr. Shields is an oncologist, hematologist and tenured Professor in the Departments of Internal Medicine and Epidemiology at The Ohio State University, where he is the endowed Julius F. Stone Chair in Cancer Research. ECF No. 388-2 at 5. Since 2011, he has also held the position of Deputy Director of the Ohio State University Comprehensive Cancer Center. *Id.*

During the course of his career, Dr. Shields has been responsible for directing a multidisciplinary and transdisciplinary research program that focuses on identifying the environmental and genetic causes of cancer using epidemiology and biomarkers. *Id.* He has authored more than 240 peer-reviewed scientific papers in the field of molecular and human epidemiology and carcinogenesis. Dr. Shields serves or has served on editorial boards of premier journals in the fields of epidemiology and the causes of cancer, including Carcinogenesis, Molecular Carcinogenesis, Journal of Cancer Epidemiology, and Cancer, Epidemiology, Biomarkers and Prevention. *Id.* at 5-6.

In this case, Dr. Shields provides opinions on, among other things, (a) the lack of any causal relationship between PCBs and human cancers based upon the available scientific evidence; and (b) the IARC Working Group's findings (and inappropriate methodologies) related to PCBs and cancers. *Id.* at 7-9. He formulated numerous opinions in his expert report based upon his general scientific and medical knowledge, systematic literature review, and research and clinical practice as a hematologist, oncologist, and cancer epidemiologist. *Id.* at 3.

1      In short, he is overwhelmingly qualified to testify about cancer causation,

2 toxicology, carcinogenesis, epidemiology and hematology and oncology in this

3 matter, along with the methodological deficiencies of the IARC working group's

4 cancer findings. Plaintiff intends to proffer evidence concerning the relationship

5 between PCBs and human cancers. Dr. Shields possesses the appropriate

6 foundation to offer his opinions, which are probative, directly on point, reliable and

7 will assist the jury in the determination of the issues in this case. Consequently,

8 this Court should deny Plaintiff's Motion.

9 **II.**    **ARGUMENT**

         **1.**     **Dr. Shields' specific causation opinion is probative, not confusing,**
10           **and based upon reliable scientific methodologies.**

11 Dr. Shields' report contains several opinions related to PCBs and cancer,

12 including the following:

13    • "The most important studies for understanding cancer risk in humans are

14      high quality studies that assess human risk at the highest levels of human

15      exposure. These are the occupational studies . . . These studies, in addition to

16      mechanistic data, provide convincing epidemiological evidence that PCBs

17      do not measurably cause human cancers at the highest dose to which

      workers have been exposed;" and

18    • "Using two weight of evidence reviews and given that there are many

19      studies at high levels of exposure in some workplaces, it is my opinion that

20      there is insufficient evidence that PCBs cause cancer of any type, a

21      conclusion that should provide reassurance for a lack of effect for the

22      general population, including individuals who consume fish from Spokane

      River."

23

24

1    *Id.* at 7-8. In short, Dr. Shields opines that there is no evidence of a causal

2    connection between PCBs and any type of cancer.

3        Plaintiff does not seek to exclude this opinion. Instead, Plaintiff seeks to

4    preclude Dr. Shields from testifying about specific causation: namely, "the human

5    health effects of exposures to PCBs from the Spokane River." ECF No. 388 at 3.

6        Plaintiff offers two reasons for its requested exclusion. First, Plaintiff

7    perplexingly argues that Dr. Shields' specific causation opinion is not probative.

8    *See id.* The alleged human health effects of PCBs, including cancer, are one of the

9    reasons for which Plaintiff claims a nuisance in the Spokane River. *See generally*,

10   ECF No. 1. Testimony that human cancer is not caused or capable of being caused

11   by any known level of PCB exposure, including any purported exposures from the

12   Spokane River, is not only probative and straightforward, but it goes to the heart of

13   Plaintiff's case. Defendants have the right to dispute, through expert testimony,

14   Plaintiff's allegations of a causal connection between PCB exposures and cancer.

15       Second, Plaintiff argues that Dr. Shields lacks a proper foundation. Namely,

16   Plaintiff argues that Dr. Shields' report "does not in any way quantify exposures to

17   PCBs from the Spokane River, discuss exposure pathways or doses, address the

18   existing body burden of persons exposed to PCBs through the Spokane River, or

19   relates PCBs in [the] Spokane River water to a resulting blood serum level or body

20   burden." ECF No. 388 at 3.

