# EXHIBIT 23

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCOA INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| ALCAN ROLLED PRODUCTS-<br>RAVENSWOOD LLC, f/k/a PECHINEY<br>ROLLED PRODUCTS, LLC, PECHINEY CAST<br>PLATE, INC. and CENTURY ALUMINUM<br>COMPANY, | ) C.A. No. 06-451-JFB-SRF<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## *DAUBERT* MOTION TO EXCLUDE CERTAIN TESTIMONY OF JOHN WOODYARD

OF COUNSEL:

René P. Tatro, Esq.
David B. Sadwick, Esq.
Juliet A. Markowitz, Esq.
Tatro Tekosky Sadwick LLP
333 S. Grand Ave. Ste. 4270
Los Angeles, CA  90071

Steven J. Fineman (#4025)
fineman@rlf.com
Christine D. Haynes (#4697)
haynes@rlf.com
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700

*Attorneys for Plaintiff*

Dated:  July 31, 2019

**Exhibit 23**

**450**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT ..........................................................................................................6

I.      STANDARDS FOR ADMISSIBILITY OF EXPERT TESTIMONY ............................6

    A.     Mr. Woodyard Is Not Qualified To Interpret The Applicable Laws
And Regulations Or Apply Law To The Facts As He Understands Them. ................7

    B.     Mr. Woodyard's Testimony On Each Of The Five Subjects Outlined
Above Is Not Reliable And Is Improper Because It Invades The Province
Of The Judge And Jury .....................................................................................9

        1.     Mr. Woodyard May Not Testify About Laws And Regulations Or
Apply The Law To His Version Of The Facts .............................................9

        2.     Mr. Woodyard's Fact Regurgitation Is Not Proper Expert Testimony ..................14

        3.     Mr. Woodyard's Testimony Regarding The Mental States And/Or
Knowledge Of Alcoa And EPA, And His Predictions As To What
EPA Would Do, Are "Classic Jury Functions," Not Proper Expert
Testimony. ...........................................................................................16

    C.     Mr. Woodyard's Opinions On The Five Subjects At Issue Will Not
Assist The Jury. ...............................................................................................18

CONCLUSION .....................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) ........................................................................10

*Calhoun v. Yamaha Motor Corp.*,
   350 F.3d 316 (3d Cir. 2003) ..........................................................................7

*Cantor v. Perelman*,
   2006 WL 3462596 (D. Del. Nov. 30, 2006) ................................................13

*Clark v. Takata Corp.*,
   192 F.3d 750 (7th Cir. 1999) ..........................................................................9

*CMI-Trading, Inc. v. Quantum Air, Inc.*,
   98 F.3d 887 (6th Cir. 1996), *abrogated on other grounds by Morales v. Am.*
   *Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998) ........................................20

*Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*,
   2016 WL 1728384 (M.D. Pa. Apr. 29, 2016) ..............................................19

*Crawford v. George & Lynch, Inc.*,
   2013 SL 6504361 (D. Del. Dec. 9, 2013) ...............................................13, 19

*Dalgic v. Misericordia Univ.*,
   2019 WL 2867236 (M.D. Pa. July 3, 2019) ............................................11, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 113 S. Ct. 2786 (1993) ................................................. *passim*

*Dille Family Tr. v. Nowlan Family Tr.*,
   276 F. Supp. 3d 412 (E.D. Pa. 2017) ...........................................................19

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) .........................................................14

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .........................................................................................9

*Guile v. U.S.*,
   422 F.3d 221 (5th Cir. 2005) ..........................................................................9

*Halcomb v. Wash. Metro. Area Transit Auth.*,
   526 F. Supp. 2d 24 (D.D.C. 2007) ...............................................................17

*High Point Design LLC v. Buyers Direct, Inc.*,
    730 F.3d 1301 (Fed. Cir. 2013)..................................................................................10

*Highway Materials, Inc. v. Whitemarsh Twp.*,
    2004 WL 2220974 (E.D. Pa. Oct. 4, 2004)................................................................10

*Holman Enters. v. Fid. & Guar. Ins. Co.*,
    563 F. Supp. 2d 467 (D.N.J. 2008) ...........................................................................19

*Jones v. Midland Funding, LLC*,
    616 F. Supp. 2d 224 (D. Conn. 2009) .......................................................................12

*Krys v. Aaron*,
    112 F. Supp. 3d 181 (D.N.J. 2015) ...........................................................................11

*Kuhar v. Petzl Co.*,
    2018 WL 6331675 (D.N.J. Dec. 4, 2018)..................................................................19

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)....................................................................................................9

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
    C.A. No. 17-14-JFB-SRF (D. Del. June 25, 2019)......................................... *passim*

*Marx & Co. v. Diners' Club, Inc.*,
    550 F.2d 505 (2d Cir. 1977), *cert. denied*, 434 U.S. 861 (1977)............................12

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
    No. 09-80-LPS, 2016 WL 6542726 (D. Del. Oct. 31, 2016)......................................7

*McCullough v. Nw. Mut. Life Ins. Co.*,
    2007 WL 7647481 (W.D. Pa. July 25, 2007) ...........................................................20

*NBL Flooring, Inc. v. Trumball Ins. Co.*,
    2013 WL 5692384 (E.D. Pa. Oct. 18, 2013)...............................................................7

*Owen v. Kerr-McGee Corp.*,
    698 F.2d 236 (5th Cir. 1983) ....................................................................................12

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004)..........................................................................15

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008)........................................................................................7

*Pioneer Ctrs. Hldg. Co. ESOP & Tr. v. Alerus Fin., N.A.*,
    858 F.3d 1324 (10th Cir. 2017) ................................................................................12

*In re Prempro Prods. Liab. Litig.*,
554 F. Supp. 2d 871 (E.D. Ar. 2008) ...............................................................14, 15

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..................................................15, 16, 17, 18

