# EXHIBIT 10

Declaration of David S. Haase Re: Defendants' Reply Briefs to Exclude Plaintiff's Expert Testimonies 000169

Page 1

```
 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
 2   _____
                                )
 3   CITY OF SPOKANE, a         )
     municipal corporation      )
 4   located in the County of   )
     Spokane, State of          )
 5   Washington,                )   Case No.
                                )   2:15-cv-00201-SMJ
 6            Plaintiff,        )
                                )
 7        -vs-                  )
                                )
 8   MONSANTO COMPANY, et al.,  )
                                )
 9            Defendants.       )
     _____   )
10
11
12             SHOOK HARDY & BACON
          2001 MARKET STREET - SUITE 3000
13       PHILADELPHIA, PENNSYLVANIA  19103
               DECEMBER 18, 2019
14                 10:14 A.M.
15
16
              VIDEOTAPED DEPOSITION OF
17             LISA A. RODENBURG, PH.D.
18
19
20
21
22
23   REPORTED BY:
24   DEBRA SAPIO LYONS, RDR, CRR, CRC, CCR, CLR, CPE
25   JOB NO. 173395
```

1               Lisa A. Rodenburg, Ph.D.
2        A.   I'm not sure I understand that
3   question.
4        Q.   You are not opining in this case
5   that P -- that byproduct PCBs are Spokane's
6   worst problem?
7        A.   That is correct.
8        Q.   Okay.
9        A.   The City of Spokane.  When I said
10  City of Spokane or County of Spokane in the
11  webinar, I was correcting myself.  I did not
12  mean to say City of Spokane.  I was correcting
13  myself to refer to the County of Spokane.
14       Q.   Got it.
15            And both the City of Spokane's
16  waste facility and the County of Spokane's
17  waste facility, they're within a number of
18  miles of each other; correct?
19       A.   I don't know how many miles, but,
20  yes.
21       Q.   They're -- they're close by;
22  right?
23       A.   Reasonably close, yes.
24       Q.   About a ten-minute drive?
25       A.   I don't know.

1              Lisa A. Rodenburg, Ph.D.
2        Q.    Something like that?
3        A.    Yeah, I don't know.
4        Q.    Okay.  And they both empty waste
5   into the Spokane River; correct?
6        A.    That's correct.
7        Q.    And as a matter of fact, the
8   County of Spokane's waste facility ships
9   hundreds of gallons of waste for treatment to
10  the Riverside facility at the City of Spokane;
11  correct?
12       A.    I don't know about that.
13       Q.    You didn't know that?
14       A.    No.
15       Q.    And there's no reason to believe
16  that the content of the influent of the County
17  of Spokane's facility is different than the
18  content of the input of the City of Spokane's
19  waste treatment facility; is there?
20       A.    It depends on what you mean by
21  "different."  I've looked at the influent to
22  both facilities, and there are minor
23  differences.
24       Q.    They're generally the same?
25             MR. LAND:  Objection, vague.

1              Lisa A. Rodenburg, Ph.D.
2        A.    No.
3        Q.    Did I say "sample book"?  I meant
4  sample logbook.
5        A.    No, I did --
6        Q.    Same answer?
7        A.    -- not review the --
8        Q.    Okay.
9        A.    -- sample logbook.
10       Q.    Did you review any chain of
11 custody records?
12       A.    No.
13       Q.    Did you review any written
14 description of the equipment used as well as
15 any maintenance logs for the specific
16 instruments used?
17       A.    There was some information about
18 the equipment used in the QAPPs, but I did not
19 review any maintenance logs.
20       Q.    Did you review any SOPs for the
21 instruments' operations?
22       A.    No.
23       Q.    Did you review any source and
24 certification of standards the laboratory may
25 have had?

Page 94

Lisa A. Rodenburg, Ph.D.

2   A.   No.
3   Q.   Did you review copies of
4   calculations, including formulae or algorithms
5   used for calculations?
6   A.   No.
7   Q.   Did you review any laboratory
8   notebooks or record books containing records
9   pertaining to the samples in question?
10  A.   No.
11  Q.   Did you review any interim
12  reports?
13  A.   Can you be more specific?
14  Q.   Well, there are interim reports
15  and final reports in laboratories; correct?
16  A.   I don't know.
17  Q.   Okay. Did you review any covering
18  correspondence from the laboratories?
19  A.   No.
20  Q.   Did you review any CVs or lists of
21  personnel qualifications for any pertinent
22  laboratory employees?
23  A.   No.
24  Q.   Did you -- well, let me step back.
25       In terms of QA/QC, those

1          Lisa A. Rodenburg, Ph.D.
2   don't know what happened.  I didn't
3   specifically do it, but something happened in
4   the spreadsheet.
5          Q.   Okay.  Let me just -- do you know
6   why that happened?
7          A.   No.
8          Q.   It appears to me that in the
9   transcription of the data from raw to
10  processed, any number to the left of the
11  decimal point was removed.
12              Is that possible?
13         A.   That's what appears to have
14  occurred in this case.
15         Q.   Okay.
16              (Counsel confer.)
17         Q.   So could you take out PCBs in
18  Municipal Products again, Exhibit 34.  You see
19  that?
20         A.   Yes.
21         Q.   Can you go, please, to Table B-1?
22         A.   What page is that on?
23         Q.   I'm sorry.  It's second to last
24  page.
25         A.   Yeah.  Got it.