21       Plaintiff clearly misunderstands Dr. Shields' causation opinion. Dr. Shields

22   concluded, after a systematic review and evaluation of the epidemiological and

23   mechanistic evidence which includes occupational studies of worker populations

24   with the highest known levels of human exposure, general population studies, and

1    studies of populations of heavy fish consumers, that the evidence does not support

2    any conclusion that PCBs cause or are capable of causing human cancers, even

3    among individuals with the highest known levels of human exposures. *Id.* at 7-9;

4    *see* ECF No. 388-2. In short, Dr. Shields' opinion is not qualified by or

5    conditioned upon certain levels of PCB exposure, PCB serum levels, fish tissue

6    concentrations, fish consumption or geographical location. *Id.* It does not matter

7    what a person eats or where a person lives; PCBs do not cause human cancers. *See*

8    *id.* Consequently, Dr. Shields is easily able to opine that there is no evidence that

9    PCB exposures from the Spokane River cause human cancer, because there is no

10   evidence that PCB exposures of any magnitude and from any pathway or location

11   cause human cancer.

12        Plaintiff faults Dr. Shields for not "elaborating" to their liking with respect

13   to Spokane River exposures, but Plaintiff chose not to depose him about his

14   opinions in this case. If Plaintiff desired Dr. Shields to elaborate on any one or

15   more of his opinions, it could have spent a day deposing him. Neither Defendants

16   nor Dr. Shields can be faulted for Plaintiff's strategic decision not to take a

17   deposition. Though specific Spokane River exposure levels, pathways and body

18   burdens do not in any way affect Dr. Shields' opinions, Plaintiff is free to cross-

19   examine him on his knowledge thereof at trial.

20        **2.    Dr. Shields' opinions regarding IARC's PCB Working Group are admissible and based upon proper foundation.**

21        Dr. Shields offers several opinions regarding the IARC's Working Group's

22   methodology and findings. Plaintiff seeks to exclude some, but not all, of those

23   opinions. First, Plaintiff argues that testimony by Dr. Shields that the IARC did not

24   conclude PCBs were causally related to any cancers besides melanoma would

1  confuse and mislead the jury. ECF No. 388 at 6. Dr. Shields intends to opine that

2  the IARC Working Group did not report a conclusion that PCBs *cause* breast

3  cancer and Non-Hodgkin's Lymphoma ("NHL"). His opinion is based upon his

4  review of IARC materials, his scientific interpretation of the IARC Preamble and

5  his expertise and background in epidemiology, toxicology and clinical studies.

6  ECF No. 388-2 at 8-9, 36-38.

7       The Working Group concluded that "PCBs cause malignant melanoma." *See*

8  ECF No. 388 5. While the Working Group concluded that there were "*positive*

9  *associations*" for breast cancer and NHL, this is not a scientific conclusion of

10  *causation*.  ECF No. 388-2 at 8-9, 36-38. And, according to Dr. Shields, a finding

11  by the IARC of mere positive associations "means that the consensus was that the

12  data was insufficient for classifying PCBs causally related to these cancers." *Id.* at

13  37. In short, with respect to non-melanoma cancers, IARC could not reconcile

14  inconsistent and incongruous findings of association with occupational studies in

15  which workers were exposed to levels that far exceed levels of environmental

16  exposure. *Id.* at 36-38.[1] Even Plaintiff's purported expert, Dr. David Carpenter

17  (who attended the Working Group), agrees that it did not conclude that NHL and

18  breast cancer are causally associated with PCB exposures:

19       Q. If you look on page 288, it's a carryover from 287 [of the IARC
         Monograph] regarding strength of the association between PCBs and
20       human cancers. And it reads, "Increased risks for non-Hodgkin

21  _____

22  [1] Dr. Shields also opines that the Monograph is outdated. It did not consider over

23  seven years of literature published since the Working Group in 2013 that add to the

    weight of the evidence that PCBs do not cause human cancers, including

24  melanoma, lymphoma and cancer of the breast. ECF No. 388-2 at 8.

lymphoma and breast cancer were also reported, both of which were biologically plausible. However, the associations were not consistent and were considered as providing limited evidence." I read that correctly?