*Robinson v. Hartzell Propeller Inc.*,
326 F. Supp. 2d 631 (E.D. Pa. 2004) ......................................................................16

*In re Rosuvastatin Calcium Patent Litig.*,
2009 WL 4800702 (D. Del. Dec. 11, 2009) ............................................................17

*S.E.C. v. Johnson*,
525 F. Supp. 2d 70 (D.D.C. 2007) ...........................................................................17

*Specht v. Jensen*,
853 F.2d 805 (10th Cir. 1988) ...........................................................................13, 14

*Terry v. McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Practices
& Prods. Liab. Litig.)*,
MDL No. 2436, 2016 WL 4039286 (E.D. Pa. July 28, 2016) ...................................8

*In re Trasylol Prods. Liab. Litig.*,
709 F. Supp. .............................................................................................................17

*In re Trasylol Prods. Liab. Litig.*,
709 F. Supp. 2d 1323 (S.D. Fla. 2010) ...................................................................15

*In re: Tylenol (Acetaminophen) Mktg., Sales Practices, and Prods. Liab. Litig.*,
2016 WL 4538621 (E.D. Pa. Aug. 31, 2016) ..........................................................12

*Tyree v. Bos. Sci. Corp.*,
54 F. Supp. 3d 501 (S.D. W. Va. 2014) ...................................................................20

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ..................................................................................12

*United States v. Caputo*,
517 F.3d 935 (7th Cir. 2008) ..................................................................................11

*United States v. Hawley*,
562 F. Supp. 2d 1017 (N.D. Iowa 2008) .................................................................20

*United States v. Libby*,
461 F. Supp. 2d 3 (D.D.C. 2006) .............................................................................17

*United States v. McIver*,
470 F.3d 550 (4th Cir. 2006) ..................................................................................12

iv

**Exhibit 23**

*United States v. Whitted*,
    11 F.3d 782 (8th Cir. 1993) ...................................................................20

*United States v. Zipkin*,
    729 F.2d 384 (6th Cir. 1984) .................................................................12

*Watkins v. New Castle Cty.*,
    374 F. Supp. 2d 379 (D. Del. 2005).....................................................7, 8, 10, 19

*Wise v. C. R. Bard, Inc.*,
    No. 2:12-cv-01378, 2015 WL 521202 (S.D. W. Va. Feb. 7, 2015).........................................20

*Yarchak v. Trek Bicycle Corp.*,
    208 F. Supp. 2d 470 (D.N.J. 2002) .................................................................7, 18

## INTRODUCTION

Alcoa Inc. requests an order precluding certain testimony of John Woodyard, which would, *inter alia*, usurp the roles of the Court as well as the fact finder in contravention of *Daubert* and other evidentiary principles.  Alcan Rolled Products-Ravenswood LLC's, f/k/a Pechiney Rolled Products, LLC, and Pechiney Cast Plate, Inc. (collectively, "Pechiney") designated Mr. Woodyard as an expert.

Mr. Woodyard is a registered professional engineer who professes expertise in managing polychlorinated biphenyls ("PCBs").  *See* Exh. A, Woodyard Expert Report ("Report") at p. 1.[1] Mr. Woodyard's professed expertise notwithstanding, the core (and majority) of Mr. Woodyard's opinions are inadmissible.  First, although Mr. Woodyard is neither an attorney nor a legal expert, both his Report and his testimony demonstrate that he intends to explain and interpret the federal Toxic Substances Control Act ("TSCA") and its regulations relevant to PCBs, "including applicable United States Environmental Protection Agency (EPA) rules and guidance."  *See id*. at p. 2.[2]  In Mr. Woodyard's view, the Court may be capable of reading and understanding the TSCA regulations "with some coaching and some education" (Exh. D, Woodyard Depo Vol. 2 at 478:8-485:20), which he proposes to provide.  Second, Mr. Woodyard's Report and testimony also demonstrate that he intends not only to interpret the TSCA and EPA regulations, but also apply them to his version of the underlying facts and opine (or "evaluate" as he puts it) the

---

[1] All exhibits referenced herein are attached to the Declaration of David B. Sadwick filed concurrently herewith.

[2] Even though the regulations and EPA guidance about which Woodyard wants to testify are promulgated under—and therefore tethered to—TSCA, and even though Woodyard directly or indirectly testifies about TSCA (*e.g.*, "TSCA contains an express preemption of any state law that attempts to regulate manufacture, processing, distribution in commerce, use, and disposal of chemical substances or mixtures addressed in Section 6, which includes PCBs"), he ultimately confessed that "I have no knowledge—I have very little knowledge of the law.  I know what TSCA says and it doesn't apply to my day-to-day life…."  Exh. D at 485:7-20.

**Exhibit 23**

parties' compliance or non-compliance. *See* Exh. A at p. 2. In so doing, Mr. Woodyard admits

he was hired "to advocate for [Pechiney's] position." Exh. D at 573:23-574:2. Thus, Mr.

Woodyard effectively proposes to testify that Alcoa violated the relevant laws and regulations.

*Id.* at 454:19-455:9.

In this light, very few of the opinions that Pechiney proposes to elicit from Mr.

Woodyard are proper subjects of expert testimony admissible under the Federal Rules of

Evidence and relevant case law. In addition to interpreting the laws and regulations, and

applying those laws and regulations to the facts as he spins them, Mr. Woodyard also purports—

under the guise of "expert opinion"—to regurgitate his version of the underlying "facts," as well

as his opinions about the mental states (*i.e.*, intent, state of mind, and knowledge) of various fact

witnesses, parties to this action, and even regulators. Mr. Woodyard, however, has no first-hand

knowledge of any of the facts, and is not any more qualified to discern anyone's mental state

than the factfinder entrusted with that responsibility under the structure established by our

judicial system. Finally, although Mr. Woodyard has never been a regulator, Pechiney also seeks

to elicit Mr. Woodyard's speculative predictions about what regulators would do, or would have

done, under hypothetical versions of events. These opinions are inadmissible. Mr. Woodyard is

not qualified to offer them, they are not reliable, and they do not fit the facts of this case.