Page 278

```
1            Lisa A. Rodenburg, Ph.D.
2       Q.   Okay.  It's pesticide/herbicide
3  liquid.  If you go to product ID 12, it shows
4  total PCB is non-detect; right?
5       A.   Uh-huh.
6       Q.   Or 2-4D:  Nufarm Weedar,
7  W-E-E-D-A-R, 64; right?
8       A.   Yes.
9       Q.   So -- and with respect to the --
10 that pesticide, both the -- the sample and the
11 lab duplicate were non-detect; right?
12      A.   Regarding Sample 12?
13      Q.   Yes.
14      A.   And you're asking me whether the
15 sample and the what were non-detect?
16      Q.   Lab duplicate.
17      A.   Is that -- where is the lab
18 duplicate?
19      Q.   (Indicating.)
20      A.   Ah.  Okay.  I see.  Yes.  Correct.
21           (Counsel confer.)
22      Q.   If we go to your report Page 41 --
23      A.   41?
24      Q.   Yeah.  That Weedar 64, you see
25 that, it's the second to --
```

                Lisa A. Rodenburg, Ph.D.
1
2          A.    Yes.
3          Q.    -- last sample.  You report a $R^2$
4    of .08 for 1242; correct?
5          A.    Correct.
6          Q.    According to the City of Spokane's
7    report, PCBs were not detected in that sample
8    at all.
9          A.    Correct.
10               (Counsel confer.)
11         Q.    Okay.  And, by the way, I'm sorry,
12   but I've directed you to the duplicate.  The
13   Weedar actual sample, and that's about one,
14   two, three, four, five, six -- twelve lines
15   from the bottom, in your report you state that
16   there's an $R^2$ for 1242 of .13; is that correct?
17         A.    Correct.
18         Q.    And, in fact, the City of
19   Spokane's report indicated that PCBs were not
20   detected in that; is that correct?
21         A.    Correct.
22               (Counsel confer.)
23         Q.    And at Page 39 of your report --
24   I'm sorry for the delay here -- second full
25   paragraph, the highest $R^2$ value for the MLR

Declaration of David S. Haase Re: Defendants' Reply Briefs to Exclude Plaintiff's Expert Testimonies 000177

Page 280

1            Lisa A. Rodenburg, Ph.D.
2    were found, and it names a number of products,
3    including PVC and CIPP products.
4         A.   I don't see PVC.
5         Q.   Actually, it just says CIPP
6    products --
7         A.   Yeah.
8         Q.   -- correct?
9              If we turn to, again, Exhibit --
10   the PCBs in Municipal Products -- 34.
11             MR. SORENSON:  34.
12   BY MR. GOUTMAN:
13        Q.   Page 27, it says the CIPP samples
14   did not appear to correlate with Aroclor
15   patterns.  Is that what they say?
16        A.   That's what it says.
17        Q.   And that's the City of Spokane's
18   report; correct?
19        A.   Correct.
20        Q.   Am I -- I'm going to have -- I'm
21   going to ask some more questions, then I'm
22   going to take a break and I'll come back and
23   conclude.  Okay?
24        A.   Okay.
25        Q.   Am I correct that in your most

Page 295

```
 1            Lisa A. Rodenburg, Ph.D.
 2                CERTIFICATE
 3   COMMONWEALTH OF PENNSYLVANIA     )
 4                                    ) ss:
 5   COUNTY OF PHILADELPHIA            )
 6         I, Debra Sapio Lyons, a Registered
     Diplomat Reporter, a Certified Realtime Reporter,
 7   a Certified Realtime Captioner, an Approved
     Reporter of the United States District Court for
 8   the Eastern District of Pennsylvania, a Certified
     Court Reporter for the State of New Jersey; and
 9   Notary Public within and for the States of New
     Jersey, New York and the Commonwealth of
10   Pennsylvania do hereby certify:
11         That Lisa A. Rodenburg, Ph.D., the
     witness whose deposition is hereinbefore set
12   forth, was duly sworn by me and that such
     deposition is a true record of the testimony
13   given by such witness, to the best of my ability
     and thereafter reduced to typewriting under my
14   direction.
15         I further certify that I am not related
     to any of the parties to this action by blood or
16   marriage and that I am in no way interested in
     the outcome of the matter.
17
           In witness whereof, I have hereunto set
18   my hand this 23rd day of December, 2019.
19
20                    _____
                      DEBRA SAPIO LYONS
21                    CRR, RDR, CRC, CCR, CPE
22
23
24
25
```