A. Correct.

Q. Was that, in fact, the conclusion of the IARC working group at the conclusion of the meeting that you attended in Lyon, France?
A. That wording is the standard wording for IARC monographs where they consider that there's strong evidence, **but not strong enough to say that they can conclude causation.**

(emphasis added). *See* Declaration of Geana Van Dessel Re: Defendants' Oppositions to Plaintiff's Daubert Motions, Ex. 1 (Depo. David Carpenter, Dec. 17, 2015, at 275:22-276:14). It is not misleading or confusing for Dr. Shields to state that the Working Group did not conclude that PCBs cause cancers other than melanoma. Scientifically, causation is drastically different than a mere finding of an association—a concept that laypersons often misunderstand.

Likewise, Dr. Shields intends to testify that IARC's findings are based upon the "precautionary principle." Specifically, "[a]gencies such as IARC help prioritize regulatory actions. These agencies follow a precautionary principle to protect public health. When these regulatory and review agencies decide that an agent such as PCBs are a known human health carcinogen, it should not be inferred that they <u>will</u> cause cancer in humans." (emphasis in the original). ECF No. 388-2 at 9. Plaintiff seeks to preclude this testimony, essentially on the basis that it disagrees with his conclusion. This is not a basis to exclude expert testimony. *See Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) ("To the extent Gemplus sought to challenge the correctness of Humetrix's experts' testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses."). If

1  Plaintiff disagrees with Dr. Shields' conclusion that the IARC follows the

2  precautionary principal, the proper method of attacking Dr. Shields is through

3  vigorous cross-examination and presentation of contrary evidence—not a motion

4  to exclude.

5      Dr. Shields not only calls into question the methods by which IARC

6  evaluated the epidemiologic evidence, but its conclusions from that evidence. Dr.

7  Shields' opinion that the IARC Working Group's process was not transparent is

8  admissible and based on his review of the scientific literature. Dr. Shields will

9  explain that the conclusions of the Working Group are not justified when they are

10 viewed under an appropriate causal analysis, and that the Working Group lacked

11 transparency, did not adequately explain its rationale for reaching its conclusions,

12 was not qualified and included as an "invited specialist" a routinely hired gun for

13 various plaintiffs in PCB matters. *Id.* at 8-9, 36-38.

14     Plaintiff confusingly suggests that testimony regarding "lack of

15 transparency" should be excluded, because it is impermissible character evidence

16 under Rule 404(a).  ECF No. 388 at 9-11. Dr. Shields is not offering evidence of a

17 "person's character" under Fed. R. Evid. 404(a). He is attacking the methodology

18 of IARC, a secretive organization, on whose findings Plaintiff and Plaintiff's

19 experts rely. This kind of challenge and criticism is well within the purview of an

20 expert witness. It is no different than one expert attacking another, following the

21 receipt of his or her expert report.

22     Next, Plaintiff suggests Dr. Shields should not be able to discuss the fact that

23 Dr. David Carpenter improperly influenced the Working Group's proceedings,

24 arguing that such testimony would lack foundation and unfairly prejudice Plaintiff.

1   ECF NO. 388 at 10-11. Dr. Shields does not intend to offer specific testimony that

2   Dr. Carpenter maliciously influenced IARC. The assistance of Dr. Carpenter, an

3   expert that routinely testifies for Plaintiff's in PCB matters, is relevant, because it,

4   along with the Working Group's inconsistent findings, improper methodology and

5   lack of transparency calls into question the accuracy, objectivity and validity of

6   any of its findings. Dr. Shields possesses an appropriate foundation to offer this

7   opinion, for which the probative value outweighs any prejudice to Plaintiff.