## STATEMENT OF FACTS

Mr. Woodyard's inadmissible opinions fall into five categories:

1. <u>"LAWS AND REGULATIONS"</u>: Although it is for the Court to determine the

controlling legal framework and instruct the fact finder about the controlling law, the Report is

replete with Mr. Woodyard's interpretations of statutes and regulations. Mr. Woodyard identifies

what he contends are the "relevant" or "controlling" laws and regulations, and opines as to what

they "mean." These identifications and explications constitute the bulk of the Report section

2

entitled "EPA PCB Remediation Regulatory Framework and Chronology."  In this section, Mr. Woodyard interprets the Toxic Substances Control Act ("TSCA"), PCB regulations, EPA's PCB Spill Policy, EPA's PCB Disposal Amendments, and more. *See* Exh. A at pp. 3-6 & p. 7, fn.23. Mr. Woodyard also proposes to offer his interpretation of a key "safe harbor" provision of the PCB regulations (40 CFR § 7761.30(p)) as well as his conclusion that Alcoa did not fit into that safe harbor (Exh. A at p. 6), even though his "methodology" for reaching that conclusion is purely subjective.  Exh. D at 459:8-464:11.  Mr. Woodyard peppers the remaining sections of his report with similar interpretations of laws and regulations. *See, e.g.*, Exh. A at p. 10 (discussing the "absence of generally applicable EPA regulations" and what that purportedly "meant" for Alcoa), p. 12 (PCB Spill Policy), p. 13 (discussing the absence of "PCB regulations allowing concrete encapsulation"), p. 14 (EPA storage and disposal regulations), and p. 15 (EPA's PCB regulatory guidance and regulations).

      2.    <u>"FACT REGURGITATION"</u>:  Mr. Woodyard has no personal knowledge about the background facts, most particularly the conduct of Alcoa.  Yet Pechiney proposes to offer to the fact finder, under the guise of "expert" opinion or testimony, Mr. Woodyard's version of selectively culled and carefully spun "facts."  *See* Exh. A at pp. 7-10.  Facts are within the sole province of *fact witnesses* to offer, and are for the fact finder to weigh.  In the Report section entitled "Alcoa's activities at the site," Mr. Woodyard sets forth over three single-spaced pages of "facts," about which he has no personal knowledge.  Mr. Woodyard also offers his purported "expert" testimony about what Alcoa personnel allegedly wrote and "acknowledged," and about Alcoa's contacts with EPA. *Id.* at pp. 11-12.[3] Moreover, Mr. Woodyard offers his own one-sided

---

[3] Mr. Woodyard even proposes to testify that his personal (but irrelevant) *lack* of knowledge (*i.e.*, ("I am not aware of any documentation of … an agreement" between Alcoa and EPA

summary of the deposition testimony of the City of Vernon's Rule 30(b)(6) witness.  *Id.* at p. 15.[4]

       3.     <u>"MENTAL STATE: KNOWLEDGE AND INTENT OF OTHERS"</u>:  In setting forth his version of the facts, Mr. Woodyard also opines about the purported mental states—the intent, knowledge, and state of mind—of fact witnesses and parties to this action, as well as about the intent of the EPA in issuing regulations and policies.  For example, Pechiney seeks to have Mr. Woodyard offer his "expert" opinion that Alcoa "was aware" of the PCB Disposal Amendments.  Exh. A at p. 5.  Mr. Woodyard also proposes to testify about Alcoa's intent behind taking additional steps to identify and cleanup PCBs, and that Alcoa purportedly "knew" that certain activities would require "TSCA regulatory approval."  *Id*. at p. 8.  Mr. Woodyard opines that Alcoa "became aware" of PCB-containing hydraulic cylinders, and that it "apparently decided" to take certain clean up actions.  *Id*. at p. 9; *see also id.* at p. 11 (opining that Alcoa knew that EPA TSCA approval would be required to fill pits and trenches, and speculating about Alcoa's intent in communicating with EPA); *id*. at p. 14 (speculating about Alcoa's intent to initiate cleanup, as well as about what Alcoa employees "seemed to recognize").  Mr. Woodyard also proposes to testify to EPA's alleged intent in issuing its PCB Spill Policy and in allowing wipe samples to be used, even though such intent is not set forth in the regulations.  *Id.* at p. 4.

---

covering Alcoa's work in areas outside Building 114 (*id*. at p. 12)) — equates to there being no such agreement.

   [4] Mr. Woodyard testified that he was retained to advocate Pechiney's position, and his recitation of "facts," which often crosses the line into argument and advocacy, is consistent with that testimony.  *See*, *e.g*., his opinion that "Alcoa ignored EPA's preemptive role in PCB cleanups, and instead took the position that its closure of the Vernon Site was conditionally exempt from California Department of Toxic Substances Control (DTSC) requirements and that Alcoa could essentially choose its preferred regulatory agency from among the DTSC, the California Regional Water Quality Control Board or the City of Vernon (when in fact EPA had authority over the cleanup and was most qualified for a risk-based approach)."  *Id*. at p. 15.

4

**Exhibit 23**

Mr. Woodyard has no personal knowledge about these mental states, and lacks the qualifications to offer such opinions to assist the trier of fact. As such, his testimony in this regard would not be helpful to the trier of fact.