8          **3.      Dr. Shields can testify about lung cancer and smoking, NHL and
                     risk assessment comparisons.**

9
10          Plaintiff desires to prevent Dr. Shields from testifying about certain sections

11  of his expert report, including the "Lung Cancer and Smoking Discussion" (ECF

    No. 388-2 at 38-44), the "General Discussion of Non-Hodgkin's Lymphoma" (*Id.*
12
    at 44-49) and his "opinions comparing the risk of various toxic exposures to the
13
    risk presented by PCBs." (*Id.* at 33-35). According to Plaintiff, such testimony
14
    should be excluded "under Rule 403 because any marginal probative value is
15
    outweighed by the danger of time wasting." ECF No. 388 at 11.
16
           Plaintiff concedes, however, that these topics are at least "incidental to the
17
    matters at issue," and Plaintiff fails to elaborate as to why such testimony would
18
    waste anyone's time. *Id.* Indeed, where Plaintiff chose not to depose Dr. Shields in
19
    this matter and ask him about the subject testimony (including the reasons for its
20
    inclusion in his report), it is puzzling how Plaintiff could conclude the testimony is
21
    a waste of time or even speculate how long such testimony would take at trial.
22
           Dr. Shields' section on smoking and lung cancer is probative and not a waste
23
    of time. Dr. Shields will testify about this subject to illustrate the analysis and
24

1    methodology of epidemiology and causal inference, and to provide a contrast to the

2    data concerning PCBs and cancers which do not demonstrate causation. Likewise,

3    Dr. Shields' testimony on NHL is equally probative. It provides a context and

4    background regarding a specific type of cancer alleged by Plaintiff in its Complaint

5    to potentially be associated with the consumption of fish in the Spokane River. *See,*

6    *e.g.,* ECF No. 1 at ¶10 ("Human consumption of fish from affected areas of the

7    [Spokane] River may be associated with serious health risks . . . Studies have also

8    linked PCBs to increased risk for several other cancers including . . . non-

9    Hodgkin's Lymphoma."). It is hard to see how such testimony is irrelevant or a

10    waste of time when it is a subject Plaintiff decided to expressly include in its

11    Complaint and a purported basis of, among other things, its nuisance claim.

12         In the Ninth Circuit, expert testimony is relevant if it "assists the trier of fact

13    when it provides information beyond the common knowledge of the trier of

14    fact." *U.S. v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002). To that end, courts

15    routinely admit background testimony concerning the subject of the litigation,

16    where it will assist the jury. *See e.g., U.S. v. Lewis*, 240 F.3d 866, 869-70 (10th Cir.

17    2001) (expert testimony was properly admitted to explain general requirements of

18    Oklahoma law regarding commercial area hunting licenses, where expert offered

19    no opinions as to whether that law applied to defendant); *Lewert v. Boiron, Inc.*,

20    212 F.Supp.3d 917, 933–34 (C.D. Cal. 2016) (expert testimony permissible "to

21    educate the jury on the principles of homeopathy and homeopathic dilution to

22    show why Plaintiff's evidence concerning the molecular makeup of Oscillo is not

23    dispositive of its effectiveness."); *U.S. v. Naegele,* 471 F.Supp.2d 152, 160 (D.D.C.

24    2007) (in prosecution for making material false statements in bankruptcy

1   schedules, defendant could properly call witness who was expert in bankruptcy law

2   and bankruptcy proceedings, to explain the Chapter 7 bankruptcy filing process

3   generally, as such testimony would be helpful to a jury).

4       Dr. Shields is an oncologist, hematologist, and Professor of Internal

5   Medicine and Epidemiology. He intends to testify that PCBs do not cause cancers,

6   including NHL. There can be no dispute that a background understanding of NHL

7   will assist the jury in this matter and not waste its time.

8       Finally, Plaintiff seeks to exclude "opinions comparing the risk of various

9   toxic exposures to the risk presented by PCBs. . . ." ECF No. 388 at 11 (referring

10  to and citing page 33 of Dr. Shields' report). It is unclear what portion on page 33

11  of Dr. Shields' expert report to which Plaintiff refers. Nonetheless, to the extent

12  Plaintiff seeks to preclude testimony comparing the risks of other types of

13  exposure to PCBs, said testimony is relevant and not a waste of time.

14      Dr. Shields does not seek to offer testimony on non-PCB risks in a vacuum.

15  The purpose of the comparison is to demonstrate the applicability of the

16  "precautionary principle" in the regulatory context. Namely, that PCB cancer risks

17  (which are the subjects of opinions by Plaintiff's experts, including Drs. Olson and

18  DeGrandchamp), unlike for other known exposures such as smoking and pollution

19  (which are derived from and validated with actual human data), are often

20  overestimated. ECF No. 388-2 at 33-34. Thus, more than anything else, Dr.