4.   "PREDICTIONS ABOUT REGULATORY RESPONSES": Although Mr. Woodyard has never been a regulator, Mr. Woodyard claims he has the ability to predict what regulators would or would not do, and what they would and would not approve, in hypothetical scenarios and under alternative versions of the facts. For example, Mr. Woodyard offers his prediction that the disposal approval process under 40 CFR § 761.61(a) would have been "readily approved by EPA," and likewise opines about the types of applications that EPA purportedly does not "normally" accept. Exh. A at p. 5 (no.1 and first bullet). Mr. Woodyard also predicts when and how proposals to EPA would be approved. *Id.* at pp. 5-6 (no.3). He opines that "EPA Region 9 … would not make any such informal agreement" and predicts what EPA "would have required." *Id*. at p. 12. Mr. Woodyard also speculates that EPA would not have approved the provisions agreed to by the City of Vernon. *Id*. at p. 15. And Mr. Woodyard opines about what EPA Region 9 "prefers." *Id*. at p. 16; *see also* Exh. C, at 112:24-113:16, 119:3-8, 309:10-311.24.

5.   "APPLICATION OF LAW TO FACTS": Finally, Mr. Woodyard applies the TSCA and EPA regulations as he interprets them to the facts as he views them (including his speculation about knowledge, intent, and what regulators would have done), and proposes to offer opinions to the fact finder about whether Alcoa and Pechiney complied with or violated those laws and regulations. For example, in his "Summary of Conclusions," Mr. Woodyard opines that, based on his version of the facts, Alcoa purportedly did not follow applicable PCB regulations "resulting in improper disposal of PCBs at the Site," and that Pechiney purportedly

5

did follow applicable PCB regulations.  Exh. A at p. 2.  Likewise, the Report section entitled

"Alcoa's Remedial Actions at the Vernon Site Failed to Conform to Applicable EPA PCB

Regulations" seeks to usurp the fact finder's role in applying the facts to the law.  *Id*. at p. 10.

Mr. Woodyard further includes sub-sections thereunder in which he opines that EPA's Spill

Policy purportedly did not apply, and could not have applied, to Alcoa's PCB cleanup work

(Exh. A at p. 12), that Alcoa's final cleanup work at Building 114 purportedly required notice to

EPA (*id*. at p. 13), that Alcoa purportedly could not rely on the 1990 Consent and Final Order as

setting cleanup standards (*id.*), that Alcoa's capping of PCB-impacted concrete purportedly

required notice to EPA (*id.* at pp. 13-14), and that Alcoa's cleanup agreement with the City of

Vernon purportedly was invalid (*id*. at pp. 14-15).[5]  Finally, Pechiney seeks to have Mr.

Woodyard testify to the fact finder that Pechiney's approach to obtaining approval for

remediation of the Vernon site was appropriate and necessary.  *Id*. at pp. 15-16.[6]

## ARGUMENT

## I.      STANDARDS FOR ADMISSIBILITY OF EXPERT TESTIMONY

Federal Rule of Evidence 702 ("Rule 702") provides the guideposts for the Court's

analysis of expert testimony, and provides as follows:

---

[5] Mr. Woodyard offers similar opinions in deposition, including that the City of Vernon was not authorized to oversee Alcoa's PCB cleanup or issue a no further action statement for the PCB work, and that Alcoa never obtained a no further action determination from a "properly authorized governmental agency."  S*ee also* Exh. C, at 112:24–113:16, 119:3-8, 309:10–311:24.

[6] This motion focuses on the objectionable opinions in Mr. Woodyard's opening report and deposition. Mr. Woodyard's rebuttal report (Exh. B) also offers myriad objectionable opinions.  However, Alcoa believes it is premature to address Mr. Woodyard's rebuttal report at this time.  Many potential developments (including rulings on Alcoa's and Century's motions to exclude, summary adjudication, stipulations, etc.) could significantly affect what opinions Alcoa's and Century's experts offer.  Those developments could, in turn, have a significant (and limiting) effect on what opinions Mr. Woodyard would then be attempting to rebut. The rulings on the current motions to exclude will establish principles that will enable the parties—hopefully without further Court intervention—to figure out which of the Woodyard rebuttal opinions are both necessary and admissible.

6

**Exhibit 23**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Consistent with Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993), establishes a "trilogy of restrictions" on the admissibility of expert testimony relating to scientific knowledge. *See Calhoun v. Yamaha Motor Corp.,* 350 F.3d 316, 321 (3d Cir. 2003). This "trilogy" consists of: "qualification, reliability and fit." *Id*; *see also Masimo Corp. v. Philips Elecs. N. Am. Corp.,* No. 09-80-LPS, 2016 WL 6542726, at *2 (D. Del. Oct. 31, 2016) (citing *Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir. 2000)); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (same).

As detailed below, Mr. Woodyard's proposed testimony on the five topics outlined above does not satisfy each of these requirements and is therefore inadmissible.

## A. Mr. Woodyard Is Not Qualified To Interpret The Applicable Laws And Regulations Or Apply Law To The Facts As He Understands Them.

Although the Third Circuit liberally construes the first requirement — *i.e.*, that the expert be qualified (*see Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 495 (D.N.J. 2002)) — "expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field." *Watkins v. New Castle Cty.*, 374 F. Supp. 2d 379, 391-392 (D. Del. 2005). Accordingly, experts who lack legal expertise, such as Mr. Woodyard, are not qualified to offer opinions about either the interpretation of, or application of, specialized regulatory schemes. *See, e.g., NBL Flooring, Inc. v. Trumball Ins. Co.*, 2013 WL 5692384, at *3

7

**Exhibit 23**

(E.D. Pa. Oct. 18, 2013) ("Mr. Priz is not qualified to testify regarding the proper interpretation of the law, nor would such testimony be appropriate even if he were qualified, as it is for the Court to determine the applicable legal criteria. Similarly, the Court will not allow Mr. Priz to opine as to whether the audits at issue were conducted in compliance with the governing law, as he is not qualified to do so, and it is for the fact finder to apply the facts established through competent evidence to the governing law. The Court, in its role as gatekeeper, cannot permit the testimony of Mr. Priz regarding whether Defendants conducted a proper audit to the extent that it requires him to describe, apply, or interpret the relevant law or the contract entered into by the parties.") (footnote omitted); *Terry v. McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.),* MDL No. 2436, 2016 WL 4039286, at *5, n.13 (E.D. Pa. July 28, 2016) (excluding opinions purporting to "help the jury interpret" regulations).