21  Shields' opinion is an attack on data relied upon by others, as well as those who

22  might seek to attack Dr. Shields' horough and systematic analysis and conclusions.

23  There is nothing wasteful about explaining this complex scientific analysis to a

24  jury so it may weigh the validity and import of certain risk and hazard assessments.

1

## III.   CONCLUSION

2        Plaintiff's motion to exclude Dr. Shields' opinions should be denied.

3
Respectfully submitted this 11th day of February 2020.

4
                                        By: s/ Geana M. Van Dessel
5                                       Geana M. Van Dessel, WSBA #35969
                                        KUTAK ROCK LLP
6                                       510 W. Riverside Avenue, Suite 800
                                        Spokane, WA 99201
7                                       P: (509) 252-2691
                                        Geana.VanDessel@KutakRock.com
8
                                        By: s/ Adam E. Miller
9                                       Adam E. Miller, MO Bar No. 40945
                                        (Admitted Pro Hac Vice)
10                                      Michael W. Cromwell, MO Bar No. 70484
                                        (Admitted Pro Hac Vice)
11                                      Susan L. Werstak, MO Bar No. 55689
                                        (Admitted Pro Hac Vice)
12                                      Capes, Sokol, Goodman
                                        and Sarachan, PC
13                                      7701 Forsyth Boulevard, Twelfth Floor
                                        St. Louis, MO 63105
14                                      P: (314) 754-4810
                                        miller@capessokol.com
15                                      cromwell@capessokol.com
                                        werstak@capessokol.com
16
                                        Thomas M. Goutman, PA Bar No. 30236
17                                      (Admitted Pro Hac Vice)
                                        David. S. Haase, PA Bar No. 73835
18                                      (Admitted Pro Hac Vice)
                                        Shook Hardy & Bacon LLP
19                                      Two Commerce Square
                                        2001 Market Street, Suite 3000
20                                      Philadelphia, PA 19103
                                        P: (215) 575-3136
21                                      tgoutman@shb.com
                                        dhaase@shb.com
22

23

24

Defendants' Opposition to Plaintiff's Motion
to Exclude Expert Opinions of Peter G. Shields, M.D. - 11

Richard L. Campbell, MA Bar No. 663934
(Admitted Pro Hac Vice)
Melissa Nott Davis, MA Bar No. 654546
(Admitted Pro Hac Vice)
Shook Hardy & Bacon LLP
101 Federal Street, 19th Floor
Boston, MA 02110
P: (816) 559-4025
rcampbell@shb.com

James A. Pardo, NYBA #2969491
(Admitted *Pro Hac Vice*)
Anthony N. Upshaw, FLBA #861091
(Admitted *Pro Hac Vice*)
Lisa A. Gerson, NYBA #4518940
(Admitted *Pro Hac Vice*)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922
Phone: (212) 547-5353
jpardo@mwe.com
aupshaw@mwe.com
lgerson@mwe.com

Robert M. Howard, CSBA #145870
(Admitted *Pro Hac Vice*)
Kelly E. Richardson, CSBA # 210511
(Admitted *Pro Hac Vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Phone: (858) 523-5400
robert.howard@lw.com
kelly.richardson@lw.com


Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

1

## <u>CERTIFICATE OF SERVICE</u>

2

I certify that on the 11th day of February 2020, I caused the foregoing  to be

3 electronically filed with the Clerk of the Court using the CM/ECF System which in

4 turn automatically generated a Notice of Electronic Filing (NEF) to all parties in

5 the case who are registered users of the CM/ECF system. The NEF for the

6 foregoing specifically identifies recipients of electronic notice.

7

8

s/ Geana M. Van Dessel
Geana M. Van Dessel, WSBA #35969
KUTAK ROCK LLP
510 W. Riverside Ave., Suite 800
Spokane, WA 99201
Phone: (509) 252-2691
Geana.VanDessel@KutakRock.com

Attorneys for Defendants Monsanto
Company, Solutia Inc., and Pharmacia LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24