Mr. Woodyard has no training or expertise in law generally, much less in the regulations about which he seeks to opine at length. *See* Exh. D at 441:18-23, 443:7-8 (Mr. Woodyard has never been a regulator, legislator, or attorney, and has no legal training). Mr. Woodyard has no legal education, and has never drafted a statute. *Id*. at 478:8-14. While Mr. Woodyard believes the Court may be capable of reading and understanding the regulations "with some coaching and some education" (Exh. D at 478:8-485:20), Mr. Woodyard's testimony purporting to describe to the Court and fact finder the applicable regulations is inadmissible because he is not qualified. In addition, as set forth in Section B *infra*, even if Mr. Woodyard did have appropriate legal training or expertise, his opinions about the governing law and regulations are also inadmissible because they are not reliable.

**Exhibit 23**

**B.** **Mr. Woodyard's Testimony On Each Of The Five Subjects Outlined Above Is Not Reliable And Is Improper Because It Invades The Province Of The Judge And Jury.**

The goal of the Rule 702/*Daubert* analysis "is to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). The party offering the expert testimony—in this case, Pechiney—has the burden of establishing, by a preponderance of evidence, that opinion testimony is derived from a reliable methodology. *See Daubert*, 509 U.S. at 592 n.10. Even a "supremely qualified expert" "cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable…." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999); *see also* Fed. R. Evid. 702, Advisory Committee Notes. Testimony is not "reliable" and must be excluded if it is based on "subjective belief" or "unsupported speculation." *Daubert*, 509 U.S. at 590. Courts will not abdicate their gatekeeping function by relying on the authority of the proposed expert: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Kumho Tire*, 526 U.S. at 157. Where, as here, the challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir. 1987)).

**1.** **Mr. Woodyard May Not Testify About Laws And Regulations Or Apply The Law To His Version Of The Facts.**

Testimony about relevant laws and regulations, and Mr. Woodyard's opinions about parties' compliance with those laws and regulations based on his understanding of the facts, is inadmissible as not reliable under controlling case law. This Court recently summarized the law

**Exhibit 23**

on this issue as follows: "[A]n expert's opinion on the legal conclusion of obviousness is neither

necessary nor controlling." *See High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301,

1313 (Fed. Cir. 2013) (internal quotations and citation omitted). An expert cannot usurp the role

of the judge or jury. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006);

*Liqwd, Inc. v. L'Oréal USA, Inc.*, C.A. No. 17-14-JFB-SRF, at *4 (D. Del. June 25, 2019). The

Court explained that legal opinions by an expert will be excluded. "[T]he District Court must ensure

that an expert does not testify as to the governing law of the case." *Berckeley Inv. Group, Ltd. v.

Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). *Id at* 9 (the expert "cannot testify as to how he would

apply the law to the facts, nor is he permitted to explain the law of 'reasonable efforts.'"); *id*. at

15 ("to the extent any expert tries to give legal opinions and conclusions, the expert will not be

permitted to do so").

As the Third Circuit explained in *Berckeley Inv. Grp.*, 455 F.3d at 217, "the District

Court must ensure that an expert does not testify as to the governing law of the case. Although

Federal Rule of Evidence 704 permits an expert witness to give expert testimony that 'embraces

an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from

rendering a legal opinion. Such testimony is prohibited because it would usurp the District

Court's pivotal role in explaining the law to the jury." (internal citation omitted). Just as an

expert may not testify as to the meaning of the law, it follows that "an expert may not opine as to

'legal conclusions drawn by applying the law to the facts.'" *Highway Materials, Inc. v.

Whitemarsh Twp.*, 2004 WL 2220974, at *20 (E.D. Pa. Oct. 4, 2004); *Watkins*, 374 F. Supp. 2d

at 392 (expert not allowed to invade the province of the fact finder).[7]

---

[7] These principles apply to expert testimony that purports to interpret and/or apply federal
regulations or "legal duties resulting from the various [regulatory] pronouncements." *Berckeley
Inv. Grp.,* 455 F.3d at 218.

10

**Exhibit 23**

This Court's rulings in *Liqwd, Inc. v. L'Oréal USA, Inc.* are consistent with those issued by numerous other courts.  In *Krys v. Aaron*, 112 F. Supp. 3d 181, 191-92 (D.N.J. 2015), the court excluded plaintiff's expert, "a law professor and a former Director of Trading and Markets at the CFTC from September 1997 through September 1999," because his opinions "unquestionably invades the Court's province by rendering a legal opinion concerning whether various agents of [Defendants] complied with their obligations under federal securities law."  *Id.* at 191-92.  As the *Krys* court noted, "[a]n expert witness usurps the Court's function by defining the applicable law. If the applicable law is in dispute, it is for the judge and not the jury (or the expert witness) to make that determination and to instruct the jury appropriately.  It is further the judge's function to assure that evidence at trial, by experts or otherwise, does not undermine the clarity of actual legal requirements."  *Id.* at 192, n.8.

Just this month, in *Dalgic v. Misericordia Univ.*, 2019 WL 2867236 (M.D. Pa. July 3, 2019), a court excluded testimony from an expert—"an attorney practicing immigration law for over twenty-five years" — "as to the meaning of 8 C.F.R. § 214.2(f)(11)(i) and his interpretation of the phrase 'enters the recommendation for OPT into his or her service record…'" because such opinion was not the appropriate subject matter of expert testimony.  *Id.* at **9, 12.  The *Dalgic* court summarized:

> [T]estimony concerning his understanding of the applicable federal regulations is … not a subject for which expert testimony is proper. Indeed, "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."

*Id.,* at *12 (quoting *Bammerlin v. Navistar Int'l Transp. Co.*, 30 F.3d 898, 900 (7th Cir. 1994)).

Similar holdings are legion within the Third Circuit, and other Circuits are in accord. *See, e.g., United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations.  That's a subject for the court, not for

testimonial experts. The only legal expert in a federal courtroom is the judge."); *In re: Tylenol*

*(Acetaminophen) Mktg., Sales Practices, and Prods. Liab. Litig.,* 2016 WL 4538621, at *8 (E.D.

Pa. Aug. 31, 2016) (interpretation of federal regulations is a "legal determination [that] is the job

of the court, not an expert or the jury"); *Jones v. Midland Funding, LLC*, 616 F. Supp. 2d 224,

227 (D. Conn. 2009) ("'[A]n expert should not be permitted to express an opinion that is merely

an interpretation of federal statutes or regulations, as that is the sole province of the court.'")

(*quoting DeGregorio v. Metro-North R. Co.*, 2006 WL 3462554, at *3 (D. Conn. Nov. 1, 2006);

*Pioneer Ctrs. Hldg. Co. ESOP & Tr. v. Alerus Fin., N.A.,* 858 F.3d 1324, 1342 (10th Cir. 2017)

("expert may not state his or her opinion  as to legal standards nor may he or she state legal

conclusions drawn by applying the law to the facts"); *United States v. McIver*, 470 F.3d 550,

561-62 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal

conclusion by applying law to the facts is generally inadmissible."); *United States v. Bilzerian*,

926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is

inadmissible."); *id.* ("[A]lthough an expert may opine on an issue of fact within the jury's

province, he may not give testimony stating ultimate legal conclusions based on those facts.");

*Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977), *cert. denied*, 434 U.S.

861 (1977) ("[L]egal opinions as to the meaning of the contract terms at issue . . . was testimony

concerning matters outside [the witness's] area of expertise. . . . It is not for witnesses to instruct

the jury as to the applicable principles of law, but for the judge."); *Owen v. Kerr-McGee Corp.*,

698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on the legal

conclusions to be drawn from the evidence both invades the court's province and is irrelevant.");

*United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) ("It was not proper for the witness to

testify as to a legal conclusion; it is the sole function of the trial judge to instruct the jury on the

Exhibit 23

law."); *Cantor v. Perelman,* 2006 WL 3462596, at *4 (D. Del. Nov. 30, 2006) (excluding expert legal opinions; "the Fifth Circuit actually cautions that 'if an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position.' That is exactly what the parties have done here.") (citation omitted; quoting *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *Crawford v. George & Lynch, Inc.*, 2013 SL 6504361, at *3 (D. Del. Dec. 9, 2013) (concluding that expert testimony and report "contain impermissible legal conclusions" where expert purported to opine as to whether the defendant took "'reasonable care in preventing sexual harassment, discrimination and retaliation'" and that the defendant's response to the plaintiff's complaint "'could reasonably be viewed as retaliatory' constitutes an impermissible legal conclusion because retaliation is a legal concept, and because Gramigna reaches a conclusion as to whether Crawford's subjective belief about the legal concept was reasonable.").

The court in *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), articulates the universal rule recognized in every Circuit in this way:

> [A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.

*Id.* at 809-10. The *Specht* decision even anticipated the putative deference Mr. Woodyard paid to this Court's ultimate supremacy on legal issues:

> Indeed, one is constrained to ask why it is helpful to the jury to present expert testimony on the law if the witness himself states, as he did here, that anything he says is subject to correction by the judge. Is this not more confusing than helpful? The question is rhetorical and stands as further example why a lawyer's testimony on ultimate issues of law is improper.

*Id.* at 809 n.4.

**Exhibit 23**

Mr. Woodyard, who purports to educate both the Court and the fact finder about the

governing regulations (Exh. D at 480:7-21), is a perfect example of an expert who "attempt[s] to

define the legal parameters within which the jury must exercise its fact-finding function" and

offers testimony that's purpose "is to direct the jury's understanding of the legal standards upon

which their verdict must be based, [which] testimony cannot be allowed. In no instance can a

witness be permitted to define the law of the case." *Specht*, 853 F.2d at 809-10.

    **2.    Mr. Woodyard's Fact Regurgitation Is Not Proper Expert Testimony.**

Throughout his reports, Mr. Woodyard offered vast recitations of purported facts of

which he has no firsthand knowledge.  While an expert "may rely on testimony of others that

support his relevant opinions," "the Court will not permit him to summarize witness testimony

just for the sake of summarizing it or offering inappropriate opinions." *Liqwd*, C.A. No. 17-14-

JFB-SRF, at 12.  Even a technical expert "will not be permitted to merely read, selectively quote

from, or 'regurgitate' the evidence." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164,

192 (S.D.N.Y. 2009) (finding that, "to the extent such evidence is admissible, it should be

presented to the jury directly"); *see also Dalgic*, 2019 WL 2867236, at *11 (quoting *In re

Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 402 (S.D.N.Y. 2014); *accord In re

Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 879-87 (E.D. Ar. 2008) (striking expert

testimony which consisted of a "regurgitation of an exhibit, absent any expert analysis or

opinion").

Similarly, an expert cannot opine as to whether a party did or did not do something;

"[t]here is no basis for such an opinion, and it will not assist the trier of fact in making their

determinations." *Liqwd*, C.A. No. 17-14-JFB-SRF, at 12.  "An expert opinion must be based on

'methods and procedures of science' rather than 'subjective belief or unsupported speculation.'

"Unless the expertise adds something, the expert is at best, offering a gratuitous opinion, and at

**Exhibit 23**

worst is exerting undue influence on the jury." *Id.* (citations omitted).  In *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323 (S.D. Fla. 2010)*,* the court precluded an expert from "reguritat[ing]" a factual narrative of Trasylol's regulatory history and summaries of the defendant's internal documents.  The court explained that such "facts should be presented to the jury directly," rather than allowing the expert to "assume[ ] the role of Plaintiffs' advocate in her presentation of the facts and invade[ ] the province of the jury."  *Id.* at 1346.  The court summarized:

> Dr. Parisian's major role in this litigation appears to be that of Plaintiffs' advocate rather than expert.  Her expertise is not required to present the factual narrative to the jury, and she has no expertise that allows her to infer Bayer's and the FDA's knowledge and intent and present those inferences to the jury.  Therefore, Dr. Parisian generally does not offer testimony involving "scientific, technical, or other specialized knowledge" that would assist the trier of fact to understand the evidence or to determine a fact in issue.  *FED. R. EVID. 702.*

*Id.* at 1347; *see als*o *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.") (quoting *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998)).

In *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004), a similar narrative recital of "selected regulatory events" was the centerpiece of a challenge to proposed expert testimony described as "'nothing more than a repetition of the factual allegations in plaintiffs' complaint'" combined with comments amounting to Dr. Gale's 'spin' on the facts." *Id.* at 551.  Characterizing the expert's "'history of Rezulin'" [as] merely a 'narrative of the case which a juror is equally capable of constructing,'" and "background," the court concluded that:

> Such material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. An expert is not required, for example, to comment that the transcript of the December 11, 1996 Advisory Committee "noted" in response to certain animal data, that "at least in rats we

RLF1 21744441v.1

**Exhibit 23**

have reason to be concerned about what might happen ultimately in liver, a target tissue." Likewise, the glosses that Dr. Gale interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case. As plaintiffs' Rezulin "historian," therefore, Dr. Gale "does no more than counsel for plaintiff will do in argument, *i.e.,* propound a particular interpretation of [defendant]'s conduct." Accordingly, Dr. Gale's testimony relating to the "history of Rezulin" is inadmissible.

*Id*.

Here, the Court is urged to reach the same result for the same reasons with respect to the lengthy regurgitations of fact proposed by Mr. Woodyard. As Mr. Woodyard acknowledges, his testimony in this regard is not expert opinion. Exh. D at 453:1-7. And as he further admits, he "was hired to advocate for [Pechiney's] position . . . as an expert." *Id*. at 574:1-2. As the above authorities recognize, Mr. Woodyard's use of factual narrative as an advocate/expert role is improper.

> ### 3. Mr. Woodyard's Testimony Regarding The Mental States And/Or Knowledge Of Alcoa And EPA, And His Predictions As To What EPA Would Do, Are "Classic Jury Functions," Not Proper Expert Testimony.

Mr. Woodyard admits to a lack of expertise in ascertaining the knowledge or intent of individuals, corporations, and regulatory agencies, acknowledging that he has but a "sense" for EPA's intent in issuing certain regulations. Exh. D at 518:25–519:13. An expert may not "testify as to the state of mind of multiple witnesses and parties." *Liqwd*, C.A. No. 17-14-JFB-SRF, at 11, *citing AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) (Expert witnesses are not "permitted to testify . . . regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind maybe inferred", citing *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D.Del.2004)).

"The question of intent is a classic jury question and not one for experts, and clearly not these experts." *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 648 (E.D. Pa. 2004)

RLF1 21744441v.1

**Exhibit 23**

471

(quoting *In re Diet Drugs Prods. Liab. Litig.*, 2000 WL 876900, at \*9 (E.D. Pa. June, 20, 2000)).

"Generally, expert witnesses are not permitted to testify regarding 'intent, motive, or state of

mind, or evidence by which such state of mind may be inferred.'" *In re Rosuvastatin Calcium*

*Patent Litig.*, 2009 WL 4800702, at \*8 (D. Del. Dec. 11, 2009) (quoting *Oxford Gene Tech. Ltd.*

*v. Mergen Ltd.,* 345 F. Supp. 2d 431, 443 (D. Del. 2004)); *accord Halcomb v. Wash. Metro. Area*

*Transit Auth.*, 526 F. Supp. 2d 24, 29 (D.D.C. 2007) (*Rule 702* precludes "opinion testimony

about the credibility of parties or witnesses"); *see also United States v. Libby*, 461 F. Supp. 2d 3,

7 (D.D.C. 2006) ("Expert testimony will ... be precluded if would usurp the jury's role as the

final arbiter of the facts, such as testimony on witness credibility and state of mind.") (citing

cases).

Because "courts have held that the question of (corporate) intent or motive is a classic

jury question and not one for experts" (*In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. at 1338

(citing cases)), opinions on those topics are inadmissible. *S.E.C. v. Johnson*, 525 F. Supp. 2d 70,

78 (D.D.C. 2007) ("Determinations of individuals' intent is a quintessential jury question."); *see*

*also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. Feb. 27, 2004)

("*Rezulin*") (proffered opinions "on the intent, motives or states of mind of corporations,

regulatory agencies and others have no basis in any relevant body of knowledge or expertise"

and are inadmissible) (citing cases).

For the same reason, expert opinions on whether or not a fact was suppressed or

"downplayed" (such as Mr. Woodyard purports to give) are inadmissible. *Rezulin*, 309 F. Supp.

2d at 545, 547 n.38 & 44. As the court explained in excluding similar expert testimony in

*Rezulin*, to permit such opinion testimony would allow the expert "to argue, based on other non-

technical evidence, from the witness stand." *Id.* at 554. Such testimony "pertains to 'lay matters

17

**Exhibit 23**

**472**

which a jury is capable of understanding and deciding without the expert's help.' It is no more than 'arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language.'" *Id.* (footnotes omitted). "It is for counsel to make the arguments about the significance of [a party's] conduct or omissions . . . and not for an expert to testify as to whether the company did or did not do something." *Id.*

Similarly, Mr. Woodyard's speculative testimony regarding what he believes EPA would or would not do, or approvals it would or would not have given, under his version of the facts is unreliable and inadmissible. The lack of any basis for Mr. Woodyard's predictions as to EPA action are highlighted by the fact that Mr. Woodyard's predictions have proven to be inaccurate and do not fit reality in terms of how EPA actually acted. *See, e.g.*, Exh. D at 644:21-24 ("Q. So you were predicting what EPA was going to do but you were wrong; is that right? . . . THE WITNESS: Absolutely."); *see also id.* at 586:19-588:22, 599:23-600:13.

**C.    Mr. Woodyard's Opinions On The Five Subjects At Issue Will Not Assist The Jury.**

Rule 702 requires that the "proffered expert testimony must 'fit' within the facts of the case." *Yarchak*, at 208 F. Supp. 2d at 496; *accord Liqwd, Inc. v. L'Oréal USA, Inc.* The "fit" requirement mandates that the testimony "in fact assist the jury, by providing it with relevant information, necessary for a reasoned decision of the case." *Yarchak*, at 208 F. Supp. 2d at 496 (citing *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002)); *see also* Fed. R. Evid. 702 (expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue.").

Mr. Woodyard's recitation of facts about which he has no personal knowledge, including his opinions about what the parties (and regulators) purportedly knew or intended, Mr. Woodyard's purporting to explain to the fact finder the governing laws and regulations, as well

18

**Exhibit 23**

as his application of those laws and regulations to the conduct of the parties to this action, and

Mr. Woodyard's speculations about what regulators would or would not do or approve, are all

improper.  It is the role of the Court and jury, not an expert, to assess and apply the law to the

facts.  As such, Mr. Woodyard's opinions will not "assist the trier of fact" and therefore do not

satisfy the "fit" requirement.  *See Crawford,* 2013 WL 6504361, at *3 (expert's opinions as to

legal conclusions would not assist the jury; such testimony was unnecessary because "[t]he jury

should be left to decide whether G&L's policy was adequate and whether its procedures were

properly enforced by reviewing the factual evidence on the record and applying the legal

standards as directed by the court;" "[t]he reasonableness of an employer's response to

harassment does not require expert testimony" and such testimony "would not assist the jury in

deciding the issues before it."); *Watkins,* 374 F. Supp. 2d at 392-93 (expert precluded from

drawing legal conclusions)); *Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*,

2016 WL 1728384, at *24 (M.D. Pa. Apr. 29, 2016) ("Because the trial court explains the law to

the jury, McGinley's opinions on questions of law would not be helpful and thus fail the 'fit'

requirement under *Daubert* and Rule 702."); *Holman Enters. v. Fid. & Guar. Ins. Co.,* 563 F.

Supp. 2d 467, 473 (D.N.J. 2008) (Excluding on "fit" grounds expert report "filled with legal

conclusions and speculations, which will not assist the fact finder in understanding the complex

insurance matters at issue in the case."; *Kuhar v. Petzl Co.*, 2018 WL 6331675, at *22 (D.N.J.

Dec. 4, 2018)  (expert opinion which merely answers "a question of fact the jury will decide" "is

not helpful to the jury" and "does not meet the fit requirements of Rule 702"); *Dille Family Tr. v.

Nowlan Family Tr.,* 276 F. Supp. 3d 412, 426 (E.D. Pa. 2017) (excluding expert opinions

regarding "the legal consequences of the evidence he has reviewed," concluding that such

opinions did not satisfy the "fit" requirement "because they would not be helpful to the trier of

19

Exhibit 23

fact"); *McCullough v. Nw. Mut. Life Ins. Co.*, 2007 WL 7647481, at *2 (W.D. Pa. July 25, 2007) (excluding expert testimony because the expert "is in no better position to assess another's subjective intent than the members of a jury" and "will not assist the jury").[8]

Accordingly, opinions that "'merely tell the jury what result to reach' are not deemed helpful to the jury." *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (quoting Fed. R. Evid. 704 advisory committee's note); *accord United States v. Hawley*, 562 F. Supp. 2d 1017, 1041-42 (N.D. Iowa 2008). Mr. Woodyard purports to do exactly this and his opinions are therefore inadmissible under *Daubert*.

## CONCLUSION

For the foregoing reasons, Alcoa respectfully requests that the Court exclude from trial the proposed testimony of John Woodyard as set forth herein.

|  |  |
|---|---|
|  | */s/ Steven J. Fineman* |
|  | Steven J. Fineman (#4025) |
| OF COUNSEL: | fineman@rlf.com |
|  | Christine D. Haynes (#4697) |
| René P. Tatro, Esq. | haynes@rlf.com |
| David B. Sadwick, Esq. | Richards Layton & Finger |
| Juliet A. Markowitz, Esq. | One Rodney Square |
| Tatro Tekosky Sadwick LLP | 920 North King Street |
| 333 S. Grand Ave. Ste. 4270 | Wilmington, DE 19801 |
| Los Angeles, CA 90071 | 302-651-7700 |
|  |  |
| Dated: July 31, 2019 | *Attorneys for Plaintiff* |

---

[8] *See also, Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 518 (S.D. W. Va. 2014) ("a party's knowledge, state of mind, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury"); *Wise v. C. R. Bard, Inc.*, No. 2:12-cv-01378, 2015 WL 521202, at *3 (S.D. W. Va. Feb. 7, 2015) ("[A] party's knowledge and state of mind are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury."); *CMI-Trading, Inc. v. Quantum Air, Inc.,* 98 F.3d 887, 890 (6th Cir. 1996)*, abrogated on other grounds by Morales v. Am. Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998) (Intent "is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 701….").

**Exhibit 23**